1  Edwin Aiwazian (SBN 232943)
2  Arby Aiwazian (SBN 269827)
   Joanna Ghosh (SBN 272479)
3  **LAWYER *for* JUSTICE, PC**
   410 West Arden Avenue, Suite 203
4  Glendale, California 91203
   Tel: (818) 265-1020 / Fax: (818) 265-1021
5

6  *Attorneys for* Plaintiffs Thomas Beltran, Mario Martinez, and
   Juan Rivera
7

8  [Additional Counsel Listed on the Next Page]

9
                        **UNITED STATES DISTRICT COURT**
10
                        **EASTERN DISTRICT OF CALIFORNIA**
11

12 THOMAS BELTRAN; MARIO MARTINEZ;          Case No.: 1:18-cv-01676-NONE-SAB
   MARIA CLAUDIA OBESO COTA;
13 individually, and on behalf of other members   Honorable Stanley A. Boone
   of the general public similarly situated; JUAN   Courtroom 9
14 RIVERA; MARIANA RAMIREZ;
   ALEXANDER SOLORIO; individually, and    **CLASS ACTION**
15 on behalf of other members of the general
   public similarly situated on behalf of other   **PLAINTIFFS' NOTICE OF MOTION AND**
16 aggrieved employees pursuant to the California   **MOTION FOR PRELIMINARY**
   Private Attorneys General Act;           **APPROVAL OF CLASS AND**
17                                          **COLLECTIVE ACTION SETTLEMENT;**
                                            **MEMORANDUM OF POINTS AND**
18           Plaintiffs,                    **AUTHORITIES IN SUPPORT THEREOF**

19     vs.                                  [Declaration of Proposed Class Counsel
                                            (Edwin Aiwazian and Vincent Granberry);
20 OLAM SPICES AND VEGETABLES, INC.,        Declarations of Proposed Class
   an unknown business entity; and DOES 1   Representatives (Thomas Beltran, Mario
21 through 100, inclusive,                   Martinez, Maria Claudia Obeso Cota, Juan
                                            Rivera, and Alexander Solorio); and
22           Defendants.                    [Proposed] Order filed concurrently herewith]

23
24                                          Date:          June 10, 2020
                                            Time:          10:00 a.m.
25                                          Courtroom:     9

26                                          Complaint Filed:   July 7, 2015
                                            FAC Filed:         November 10, 2015
27                                          SAC Filed:         April 25, 2016
                                            TAC Filed:         April 11, 2018
28                                          Trial Date:        None Set

---

**PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL OF CLASS AND
COLLECTIVE ACTION SETTLEMENT; MEMORANDUM OF POINTS
AND AUTHORITIES IN SUPPORT THEREOF**

1

2

Joseph Lavi (SBN 209776)
Vincent C. Granberry (SBN 276483)
**LAVI & EBRAHIMIAN, LLP**
8889 Olympic Blvd., Suite 200
Beverly Hills, California 90211
Tel: (310) 432-000 / Fax: (310) 432-0001

3

4

5

6

Sahag Majarian II (SBN 146621)
**LAW OFFICE OF SAHAG MAJARIAN II**
18250 Ventura Boulevard
Tarzana, California 91356
Tel: (818) 609-0807 / Fax: (818) 609-0892

7

8

9

*Attorneys for* Plaintiffs Maria Claudia Obeso Cota and
Alexander Solorio

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**LAWYERS** *for* **JUSTICE, PC**
410 West Arden Avenue, Suite 203
Glendale, California 91203

**PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL OF CLASS AND
COLLECTIVE ACTION SETTLEMENT; MEMORANDUM OF POINTS
AND AUTHORITIES IN SUPPORT THEREOF**

**TO ALL PARTIES AND THEIR COUNSEL OF RECORD:**

**PLEASE TAKE NOTICE** that on June 10, 2020, at 10:00 a.m., or as soon thereafter as the matter may be heard before the Honorable Stanley A. Boone in Courtroom 9 of the United States District Court for the Eastern District of California, located at the Robert E. Coyle United States Courthouse, 2500 Tulare Street, Fresno, California 93721, Plaintiffs Thomas Beltran, Mario Martinez, Maria Obeso Cota, Alexander Solorio, and Juan Rivera ("Plaintiffs") will and hereby do move for an order:

- Granting preliminary approval of the proposed class action settlement described herein and as set forth in the parties' Third Amended Class Action and Collective Action Settlement and Release Agreement ("Settlement," "Agreement," or "Settlement Agreement"), attached as **"EXHIBIT 1"** to the Declaration of Edwin Aiwazian, including the means of allocation and distribution of the Total Settlement Fund and the Net Settlement Fund, and the allocations for an award of Attorneys' Fees and Costs, Incentive Awards, penalties under the Private Attorneys General Act, and Settlement Administration Costs;

- Conditionally certifying the proposed Class and approving the proposed FLSA collective for settlement purposes only;

- Appointing Plaintiffs Thomas Beltran, Mario Martinez, Maria Obeso Cota, Alexander Solorio, and Juan Rivera as representatives of the Class;

- Appointing Edwin Aiwazian, Arby Aiwazian, and Joanna Ghosh of Lawyers *for* Justice, PC, Joseph Lavi and Vincent C. Granberry of Lavi and Ebrahimian, LLP, and Sahag Majarian, II of Law Offices of Sahag Majarian, II as counsel for the Class (i.e., Class Counsel);

- Approving the proposed Notice of Class Action Settlement ("Class Notice"), Request for Exclusion Form, Notice of FLSA Settlement ("FLSA Notice"), and Mailing Envelope attached as "Exhibit A," "Exhibit B," "Exhibit C," and "Exhibit D" respectively, to the [Proposed] Order Granting Preliminary Approval of Class Action Settlement ("Proposed Order");

**LAWYERS** *for* **JUSTICE, PC**
410 West Arden Avenue, Suite 203
Glendale, California 91203

- Appointing Simpluris, Inc. ("Simpluris") as the Settlement Administrator to handle the notice and administration process for the Settlement and preliminarily approving Settlement Administration Costs, which are currently estimated to be $58,000;

- Directing Simpluris to mail the Class Notice, Request for Exclusion Form, and FLSA Notice in the Mailing Envelope (collectively, the "Notice Packet") to the proposed Class Members and FLSA Members;

- Approving the proposed deadlines for the notice and administration process as reflected herein and in the Settlement Agreement; and

- Scheduling a hearing to consider final approval of the proposed Settlement, at which time the Court will also consider whether to grant final approval of the requests for an award of Attorneys' Fees and Costs, Incentive Awards, and Settlement Administration Costs.

This motion is based upon the following memorandum of points and authorities; the Settlement Agreement; the Declarations of Proposed Class Counsel (Edwin Aiwazian and Vincent Granberry) the Declarations of Proposed Class Representatives (Thomas Beltran, Mario Martinez, Maria Obeso Cota, Alexander Solorio, and Juan Rivera) in support thereof; as well as the pleadings and other records on file with the Court in this matter, and such evidence and oral argument as may be presented at the hearing on this motion.

Dated:  April 13, 2020                              **LAWYERS** *for* **JUSTICE, PC**


                                        By:     /s/ Edwin Aiwazian
                                                Edwin Aiwazian
                                                *Attorneys for* Plaintiffs Thomas Beltran, Mario
                                                Martinez, and Juan Rivera

**LAWYERS** *for* **JUSTICE, PC**
410 West Arden Avenue, Suite 203
Glendale, California 91203

**PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL OF CLASS AND COLLECTIVE ACTION SETTLEMENT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**

# TABLE OF CONTENTS

I.  SUMMARY OF MOTION .......................................................................................1

II.  FACTUAL BACKGROUND AND PROCEDURAL HISTORY ......................................2

III.  SUMMARY OF THE SETTLEMENT TERMS ..........................................................4

  A.  The Class for Settlement Purposes .......................................................4

  B.  The FLSA Settlement for Settlement Purposes .....................................4

  C.  Essential Terms of the Settlement .........................................................5

  D.  Calculation of Non-FLSA Payments and FLSA Payments ...................6

  E.  Range of Non-FLSA Payments for Class Members ..............................6

  F.  Range of FLSA Payments for FLSA Members ......................................7

  G.  Settlement Opt-Out and Objection Procedures .....................................7

  H.  Scope of the Class Release ....................................................................8

  I.  Scope of the FLSA Release ....................................................................9

IV.  THE LEGAL STANDARD FOR PRELIMINARY APPROVAL OF THE CLASS
    ACTION SETTLEMENT AND COLLECTIVE ACTION ..............................................9

V.  THE CLASS ACTION SETTLEMENT SHOULD BE PRELIMINARILY APPROVED
    ....................................................................................................................10

  A.  The Settlement Resulted from Arm's Length Negotiations and Extensive
      Investigation and Discovery ...............................................................11

  B.  The Settlement Is Fair, Reasonable, and Adequate ............................13

  C.  The Settlement Is Within the Range of Possible Approval .................15

    1.  The Requested Incentive Award Is Reasonable.........................15

    2.  The Allocations for Attorneys' Fees and Costs Is Reasonable.............16

VI.  CERTIFICATION OF THE PROPOSED CLASS IS APPROPRIATE UNDER RULE
    23..................................................................................................................18

  A.  Numerosity ...........................................................................................18

  B.  Commonality ........................................................................................19

  C.  Typicality .............................................................................................19

LAWYERS *for* JUSTICE, PC
410 West Arden Avenue, Suite 203
Glendale, California 91203

ii

D.      Adequacy of Representation ....................................................................20

E.      Predominance and Superiority ...............................................................20

VII.   CERTIFICATION OF THE FLSA SETTLEMENT IS APPROPRIATE ....................21

VIII.  ADEQUACY OF THE METHOD OF NOTICE ...........................................22

IX.    APPOINTMENT OF SIMPLURIS, INC.  AS THE ADMINISTRATOR ....................23

X.     DEADLINES FOR NOTICE AND ADMINISTRATION ...........................................24

XI.    CONCLUSION.................................................................................................25

**LAWYERS *for* JUSTICE, PC**
410 West Arden Avenue, Suite 203
Glendale, California 91203

**PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL OF CLASS AND COLLECTIVE ACTION SETTLEMENT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**

## **TABLE OF AUTHORITIES**

Page(s)

### **United States Supreme Court Cases**

*Boeing v. Van Gemert*, 444 U.S. 472, 478 (1980) ..........................................................17

*Dukes v. Wal–Mart, Inc.*, 564 U.S. 338, 350 & 359 (2011) .........................................19

*Elsen v. Carlisle & Jacqueline*, 417 U.S. 156, 175-77 (1974)......................................23

*Hensley v. Eckerhart*, 461 U.S. 424, 436 (1983) ........................................................18

*Hoffmann-La Roche Inc. v. Sperling*, 493 U.S. 165, 174 (1989)..................................23

Federal Cases

*Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 626 n.20 (1997) ...........................20, 21

*Armstrong v. Davis*, 275 F.3d 849, 868 (9th Cir. 2001)................................................19

*Blackie v. Barrack*, 524 F.2d 891, 902 (9th Cir. 1975) ...............................................19

*Churchill Vill. LLC v. Gen. Elec.*, 361 F.3d 566, 575 (9th Cir. 2004)...........................22

*Craft v. Cnty. of San Bernardino*, 624 F. Supp. 2d 1123, 1127 (C.D. Cal. 2008) ....................17

*Harris v. Vector Mktg. Corp.*, No. 08-cv-5198-EMC, 2011 WL 1627973, at *8 (N.D. Cal. Apr. 29, 2011) ..........................................................................................................11

*In re Badger Mountain Irr. Dist. Sec. Litig.*, 143 F.R.D. 693, 696 (W.D. Wash. 1992) ..........18

*In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 463 (9th Cir. 2000)................................15, 20

*In re Toyota Motor Corp.*, 2013 WL 3224585 (C.D. Cal. June 17, 2013) ...........................18

*In re Toys "R" Us-Del., Inc. FACTA Litig.*, 295 F.R.D. 438, 470 (C.D. Cal. 2014).....................15

*Knight v. Red Door Salons, Inc.*, 2009 WL 248367, at *6 (N.D. Cal. Feb. 2, 2009).....................17

*Knisley v. Network Assocs.*, 312 F.3d 1123, 1126 (9th Cir. 2002)..................................17

*Mazza v. Am. Honda Motor Co.*, 254 F.R.D. 610, 617 (C.D. Cal. 2008) ...............................19

*Mendoza v. United States*, 623 F.2d 1338, 1352 (9th Cir. 1980)...................................22

*Romero v. Producers Dairy Foods, Inc.*, 2007 WL 3492841 (E.D. Cal. Nov. 14, 2007)...............17

*Schaefer v. Overland Express Family of Funds*, 169 F.R.D. 124, 131 (S.D. Cal. 1996)...........22

*Singer v. Becton Dickinson and Co.*, 2010 WL 2196104, *8 (S.D. Cal. June 1, 2010).................17

*Six (6) Mexican Workers v. Ariz. Citrus Growers*, 904 F.2d 1301, 1311 (9th Cir. 1990) .........17

**LAWYERS** *for* **JUSTICE, PC**
410 West Arden Avenue, Suite 203
Glendale, California 91203

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL OF CLASS AND COLLECTIVE ACTION SETTLEMENT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**

*Staton v. Boeing*, 327 F.3d 938, 976-78 (9th Cir. 2003) ....................................................15, 17

*Vasquez v. Coast Valley Roofing, Inc.*, 266 F.R.D. 482, 491-92 (E.D. Cal. 2010) ........................17

*Vizcaino v. Microsoft Corp.*, 290 F.3d 1043 (9th Cir. 2002) ....................................................17, 18

*Welmer v. Syntex*, 117 F.R.D. 641, 644 (N.D. Cal. 1987) ......................................................20

*Williams v. MGM-Pathe Commc'n Co.*, 129 F.3d 1026 (9th Cir. 1997) ......................................17

**State Cases**

*Amaral v. Cintas Corp. No. 2* 163 Cal.App.4th 1157 (2008) ..................................................22

*Arias v. Superior Court* 46 Cal.4th 969 (2009) ....................................................................22

*Nordstrom Commissions Case* 186 Cal.App. 4th 576 (2010) ..................................................23

*Wershba v. Apple Computer, Inc.*, 91 Cal. App. 4th 224 (2001) .............................................14

**State Statutes**

Cal. Lab. Code § 2699(e)(2) ..............................................................................................22

Cal. Lab. Code § 2699(i) ..................................................................................................22

Cal. Lab. Code §§ 2699(a) ..............................................................................................21

California Labor Code § 2699(g) ......................................................................................21

**Rules**

Federal Rule of Civil Procedure  23(a) .............................................................................16

Federal Rule of Civil Procedure  23(a)(1) .........................................................................16

Federal Rule of Civil Procedure  23(a)(4) .........................................................................17

Federal Rule of Civil Procedure  23(b) .............................................................................16

Federal Rule of Civil Procedure  23(c)(2) .........................................................................20

Federal Rule of Civil Procedure 23(b)(3) .........................................................................18

Federal Rule of Civil Procedure 23(c)(2)(B) .....................................................................20

Federal Rule of Civil Procedure 23(e) ..............................................................................8

Federal Rule of Civil Procedure 23(h) ..............................................................................14

**Other Authorities**

*Manual for Complex Litig., Fourth* § 21.132 ....................................................................18

**LAWYERS** *for* **JUSTICE, PC**
410 West Arden Avenue, Suite 203
Glendale, California 91203

v

**PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL OF CLASS AND COLLECTIVE ACTION SETTLEMENT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**

LAWYERS *for* JUSTICE, PC
410 West Arden Avenue, Suite 203
Glendale, California 91203

# MEMORANDUM OF POINTS AND AUTHORITIES

## I.   SUMMARY OF MOTION

Plaintiffs Thomas Beltran, Mario Martinez, Maria Obeso Cota, Alexander Solorio, and Juan Rivera ("Plaintiffs") respectfully request that this Court grant preliminary approval of the Third Amended Class Action and Collective Action Settlement and Release Agreement ("Settlement," "Agreement," or "Settlement Agreement") entered into by and between Plaintiffs, individually and on behalf of the proposed Class and FLSA Members, and Defendant Olam West Coast, Inc. ("Defendant") erroneously sued as Olam Spices and Vegetables, Inc. (collectively, the "Parties"). Subject to approval by the Court, Plaintiffs and Defendant have agreed to settle this lawsuit for a Total Settlement Fund of $4,500,000.[1]

The Parties reached the Settlement after engaging in extensive formal and informal discovery, investigations, and extensive arm's-length negotiations. The Settlement resulted after two formal mediation sessions conducted by the Honorable Edward Infante (Ret.), a well-respected mediator who is experienced in wage-and-hour class actions, and extensive negotiations thereafter. The Settlement satisfies the criteria for approval and falls within the range of possible approval under California and federal law. Additionally, the proposed Notice Packet[2] provides the best notice practicable under the circumstances and will allow each Class Member and FLSA Member a full and fair opportunity to evaluate the Settlement and decide whether to participate in it.   Accordingly, Plaintiffs move the Court to grant preliminary approval of the Settlement and the allocations for Attorneys' Fees and Costs, Incentive Awards, penalties under the Private Attorneys General Act, California Labor Code section 2698, *et seq*. ("PAGA"), and Settlement Administration Costs; approve the FLSA Settlement and conditionally certify the proposed Class for settlement purposes; direct distribution of the Notice Packet; and set a Final Approval Hearing.

---

[1] A copy of the fully-executed Settlement Agreement is attached as "**EXHIBIT 1**" to the Declaration of Edwin Aiwazian ("Aiwazian Decl.").

[2] The "Notice Packet" will include the proposed Notice of Class Action Settlement ("Class Notice"), Request for Exclusion Form, Notice of FLSA Settlement ("FLSA Notice"), and the Mailing Envelope, which are attached as "Exhibit A," Exhibit B," "Exhibit C," and "Exhibit D" respectively to the [Proposed] Order Granting Preliminary Approval of Class Action Settlement, filed concurrently herewith.

**PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**

**LAWYERS** *for* **JUSTICE, PC**
410 West Arden Avenue, Suite 203
Glendale, California 91203

## II.   FACTUAL BACKGROUND AND PROCEDURAL HISTORY

### A.   The Parties' Claims and Defenses

Defendant is a leading food and agri-business which supplies a broad portfolio of products to thousands of customers. Plaintiffs were employed by Defendant as hourly-paid, non-exempt employees during the Settled Period.[3]

Plaintiffs' core allegations are that Defendant has violated the California Labor Code, and Fair Labor Standards Act by, *inter alia*, failing to properly pay minimum and overtime wages, failing to provide compliant meal and rest periods or pay associated premium payments, failing to timely pay wages upon termination, failing to provide compliant wage statements, and failing to reimburse necessary business-related expenses, and thereby engaged in unfair business practices under the California Business and Professions Code and conduct that gives rise to penalties pursuant to PAGA. As a result, Plaintiffs contend that they and the Class Members are entitled to, *inter alia*, unpaid wages, penalties (including and not limited to, penalties pursuant to PAGA), and attorneys' fees.

Defendant denies any liability of any kind associated with the claims and allegations, and further denies that Plaintiffs, Class Members, and/or FLSA Members are entitled to any relief. Defendant also denies that this case is appropriate for class or representative treatment for any purpose other than the Settlement. Defendant maintains, among other things, that it has complied with federal and California laws in all respects.

### B.   Procedural History

On July 7, 2015, Plaintiff Thomas Beltran commenced a class action lawsuit against Defendant, erroneously sued as Olam Spices and Vegetables, Inc., in the Alameda County Superior Court, Case No. RG15776976 ("*Beltran* Action" or "Action").  On or about September 9, 2015, the *Beltran* Action was transferred to the Fresno County Superior Court, Case No. 15CECG02993. On November 10, 2015, Plaintiff Mario Martinez was added as a named

---

[3] Declaration of Carlos Beltran ("Beltran Decl.") ¶ 2; Declaration of Mario Martinez ("Martinez Decl.") ¶ 2; Declaration of Maria Obeso Cota ("Obeso Cota Decl.") ¶ 2; Declaration of Alexander Solorio ("Solorio Decl.") ¶ 2; Declaration of Juan Rivera ("Rivera Decl.") ¶ 2 (The Obeso Delcaration and Solorio Declaration are attached to the Declaration of Vincent Granberry as Exhibit 4 and Exhibit 5, respectively.)

**PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL OF CLASS AND COLLECTIVE ACTION SETTLEMENT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**

LAWYERS *for* JUSTICE, PC
410 West Arden Avenue, Suite 203
Glendale, California 91203

plaintiff by way of an amended complaint. Throughout the course of litigation, the parties in the *Beltran* Action have engaged in extensive motion practice as to the pleadings, venue, and discovery.

On September 15, 2015, Plaintiff Maria Claudia Obeso Cota filed a class action lawsuit against Defendant in the Sonoma County Superior Court, Case No. SCV257741 ("*Cota* Action"). Pursuant to stipulation and order, on or about January 22, 2016, the *Cota* Action was transferred to the Fresno County Superior Court, Case No. 16CECG00081.

On February 18, 2016, Plaintiff Alexander Solorio filed a complaint for civil penalties pursuant to PAGA against Defendant in the Fresno County Superior Court, Case No. 16CECG00513 (the "*Solorio* Action").

On October 6, 2016, Plaintiff Juan Rivera filed a complaint for civil penalties under PAGA against Defendant in the State of California for the County of Santa Clara, Case No. 16CV300758 ("*Rivera* Action") on behalf of the State of California and other aggrieved hourly paid or non-exempt employees who worked for Defendant since August 1, 2015. On October 31, 2016, Mariana Ramirez was added as a named plaintiff by way of an amended complaint.

On June 1, 2017, Plaintiffs filed a motion for preliminary approval of class action settlement in the *Beltran* Action, which was denied without prejudice.

On April 11, 2018, pursuant to the Court's Order granting the Parties' stipulation, Plaintiffs filed the Third Amended Class Action Complaint for Damages & Enforcement Under California Labor Code § 2698, Et Seq. in the *Beltran* Action, which added Plaintiffs Maria Claudia Obeso Cota, Mariana Ramirez, Alexander Solorio, and Juan Rivera as plaintiffs.

On June 27, 2018, Plaintiffs filed a renewed motion for preliminary approval of class action settlement in the *Beltran* Action. On October 2, 2018, Plaintiffs filed supplemental papers in support of their renewed motion for preliminary approval. On October 25, 2018, the Fresno County Superior Court denied Plaintiffs' renewed motion for preliminary approval of class action settlement.

On December 10, 2018, Defendant removed the Action to the United States District Court for the Eastern District of California under 28 U.S.C. §§ 1331, 1441, and 1446.

**PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL OF CLASS AND COLLECTIVE ACTION SETTLEMENT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**

The Parties engaged in additional extensive negotiations regarding settlement of the case, and reached a settlement to address points of inquiry raised by Fresno County Superior Court. Aiwazian Decl., ¶ 12.

On December 13, 2019, Plaintiffs filed a Notice and Suggestion of Death Upon the Record Under Rule 25(a)(1) regarding Mariana Ramirez, and on April 8, 2020, the Court entered an Order dismissing Mariana Ramirez from the Action.

**III.** **SUMMARY OF THE SETTLEMENT TERMS**

    **A.**     **The Class for Settlement Purposes**

For settlement purposes only, the Parties agree to class action certification of the following Class consisting of approximately eight thousand two hundred eleven (8,211) individuals ("Class Members") as of December 31, 2018:

> With respect to all Released Class Claims, all persons who were employed by Defendant in a position that Defendant classified as non-exempt and/or hourly non-exempt and worked in that capacity at Defendant's Fresno, Firebaugh, Hanford, Lemoore, Gilroy and/or Williams facilities in California and for which Class Members and FLSA Members were paid on a non-exempt basis ("Covered Position"), at any time during the period from July 7, 2011 to the date of the Court's order granting preliminary approval of the Agreement ("Settled Period"), or the estates of such individuals. Agreement, ¶¶ II.31.

As discussed in VI, *infra*, class certification is appropriate with respect to the settlement and resolution of the Released Class Claims ("Class Settlement"). Agreement, ¶ II.7.

    **B.**     **The FLSA Collective for Settlement Purposes**

For settlement purposes only, the Parties agree to approval of the settlement and resolution of the Released FLSA Claims ("FLSA Settlement"). Agreement, ¶ II.19. The FLSA Settlement will be binding on all FLSA Members who opt-in by cashing, depositing, or otherwise negotiating their check for payment of their share of the Net FLSA Settlement Fund (as defined below) ("Participating FLSA Members"). FLSA Members are, with respect to all Released FLSA Claims, all persons who were employed by Defendant in a Covered Position at any time during the Settled Period. Agreement, ¶¶ II.18 & II.36.

As discussed in VII, *infra*, approval of the FLSA Settlement is appropriate with respect to the Settlement.

**LAWYERS** *for* **JUSTICE, PC**
410 West Arden Avenue, Suite 203
Glendale, California 91203

**PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL OF CLASS AND COLLECTIVE ACTION SETTLEMENT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**

**LAWYERS *for* JUSTICE, PC**
410 West Arden Avenue, Suite 203
Glendale, California 91203

### C.    Essential Terms of the Settlement

Defendant will pay a Total Settlement Fund of $4,500,000. Agreement, ¶ II.39 & III.3. The Net Settlement Fund means the amount remaining after deducting the following from the Total Settlement Fund: (1) attorneys' fees of up to $1,575,000 and reimbursement of litigation costs and expenses of up to $65,000 to Class Counsel ("Attorneys' Fees and Costs"); (2) Incentive Awards of up to $7,500 each to Plaintiffs Beltran, Martinez, Obeso Cota, and Solorio and up to $3,500 to Plaintiff Rivera; (3) $112,500 to the LWDA for its share of the amount allocated toward civil penalties under PAGA ("LWDA Payment"); (4) Settlement Administration Costs, which are currently estimated to be $58,000; and (5) employer's share of payroll taxes and contributions with respect to the wage portion of the Non-FLSA Payment and FLSA Payment ("Employer Taxes"), estimated to be between $117,000 to $ 168,000. *Id.*, ¶¶ II. 14, II.38, III.5, III.6, & III.8.  Twenty-five percent (25%) of the amount allocated to PAGA for civil penalties (i.e., $37,500) will remain part of the Net Class Settlement Fund.  *Id.*, ¶ III.8. Assuming the allocations towards these payments are awarded in full, the Net Settlement Fund that will be available for distribution to Class Members who do not submit a timely and valid request for exclusion ("Participating Class Members") and FLSA Members who timely and validly opt-in to the FLSA Settlement (i.e., Participating FLSA Members) is estimated to be $2,656,000 less Employer Taxes. Aiwazian Decl., ¶ 18. Seventy-five percent (75%) of the Net Settlement Fund will be allocated to the Class Settlement ("Net Class Settlement Fund"), and the remaining twenty-five percent (25%) of the Net Settlement Fund will be allocated to the FLSA Settlement ("Net FLSA Settlement Fund"). Agreement, ¶¶ III.9.a.1-2.

The Net Class Settlement Fund will be distributed to Participating Class Members on a *pro rata* basis, based upon the number weeks that they were credited to have been employed in a Covered Position during the Settled Period ("Workweeks") as compared to the number of Workweeks worked by all Participating Class Members. Agreement, ¶¶ II.40 & III.9.a.1. The Net FLSA Settlement Fund will be distributed to FLSA Members on a *pro rata* basis, based upon the number of Workweeks as compared to the total number of Workweeks worked by all FLSA Members.  Agreement, ¶ III.9.a.2. The entire Net Settlement Fund will be distributed to

5

**LAWYERS *for* JUSTICE, PC**
410 West Arden Avenue, Suite 203
Glendale, California 91203

the Settlement Class and the FLSA Members with no reversion to Defendant.

### D.   Calculation of Non-FLSA Payments and FLSA Payments

The Settlement Administrator will calculate each Participating Class Member's *pro rata* share of the Net Class Settlement Fund ("Non-FLSA Payment") by multiplying the Net Class Settlement Fund by a fraction that has as its numerator the individual Participating Class Member's Workweeks and as its denominator the total number of Workweeks of all the Participating Class Members. *Id.*, ¶ III.9.a.1.

The Settlement Administrator will also calculate each FLSA Member's *pro rata* share of the Net FLSA Settlement Fund ("FLSA Payment") by multiplying the Net FLSA Settlement Fund by a fraction that has as its numerator the individual FLSA Member's Workweeks and as its denominator the total number of Workweeks of all the FLSA Members. *Id.*, ¶ III.9.a.2.

Non-FLSA Payments and FLSA Payments (collectively, "Individual Settlement Payments") will be allocated as thirty-four percent (34%) wages ("Wage Portion") and sixty-six percent (66%) penalties, interest, consideration for the waiver of rights and benefits conferred by California Civil Code section 1542, and non-wage damages and reimbursement of business expenses ("Non-Wage Portion"). *Id.*, ¶ III.9.b.  The Wage Portion will be reported on an IRS Form W-2, and the Non-Wage Portion will be reported on an IRS Form-1099. *Id.*  The Employer Taxes will be paid from the Total Settlement Fund. ¶ II.13. The Individual Settlement Payments will each be reduced for the employee's share of payroll taxes and withholdings with respect to the Wage Portion. *Id.*, ¶ III.9.c.

### E.   Range of Non-FLSA Payments for Class Members

The Net Settlement Fund is currently estimated to be $2,656,000. Aiwazian Decl., ¶ 18. Assuming a Net Class Settlement Fund of $1,992,000 (i.e., 75% of 2,656,000), the range of estimated Non-FLSA Payments that individual Participating Class Members could be credited with, based on their respective number of Workweeks and data provided by Defendant as of December 31, 2018, are estimated as follows:

- 6 months: [(26 Workweeks ÷ 554,378 total Workweeks) x $1,992,000] = $93.42
- 1 year: [(52 Workweeks ÷ 554,378 total Workweeks) x $1,992,000] = $186.85
- 2 years: [(104 Workweeks ÷ 554,378 total Workweeks) x $1,992,000] = $373.69

- 3 years: [(156 Workweeks ÷ 554,378 total Workweeks) x $1,992,000] = $560.54
- 4 years: [(208 Workweeks ÷ 554,378 total Workweeks) x $1,992,000] = $747.39
- 5 years: [(312 Workweeks ÷ 554,378 total Workweeks) x $1,992,000] = $1,121.08
- 6 years: [(364 Workweeks ÷ 554,378 total Workweeks) x $1,992,000] = $1,307.93
- 7 years: [(416 Workweeks ÷ 554,378 total Workweeks) x $1,992,000] = $1,494.78

### F.      Range of FLSA Payments for FLSA Members

The Net Settlement Amount is currently estimated to be $2,656,000. Aiwazian Decl., ¶ 18. Assuming a Net FLSA Settlement Fund of $664,000 (25% of $2,656,000), the range of estimated FLSA Payments that individual Participating FLSA Members could be credited with, based on their respective number of Workweeks and data provided by Defendant as of December 31, 2018, are estimated as follows:

- 6 months: [(26 Workweeks ÷ 554,378 total workweeks) x $664,000] = $31.14
- 1 year: [(52 Workweeks ÷ 554,378 total workweeks) x $664,000] = $62.28
- 2 years: [(104 Workweeks ÷ 554,378 total workweeks) x $664,000] = $124.56
- 3 years: [(156 Workweeks ÷ 554,378 total workweeks) x $664,000] = $186.85
- 4 years: [(208 Workweeks ÷ 554,378 total workweeks) x $664,000] = $249.13
- 5 years: [(312 Workweeks ÷ 554,378 total workweeks) x $664,000] = $373.69
- 6 years: [(364 Workweeks ÷ 554,378 total Workweeks) x $664,000] = $435.98
- 7 years: [(416 Workweeks ÷ 554,378 total Workweeks) x $664,000] = $498.26

### G.      <u>Settlement Opt-Out and Objection Procedures</u>

Class Members who wish to be excluded from the Class Settlement must complete, sign, and fax the Request for Exclusion Form or a written letter ("Request for Exclusion") to the Settlement Administrator within sixty (60) calendar days from the initial mailing of the Notice Packet by the Settlement Administrator ("Response Deadline"). Agreement, ¶¶ II.35 & III.16. The Response Deadline will be extended fifteen (15) calendar days for any Class Member who is re-mailed a Notice Packet by the Settlement Administrator due to an incorrect mailing address. *Id.* A written letter Request for Exclusion must: (a) contain a clear statement indicating that the Class Member wises to exclude himself or herself from the Class Settlement; (b) contain the name of the Class Member and either the last four digits of the Social Security Number of the Class Member or his or her employee identification number; (c) be signed by the Class Member; and (d) be post-marked or fax-stamped and submitted to the Settlement Administrator by the Response Deadline. *Id.*, ¶¶ II.35 & III.16.  Any Class Member who submits a timely and valid Request for Exclusion will not be bound by the terms of the Class Settlement. *Id.*

LAWYERS *for* JUSTICE, PC
410 West Arden Avenue, Suite 203
Glendale, California 91203

Class Members who have not submitted a timely and valid Request for Exclusion (i.e., Participating Class Members), may object to the Class Settlement by informing the Court and the Settlement Administrator in writing no later than the Response Deadline. *Id*., ¶ III.20. A written objection to the Class Settlement ("Notice of Objection") must be signed by the Participating Class Member and include: (a) his or her full name; (b) dates of employment; (c) the last four digits of his or her Social Security Number and/or employee identification number; (d) the basis for the objection; and (e) if the Participating Class Member intends to appear at the Final Approval Hearing. *Id*., ¶ III.20.

### H.   Scope of the Class Release

The Released Class Claims that are the subject of the Class Settlement are:

All wage and hour claims, rights, demands, liabilities and causes of action of every nature and description, known and unknown, that were plead or could have been plead based on the factual allegations in the Third Amended Complaint, from July 7, 2011 through the Preliminary Approval date, including, without limitation, any statutory, constitutional, contractual or common law claims for wages (including minimum wage, overtime, and premium wages, and for any failure to pay overtime based on the regular rate of pay), damages, business expenses, or penalties (including waiting time penalties), liquidated damages, punitive damages, interest, restitution, equitable relief, or any other relief, based on any and all applicable statutes (other than the Fair Labor Standards Act, including without limitation the California Labor Code, the California Industrial Welfare Commission wage orders, Labor Code Private Attorneys General Act of 2004 (Cal. Lab. Code §§ 2698, *et seq*.) ("PAGA"), California Business and Professions Code § 17200, *et seq*, or other law, including, but not limited to, claims based on the following categories of allegations during the Settled Period: (a) all claims for unpaid overtime; (b) all claims for meal and rest period violations; (c) all claims for unpaid minimum wages; (d) all claims for untimely payment of wages upon termination; (e) all claims for untimely payment of wages during employment; (f) all claims for failure to pay wages; (g) all claims for failure to provide accurate or otherwise proper itemized wage statements; (h) all claims for failure to keep complete and accurate payroll records; (i) all claims for failure to reimburse necessary business-related expenses and costs; (j) all claims asserted, or which could have been asserted, under PAGA arising out of the aforementioned claims; (k) all claims asserted through California Business & Professions Code § 17200 *et seq*. arising out of the aforementioned claims; and (l) all other claims for penalties, liquidated damages, punitive damages, interest, attorneys' fees, litigation costs, restitution, equitable relief, or additional damages that allegedly arise out of the aforementioned claims. For consideration provided by the Settlement, Released Class Claims specifically include the release and waiver of any and all claims, rights, or benefits that a Class Member may have under California Civil Code Section 1542 relating to any claims described in this Paragraph, which provides:

A general release does not extend to claims that the creditor or releasing party does not know or suspect to exist in his or her favor at the time of

8

LAWYERS *for* JUSTICE, PC
410 West Arden Avenue, Suite 203
Glendale, California 91203

executing the release and that, if known by him or her, would have materially affected his or her settlement with the debtor or released party. Agreement, ¶ II.31.

Upon the Effective Date[4], Plaintiffs and all Participating Class Members will release all Released Class Claims with respect to all of the Released Parties. *Id.*, ¶ III.19.

## I.   Scope of the FLSA Release

The Released FLSA Claims that are subject to the FLSA Settlement are:

Any and all claims, debts, liabilities, demands, obligations, penalties, guarantees, costs, expenses, attorneys' fees, damages, action or causes of action of whatever kind or nature under the Fair Labor Standards Act, whether known or unknown, foreseen or unforeseen, arising out of or related to any and all facts, transactions, events, policies, occurrences, acts, disclosures, statements, omissions or failures to act, as of and including the Effective Date of this Agreement, which are or could be raised in the Action. For consideration provided by the Settlement, Released FLSA Claims specifically include the release and waiver of any and all claims, rights, or benefits that a FLSA Member may have under California Civil Code Section 1542 relating to any claims described in this Paragraph, which provides:

A general release does not extend to claims that the creditor or releasing party does not know or suspect to exist in his or her favor at the time of executing the release and that, if known by him or her, would have materially affected his or her settlement with the debtor or released party. Agreement, ¶ II.32.

Upon the Effective Date[5], Plaintiffs and all Participating FLSA Members will be deemed to have released all Released FLSA Claims with respect to all of the Released Parties. *Id.*, ¶¶ II.12, 33, & III.19.

## IV.   THE LEGAL STANDARD FOR PRELIMINARY APPROVAL OF THE CLASS ACTION SETTLEMENT AND COLLECTIVE ACTION

Class action settlements require approval by the court. Fed. R. Civ. Proc. 23(e). Although judicial policy favors settlement of class actions, *Class Plaintiffs v. City of Seattle,* 955 F.2d 1268, 1276 (9th Cir. 1992), the decision to approve or reject a settlement is within the trial court's discretion, and that decision may be reversed only upon a strong showing of "clear abuse of discretion." *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir. 1998); *Class Plaintiffs*, 955 F.2d at 1276.

---

[4] *See* Agreement, ¶ I.12, for the definition of the "Effective Date."
[5] *See* Agreement, ¶ I.12, for the definition of the "Effective Date."

9

LAWYERS *for* JUSTICE, PC
410 West Arden Avenue, Suite 203
Glendale, California 91203

LAWYERS *for* JUSTICE, PC
410 West Arden Avenue, Suite 203
Glendale, California 91203

A settlement should be approved if it is "fundamentally fair, adequate, and reasonable." *Hanlon*, 150 F.3d at 1026; Fed. R. Civ. P. 23(e). In approving a class action settlement, courts engage in a two-step process: (1) preliminary approval of the settlement; and (2) a later detailed review after notice is given to class members, to determine whether final approval is appropriate. *Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 525 (C.D. Cal. 2004). At the preliminary approval stage, courts must approve a class action settlement "if it appears to be the product of serious, informed, non-collusive negotiations, has no obvious deficiencies, and does not improperly grant preferential treatment to class representatives or segments of the class, and falls within the range of possible approval." *In re Tableware Antitrust Litig.*, 484 F. Supp. 2d 1078, 1079 (N.D. Cal. 2007).

In evaluating the fairness of the class action settlement, courts should give "proper deference to the private consensual decision of the parties." *Hanlon*, 150 F.3d at 1027. Courts need only ensure that the settlement is not a product of "fraud or overreaching by, or collusion between, the negotiating parties, and that the settlement, taken as a whole, is fair, reasonable, and adequate to all concerned." *Id.*

In considering whether FLSA settlements should be approved, courts look to whether the settlement is a fair and reasonable resolution of a bona fide dispute. *Lynn's Food Stores, Inc. v. United States*, 679 F. 2d 1350, 1352-53. A bona fide dispute exists when "there are legitimate questions about the existence and extent of Defendant's FLSA liability. *Selk v. Poners Mem'l Healthcare Dist.*, 159 F. Supp. 3d 1164, 1172 (S.D. Cal. 2016).

## V.   THE SETTLEMENT SHOULD BE PRELIMINARILY APPROVED

Preliminary approval is appropriate if the settlement is "potentially fair," *Acosta v. Trans Union, LLC*, 243 F.R.D. 377, 386 (C.D. Cal. 2007), and has no "glaring deficiencies" that would make it clear that a final approval hearing is not warranted. *Murillo v. Pac. Gas & Elec. Co.*, 266 F.R.D. 468, 478 (E.D. Cal. Mar. 4, 2010). As discussed below, the Settlement resulted from hard-fought litigation and extensive negotiations, and is fair and reasonable. Therefore, the Class Settlement should be preliminarily approved.

///

**A.**   **The Settlement Resulted from Arm's Length Negotiations and Extensive Investigation and Discovery**

An initial presumption of fairness exists "if the settlement is recommended by Class Counsel after arm's-length bargaining." *Harris v. Vector Mktg. Corp.*, No. 08-cv-5198-EMC, 2011 WL 1627973, at *8 (N.D. Cal. Apr. 29, 2011) (citation omitted). Courts give great weight to such recommendation, as Class Counsel is most familiar with the issues underlying the case. *Nat'l Rural*, 221 F.R.D. at 528.

Here, the Parties actively litigated the cases since they were commenced. Class Counsel conducted a thorough investigation into the facts of the cases, including, *inter alia*, interviews with Plaintiffs and many Class Members and FLSA Members, and diligently investigated the allegations in this matter. Aiwazian Decl., ¶¶ 12-15. Class Counsel reviewed thousands of pages of data and documents, including but not limited to: Plaintiffs' and multiple other Class Members' employment records, over ten thousand pages of employee time detail records, almost fifteen thousand pages of employee payroll records, various orientation materials (such as the Orientation Training Agendas for 2011 and 2012, the 2012 Employee Orientation Checklist, the Orientation Employee Guidelines for 2011 and 2012, and the Orientation Handbook for Production Hourly Employees for 2015), Defendant's Payroll Action Form, Defendant's Second Meal Period Waiver agreement, Defendant's policies and practices (such as the Standards of Conduct, Good Manufacturing Practices, Timekeeping Record Requirements, and Modest Plant Rules), various agreements and acknowledgements (such as the Agreement Acknowledgement of Receipt of Employee Handbook, Acknowledgement of Receipt of Company Policies, Personal Protective Equipment Policy Acknowledgment, and 2009 Conagra Foods/Code of Conduct Acknowledgement), fourteen versions/iterations of employee handbooks (such as Employee Handbooks dated September 2010, September 2012, 2013, 2014, 2015, and July 1, 2015; Employee Handbook for full time regular employees dated May 2009; Firebaugh, California Employee Handbook for seasonal employees dated March 2012 and April 2012; Gilroy, California Employee Handbook dated 2016; Firebaugh, California Employee Handbook dated 2013; Williams Employee Handbook dated 2016; Hanford Employee Handbook dated

LAWYERS *for* JUSTICE, PC
410 West Arden Avenue, Suite 203
Glendale, California 91203

2015 and 2016), and multiple collective bargaining agreements (such as the Collective Bargaining Agreements with Local Union 890 for the time periods of April 1, 2017 to March 31, 2012 and April 1, 2012 to March 31, 2016 and the Collective Bargaining Agreement with UFCW Local 5 for the time period from July 11, 2011 to July 6, 2014). *Id.*, ¶ 14.

Further, the Parties conducted extensive formal and informal discovery and investigation into the facts of the cases.  For example, Class Counsel prepared for and took the deposition of Defendant's Person Most Knowledgeable ("PMK") witness regarding certain topics of Defendant's organizational structure on February 24, 2017 and February 27, 2017 and the deposition of Defendant's PMK witness regarding other certain topics of Defendant's organizational structure on February 24, 2017. *Id.*, ¶ 14.  Class Counsel also engaged in a *Belaire-West* notice administration (by which Class Counsel obtained the contact information of Class Members who did not opt out of the disclosure of their information), interviewed many Class Members and FLSA Members, and obtained and reviewed the employment records of over half a dozen Class Members and FLSA Members.  *Id.*, ¶ 14.  Both sides propounded and responded to multiple sets of written discovery requests in various forms. *Id.*  The Parties also met and conferred on numerous occasions over issues relating to the pleadings, jurisdiction, motion practice, discovery, mediation, and the Settlement. *Id.*

The data and documents produced in this case enabled Class Counsel to prepare damages/valuation models in preparation for the mediation sessions, to determine the potential value and strength of the claims, and to estimate the potential claim of each Class Member and FLSA Member. *See id.*, ¶¶ 23-29.

The Parties reached the Settlement after reviewing all available evidence, arm's-length bargaining, and participating in two (2) mediation sessions conducted by the Honorable Edward Infante (Ret.), a well-respected mediator experienced in handling complex wage-and-hour matters, as well as extensive settlement negotiations thereafter. *Id.*, ¶ 12.  Prior to and during the mediation sessions, the Parties exchanged information and discussed various aspects of the cases, including and not limited to, the claims of Plaintiffs, the risks and delays of further litigation and of proceeding with class and collective certification and/or representative

12

LAWYERS *for* JUSTICE, PC
410 West Arden Avenue, Suite 203
Glendale, California 91203

adjudication, the law relating to off-the-clock theory, meal and rest periods, wage-and-hour enforcement, FLSA claims, and PAGA representative claims, the evidence produced and analyzed, the possibility of appeals, and the risks to recovery.[6] *Id.* ¶ 13.

While the Parties disagree over the merits and certifiability of Plaintiffs' claims, Plaintiffs and Class Counsel agree that the Settlement is fair, reasonable, adequate, and in the best interest of the Class Members and FLSA Members, in light of all known facts and circumstances. *Id.*, ¶¶ 23-29.

### B.   The Settlement Is Fair, Reasonable, and Adequate

The Settlement, which provides for a Total Settlement Fund of $4,500,000, represents a fair, reasonable, and adequate resolution of the cases. The entire Net Settlement Fund will be distributed to Participating Class Members and FLSA Members in accordance with the Settlement Agreement. The amount of the Settlement is reasonable considering the risks relating to certification, liability, and the ability to recover monetary relief on a class-wide, collective, or representative basis. Aiwazian Decl., ¶¶ 13 & 24-29. Additionally, the Settlement guarantees a certain monetary recovery to Participating Class Members and Participating FLSA Members in a reasonably short period of time, as opposed to waiting additional years for the same or possibly no recovery if this matter were to proceed to trial.

The Settlement was calculated using data and information uncovered through extensive case investigation, formal and informal discovery, depositions, and informal exchange of information in the context of mediation and settlement negotiations. *Id.*, ¶¶ 13-18. Prior to reaching the Settlement, Class Counsel conducted extensive investigation into the claims. *Id.*, ¶ 12. The data and information obtained enabled Class Counsel to calculate the value of the claims and the monetary recovery that could potentially be awarded to Class Members and FLSA Members, and permitted a complete understanding of Defendant's employment policies,

---

[6] *See Hanlon*, 150 F.3d at 1027 (affirming approval of settlement after finding "no evidence to suggest that the settlement was negotiated in haste or in the absence of information illuminating the value of plaintiffs' claims"); *see also Villegas v. J.P. Morgan Chase & Co.*, No. CV 09-00261 SBA (EMC), 2012 WL 5878390, at *6 (N.D. Cal. Nov. 21, 2012) (stating that participation in private mediation "tends to support the conclusion that the settlement process was not collusive").

LAWYERS *for* JUSTICE, PC
410 West Arden Avenue, Suite 203
Glendale, California 91203

13

practices, and procedures. *See id.*, ¶¶ 23-29. This information proved invaluable in negotiating a settlement amount that fairly compensates the Class Members and FLSA Members. *Id.,* ¶ 15 & 17.

The Parties have also considered the potential risks and rewards inherent in any case and, in particular, here. *Id.*, ¶¶ 27-28. Class Counsel performed a damages and valuation analysis based on the class data and sampling of time and pay data provided by Defendant. *See id.*, ¶¶ 17 & 25.  During the mediations and settlement negotiations, Defendant provided information and data supporting its position that its policies and practices fully complied with California and federal law. *Id.*, ¶¶ 23, 27, & 29. Defendant argued that individual issues would predominate because its non-exempt employees worked at different locations, in different positions, or during different periods of time, and were subject to variant employment policies, practices, and procedures, and the reasons why a Class Member failed to receive a meal or rest break or worked off the clock would also raise individual issues that cannot be certified. *Id.*

Plaintiffs face numerous risks in continued litigation, including and not limited to, the risk of receiving no recovery if a class and/or collective are not certified and/or no liability is found and the Court determining that adjudication on a representative or class basis is unmanageable and not appropriate. *Id.*, ¶¶ 27-29. Plaintiffs also face the real possibility that, if there is a recovery against Defendant after years of litigation and a lengthy and costly trial, the amount may be less than the amount negotiated in this Settlement. *See id.*, ¶¶ 27-29.

### 1.   <u>The Settlement Treats All Class Members and FLSA Members Fairly</u>

There is no reason to doubt the fairness of the proposed plan of allocation of the settlement funds for purposes of preliminary approval. Even at the *final* approval stage: "an allocation formula need only have a reasonable, rational basis, particularly if recommended by experienced and competent Class Counsel." *Nguyen v. Radient Pharm. Corp.*, No. 11-cv-00406, 2014 WL 1802293, at *5 (C.D. Cal. May 6, 2014); *see also Maley v. Del Global Techs. Corp.*, 186 F. Supp. 2d 358, 367 (S.D.N.Y. 2002).

Here, the Settlement is fair because it poses no risk of unequal treatment of any Class Member or FLSA Member.  Non-FLSA Payments and FLSA Payments will be calculated on a

LAWYERS *for* JUSTICE, PC
410 West Arden Avenue, Suite 203
Glendale, California 91203

14

LAWYERS *for* JUSTICE, PC
410 West Arden Avenue, Suite 203
Glendale, California 91203

*pro rata* basis, based upon the number of Workweeks during the Settled Period. Agreement, ¶ III.9.a. Considering the facts in this matter, the amount of the Settlement represents a fair, reasonable, and adequate recovery for the Class Member and FLSA Members. Aiwazian Decl., ¶¶ 23-29.

### C.   The Settlement Is Within the Range of Possible Approval

The Settlement, which provides for a Total Settlement Fund of $4,500,000, provides substantial monetary recovery to Class Members and FLSA Members, and is fair, reasonable, and adequate in light of the value of the claims and the significant risks of continued litigation. Similarly, all of the other Settlement terms for which Plaintiffs request approval and/or preliminary approval fall within the range of reasonableness, as discussed below.

### 1.   The Requested Incentive Awards Are Reasonable

Subject to approval by the Court, Plaintiffs Beltran, Martinez, Obeso Cota, and Solorio will each receive an Incentive Award of $7,500 and Plaintiff Rivera will receive an Incentive Award of $3,500. The Incentive Awards will be paid in addition to Plaintiffs' Individual Settlement Payments (i.e., their Non-FLSA Payment and FLSA Payment).

The trial court has discretion to award incentives to the class representatives.[7] *See In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 463 (9th Cir. 2000). Courts routinely approve incentive awards to class representatives for their time and efforts, and the risks they undertake on behalf of the class. *See, e.g.*, *Staton v. Boeing*, 327 F.3d 938, 976-78 (9th Cir. 2003) (discussing cases approving incentive awards in the range of $2,000 to $25,000). "Incentive awards are particularly appropriate in wage-and-hour actions" because named plaintiffs bear "a significant reputational risk for bringing suit against their former employers." *Bellinghausen v.*

---

[7] In assessing the reasonableness of an incentive award, several district courts in the Ninth Circuit have considered the factors set forth in *Van Vranken v. Atl. Richfield Co.*, 901 F. Supp. 294, 299 (N.D. Cal. 1995): (1) the risk to the class representative in commencing a class action; (2) the notoriety and personal difficulties encountered by the class representative; (3) the amount of time and effort spent by the class representative; (4) the duration of the litigation; and (5) the personal benefit, or lack thereof, enjoyed by the class representative as a result of the litigation. *See, e.g., In re Toys "R" Us-Del., Inc. FACTA Litig.*, 295 F.R.D. 438, 470 (C.D. Cal. 2014); *Covillo v. Specialty's Café*, No. C-11-00594 DMR, 2014 WL 954516, at *7 (N.D. Cal. Mar. 6, 2014); *Carr v. Tadin, Inc.*, 51 F. Supp. 3d 970, 986 (S.D. Cal. 2014).

*Tractor Supply Co.*, 306 F.R.D. 245, 267 (N.D. Cal. Mar. 19, 2015) (quotation marks omitted). Here, the requested Incentive Awards are fair and appropriate and are well within the range of incentive payments awarded by district courts. *See id.*; *Angell v. City of Oakland*, 13 cv-00190 NC, 2015 WL 65501, at *8 (N.D. Cal. Jan. 5, 2015) (approving $9,000 incentive award for each class representative); *Covillo*, 2014 WL 954516, at *8 (approving $8,000 incentive award).

Moreover, Plaintiffs spent considerable time and effort to produce relevant documents and past employment records and provided the facts and evidence necessary to attempt to support the allegations. Aiwazian Decl., ¶ 22; Beltran Decl., ¶¶ 10-11; Martinez Decl., ¶¶ 2-6; Obeso Cota Decl., ¶¶ 2-6; Solorio Decl., ¶¶ 2-6; and Rivera Decl., ¶¶ 2-6. Plaintiffs were available whenever counsel needed them and tried to obtain documents and information that would benefit the Class Members and FLSA Members. *Id.* Further, Plaintiffs Beltran and Martinez each prepared for, traveled to, and attended their depositions.  Beltran Decl., ¶ 12; Martinez Decl., ¶¶ 14. Accordingly, it is appropriate and just for Plaintiffs to receive reasonable Incentive Awards for their services on behalf of the Class Members and FLSA Members.

### 2.     The Allocation for Attorneys' Fees and Costs Is Reasonable.

Class Counsel meet the requirements under Federal Rule of Civil Procedure 23(g). Class Counsel conducted extensive research, investigation, litigation and analysis of the potential value of the claims. Aiwazian Decl., ¶¶ 13-15; Granberry Decl., ¶ 11-15. Additionally, Class Counsel are highly experienced in wage-and-hour litigation and class action cases. Aiwazian Decl., ¶ 7; Granberry Decl., ¶ 16. Class Counsel have committed and continue to commit significant financial and staffing resources to representation in this matter. Aiwazian Decl. ¶ 11-15. As such, appointment of Lawyers *for* Justice, PC, Lavi & Ebrahimian, LLP, and Law Office of Sahag Majarian II as Class Counsel is appropriate.

The Settlement establishes a Total Settlement Fund of $4,500,000, and provides for Class Counsel to apply for attorneys' fees in an amount of up to 35% of the Total Settlement Fund. Agreement, ¶ III.5. Class Counsel will file an appropriate motion or application in advance of the Final Approval Hearing pursuant to Rule 23(h), and submit supporting evidence and documents.

LAWYERS *for* JUSTICE, PC
410 West Arden Avenue, Suite 203
Glendale, California 91203

16

LAWYERS *for* JUSTICE, PC
410 West Arden Avenue, Suite 203
Glendale, California 91203

Under California and Ninth Circuit precedent, a court has discretion to determine attorneys' fees using either the lodestar method or the percentage-of-the-fund method.[8]  While often a 25% benchmark is observed by the Ninth Circuit, an upward or downward adjustment is warranted if "the percentage recovery would be […] too small […] in light of the hours devoted to the case or other relevant factors." *Six (6) Mexican Workers v. Ariz. Citrus Growers*, 904 F.2d 1301, 1311 (9th Cir. 1990); *Staton*, 327 F.3d at 968; *Vizcaino*, 290 F.3d at 1048. If a proposed class action settlement includes an award of attorneys' fees, courts must evaluate that fee award on a case-by-case basis, in the overall context of the settlement.[9] In California, attorneys' fees tend to be awarded above the 25% federal benchmark. *See Van Vranken*, 901 F. Supp. at 297 (holding that fee awards of 30-50% are more typical where the fund is less than $10 million); *Craft v. Cnty. of San Bernardino*, 624 F. Supp. 2d 1123, 1127 (C.D. Cal. 2008) (holding that attorneys' fees in cases where the fund is below $10 million are often more than 25%).  Moreover, California federal courts award fees in the 20% to 50% range.  *Clayton v. Knight Transp.*, 2013 WL 5877213, at *23 (E.D. Cal. Oct. 30, 2013).[10]

The goal is to award "reasonable compensation for creating a common fund."  *Paul, Johnson, Alston & Hunt v. Graulty*, 886 F.2d 268, 272 (9th Cir. 1989). In reviewing a fee award request, courts consider the following factors: (1) the results achieved; (2) whether there are

---

[8] It is appropriate to calculate and award attorneys' fees as a percentage of a monetary funds that has, by litigation, been preserved or recovered for the benefit of others. *Laffitte v. Robert Half Int'l, Inc.* 1 Cal.5th 480, 486 & 506 (2016); *Wershba v. Apple Computer, Inc.*, 91 Cal. App. 4th 224, 253 (2001); *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043 (9th Cir. 2002); *In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 942 (9th Cir. 2011). The percentage method is based on the amount of total recovery, as opposed to the total amount of claims made, and is well established in federal courts and the Ninth Circuit. *Boeing v. Van Gemert*, 444 U.S. 472, 478 (1980); *In re Hill*, 775 F.2d 1037 (9th Cir. 1985); *Williams v. MGM-Pathe Commc'n Co.*, 129 F.3d 1026 (9th Cir. 1997); *In re Agent Orange Prod. Liability Litig.*, 818 F.2d 226, 232 (2d Cir. 1987).

[9] *Knisley v. Network Assocs.*, 312 F.3d 1123, 1126 (9th Cir. 2002); *Vizcaino*, 290 F.3d at 1048; *Knight v. Red Door Salons, Inc.*, 2009 WL 248367, at *6 (N.D. Cal. Feb. 2, 2009).

[10] Cases in other districts usually award attorneys' fees in the 30-40% range in wage-and-hour class actions that result in recovery of a common fund under $10 million. *See Vasquez v. Coast Valley Roofing, Inc.*, 266 F.R.D. 482, 491-92 (E.D. Cal. 2010) (citing recent wage-and-hour class actions where district courts approved attorneys' fee awards ranging from 30-33%); *Singer v. Becton Dickinson and Co.*, 2010 WL 2196104, *8 (S.D. Cal. June 1, 2010) (approving attorneys' fees of one-third of the common fund and holding that the award was similar to awards in other wage-and-hour class actions where fees ranged from 30.3-40%); *Romero v. Producers Dairy Foods, Inc.*, 2007 WL 3492841 (E.D. Cal. Nov. 14, 2007) (recognizing that "fee awards in class actions average around one-third" of the settlement).

**PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL OF CLASS AND COLLECTIVE ACTION SETTLEMENT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**

benefits to the class beyond the immediate generation of a cash fund; (3) the risks of litigation; (4) the skill required of counsel and quality of the work performed; (5) the contingent nature of the fee and the foregoing by counsel of other work; and (6) the reactions of the class. *Vizcaino*, 290 F.3d at 1048-50; *In re Toyota Motor Corp.*, 2013 WL 3224585 (C.D. Cal. June 17, 2013). Of these factors, the most significant factor is the "degree of success obtained." *Hensley v. Eckerhart*, 461 U.S. 424, 436 (1983).

Here, the attorneys' fee award provided for by the Settlement is reasonable, particularly in light of the time and effort expended by Class Counsel. Class Counsel litigated this case for over 4 years, with the possibility of an unsuccessful outcome and no fee recovery of any kind. Aiwazian Decl., ¶¶ 11-15. The ongoing work has been demanding and ultimately successful in achieving a substantial settlement. Given the strengths and weaknesses of the claims and the risk and expense of further litigation, Class Counsel have achieved an excellent result on behalf of the Class Members and FLSA Members. Considering the amount of the fees requested, the work performed, and the risks incurred, the allocations for attorneys' fees and costs provided by the Settlement are reasonable and should be awarded. *See Vizcaino*, 290 F.3d at 1051.

## VI. CERTIFICATION OF THE PROPOSED CLASS IS APPROPRIATE UNDER RULE 23

Class certification under Rule 23(a) is appropriate where the plaintiff demonstrates the four requirements of Rule 23(a) (numerosity, commonality, typicality, and adequacy of representation), and one of the three requirements of Rule 23(b). *Valentino v. Carter-Wallace, Inc.*, 97 F.3d 1227, 1234 (9th Cir. 1996). The proposed Class meets all of these requirements.

### A. Numerosity

A class is sufficiently numerous if it is "so large that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). A reasonable estimate of the number of purported class members is sufficient to meet the numerosity requirement." *In re Badger Mountain Irr. Dist. Sec. Litig.*, 143 F.R.D. 693, 696 (W.D. Wash. 1992).

The proposed Class consists of approximately eight thousand two hundred eleven (8,211) individuals. Aiwazian Decl., ¶ 10.  The proposed Class is sufficiently numerous, and

18

**LAWYERS *for* JUSTICE, PC**
410 West Arden Avenue, Suite 203
Glendale, California 91203

LAWYERS *for* JUSTICE, PC
410 West Arden Avenue, Suite 203
Glendale, California 91203

1  joinder of all Class Members would be impractical. *See Mazza v. Am. Honda Motor Co.*, 254

2  F.R.D. 610, 617 (C.D. Cal. 2008), *rev'd on other grounds*, 666 F.581, 593 (9th Cir. 2012) ("As

3  a general rule, classes of forty or more are considered sufficiently numerous.").

### B.    Commonality

5      A settlement class has sufficient commonality "if there are questions of fact and law

6  which are common to the class." Fed. R. Civ. P. 23(a)(2). An affirmative showing of at least one

7  question of law or fact satisfies this requirement.[11] Commonality has been found to exists when

8  there is a common legal issue stemming from divergent factual predicates or a common nucleus

9  of facts leading to different legal remedies. *Hanlon*, 150 F.3d at 1019.

10      Courts generally find commonality where "the lawsuit challenges a system-wide practice

11  or policy that affects all of the putative class members[]" and divergent ways in which these

12  practices affect individual Class Members, if any, do not undermine the finding of

13  commonality.[12] Here, the Class Members seek remedies under wage-and-hour laws for

14  violations arising from common, uniform, and systematic practices which applied to all Class

15  Members during the Settled Period. *See* e.g., Aiwazian Decl., ¶¶ 12, 24-29; Beltran Decl., ¶ 3-

16  4; Martinez Decl., ¶ 3-4; Obese Cota Decl., ¶ 3-4; Solorio Decl., ¶ 3-4; and Rivera Decl., ¶ 3-4.

17  Accordingly, the commonality requirement is satisfied for settlement purposes.

### C.    Typicality

19      The typicality requirement is satisfied where "the cause of the injury is the same," as

20  here, and the injury claimed by the named plaintiffs are "similar" to that of unnamed class

21  members. *Armstrong*, 275 F.3d at 868-69. They need not be "identical." *Id.* at 869. Here,

22  Plaintiffs' claims are typical of those of the Class Members, though some factual differences

23  may exist among them, as the claims arise from the same events or course of conduct and are

24  based upon the same legal theories. Plaintiffs worked as non-exempt employees for Defendant.

25

26  [11] *Dukes v. Wal–Mart, Inc*., 564 U.S. 338, 350 & 359 (2011); *see also Hanlon*, 150 F.3d at 1019 ("All questions of fact and law need not be common to satisfy the rule.").

27  [12] *Armstrong v. Davis*, 275 F.3d 849, 868 (9th Cir. 2001), *abrogated on other grounds by Johnson v.*

28  *California*, 543 U.S. 499, 504–05 (2005); *Blackie v. Barrack*, 524 F.2d 891, 902 (9th Cir. 1975), *cert denied*, 429 U.S. 816 (1976).

**PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL OF CLASS AND COLLECTIVE ACTION SETTLEMENT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**

Beltran Decl., ¶ 2; Martinez Decl., ¶ 2; Obese Cota Decl., ¶ 2; Solorio Decl., ¶ 2; and Rivera Decl., ¶ 2. Given the structure of the Settlement, the Class satisfies the typicality requirement for settlement purposes as Plaintiffs' claims arise from the same factual basis and are based on the same legal theories as those applicable to all other Class Members. *Welmer v. Syntex*, 117 F.R.D. 641, 644 (N.D. Cal. 1987).

### D.    Adequacy of Representation

Rule 23(a)(4) requires that (1) class representatives fairly and adequately protect the interests of the class, and (2) class counsel be qualified and competent to conduct the litigation. *In re Mego Fin. Corp. Sec. Litig.,* 213 F.3d 454, 462 (9th Cir. 2000). The requirement "tends to merge with the commonality and typicality criteria of Rule 23(a)."[13] The inquiry turns on whether "the named plaintiffs and their counsel have any conflicts of interest with other class members" and "whether the named plaintiffs and their counsel [will] prosecute the action vigorously on behalf of the class." *Hanlon*, 150 F.3d at 1020.

Plaintiffs' interests align with those of other Class Members, as all of them were employed by Defendant within the State of California. Beltran Decl., ¶ 2; Martinez Decl., ¶ 2; Obese Cota Decl., ¶ 2; Solorio Decl., ¶ 2; and Rivera Decl., ¶ 2. Plaintiffs' claims are typical of those of Class Members, which are confined to a limited group of similarly situated employees during the Settled Period. Class Counsel are highly experienced in employment class action and complex wage-and-hour litigation, having handled many cases before and having been appointed Class Counsel in many other cases. Aiwazian Decl., ¶ 7; Granberry Decl., ¶ 16. Plaintiffs contend that Class Counsel's experience in litigating similar matters was integral to obtaining the Settlement.

### E.    Predominance and Superiority

The proposed Class meets the requirements of Rule 23(b)(3) for settlement purposes because (1) common questions predominate over questions that affect individual members; and (2) class resolution is superior to other available means of adjudication. When assessing

---

[13] *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 626 n.20 (1997); *see also Manual for Complex Litig., Fourth* § 21.132 ("a settlement class must be cohesive").

**PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL OF CLASS AND COLLECTIVE ACTION SETTLEMENT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**

predominance and superiority, a court may consider that the proposed class will be certified for settlement purposes only. *See Amchem Prods.,* 521 U.S. at 618-20. Where the matter is being settled, a showing of manageability at trial is unnecessary. *Id.* at 620. At this stage, the relevant inquiry is "whether the proposed classes are sufficiently cohesive to warrant adjudication by representation." *Id.* at 618-20, 623; *see also Hanlon*, 150 F.3d at 1022.

Here, the Class is sufficiently cohesive to warrant certification. For settlement purposes, common questions of fact and law affecting Class Members predominate over any questions that may affect only individual members. For example, Defendant's alleged failure to properly pay Class Members for all hours worked and provide compliant meal and rest periods are alleged to arise from Defendant's uniform policies, practices, and procedures. As such, the questions of fact and law relating to these issues predominate. *See* Aiwazian Decl., ¶¶ 23-27.

Moreover, a class resolution is superior to other available means for the fair and efficient adjudication of the controversy. *See Hanlon*, 150 F.3d at 1023. The superiority requirement involves a "comparative evaluation of alternative mechanism of dispute resolution." *Id.* Here, the alternative method of resolution is individual claims, subject to proof, for relatively small amounts of damages, which would be uneconomical for potential plaintiffs. *Id.* Therefore, a class resolution is superior to any other available methods.

## VII. CERTIFICATION OF THE FLSA COLLECTIVE IS APPROPRIATE

The FLSA permits collective actions where the allegedly aggrieved employees are "similarly situated." 29 U.S.C. § 216(b). Whether employees are similarly situated is judged in two stages: a preliminary or "notice stage" and then a more substantive stage at the close of discovery when the defendant brings a motion to decertify the class. *Nen Thio v. Genji, LLC,* 14 F.Supp.3d 1324, 1340 (N.D. Cal. 2014). Neither the FLSA, nor the Ninth Circuit, has defined the term "similarly situated" for purposes of certifying a collective action. *Nen Thio.*, 14 F.Supp.3d at 1340. However, courts have determined that "the requisite showing of similarity of claims under the FLSA is considerably less stringent than the requisite showing under Rule 23 of the Federal Rules of Civil Procedure." *Hill v. R+L Carriers, Inc.,* 690 F.Supp.2d 1001, 1009 (N.D. Cal. 2010); accord *Millan v. Cascade Water Servs., Inc.,* 310 F.R.D. 593, 607 (E.D.

21

LAWYERS *for* JUSTICE, PC
410 West Arden Avenue, Suite 203
Glendale, California 91203

LAWYERS *for* JUSTICE, PC
410 West Arden Avenue, Suite 203
Glendale, California 91203

Cal. 2015).

At the notice stage, plaintiffs can satisfy their burden to show that they are similarly situated by making substantial allegations that the "putative class members were together the victims of a single decision, policy, or plan. *Nen Thio.*, 14 F.Supp.3d at 1340. As discussed, *supra* section VI, Plaintiffs and other FLSA Members all claim to have suffered injury as a result of Defendant's uniform policies, practices, and procedures of allegedly failing to properly pay FLSA Members for all hours worked, including minimum and overtime wages. As such, Plaintiffs respectfully request that the Court conditionally certify the FLSA collective.

## VIII. ADEQUACY OF THE METHOD OF NOTICE

"Adequate notice is critical to court approval of a class settlement under Rule 23(e)." *Hanlon,* 150 F.3d at 1025. A class notice must be "the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Fed. R. Civ. P. 23(c)(2)(B). A class notice is adequate if it "generally describes the terms of the settlement in sufficient detail to alert those with adverse viewpoints to investigate and to come forward and be heard." *Churchill Vill. LLC v. Gen. Elec.*, 361 F.3d 566, 575 (9th Cir. 2004). The notice must also be "neutral and objective in tone, and should neither promote nor discourage the assertion of claims." *Schaefer v. Overland Express Family of Funds*, 169 F.R.D. 124, 131 (S.D. Cal. 1996).

Here, the proposed Notice Packet provides the best notice practicable and is adequate. It provides information on, *inter alia*, the nature of the matter, the definition of the Class and FLSA Member, the terms of the Settlement, information regarding the hybrid nature of the Action and the claims involved in the cases, the scope of the Released Class Claims and Released FLSA Claims, the binding effect of the Class Settlement and FLSA Settlement, the number of Workweeks credited to each Class Member and FLSA Member, and his or her estimated Non-FLSA Payment and FLSA Payment, the consequences of opting into the FLSA collective to participate in the FLSA Settlement and receive payment, and the allocations for Attorneys' Fees and Costs, Incentive Awards, and Settlement Administration Costs. The Notice Packet summarizes the proceedings and provides the date, time, and place of the Final Approval

22

1  Hearing, and all of this information is "clearly and concisely state[d] in plain, easily understood

2  language." Fed. R. Civ. P. 23(c)(2)(B).

3   All Class Members and FLSA Members can and will be identified by Defendant through

4  a review of its business records. After receiving the data from Defendant regarding each Class

5  Member and FLSA Member, the Settlement Administrator will mail a Notice Packet to each of

6  them in English and Spanish. Agreement, ¶¶ III.11-12.[14] Accordingly, the proposed Notice

7  Packet is adequate and is the best notice practicable under Rule 23(c)(2)(B).

8   The Notice Packet also fulfills the requirement of neutrality in class and collective action

9  notices. The Class Notice and FLSA Notice provide a brief, neutral explanation of the case from

10  the perspective of both Parties and recognizes that the Court has not yet granted final approval

11  of the Settlement.[15] The Notice Packet sets forth in an accurate and informative manner the

12  procedures and deadlines governing the submission of Requests for Exclusion, Notices of

13  Objections, and disputes regarding the number of Workweeks credited to Class Members and

14  FLSA Members. The proposed Notice Packet satisfies all due process requirements and

15  complies with the standards of fairness, completeness, and neutrality. Accordingly, the Court

16  should approve the proposed Notice Packet.

17  **IX.**   **APPOINTMENT OF SIMPLURIS, INC. AS THE ADMINISTRATOR**

18   The Parties have selected Simpluris, Inc. (i.e., Simpluris) as the Settlement

19  Administrator to handle the notice and administration of the Settlement. Simpluris will format,

20  print, translate, and mail the Notice Packet in English and Spanish to each Class Member and/or

21  FLSA Member; receive, review, and process Requests for Exclusion, Notices of Objection, and

22  written disputes with respect to Workweeks; calculate Non-FLSA Payments and FLSA

23  Payments; withhold applicable taxes and withholdings; prepare and transmit necessary tax

24  documentation and filings; and transmit all required payments. Agreement, ¶¶ III.10-14.

25

26  [14] *See Elsen v. Carlisle & Jacqueline*, 417 U.S. 156, 175-77 (1974) (Individual notice by mail "is clearly the 'best notice practicable' within the meaning of Rule 23(c)(2)" where "all class members [] can be identified with reasonable effort").

27  [15] *See Hoffmann-La Roche Inc. v. Sperling*, 493 U.S. 165, 174 (1989) ("[C]ourts must be scrupulous to respect judicial neutrality" in overseeing the class action notice process and "avoid even the appearance of judicial endorsement of the merits of the action[.]").

**LAWYERS** *for* **JUSTICE, PC**
410 West Arden Avenue, Suite 203
Glendale, California 91203

1   Simpluris will also handle inquiries from Class Members regarding the Settlement, and perform

2   any other usual and customary duties for administering a class and collective action settlement.

3   *Id*.

4         Settlement Administration Costs are currently estimated to be $58,000, and will be paid

5   out of the Total Settlement Fund. Plaintiffs respectfully request that the Court appoint Simpluris

6   as the Settlement Administrator and direct distribution of the Notice Packet in the manner, and

7   based on the proposed deadlines, set forth in the Settlement Agreement and Section X, below.

8   **X.     DEADLINES FOR NOTICE AND ADMINISTRATION**

9         The Court is respectfully requested to approve the proposed deadlines for the notice and

10  settlement administration process. Within thirty (30) calendar days following preliminary

11  approval of the Settlement, Defendant will provide Simpluris with a complete list from its

12  records, which includes each Class Member and FLSA Member's full name, most recent mailing

13  address, Social Security number, employee identification number, telephone number, dates of

14  employment in a Covered Position, and indication of which Work Location(s) they work and/or

15  worked out in a Covered Position ("Class List"). *Id.*, ¶ II.5.  Within ten (10) calendar days of

16  receipt of the Class List, Simpluris will send a Notice Packet in English and Spanish to each

17  Class Member and FLSA Member. *Id.*, ¶ III.12.  Prior to mailing the Notice Packets, Simpluris

18  will attempt to locate Class Members' updated addresses by a search of the National Change of

19  Address Database or any other similar service available. *Id.*, ¶ III.13.  If a Notice Packet is

20  returned as undeliverable, Simpluris will promptly re-mail it to a forwarding address, if

21  provided, or to an updated address obtained from a skip-trace search. *Id*.

22        Requests for Exclusion and disputes regarding Workweeks, must be mailed or faxed to

23  Simpluris, post-marked or fax-stamped by the Response Deadline or, in the event of a re-mailed

24  Notice Packet, within fifteen (15) calendar days from the original Response Deadline. *Id.*, ¶

25  III.15, 16 & 20.  Notices of Objection must be mailed or faxed to the Settlement Administrator

26  and filed with the Court by the Response Deadline. *Id*.  If a Class Member submits a defective

27  Request for Exclusion, the Settlement Administrator will mail the Class Member a cure letter

28  within three (3) business days of receipt to advise the Class Member of the defect. *Id.*, ¶ III.17.

LAWYERS *for* JUSTICE, PC
410 West Arden Avenue, Suite 203
Glendale, California 91203

24

**LAWYERS** *for* **JUSTICE, PC**
410 West Arden Avenue, Suite 203
Glendale, California 91203

1  The Class Member will then have until the Response Deadline to fax or mail a corrected Request

2  for Exclusion. *Id.*

3       All settlement checks issued to Class Members and FLSA Members will remain valid

4  and negotiable for one hundred and eighty (180) calendar days from the date of their issuance.

5  Thereafter, the funds associated with any such checks that remain uncashed will be cancelled

6  and the funds associated with such checks will be transmitted to the United Way, a non-profit

7  organization, in accordance with the Settlement. *Id.*, ¶ III.23.

8  ## XI.    <u>CONCLUSION</u>

9       For the foregoing reasons, Plaintiffs respectfully requests that the Court grant

10  preliminary approval of the Settlement; certify the proposed Class and approve the FLSA

11  collective for settlement purposes; appoint Edwin Aiwazian, Arby Aiwazian, and Joanna Ghosh

12  of Lawyers *for* Justice, PC, Joseph Lavi and Vincent Granberry of Lavi and Ebrahimian, LLP,

13  and Sahag Majarian, II of Law Offices of Sahag Majarian, II as Class Counsel; preliminarily

14  approve the allocations for an award of Attorneys' Fees and Costs, Incentive Awards, and

15  Settlement Administration Costs; appoint Plaintiffs as the Class Representatives; appoint

16  Simpluris, Ins. as Settlement Administrator; approve and direct the mailing of the Notice Packet

17  to the Class Members and FLSA Members; and schedule a Final Approval Hearing in

18  approximately six months after the hearing on the Court grants preliminary approval.

19  Dated:  April 13, 2020                    **LAWYERS** *for* **JUSTICE, PC**

20

21                        By:     _/s/ Edwin Aiwazian_____
                                  Edwin Aiwazian
22                                *Attorneys for* Plaintiffs Thomas Beltran,
                                  Mario Martinez, and Juan Rivera
23

24

25

26

27

28

**PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL OF CLASS AND
COLLECTIVE ACTION SETTLEMENT; MEMORANDUM OF POINTS
AND AUTHORITIES IN SUPPORT THEREOF**