1  Edwin Aiwazian (SBN 232943)
   Arby Aiwazian (SBN 269827)
2  Joanna Ghosh (SBN 272479)
   **LAWYER *for* JUSTICE, PC**
3  410 West Arden Avenue, Suite 203
   Glendale, California 91203
4  Tel: (818) 265-1020 / Fax: (818) 265-1021

5
   *Attorneys for* Plaintiffs Thomas Beltran, Mario Martinez, and Juan Rivera
6
7  [Additional Counsel Listed on the Next Page]

8          **UNITED STATES DISTRICT COURT**

9          **EASTERN DISTRICT OF CALIFORNIA**

10

11 THOMAS BELTRAN; MARIO MARTINEZ;          Case No.: 1:18-cv-01676-NONE-SAB
   MARIO CLAUDIA OBESO COTA;
12 individually, and on behalf of other members of   Honorable Stanley A. Boone
   the general public similarly situated; JUAN       Courtroom 9
13 RIVERA; MARIANA RAMIREZ;
   ALEXANDER SOLORIO; individually, and on   **CLASS ACTION**
14 behalf of other members of the general public
   similarly situated on behalf of other aggrieved   **DECLARATION OF EDWIN**
15 employees pursuant to the California Private       **AIWAZIAN IN SUPPORT OF**
   Attorneys General Act;                            **PLAINTIFFS' MOTION FOR**
16                                                    **PRELIMINARY APPROVAL OF**
                Plaintiffs,                           **CLASS AND COLLECTIVE ACTION**
17                                                    **SETTLEMENT**
        vs.
18                                                    [Notice of Motion and Motion for
   OLAM SPICES AND VEGETABLES, INC., an   Preliminary Approval of Class and
19 unknown business entity; and DOES 1 through   Collective Action Settlement; Declaration of
   100, inclusive,                                    Proposed Class Counsel (Vincent
20                                                    Granberry); Declarations of Proposed Class
                Defendants.                           Representatives (Thomas Beltran, Mario
21                                                    Martinez, Mario Claudia Obeso Cota, Juan
                                                      Rivera, and Alexander Solorio); and
22                                                    [Proposed] Order filed concurrently
                                                      herewith]
23
                                                      Date:        June 10, 2020
24                                                    Time:        10:00 a.m.
                                                      Courtroom:   9
25
                                                      Complaint Filed:   July 5, 2015
26                                                    FAC Filed:         November 10, 2015
                                                      SAC Filed:         April 25, 2016
27                                                    TAC Filed:         April 11, 2018
                                                      Trial Date:        None Set
28

---

**DECLARATION OF EDWIN AIWAZIAN IN SUPPORT OF PLAINTIFFS' MOTION FOR
PRELIMINARY APPROVAL OF CLASS AND COLLECTIVE ACTION SETTLEMENT**

**LAWYERS *for* JUSTICE, PC**
410 West Arden Avenue, Suite 203
Glendale, California 91203

1  Joseph Lavi (SBN 209776)
   Vincent C. Granberry (SBN 276483)
2  **LAVI & EBRAHIMIAN, LLP**
   8889 Olympic Blvd., Suite 200
3  Beverly Hills, California 90211
   Tel: (310) 432-000 / Fax: (310) 432-0001
4
5  Sahag Majarian II (SBN 146621)
   **LAW OFFICE OF SAHAG MAJARIAN II**
6  18250 Ventura Boulevard
   Tarzana, California 91356
7  Tel: (818) 609-0807 / Fax: (818) 609-0892
8  *Attorneys for* Plaintiffs Maria Claudia Obese Cota and Alexander Solorio
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**LAWYERS *for* JUSTICE, PC**
410 West Arden Avenue, Suite 203
Glendale, California 91203

1

**DECLARATION OF EDWIN AIWAZIAN IN SUPPORT OF PLAINTIFFS' MOTION FOR
PRELIMINARY APPROVAL OF CLASS AND COLLECTIVE ACTION SETTLEMENT**

**LAWYERS *for* JUSTICE, PC**
410 West Arden Avenue, Suite 203
Glendale, California 91203

1

## DECLARATION OF EDWIN AIWAZIAN

2     I, **Edwin Aiwazian**, hereby declare as follows:

3     1.    I am an attorney duly licensed to practice law before all courts of the State of

4 California and all United States District Courts in the State of California.

5 I am a member of Lawyers *for* Justice, PC, attorneys of record for Plaintiffs Thomas Beltran,

6 Mario Martinez, and Juan Rivera ("Plaintiffs") in the above-captioned action.  The facts set forth

7 in this declaration are within my personal knowledge or based on information and belief and, if

8 called as a witness, I could and would competently testify thereto:

9

## EDUCATION

10     2.    In May of 2004, I graduated from *Pepperdine University School of Law* with a

11 Juris Doctor degree.  I have extensive formal training in dispute resolution and negotiation from

12 the Straus Institute for Dispute Resolution as part of its Masters in Dispute Resolution degree

13 program.  In addition, I have previously served as a *pro bono* mediator for the Los Angeles

14 County Superior Court.  In October of 2000, I obtained a Litigation Paralegal Certificate from

15 the *UCLA Extension Program*.  During the summer of 2000, I studied Legal Writing at

16 *Harvard University*.   In April of 1999, I obtained a Bachelor of Arts degree in Communication

17 with a concentration in Natural Sciences from *Pepperdine University*.

18

## JUDICIAL EXTERNSHIPS

19     3.    From approximately September 2002 to approximately December 2002, I served

20 as a Judicial Extern to the Honorable Kim McLane Wardlaw of the *United States Court of*

21 *Appeals for the Ninth Circuit*.  From approximately June 2002 to approximately August 2002, I

22 served as a Judicial Extern to the Honorable Earl Johnson, Jr. of the *California Court of Appeal*

23 *for the Second Appellate District*.

24

## LITIGATION AND CLASS ACTION EXPERIENCE

25     4.    In December of 2004, I obtained a license to practice law from the California State

26 Bar.  From approximately December 2004 to approximately August 2008, I was employed by

27 *Girardi & Keese*.

28

1

5. At *Girardi & Keese*, my practice focused on class actions and other complex cases involving toxic torts and products liability. In addition, I gained substantial experience on cases involving insurance bad faith, premises liability, and medical negligence. While employed by *Girardi & Keese*, I argued approximately 100 motions, took or defended approximately 150 depositions, and prepared dozens of expert witnesses for deposition or trial.

6. Since its inception in or around October of 2008, our firm has almost exclusively focused on the prosecution of consumer and employment class actions, involving wage-and-hour claims, race discrimination, unfair business practices or consumer fraud. Currently, we are the attorneys of record in over a dozen employment-related putative class actions in both federal and state courts in the State of California. Our firm has successfully litigated cases involving the executive, administrative, and other overtime exemptions to the State of California and federal minimum wage and overtime compensation requirements. During this relatively short time, in association with other law firms, we have recovered millions of dollars on behalf of thousands of individuals in California.

### EXAMPLES OF CLASS ACTION RESULTS

7. What follows are just a few examples of the type of results we have achieved on behalf of our clients:

a) Our firm represented the plaintiffs in a wage-and-hour class and representative action against a major property management company involving allegations of misclassification of various "manager" positions. On September 20, 2010, the court granted final approval of the class and representative action settlement. The Los Angeles County Superior Court Case Number is BC400414.

b) Our firm represented the plaintiffs in a wage-and-hour class action against a national retailer of household items involving allegations of misclassification of the "Assistant Store Manager" position. On October 28, 2010, the court granted final approval of the class action settlement. The Los Angeles County Superior Court Case Number is BC413498.

///

///

**DECLARATION OF EDWIN AIWAZIAN IN SUPPORT OF PLAINTIFFS' MOTION FOR PRELIMINARY APPROVAL OF CLASS AND COLLECTIVE ACTION SETTLEMENT**

*(margin)* **LAWYERS *for* JUSTICE, PC** 410 West Arden Avenue, Suite 203 Glendale, California 91203

LAWYERS *for* JUSTICE, PC
410 West Arden Avenue, Suite 203
Glendale, California 91203

c)      Our firm represented the plaintiffs in a wage-and-hour class action against a national property management company involving allegations of misclassification of the "Property Manager" position.  On May 23, 2012, the court granted final approval of the class action settlement.  The Los Angeles County Superior Court Case Number is BC430918.

d)      Our firm represented the plaintiffs in a wage-and-hour class action involving allegations of misclassification of the "Store Manager" position.  On June 10, 2011, the court granted plaintiffs' motion for class certification.  On August 26, 2013, the court granted final approval of the class action settlement.  The Los Angeles County Superior Court Case Number is BC424012.

e)      Our firm represented the plaintiffs in a wage-and-hour class and representative action against a bank, involving allegations of misclassification of the "Assistant Branch Manager" position.  On August 27, 2013, the court granted final approval of the class and representative action settlement.  The Kern County Superior Court Case Number is S-1500-CV-273194-LHB.

f)      Our firm represented the plaintiffs in a wage-and-hour class and representative action against a national wholesale distributor of plumbing and builder supplies, involving allegations of misclassification of multiple salaried "manager" positions.  On May 22, 2014, the court granted final approval of the class and representative action settlement.  The Sacramento County Superior Court Case Number is 34-2012-00136285.

g)      Our firm represented the plaintiff in a wage-and-hour class action involving allegations of misclassification of the "Operations Manager" position.  On September 16, 2014, the court granted plaintiff's motion for class certification.  The Los Angeles County Superior Court Case Number is BC478769.

h)      Our firm represented the plaintiff in a wage-and-hour class and representative action against a national retailer of household items, on behalf of hourly-paid or non-exempt employees.  On May 27, 2015, the court granted final approval of the class and representative action settlement.  The San Francisco County Superior Court Case Number is CGC-13-532344.

DECLARATION OF EDWIN AIWAZIAN IN SUPPORT OF PLAINTIFFS' MOTION FOR
PRELIMINARY APPROVAL OF CLASS AND COLLECTIVE ACTION SETTLEMENT

LAWYERS *for* JUSTICE, PC
410 West Arden Avenue, Suite 203
Glendale, California 91203

i)      Our firm represented the plaintiff in a wage-and-hour class action involving allegations of misclassification of the salaried residential "Property Manager" position.  On September 17, 2015, the court granted plaintiff's motion for class certification. The Los Angeles County Superior Court Case Number is BC474784.

j)      Our firm, in association with other co-counsel, represented the plaintiffs in a wage-and-hour class and representative action against a national retailer of upscale hardware and home furnishings, on behalf of non-exempt employees.  On April 28, 2016, the court granted final approval of the class and representative action settlement.  The Los Angeles County Superior Court Case Number is JCCP4794.

k)      Our firm, in association with other co-counsel, represented the plaintiffs in a wage-and-hour class and representative action against a national retailer of apparel and fashion accessories, on behalf of non-exempt employees.  On August 5, 2016, the court granted final approval of the class and representative action settlement.  The Los Angeles County Superior Court Case Number is BC488069.

l)      Our firm, in association with other co-counsel, represented the plaintiffs in a wage-and-hour class action against a national retailer of apparel, accessories, and home products, involving allegations of misclassification of the "Department Manager" position.  On August 12, 2016, the court granted the plaintiffs' motion for class certification in part and certified a class.  The Alameda County Superior Court Case Number is RG13680477.

m)      Our firm represented the plaintiff in a representative action under the Private Attorneys General Act, against a real estate and property management company, on behalf of non-exempt employees. On November 4, 2016, the court granted approval of the PAGA settlement. The Orange County Superior Court Case Number is 30-2015-00775439-CU-OE-CXC.

n)      Our firm, in association with other co-counsel, represented the plaintiffs in a wage-and-hour class and representative action against a full-service bank, on behalf of non-exempt employees. On November 18, 2016, the court granted final approval of the class and representative action settlement. The San Francisco County Superior Court Case Number is

4

CJC-13-004839.

o)     Our firm represented the plaintiffs in a wage-and-hour class and representative action against a foodservice distributor, on behalf of non-exempt employees. On January 26, 2017, the court granted final approval of the class and representative action settlement. The San Bernardino County Superior Court Case Number is CIVDS1507260.

p)     Our firm, on behalf of the plaintiff and respondent in a PAGA representative action, successfully opposed in the trial court, and briefed and argued an appeal with respect to the employer's motion to compel arbitration, which resulted in a published opinion by the California Court of Appeal in favor of employees.  *Roberto Betancourt v. Prudential Overall Supply*, 9 Cal.App.5th 439 (Cal. App. 4th Dist., Mar. 7, 2017), review denied, cert. denied (U.S. Supreme Court Docket No. 17-254).

q)     Our firm, in association with other co-counsel, represented the plaintiffs in a wage-and-hour class and representative action against a manufacturer of food service industry supplies on behalf of non-exempt employees. On April 14, 2017, the court granted final approval of the class and representative action settlement. The Orange County Superior Court Case Number is 30-2015-00810013-CU-OE-CXC.

r)     Our firm represented the plaintiff in a wage-and-hour class and representative action against a property management company, on behalf of non-exempt employees. On June 14, 2017, the court granted final approval of the class and representative action settlement. The Los Angeles County Superior Court Case Number is BC586234.

s)     Our firm represented the plaintiff in a wage-and-hour class and representative action against a food company on behalf of non-exempt employees. On June 30, 2017, the court granted final approval of the class and representative action settlement. The Sacramento County Superior Court Case Number is 34-2015-00175871.

t)     Our firm represented the plaintiffs in a wage-and-hour class and representative action against a chocolate company on behalf of non-exempt employees. On July 19, 2017, the court granted final approval of a class and representative action settlement. The Alameda County Superior Court Case Number is RG15764300.

LAWYERS *for* JUSTICE, PC
410 West Arden Avenue, Suite 203
Glendale, California 91203

**LAWYERS *for* JUSTICE, PC**
410 West Arden Avenue, Suite 203
Glendale, California 91203

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

u)      Our firm represented the plaintiffs in a wage-and-hour class and representative action against a manufacturer of plastic containers on behalf of non-exempt employees. On October 31, 2017, the court granted final approval of the class and representative action settlement. The Los Angeles County Superior Court Case Number is BC577233.

v)      Our firm, in association with other co-counsel, represented the plaintiffs in a wage-and-hour class and representative action against a bank on behalf of non-exempt employees. On December 11, 2017, the court entered an order granting final approval of class and representative action settlement. The Los Angeles County Superior Court Case Number is BC569646.

w)      Our firm, in association with co-counsel, represented the plaintiffs in a wage-and-hour class and representative action against a property management company on behalf of hourly-paid and non-exempt employees.  On January 4, 2018, the court entered an order granting final approval of the class and representative action settlement. The Los Angeles County Superior Court Case Number is JCCP4819.

x)      Our firm, in association with other co-counsel, represented the plaintiffs in a wage-and-hour class and representative action against a company that operates business centers. On February 15, 2018, the court granted final approval of the class and representative action settlement. The Los Angeles County Superior Court Case Number is BC498401.

y)      Our firm, in association with co-counsel, represented the plaintiff in a wage-and-hour class action against a container manufacturer, on behalf of non-exempt employees. On October 15, 2018, the court granted the plaintiff's motion for class certification. The Tulare County Superior Court Case Number is VCU264528.

z)      Our firm, in association with other co-counsel, represented the plaintiff in a representative action under the Private Attorneys General Act, against a global provider of products and services to the energy industry, on behalf of hourly-paid and non-exempt employees.  On November 19, 2018, the Court granted approval of the settlement. The Kern County Superior Court Case Number is S-1500-CV-280215-SDC.

///

6

LAWYERS *for* JUSTICE, PC
410 West Arden Avenue, Suite 203
Glendale, California 91203

aa)     Our firm, in association with other counsel, on behalf of the plaintiff and respondent in a PAGA representative action, successfully opposed in the trial court, and briefed and argued an appeal with respect to the employer's motion to compel arbitration, resulting in a notable decision from the California Supreme Court clarifying the law and finding, in part, that employer arbitration agreements are unenforceable where they block a PAGA claim from proceeding, *ZB, N.A. v. Superior Court*, 8 Cal.5th175 (2019).

bb)     Our firm, in association with other co-counsel, represents the plaintiffs in a wage-and-hour class and representative action against a bank on behalf of non-exempt employees.   On September 27, 2019, the court granted the plaintiffs' motion for class certification in part and certified a class.  The Alameda County Superior Court Case Number is JCCP4921.

cc)     Our firm, in association with other co-counsel, represented the plaintiffs in a wage-and-hour class and representative action against a national retailer of apparel and fashion accessories, on behalf of non-exempt employees.  On October 9, 2019, the court granted the plaintiffs' motion for class certification in part and certified a class, the court certified a class.  The Sacramento County Superior Court Case Number is 34-2015-00175330-CU-OE-GDS.

dd)     Our firm represented the plaintiff in a wage-and-hour class and PAGA representative action against a medical equipment supplier on behalf of non-exempt employees. On February 13, 2020, the court granted the plaintiff's motion for class certification and certified a class.  The San Bernardino County Superior Court Case Number is CIVDS1505744.

ee)     Our firm, in association with other counsel, represented the plaintiff in a wage-and-hour class and PAGA representative action against a large national drug testing laboratory on behalf of non-exempt employees.  On February 21, 2020, the court granted the plaintiff's motion for class certification and certified a class.  The San Diego County Superior Court Case Number is 37-2018-00019611-CU-OE-CTL.

///

///

DECLARATION OF EDWIN AIWAZIAN IN SUPPORT OF PLAINTIFFS' MOTION FOR
PRELIMINARY APPROVAL OF CLASS AND COLLECTIVE ACTION SETTLEMENT

ff) Our firm represented the plaintiffs in a wage-and-hour class and representative action against a national retailer of sportswear, footwear, and camping equipment on behalf of non-exempt employees. On March 16, 2020, the court granted in part the plaintiff's motion for class certification and certified a class. The Riverside County Superior Court Case Number is RICJCCP4930.

## PRELIMINARY APPROVAL

8.     Attached hereto as "**EXHIBIT 1**" is a true and correct copy of the fully executed Third Amended Class Action and Collective Action Settlement and Release ("Settlement," "Agreement," or "Settlement Agreement") entered into by and between Plaintiffs Thomas Beltran, Mario Martinez, Mario Claudia Obeso Cota, Juan Rivera, and Alexander Solorio ("Plaintiffs") and Defendant Olam West Coast, Inc., erroneously sued as "Olam Spices and Vegetables, Inc." ("Defendant"). The parties and their counsel have approved the proposed Notice of Class Action Settlement ("Class Notice"), Request for Exclusion Form, Notice of FLSA Settlement ("FLSA Settlement"), and Mailing Envelope. These documents are attached to the Settlement Agreement as "Exhibit A," "Exhibit B," "Exhibit C," and "Exhibit D," respectively.

9.     The effectiveness of Lawyers *for* Justice, PC, Lavi and Ebrahimian, LLP, and Law Offices of Sahag Majarian, II (collectively, "Class Counsel") in prosecuting the cases has translated into tangible monetary benefits for the Class Members and FLSA Members in the following respects: (1) Class Members and FLSA Members recover over a reasonably short period of time as opposed to waiting additional years for the same, or possibly, no recovery at all; (2) a guaranteed result that compares favorably with other similar settlements of this type given the strengths and weaknesses of the cases, and (3) significant savings in litigation costs and expenses that would have only increased significantly had the cases progressed through certification, trial, and/or appeals.

10.     Based on information provided by Defendant, as of April 13, 2020 the Class is estimated to consist of approximately eight thousand two hundred eleven (8,211) individuals.

///

**DECLARATION OF EDWIN AIWAZIAN IN SUPPORT OF PLAINTIFFS' MOTION FOR PRELIMINARY APPROVAL OF CLASS AND COLLECTIVE ACTION SETTLEMENT**

**LAWYERS *for* JUSTICE, PC**
410 West Arden Avenue, Suite 203
Glendale, California 91203

11.     This matter involves litigation in four (4) separate cases: *Thomas Beltran, et al. v. Olam West Coast, Inc*., Fresno County Superior Court Case No. 15CECG02993 ("*Beltran* Action" or "Action"); *Maria Claudia Obeso Cota v. Olam West Coast, Inc*., Fresno County Superior Court Case No. 16CECG00081; *Alexander Solorio v. Olam West Coast, Inc.,* Fresno County Superior Court, Case No. 16CECG00513; and *Juan Rivera, et al. v. Olam West Coast, Inc.*, Santa Clara County Superior Court Case No. 16CV300758 (together, the "Actions"). I have been actively engaged in this litigation since the Action was commenced on July 7, 2015, as have several other members of Lawyers *for* Justice, PC. The ongoing work has been extensive, demanding, and ultimately successful in achieving a substantial settlement resolution. Since commencing the cases Class Counsel have investigated and researched the facts and circumstances underlying the pertinent issues and applicable law.  This required thorough discussions and interviews with Plaintiffs and multiple Class Members and FLSA Members, and research into the various legal issues in the cases, namely, the current state of the law as it applied to class and collective certification, off-the-clock theory, meal and rest periods, wage-and-hour enforcement, representative Private Attorneys General Act ("PAGA") claims, Plaintiffs' allegations, and Defendant's potential defenses.  Based on Class Counsel's research and investigations, Class Counsel determined that Plaintiffs' claims were well-suited for adjudication on a class-wide and representative basis owing to what appeared to be a common course of conduct affecting a similarly-situated group of non-exempt employees of Defendant within the State of California.

12.     Over the course of this litigation, Plaintiffs and Defendant engaged in extensive settlement negotiations to try to resolve the Actions.  These efforts included participating in two (2) full-day private mediation sessions, conducted by the Honorable Edward Infante (Ret.), a retired federal magistrate judge who is highly experienced in mediating complex wage-and-hour matters, and extensive settlement negotiations thereafter.  After engaging in extensive formal and informal discovery and investigation into the facts of the cases and extensive settlement negotiations, the parties ultimately reached a proposed settlement on behalf of a proposed class and FLSA collective of all current and former employees who Defendant classified as non-

9

LAWYERS *for* JUSTICE, PC
410 West Arden Avenue, Suite 203
Glendale, California 91203

LAWYERS *for* JUSTICE, PC
410 West Arden Avenue, Suite 203
Glendale, California 91203

exempt and worked in that capacity at Defendant's Fresno, Firebaugh, Hanford, Lemoore, Gilroy and Williams facilities in California at any time during the period from July 7, 2011 to the date on which this Court grants preliminary approval of the Settlement.  On June 1, 2017, Plaintiffs filed a motion for preliminary approval of a settlement in the *Beltran* Action, which was denied without prejudice by Fresno County Superior Court. On June 27, 2018, Plaintiffs filed a renewed motion for preliminary approval of a settlement in the *Beltran* Action, which was denied without prejudice on October 25, 2018. The parties subsequently engaged in additional extensive negotiations regarding settlement of the Actions and reached a settlement to address points of inquiry raised by Fresno County Superior Court. The changes included, but were not limited to, fleshing out the FLSA Settlement and Class Settlement.

13.     Prior to reaching the settlement, the parties exchanged information and discussed various aspects of the cases, including but not limited to, the risks and delays of further litigation, the risks to the parties of proceeding with class and collective certification and/or representative adjudication, the law relating to off-the-clock theory and meal and rest periods, PAGA representative claims, FLSA claims, the evidence produced and analyzed, and the possibility of appeals, among other things.  The parties used the pre-settlement time period to investigate the veracity, strength, and scope of the claims. Class Counsel interviewed Plaintiffs, as well as other Class Members, FLSA Members, and percipient witnesses in order to obtain information about the cases, including, *inter alia*, information about the nature of the work that Class Members and FLSA Members performed and the hours that they worked while employed by Defendant. The information obtained assisted Class Counsel in calculating the value of the claims and the monetary recovery that could potentially be awarded to the Class Members and FLSA Members, and also permitted a full and complete understanding of Defendant's employment policies, practices, and procedures.  This information proved invaluable in negotiating the Settlement with Defendant and reaching the amount that fairly and adequately compensates the Class Members and FLSA Members for their claims.

///

///

10

**DECLARATION OF EDWIN AIWAZIAN IN SUPPORT OF PLAINTIFFS' MOTION FOR PRELIMINARY APPROVAL OF CLASS AND COLLECTIVE ACTION SETTLEMENT**

14. Prior to reaching the Settlement, the parties conducted extensive formal and informal discovery and investigation into the facts of the cases. For example, Class Counsel prepared for and took three (3) depositions of Defendant's Person Most Knowledgeable ("PMK") designees on February 24, 2017 and February 27, 2017 and prepared for and defended the depositions of Plaintiffs Beltran and Martinez on February 28, 2018. Class Counsel also engaged in *Belaire-West* notice administration (by which Class Counsel obtained the contact information of Class Members who did not opt out of the disclosure of their information), interviewed many Class Members, and obtained and reviewed the employment records of over half a dozen Class Members and FLSA Members. Both sides propounded and responded to multiple sets of written discovery requests in various forms. Class Counsel reviewed thousands of pages of data and documents, including but not limited to: Plaintiffs' and multiple other Class Members' employment records, over ten thousand pages of employee time detail records, almost fifteen thousand pages of employee payroll records, various orientation materials (such as the Orientation Training Agendas for 2011 and 2012, the 2012 Employee Orientation Checklist, the Orientation Employee Guidelines for 2011 and 2012, and the Orientation Handbook for Production Hourly Employees for 2015), Defendant's Payroll Action Form, Defendant's Second Meal Period Waiver agreement, Defendant's policies and practices (such as the Standards of Conduct, Good Manufacturing Practices, Timekeeping Record Requirements, and Modest Plant Rules), various agreements and acknowledgements (such as the Agreement Acknowledgement of Receipt of Employee Handbook, Acknowledgement of Receipt of Company Policies, Personal Protective Equipment Policy Acknowledgment, and 2009 Conagra Foods/Code of Conduct Acknowledgement), fourteen versions/iterations of employee handbooks (such as Employee Handbooks dated September 2010, September 2012, 2013, 2014, 2015, and July 1, 2015; Employee Handbook for full time regular employees dated May 2009; Firebaugh, California Employee Handbook for seasonal employees dated March 2012 and April 2012; Gilroy, California Employee Handbook dated 2016; Firebaugh, California Employee Handbook dated 2013; Williams Employee Handbook dated 2016; Hanford Employee Handbook dated 2015 and 2016), and multiple collective bargaining agreements (such as the Collective

11

Bargaining Agreements with Local Union 890 for the time periods of April 1, 2017 to March 31, 2012 and April 1, 2012 to March 31, 2016 and the Collective Bargaining Agreement with UFCW Local 5 for the time period from July 11, 2011 to July 6, 2014.  The parties also engaged in extensive motion practice, researched applicable law, developed damages/valuation models in preparation for mediation, and prepared for and attended court proceedings, two (2) mediation sessions, and settlement negotiations. Counsel for the parties also met and conferred on numerous occasions to discuss issues relating to the pleadings, venue, jurisdiction, motion practice, discovery, and the production of various documents and data prior to the mediations and engaged in extensive settlement negotiations over several months to try and resolve this matter.

15.     Counsel for the parties have further invested time researching applicable law, which is constantly evolving as it relates to jurisdiction, class and collective actions, representative adjudication, off-the-clock theory, meal and rest periods, wage-and-hour enforcement, FLSA claims, PAGA claims, Plaintiffs' claims, Defendant's defenses, as well as facts and evidence produced and analyzed.

16.     During all settlement discussions, the parties conducted their negotiations at arm's length in an adversarial position.  The Settlement that has been reached is a fair, reasonable, and adequate resolution of this matter.

17.     Subject to approval by the Court, the parties have reached a settlement for a Total Settlement Fund of Four Million Five Hundred Thousand Dollars ($4,500,000), on behalf of current and former employees who Defendant classified as non-exempt and worked in that capacity at Defendant's Fresno, Firebaugh, Hanford, Lemoore, Gilroy and Williams facilities in California at any time since July 7, 2011. The Net Settlement Fund will be used to pay Non-FLSA Payments to Participating Class Members and FLSA Payments to FLSA Members.  The entire Net Settlement Fund will be distributed in accordance with the Settlement, with no reversion to Defendant.   Seventy-five percent (75%) of the Net Settlement ("Net Class Settlement Fund") amount will be paid to Participating Class Members on a *pro rata* basis, based on each Participating Class Member's number of Workweeks. The remaining twenty-five

LAWYERS *for* JUSTICE, PC
410 West Arden Avenue, Suite 203
Glendale, California 91203

DECLARATION OF EDWIN AIWAZIAN IN SUPPORT OF PLAINTIFFS' MOTION FOR
PRELIMINARY APPROVAL OF CLASS AND COLLECTIVE ACTION SETTLEMENT

**LAWYERS** *for* **JUSTICE, PC**
410 West Arden Avenue, Suite 203
Glendale, California 91203

percent (25%) of the Net Settlement Fund ("Net FLSA Settlement Fund") will be distributed to FLSA Members on a *pro rata* basis, based on each FLSA Member's Workweeks.

18.     Under the terms of the Settlement, the Net Settlement Fund refers to the amount remaining after deducting the following amounts from the Total Settlement Fund: (1) Incentive Awards in a combined total of up to Thirty-Three Thousand Five Hundred Dollars ($33,500) ($7,500 to Plaintiffs Beltran, Martinez, Obeso Cota, and Solorio and $3,500 to Plaintiff Rivera); (2) attorneys' fees not to exceed thirty-five percent (35%) of the Total Settlement Fund (i.e., $1,575,000) and reimbursement of litigation costs and expenses in an amount of up to Sixty-Five Thousand Dollars ($65,000) to Class Counsel ("Attorneys' Fees and Costs"); (3) One Hundred Twelve Thousand Five Hundred Dollars ($112,500) to the California Labor and Workforce Development Agency ("LWDA") for its portion of civil penalties under the PAGA (i.e., 75% of $150,000); (4) Settlement Administration Costs, which are estimated to be Fifty-Eight Thousand Dollars ($58,000);  and (5) employer's share of payroll taxes and contributions with respect to the Wage Portion ("Employer Taxes"), which is estimated to be between $117,000 and $168,000.  Assuming that the full amounts allocated by the Settlement are awarded by the Court, the Net Settlement Fund that will be available for distribution to the Participating Class Members and FLSA Members is currently estimated to be Two Million Six Hundred Fifty-Six Thousand Dollars ($2,656,000) before reduction for Employer Taxes.  The Net Class Settlement Fund (i.e., 75% of the Net Settlement Fund), currently estimated to be $1,992,000 (before reduction for Employer Taxes), will be distributed to Class Members who submit timely and valid Requests for Exclusion (i.e., Participating Class Members). The Net FLSA Settlement Fund (i.e., 25% of the Net Settlement Fund), currently estimated to be $664,000 (before reduction for Employer Taxes), will be distributed to all FLSA Members.

19.     The parties have agreed to retain Simpluris, Inc. ("Simpluris" or "Settlement Administrator") to handle the notice and administration process, and respectfully request that this Court appoint Simpluris to serve as the Settlement Administrator.  Simpluris will mail Notice Packets to all Class Members and FLSA Members in English and Spanish and re-mail any returned or undeliverable Notice Packets as necessary; and receive, review, and process

LAWYERS *for* JUSTICE, PC
410 West Arden Avenue, Suite 203
Glendale, California 91203

Requests for Exclusion, Workweeks disputes, and Notices of Objection. Simpluris will also transmit all required payments (including, *inter alia*, distributing the Individual Settlement Payment checks); provide weekly reports to counsel for the parties; issue necessary W-2, 1099, or other tax forms to Plaintiffs, Participating Class Members, FLSA Members, and Class Counsel; perform necessary tax withholdings and reporting; provide necessary declarations; and perform all other usual and customary duties for administering a class action settlement. The Settlement Administration Costs are currently estimated to be Fifty-Eight Thousand Dollars ($58,000) and will be paid out of the Total Settlement Fund subject to approval by the Court.

20.   Simpluris will calculate the estimated gross amount of the Net Class Settlement Fund and the Net FLSA Settlement Fund (collectively totaling the Net Settlement Fund) that each Class Member and/or FLSA Member is eligible to receive by way of Non-FLSA Payments and FLSA Payments, in conformity with the methodology set forth in the Settlement Agreement.

21.   Subject to approval by the Court and pursuant to Federal Rule of Civil Procedure 23(h), Class Counsel will file a motion or application for Attorneys' Fees and Costs, consisting of attorneys' fees in an amount not to exceed thirty-five percent (35%) of the Total Settlement Fund (i.e., $1,575,000), and reimbursement of litigation costs and expenses in an amount up to Sixty-Five Thousand Dollars ($65,000), as provided for by the Settlement Agreement. The motion will be supported by Class Counsel's declarations, a detailed breakdown of the tasks performed and how much time Class Counsel spent performing the tasks, and a statement of costs incurred to date. Under the terms of the Settlement, these amounts will be paid out of the Total Settlement Fund subject to approval by the Court. It should be noted that Class Counsel have borne all of the risks and costs of litigation to date and will not receive any compensation until recovery is obtained. Class Counsel have committed and continue to commit significant financial and staffing resources to the representation of the Class. The requested fees and costs will include all of the work that Class Counsel have performed since the inception of the Action, as well as all of the work involved in overseeing the Settlement, if approved by the Court, and preparing all necessary paperwork and communicating with all parties to, and third-parties necessary for administration of, the Settlement.

**DECLARATION OF EDWIN AIWAZIAN IN SUPPORT OF PLAINTIFFS' MOTION FOR PRELIMINARY APPROVAL OF CLASS AND COLLECTIVE ACTION SETTLEMENT**

22.     Class Counsel respectfully request that the Court preliminarily approve the allocation for Incentive Awards in the combined total of Thirty-Three Thousand Five Hundred Dollars ($33,500), consisting of Seven Thousand Five Hundred Dollars ($7,500) each to Plaintiffs Beltran, Martinez, Cota, and Solorio and Three Thousand Five Hundred Dollars ($3,500) to Plaintiff Rivera.  The contemplated Incentive Awards are fair and appropriate. Plaintiffs spent a substantial amount of time and effort to produce relevant documents and past employment records, and to provide the facts and evidence necessary to attempt to prove the allegations.  Plaintiffs were available whenever Class Counsel needed them and actively tried to obtain information that would benefit the proposed Class and FLSA Members.  For example, Plaintiffs Beltran and Martinez provided responses to formal written discovery propounded by Defendant and prepared for and attended their depositions.  Accordingly, it is appropriate and just for Plaintiffs to receive reasonable Incentive Awards, in addition to their Individual Settlement Payments, for their service on behalf of the Class Members and FLSA Members.

## ESTIMATE OF THE NATURE AND VALUE OF THE CLAIMS

23.     In reaching the Settlement, the parties have taken into account the information that they obtained from Plaintiffs, Class Members, FLSA Members, and percipient witnesses, as well as a volume of documents and data, including and not limited to, time and pay records, and Defendant's operations and employment policies, practices, and procedures.  Class Counsel analyzed class data provided by Defendant ahead of the mediation sessions and during additional investigation thereafter. The available information enabled the parties to determine the potential value and strengths of the claims, and to estimate the potential claim of each Class Member and FLSA Member.  Accordingly, the parties have conducted adequate investigation and discovery to be sufficiently informed of the nature and extent of the claims of Class Members and FLSA Members, and to enable both sides to fully evaluate the Settlement for its fairness, adequacy, and reasonableness.  Following the mediations and extensive settlement negotiations thereafter, the parties agreed that the Actions were well-suited for settlement given the legal issues relating to the claims, as well as the costs and risks to both sides that would attend further litigation.  The

LAWYERS *for* JUSTICE, PC
410 West Arden Avenue, Suite 203
Glendale, California 91203

15

LAWYERS *for* JUSTICE, PC
410 West Arden Avenue, Suite 203
Glendale, California 91203

Settlement takes into account the strengths and weaknesses of each side's position and the uncertainty of how the cases might have concluded at certification, trial, and/or appeals.

24.     The Third Amended Class Action Complaint for Damages & Enforcement Under the California Labor Code § 2698, Et Seq. ("Third Amended Complaint") asserts claims for: (1) failing to properly pay overtime wages (Cal. Lab. Code §§ 510 and 1198); (2) failing to pay overtime wages under the Fair Labor Standards Act (29 U.S.C. § 207); (3) failing to provide compliant meal periods and associated premiums (Cal. Lab. Code §§ 226.7 and 512(a)); (4) failing to provide compliant rest periods and associated premiums (Cal. Lab. Code § 226.7); (5) failing to pay minimum wages (Cal. Lab. Code §§ 1194, 1197, and 1197.1); (6) failing to pay minimum wages under the Fair Labor Standards Act (29 U.S.C. § 206); (7) failing to timely pay wages upon termination of employment (Cal. Lab. Code §§ 201 and 202); (8) failing to provide compliant wage statements (Cal. Lab. Code § 226(a)); (9) failing to reimburse necessary business expenses (Cal. Lab. Code §§ 2800 and 2802); (10) engaging in unfair business practices (Cal. Bus. & Prof. §§ 17200, et seq.); and (11) recovery of penalties under the California Private Attorneys General Act of 2004 (Cal. Lab. Code §§ 2698, et seq.).

25.     Plaintiffs worked for Defendant in positions classified as non-exempt and/or hourly-non-exempt during the Settled Period.  Plaintiffs allege that Class Members were subject to uniform operations and employment policies, practices, and procedures, and that Defendant's payroll and recordkeeping practices with respect to the Class Members were substantially the same during the Settled Period.  Attached hereto as **EXHIBIT 2** are relevant portions from the deposition of Defendant's PMK witness Albert Perez, testifying that he cannot identify a single difference between the practices and procedures for providing meal and rest breaks or applying timekeeping policies at Defendant's locations.  As a result, Plaintiffs claim that Class Members, including Plaintiffs, were uniformly not paid all compensation that was owed to them by Defendant during the Settled Period. Thus, it is clear that the outcome of litigation in this matter would be determined by Defendant's uniform operations and employment policies, practices, and procedures that applied across all persons who were employed by Defendant in a position classified as non-exempt and/or hourly non-exempt and worked in that capacity at Defendant's

16

Fresno, Firebaugh, Hanford, Lemoore, Gilroy and/or Williams facilities in California at any time since July 7, 2011.

26.     Plaintiffs contended that Defendant's uniform policies, practices, and procedures required Class Members to perform work during meal and rest periods and before clocking-in and after clocking-out.  For example, Plaintiffs contended that Plaintiffs and other Class Members and FLSA Members performed duties prior to clocking in and after clocking out for their shifts. Plaintiffs contended that they and Class Members and FLSA Members were required to be at their workstations and ready to work at the scheduled shift starting time, and therefore, they performed work such as donning personal protective equipment ("PPE") and storing personal belongings prior to their scheduled start time.  Plaintiffs also contended that Defendant utilized a rounding policy which consistently operated against Plaintiffs, Class Members, and FLSA Members.  Plaintiffs also contended that meal and rest periods were often missed and interrupted by work-related inquiries and to perform job duties, and were scheduled in a manner so as to not disrupt the workflow.  Additionally, Plaintiffs alleged that Defendant intentionally and willfully failed to pay Plaintiffs and other Class Members all wages due to them upon termination, thereby triggering waiting-time penalties under California Labor Code section 203.  Plaintiffs contended that, based on the violations described herein, the wage statements provided by Defendant did not include all hours worked, and were therefore, inaccurate.  Finally, Plaintiffs contended that Defendant failed to reimburse Plaintiffs and the other Class Members for necessary business expenses, including but not limited to, the costs associated with purchasing clothing to comply with Defendant's dress code policy and protective equipment, including but not limited to steel toed boots.

27.     Defendant contended, *inter alia*, that its practices, policies, and procedures complied with the law, and that it paid Class Members and FLSA Members over California and federal minimum wage for all hours worked and correctly paid overtime for all overtime hours worked.  Defendant also produced wage records reflecting overtime compensation paid to many of the Class Members and FLSA Members (including, and not limited to, Plaintiffs). Defendant also contended that it correctly calculated the overtime rate and that its rounding policy was fair

LAWYERS *for* JUSTICE, PC
410 West Arden Avenue, Suite 203
Glendale, California 91203

17

and neutral to Plaintiffs, Class Members, and FLSA Members. Defendant further contended that all employees were required to record all time worked, were given the opportunity to make any necessary revisions or changes to their time, and were instructed to inform Defendant of any non-compliant meal or rest periods, and that Defendant was not aware that any work had been performed off-the-clock or during meal and rest periods. Defendant was adamant that no waiting-time penalties should be awarded because the waiting-time penalties are derivative of each and every other underlying cause of action, and contended that it paid the terminated employees all wages due and owing.  Moreover, Defendant emphasized that, under California Labor Code section 203, employers are only obligated to pay waiting-time penalties if they "willfully" fail to pay wages due and owing at the time of termination or resignation.  Defendant also contended that Plaintiffs and Class Members suffered no actual injury from the alleged wage statement violations and that this cause of action is entirely derivative of the other causes of action.  Defendant further contended that it has a policy and practice of reimbursing employees for necessary business-related expenses.  Defendant vigorously challenged the likelihood of Plaintiffs' success in establishing that any provisions of the FLSA and California Labor Code, on which the UCL claim and civil penalties under PAGA are predicated, were violated and that such violations were injurious.  Defendant also emphasized Courts have wide discretion when assessing penalties under PAGA.  Finally, throughout this litigation, Defendant argued that individual liability issues predominate, because Class Members worked in different locations, were subject to different collective bargaining agreements, worked different shifts, and performed different job duties, and Defendant further contended that these circumstances would raise highly individualized questions of fact and would pose challenges to class certification, collective certification, and the merits of Plaintiffs' claims.

28.    Class Counsel considered information obtained through investigations and from Plaintiffs and other Class Members and FLSA Members, as well as class data provided by Defendant, and created damages/valuation models prior to reaching the Settlement.  Based thereon, Plaintiffs calculated the maximum potential value of each of the above-discussed claims.  However, the potential value of each claim assumed an exposure based on the case

18

DECLARATION OF EDWIN AIWAZIAN IN SUPPORT OF PLAINTIFFS' MOTION FOR
PRELIMINARY APPROVAL OF CLASS AND COLLECTIVE ACTION SETTLEMENT

having been certified as a class and collective action and Plaintiffs having proven all elements of the claims and damages, despite risks associated with obtaining and maintaining class certification, risks to establishing liability and any underlying California Labor Code and FLSA violations and damages (including the possibility that purported exemptions from overtime pay provisions applied to some of the Class Members), and significant additional costs that would have to be incurred in order to certify a class and establish liability and damages.  Plaintiffs also faced the risk of the Court finding that individualized issues predominate, such that the Action is not suitable for class, collective, or representative treatment.  While Class Counsel disagreed with Defendant's arguments and factual contentions, Class Counsel recognized the circumstances and realities of the matter, applicable case law and regulations, the costs and expenses of further litigation and certification, and risks to recovery, and applied appropriate discounts for them.  Class Counsel calculated the potential and realistic values of each claim as follows:

a.  <u>Failure to Pay Overtime Wages Under California Labor Code</u>: The potential value of the overtime claim under California Labor Code § 510 was estimated to be $5,502,201.65.  At this juncture, a discount of 60% was applied to account for the risks associated with obtaining and maintaining certification (bringing the value of this claim closer to $2,200,880.66),  a discount of 60% was applied to account for the risks associated with succeeding on the merits and establishing liability (bringing the value of this claim closer to $880,352.26), and a discount of 60% was applied to account for the risks associated with proving the extent of damages and obtaining an award thereof (bringing the value of this claim closer to $352,140.90).

b.  <u>Failure to Pay Overtime Wages under the FLSA</u>: The potential value of the overtime claim under 29 U.S.C. § 206 was estimated to be $9,609,444.56.  At this juncture, a discount of 60% was applied to account for the risks associated with obtaining and maintaining collective certification (bringing the value of this claim closer to $3,843,777.82), a discount of 75% was applied to account for the risks associated with succeeding on the merits and establishing liability (bringing the value of this claim

19

closer to $960,944.46), and a discount of 60% was applied to account for the risks associated with proving the extent of damages and obtaining an award thereof (bringing the value of this claim closer to $384,377.78).

c.  <u>Failure to Pay Minimum Wages under California Labor Code</u>: The potential value of the minimum wage claim under California Labor Code § 1194, 1197, and 1197.1 was estimated to be $3,667,210.47.  At this juncture, a discount of 50% was applied to account for the risks associated with obtaining and maintaining certification (bringing the value of this claim closer to $1,833,605.24),  a discount of 50% was applied to account for the risks associated with succeeding on the merits and establishing liability (bringing the value of this claim closer to $916,802.62), and a discount of 60% was applied to account for the risks associated with proving the extent of damages and obtaining an award thereof (bringing the value of this claim closer to $366,721.05).

d.  <u>Failure to Pay Minimum Wages under the FLSA</u>: The potential value of the over wage claim under 29 U.S.C. § 207 was estimated to be $3,509,746.76.  At this juncture, a discount of 50% was applied to account for the risks associated with obtaining and maintaining collective certification (bringing the value of this claim closer to $1,754,873.38), a discount of 50% was applied to account for the risks associated with succeeding on the merits and establishing liability (bringing the value of this claim closer to $877,436.69), and a discount of 60% was applied to account for the risks associated with proving the extent of damages and obtaining an award thereof (bringing the value of this claim closer to $350,974.68).

e.  <u>Failure to Provide Compliant Meal Periods and Associated Premiums</u>: The potential value of the meal period claim was estimated to be $11,001,631.41.  At this juncture, a discount of 50% was applied to account for the risks associated with obtaining and maintaining certification (bringing the value of this claim closer to $3,667,210.47),  a discount of 65% was applied to account for the risks associated with succeeding on the merits and establishing liability (bringing the value of this claim closer to

LAWYERS *for* JUSTICE, PC
410 West Arden Avenue, Suite 203
Glendale, California 91203

20

**DECLARATION OF EDWIN AIWAZIAN IN SUPPORT OF PLAINTIFFS' MOTION FOR PRELIMINARY APPROVAL OF CLASS AND COLLECTIVE ACTION SETTLEMENT**

LAWYERS *for* JUSTICE, PC
410 West Arden Avenue, Suite 203
Glendale, California 91203

$1,925,285.50), and a discount of 50% was applied to account for the risks associated with proving the extent of damages and obtaining an award thereof (bringing the value of this claim closer to $962,642.75).

f.   Failure to Provide Compliant Rest Periods and Associated Premiums: The potential value of the rest period claim was estimated to be $3,667,201.47.  At this juncture, a discount of 50% was applied to account for the risks associated with obtaining and maintaining certification (bringing the value of this claim closer to $1,833,605.24),  a discount of 60% was applied to account for the risks associated with succeeding on the merits and establishing liability (bringing the value of this claim closer to $916,802.62), and a discount of 50% was applied to account for the risks associated with proving the extent of damages and obtaining an award thereof (bringing the value of this claim closer to $366,721.05).

g.   Failure to Timely Pay Wages after Termination: The potential value of the waiting time penalties claims was estimated to be $18,222,472.80.  At this juncture, a discount of 75% was applied to account for the risks associated with obtaining and maintaining certification (bringing the value of this claim closer to $4,555,618.20), a discount of 60% was applied to account for the risks associated with succeeding on the merits and establishing liability (bringing the value of this claim closer to $1,822,247.28), and a discount of 75% was applied to account for the risks associated with proving the extent of damages and obtaining an award thereof (bringing the value of this claim closer to $455,561.82).

h.   Failure to Provide Compliant Wage Statements: The potential value of the non-compliant wage statement claim was estimated to be $21,508,000. At this juncture, a discount of 75% was applied to account for the risks associated with obtaining and maintaining certification (bringing the value of this claim closer to $5,377,000),  a discount of 60% was applied to account for the risks associated with succeeding on the merits and establishing liability (bringing the value of this claim closer to $2,150,800), and a discount of 75% was applied to account for the risks associated

21

with proving the extent of damages and obtaining an award thereof (bringing the value of this claim closer to $537,700).

i. <u>Failure to Reimburse Necessary Business Expenses</u>: The potential value of the business expense reimbursement claim was estimated to be $1,663,134.  At this juncture, a discount of 75% was applied to account for the risks associated with obtaining and maintaining certification (bringing the value of this claim closer to $415,783.50), a discount of 60% was applied to account for the risks associated with succeeding on the merits and establishing liability (bringing the value of this claim closer to $166,313.40), and a discount of 50% was applied to account for the risks associated with proving the extent of damages and obtaining an award thereof (bringing the value of this claim closer to $83,156.70).

j. <u>PAGA Penalties</u>: The potential value of the PAGA claim was estimated to be $2,688,500.  At this juncture, a discount of 50% was applied to account for the risks associated with proving manageability (bringing the value of this claim closer to $1,344,250), a discount of 60% was applied to account for the risks associated with succeeding on the merits and establishing liability (bringing the value of this claim closer to $537,700), and a discount of 75% was applied to account for the risks associated with obtaining an award of civil penalties and the Court's discretion to reduce civil penalties (bringing the value of this claim closer to $134,425).

29.    The foregoing discussion confirms that the amount of the Settlement is adequate in light of the merits of this case, Plaintiffs' allegations and causes of action, the evidence at issue with respect to those allegations and causes of action, and legal and factual arguments and circumstances which pose challenges to certification and monetary recovery.  The conclusion to be drawn from the foregoing analysis is that neither class certification, liability, nor the ability to adjudicate and/or recover monetary relief on a class-wide, collective, or representative basis is clear-cut, which is why the Parties elected to settle this matter.  Class Counsel recognized the circumstances and realities of the case, applicable case law and regulations, the costs and expenses of further litigation and certification, and risks to recovery and applied appropriate

LAWYERS *for* JUSTICE, PC
410 West Arden Avenue, Suite 203
Glendale, California 91203

22

discounts.

30.     This matter involves highly-disputed claims and is the product of compromise. Class Counsel submit that the settlement presented for preliminary approval is within a reasonable range of recoveries for this type of litigation, and is fair, reasonable, adequate, and in the best interest of the Class Member and FLSA Members, given the inherent cost and risks of further litigation.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Executed on this 13th day of April 2020, at Glendale, California.


_____/s/ Edwin Aiwazian_____
Edwin Aiwazian

**DECLARATION OF EDWIN AIWAZIAN IN SUPPORT OF PLAINTIFFS' MOTION FOR PRELIMINARY APPROVAL OF CLASS AND COLLECTIVE ACTION SETTLEMENT**

**LAWYERS *for* JUSTICE, PC**
410 West Arden Avenue, Suite 203
Glendale, California 91203

# EXHIBIT 1

## THIRD AMENDED CLASS ACTION AND COLLECTIVE ACTION SETTLEMENT AND RELEASE AGREEMENT

### I. PREAMBLE

This Third Amended Class Action and Collective Action Settlement and Release Agreement ("Agreement," "Third Amended Agreement," "Settlement," or "Settlement Agreement") is made and entered into by and between Plaintiffs Thomas Beltran, Mario Martinez, Maria Obeso Cota, Alexander Solorio, and Juan Rivera ("Plaintiffs" or "Class Representatives"), as individuals and on behalf of all others similarly situated and on behalf of all aggrieved employees, and Defendant OLAM WEST COAST, INC., erroneously sued as "Olam Spices and Vegetables, Inc." and further erroneously sued as "Olam Spices and Vegetables Ingredients" (collectively, "Defendant" or "Olam," and also, collectively, with all Plaintiffs and Defendant, the "Parties").  Pursuant to Section III, Paragraph 38 of the Second Amended Class Action Settlement and Release Agreement that the Parties entered into on or about October 2, 2018 ("Second Amended Agreement"), this Third Amended Agreement hereby supplants the Second Amended Agreement.

### II. DEFINITIONS

1.      "**Actions**" collectively means the following pending putative class, collective and/or representative actions filed in the Superior Court of the State of California in and for either the Counties of Fresno or Santa Clara:

(a)     *Thomas Beltran, Mario Martinez, Maria Claudia Obeso Cota, Juan Rivera, and Alexander Solorio  v. Olam West Coast, Inc.*, with Defendant erroneously sued as "Olam Spices and Vegetables, Inc." Fresno County Superior Court, Case No. 15CECG02993 ("Action"), which was removed to the Eastern District of California, Fresno Division, Case No. 1:18-cv-01676-LJO-SAB;

(b)     *Maria Claudia Obeso Cota v. Olam West Coast, Inc.*, Fresno County Superior Court, Case No. 16CECG00081;

(c)     *Alexander Solorio v. Olam West Coast, Inc.*, Fresno County Superior Court, Case No. 16CECG00513; and,

(d)     *Juan Rivera, et al. v. Olam West Coast, Inc.*, with Defendant erroneously sued as "Olam Spices and Vegetables, Inc." and as "Olam Spices and Vegetables Ingredients," Santa Clara County Superior Court, Case No. 16CV300758.

2.      "**Agreement**" means this Third Amended Class Action and Collective Action Settlement and Release Agreement.

3. "**Attorneys' Fees and Costs**" means attorneys' fees agreed upon by the Parties and approved by the Court for Class Counsel's litigation and resolution of the Action, and all costs/expenses incurred and to be incurred by Class Counsel in the Action. Any portion of the Attorneys' Fees and Costs not awarded to Class Counsel will be added to the Net Settlement Fund.

4. "**Class Counsel**" collectively means, subject to court approval, Edwin Aiwazian, Arby Aiwazian, and Joanna Ghosh of Lawyers *for* Justice, PC and Joseph Lavi and Vincent C. Granberry of Lavi and Ebrahimian, LLP, Sahag Majarian, II of Law Offices of Sahag Majarian, II.

5. "**Class List**" means a complete list of all Class Members and FLSA Members that Defendant will compile from its records and provide to the Settlement Administrator within fifteen (15) calendar days after Preliminary Approval of this Settlement. The Class List will be formatted in a Microsoft Office Excel spreadsheet and will include each Class Member's and FLSA Member's full name, most recent mailing address, Social Security number, employee identification number, telephone number, dates of employment in a Covered Position, and indication of which Work Location(s) they work and/or worked at in a Covered Position, so that the Settlement Administrator can calculate the Workweeks for each Class Member and FLSA Member.

6. "**Class Member(s)**" or "**Class**" means, with respect to all Released Class Claims, all persons who were employed by Defendant in a Covered Position at any time during the Class Period, or the estates of such individuals.

7. "**Class Settlement**" means the settlement and resolution of the Released Class Claims, which will be binding on all Participating Class Members.

8. "**Net Settlement Fund**" means the Total Settlement Fund less the Court-approved Attorneys' Fees and Costs, Settlement Administration Costs, Incentive Awards, LWDA Payment, and Employer Taxes.

9. "**Covered Position**" means all positions that Defendant classified as non-exempt and/or hourly non-exempt, that Class Members and FLSA Members worked in, at Defendant's Fresno, Firebaugh, Hanford, Lemoore, Gilroy, and/or Williams facilities in California (collectively, "**Work Location(s)**"), and for which Class Members and FLSA Members were paid on a non-exempt basis, at any time during the Settled Period. Exempt positions are excluded from the Covered Position and the Settlement.

10. "**Court**" means the United States District Court for the Eastern District of California, Fresno Division, or any other court taking jurisdiction of the Action for purposes of reviewing and ruling upon any motion for preliminary or final approval, overseeing any part of the settlement process, and any related matter, and including up to and after the various separate cases have been coordinated or consolidated before one court or judge, if required.

11.    "**Defendant**" means Defendant Olam West Coast, Inc.

12.    "**Defendant's Counsel**" means Hatmaker Law Group, A Professional Corporation.

13.    "**Effective Date**" means the latter of: (a) the sixty-third (63rd) day after the Court enters the Final Approval Order and Judgment; or (b) if any timely appeal is filed within sixty-three (63) days after entry of the Final Approval Order and Judgment, the date of final resolution of any such appeal in a way that does not alter the terms of the Settlement or leave any further determination pending on the merits of the appeal or objection, or the date such appeal is withdrawn.

14.    "**Employer Taxes**" means the employer's share of payroll taxes and contributions with respect to the Wage Portion of the Non-FLSA Payment and FLSA Payment, in accordance with Section III, Paragraph 9, *infra* and estimated to be between $117,000 to $168,000 (with the final amount depending on the final amount of the Net Settlement Fund and applicable tax rates for both state and Federal taxes).

15.    "**Final Approval Order and Judgment**" means the order granting final approval of the Settlement and entry of judgment based thereon.

16.    "**Final Approval**" or "**Final Approval Order**" means the Court order granting final approval of the Agreement.

17.    "**FLSA**" means Fair Labor Standards Act.

18.    "**FLSA Member(s)**" means, with respect to all Released FLSA Claims, all persons who were employed by Defendant in a Covered Position at any time during the Settled Period, or the estates of such individuals.

19.    "**FLSA Settlement**" means the settlement and resolution of the Released FLSA Claims in this Agreement, which will be binding on all Participating FLSA Members.

20.    "**General Release by Class Representatives**" or "**General Release**" means, in addition to Plaintiffs' release of the Released Class Claims and Released FLSA Claims, Plaintiffs' release of rights and claims, made in exchange for the consideration provided to them by this Agreement, upon the Effective Date in consideration of Defendant's promises and agreements set forth in this Agreement as follows, undertaken only on behalf of themselves:

Plaintiffs recognize and agree that their employment relationship with Defendant is permanently and irrevocably severed.

Nothing in this release shall prohibit or restrict Plaintiffs from: (i) providing information to, or otherwise assisting in, an investigation by Congress, the EEOC, the

NLRB, the Securities and Exchange Commission ("SEC") or any other federal regulatory or law enforcement agency or self-regulatory organization ("SRO"); (ii) testifying, participating, or otherwise assisting in a proceeding relating to an alleged violation of any federal law relating to fraud or any rule or regulation of the SEC or any SRO; or (iii) complying with a lawful subpoena or other legal process, subject to the terms of the Agreement.

Except for the obligations created by this Agreement, each Plaintiff and each Plaintiff's agents, spouse, assigns, successors, heirs, and attorneys, do hereby release and absolutely and forever discharge Released Parties, and each of its former and current agents, assigns, employees, owners, affiliates, shareholders, successors, parents, representatives, subsidiaries, insurers, and attorneys from any and all options, claims, causes of action, demands, damages, debts, liabilities, accounts, reckonings, obligations, losses, costs, expenses, liens, actions, and claims of any sort, whether sounding in law or in equity.  The General Release includes, but is not limited to, any and all claims, demands, causes of action, obligations and liabilities, whether or not presently known or unknown, fixed or contingent, that in any way relate to or arise from each Plaintiff's employment with Olam, including, without limitation, any claims related to or arising out of each Plaintiff's employment relationship with Olam or the termination of that employment, including, without limitation, any claims for unpaid salary, unpaid wages, unpaid overtime, unpaid compensation for missed meal, rest or recovery periods, unpaid "on-call" compensation, severance, accrued vacation, personal leave, paid sick leave, short term or long term disability benefits, payment pursuant to any practice, policy or handbook, bonuses, commissions, any other type of compensation other than as contemplated by the terms of this Agreement, and pay stub or wage statement violations, and including, but not limited to, claims, demands or causes of action under Title VII of the Civil Rights Act of 1964, as amended, the Civil Rights Act of 1991, the Unruh Civil Rights Act, the Age Discrimination in Employment Act (ADEA) of 1967, as amended, the Older Workers Benefit Protection Act, the Americans with Disabilities Act, the Americans with Disabilities Act Amendments Act, the Family and Medical Leave Act and related regulations, the California Family Rights Act and related regulations, the California New Parent Leave Act, the Genetic Information Nondiscrimination Act, the National Labor Relations Act, the Labor Management Relations Act, the federal Worker Adjustment and Retraining Notification Act, the California Worker Adjustment and Retraining Notification Act, the Uniformed Services Employment and Reemployment Rights Act of 1994, the Immigration Reform and Control Act, the Fair Labor Standards Act, the Equal Pay Act, the Occupational Safety and Health Act, the Employee Polygraph Protection Act, the employee (whistleblower) civil protection provisions of the Corporate and Criminal Fraud Accountability Act (Sarbanes-Oxley Act), the Employee Retirement Income Security Act (except for any vested benefits under any tax qualified benefit plan), the California Fair Employment and Housing Act, the Healthy Workplaces, Healthy Families Act of 2014 and amendments, Sections 1981 through 1988 of Title 42 of the United States Code, and any claims within any division of the California Department of Industrial Relations or Employment Development Department, as well as public policy, tort or common law

4

claims for wrongful discharge or termination, constructive discharge, retaliatory discharge, breach of contract (employment or otherwise), conspiracy, fraud, breach of fiduciary duty, negligent misrepresentation, intentional or negligent infliction of emotional distress, defamation, libel, slander, conversion, invasion of privacy rights, tortious interference with contract, tortious interference with business relations, disparagement of business reputation and any other claim, demand or cause of action arising under any provision of the California Constitution, the California Labor Code, the California Civil Code, the California Business & Professions Code, the California Government Code, the California Administrative Code, any other federal, state or local law, rule, regulation or ordinance, as well as any basis for recovering costs, fees, or other expenses, including attorneys' fees, incurred in these matters, and causes of action of every kind and nature whatsoever, whether now known or unknown, suspected or unsuspected, which each Plaintiff now has, owns or holds or at any time heretofore ever had, owned or held or could, shall or may hereafter have, own or hold based upon or arising out of any matter, cause, fact, thing, act or omission whatsoever occurring or existing at any time through and including the execution and delivery of this Agreement. Each Plaintiff waives the right to file any charge, complaint or other action against Olam with respect to the foregoing except as such waiver or release is prohibited by law, case law, or statute, and excluding any unemployment and/or workers' compensation claims.

For consideration provided by the Settlement, this General Release specifically includes the release and waiver of any and all claims, rights, or benefits that any Plaintiff may have under California Civil Code Section 1542 relating to any claims described in this Paragraph, which provides:

A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS THAT THE CREDITOR OR RELEASING PARTY DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE AND THAT, IF KNOWN BY HIM OR HER, WOULD HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR OR RELEASED PARTY.

21.     "**Incentive Awards**" means an amount approved by the Court and paid to all Plaintiffs in recognition of their effort and work in prosecuting the Actions on behalf of Class Members, FLSA Members, the State of California, and aggrieved employees.  Any portion of the Incentive Awards not approved by the Court will be added to the Net Settlement Fund.

22.     "**Individual Settlement Payment**" means, collectively, the following:

a.      "Non-FLSA Payment" means payment issued to each Participating Class Member for his or her share of the Net Class Settlement Fund, to be distributed in conformity with Section III, Paragraph 9, *infra*.

b.      "FLSA Payment" means payment issued to each FLSA Member for his or her share of the Net FLSA Settlement Fund, to be distributed in conformity with Section III, Paragraph 9, *infra*.

23.     "**Labor and Workforce Development Agency Payment**" or "**LWDA Payment**" means the amount that the Parties have agreed to pay from the Total Settlement Fund to the California Labor and Workforce Development Agency ("LWDA") to resolve Plaintiffs' claims for civil penalties under the PAGA, subject to the Court's approval.

24.     "**Notice of Objection**" means a Class Member's valid and timely written objection to the Class Settlement.

25.     "**Notice Packet**" means the documents to be mailed to the Class Members and FLSA Members in a single Mailing Envelope, substantially in the form of "**Exhibit D**," as follows:

a.      The Notice of Class Action Settlement ("**Class Notice**"), and Request for Exclusion Form, in English and Spanish, substantially in the form of "**Exhibit A**," and "**Exhibit C**," respectively.

b.      The Notice of FLSA Settlement ("**FLSA Notice**") substantially in the form of "**Exhibit B**".

26.     "**Parties**" means Plaintiffs and Defendant collectively.

27.     "**Participating Class Member(s)**" or "**Settlement Class**" means all Class Members who do not submit valid and timely Requests for Exclusion.

28.     "**Participating FLSA Members**" means those FLSA Members who timely and validly opt-in to the FLSA Settlement.

29.     "**Plaintiffs**" means Plaintiffs Thomas Beltran, Mario Martinez, Maria Claudia Obeso Cota, Alexander Solorio, and Juan Rivera.

30.     "**Preliminary Approval**" or "**Preliminary Approval Order**" means the Court order granting preliminary approval of the Agreement attached here in draft form as "**Exhibit E**."

31.     "**Released Class Claims**" means all wage and hour claims, rights, demands, liabilities and causes of action of every nature and description, known and unknown, that were plead or could have been plead based on the factual allegations in the Third Amended Complaint, from July 7, 2011 through the Preliminary Approval date, including, without limitation, any statutory, constitutional, contractual or common law claims for wages (including minimum wage, overtime, and premium wages, and for any failure to pay overtime based on the regular rate of pay), damages, business expenses, or penalties (including waiting time penalties), liquidated

damages, punitive damages, interest, restitution, equitable relief, or any other relief, based on any and all applicable statutes (other than the Fair Labor Standards Act, including without limitation the California Labor Code, the California Industrial Welfare Commission wage orders, Labor Code Private Attorneys General Act of 2004 (Cal. Lab. Code §§ 2698, *et seq*.) ("PAGA"), California Business and Professions Code § 17200, *et seq*, or other law, including, but not limited to, claims based on the following categories of allegations during the Settled Period: (a) all claims for unpaid overtime; (b) all claims for meal and rest period violations; (c) all claims for unpaid minimum wages; (d) all claims for untimely payment of wages upon termination; (e) all claims for untimely payment of wages during employment; (f) all claims for failure to pay wages; (g) all claims for failure to provide accurate or otherwise proper itemized wage statements; (h) all claims for failure to keep complete and accurate payroll records; (i) all claims for failure to reimburse necessary business-related expenses and costs; (j) all claims asserted, or which could have been asserted, under PAGA arising out of the aforementioned claims; (k) all claims asserted through California Business & Professions Code § 17200 *et seq.* arising out of the aforementioned claims; and (l) all other claims for penalties, liquidated damages, punitive damages, interest, attorneys' fees, litigation costs, restitution, equitable relief, or additional damages that allegedly arise out of the aforementioned claims.  For consideration provided by the Settlement, Released Class Claims specifically include the release and waiver of any and all claims, rights, or benefits that a Class Member may have under California Civil Code Section 1542 relating to any claims described in this Paragraph, which provides:

> A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS THAT THE CREDITOR OR RELEASING PARTY DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE AND THAT, IF KNOWN BY HIM OR HER, WOULD HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR OR RELEASED PARTY.

32.    **"Released FLSA Claims"** means any and all claims, debts, liabilities, demands, obligations, penalties, guarantees, costs, expenses, attorneys' fees, damages, action or causes of action of whatever kind or nature under the Fair Labor Standards Act, whether known or unknown, foreseen or unforeseen, arising out of or related to any and all facts, transactions, events, policies, occurrences, acts, disclosures, statements, omissions or failures to act, as of and including the Effective Date of this Agreement, which are or could be raised in the Action. For consideration provided by the Settlement, Released FLSA Claims specifically include the release and waiver of any and all claims, rights, or benefits that a FLSA Member may have under California Civil Code Section 1542 relating to any claims described in this Paragraph, which provides:

> A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS THAT THE CREDITOR OR RELEASING PARTY DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE AND THAT, IF KNOWN BY HIM OR HER, WOULD HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR OR RELEASED PARTY.

33.    **"Released Parties"** means Defendant and any of its former and present parents, subsidiaries, affiliates, divisions, corporations in common control, predecessors, successors,

joint ventures and assigns, as well as all past and present officers, directors, employees, partners, members, principals, shareholders, agents, attorneys, insurers, co-insurers, reinsurers, and any other successors, assigns, or personal or legal representatives, if any.

34.    "**Request for Exclusion**" means a timely letter or Request for Exclusion Form submitted by a Class Member, in conformity with the requirements set forth in Section III, Paragraph 16, in order to request to be excluded from the Class Settlement.  Any Class Member who wishes to be excluded from the Class Settlement must submit a Request for Exclusion to the Settlement Administrator, no later than the Response Deadline.

35.    "**Response Deadline**" means the deadline by which Class Members must postmark or fax a Request for Exclusion, postmark or fax a Workweeks Dispute, or postmark a Notice of Objection, to the Settlement Administrator.  The Response Deadline will be sixty (60) calendar days from the initial mailing of the Notice Packet by the Settlement Administrator, unless the 60th day falls on a Sunday or federal holiday, in which case the Response Deadline will be extended to the next day on which the U.S. Postal Service operates for first-class mail delivery. The Response Deadline will be extended fifteen (15) calendar days for any Class Member who is re-mailed a Notice Packet by the Settlement Administrator due to an incorrect mailing address, unless the 15th day falls on a Sunday or federal holiday, in which case the Response Deadline will be extended to the next day on which the U.S. Postal Service operates for first-class mail delivery. The Response Deadline may also be extended by express agreement between Class Counsel and Defendant's Counsel. Under no circumstances, however, will the Settlement Administrator have the authority to unilaterally extend the deadline for Class Members to submit a Request for Exclusion, Workweeks Dispute and/or or Notice of Objection.

36.    "**Settled Period**" means the period from July 7, 2011 to the date of Preliminary Approval.  This definition applies to both the release of Released Class Claims and Released FLSA Claims.

37.    "**Settlement Administrator**" means Simpluris, Inc. The Parties each represent that they do not have any financial interest in the Settlement Administrator or otherwise have a relationship with the Settlement Administrator that could create a conflict of interest.

38.    "**Settlement Administration Costs**" means the costs payable from the Total Settlement Fund to the Settlement Administrator for administering this Settlement including, but not limited to, translating into Spanish the notices to be mailed to Class Members; printing, distributing, and tracking documents for this Settlement; calculating estimated Individual Settlement Payments; tax reporting; distributing the Individual Settlement Payments (by way of multiple checks as provided in Section III, Paragraph 9, *infra*), LWDA Payment, Incentive Awards, and Attorneys' Fees and Costs; and providing necessary reports and declarations, posting the Final Approval Order and Judgment, and other duties and responsibilities set forth herein to process this Settlement and as requested by the Parties. The Settlement Administration Costs will be paid from the Total Settlement Fund including, if necessary, any such costs in excess of the amount represented by the Settlement Administrator as being the maximum costs

necessary to administer the settlement.  The Settlement Administration Costs are estimated to be $58,000.

39. "**Total Settlement Fund**" means the fund consisting of the maximum amount of Four Million Five Hundred Thousand Dollars and zero cents ($4,500,000.00) to be paid by Defendant in full satisfaction of all Released Class Claims, Released FLSA Claims, and claims encompassed by the General Release by Class Representatives, which includes all Individual Settlement Payments to Participating Class Members and FLSA Members (inclusive of the employee's share of taxes and withholdings with respect to the Wage Portion, as set forth in Section III, Paragraph 9, *infra*), the Incentive Awards, Settlement Administration Costs, the LWDA Payment, the Attorneys' Fees and Costs, and Employer Taxes.  In no event will Defendant be liable for more than the amount of the Total Settlement Fund.  The entire Total Settlement Fund will be fully paid out and no portion of it will revert or be retained by Defendant.

40. "**Workweeks**" means the number of weeks of employment in a Covered Position for each Class Member at any time during the period from July 7, 2011 to the date of Preliminary Approval. Workweeks are determined by calculating the number of days each Class Member worked in a Covered Position at any time during the period from July 7, 2011 to the date of Preliminary Approval, dividing by seven (7), and rounding up to the nearest whole number. All Class Members will be credited with at least one Workweek. The Workweeks calculated for a Class Member shall also be used as the Workweeks for such person as an FLSA Member.

41. "**Workweeks Dispute(s)**" means a written letter submitted by a Class Member to the Settlement Administrator, seeking to challenge the Workweeks credited to him or her based on Defendant's records.

42. "**Workweek Value**" means the value of each compensable Workweek, as determined by the formula set forth herein.

### III.  TERMS

Plaintiffs, on behalf of themselves, the Participating Class Member and the Participating FLSA Members, and Defendant, in consideration of the mutual covenants, promises, and undertakings set forth herein agree, subject to the Court's approval, as follows:

1. <u>Operative Complaint.</u> Pursuant to the separate stipulation of the Parties, and order of the Fresno County Superior Court granting the separate stipulation of the Parties, the Third Amended Class Action Complaint for Damages & Enforcement Under the California Labor Code § 2698, Et Seq. ("Third Amended Complaint" or "Operative Complaint") was filed in the Action, which, among other things, consolidated all named plaintiffs and their causes of action into one case.  For settlement purposes, the Parties acknowledge that the filing of the Third Amended Complaint seeks to consolidate or coordinate the Actions, and therefore the contemplated judgment to be entered based on this Settlement will act as res judicata upon final approval in all such lawsuits and as to all such claims and causes of action.  The Third Amended

Complaint shall be deemed the operative complaint for purposes of defining the scope of the Released Class Claims and Released FLSA Claims.

2.    <u>Conditional Stipulation to Class Certification and Approval of FLSA Settlement on Collective Basis for Settlement Purposes.</u> The Parties agree that the Court shall conditionally certify the Class and approve the FLSA Settlement on a collective basis, for settlement purposes only, consistent with this Agreement. The Parties agree that by agreeing to the limited certification of a class for settlement purposes, Defendant will not be considered to concede that class certification is proper in this or any other proceeding. If the Court does not approve the Settlement, this Agreement will be null and void. The Parties further agree that this Agreement, and specifically the certification for purposes of settlement, is not a waiver of Defendant's claimed right to enforce class, collective, and representative action waivers in any other circumstance.

3.    <u>Total Settlement Fund.</u> Defendant agrees to pay no more than the amount of the Total Settlement Fund, and only the amounts as provided for in this Agreement.  The Settlement Administrator shall notify Class Counsel if the Class List reflects that the workweeks worked by the Class Members exceed 440,000 as of May 31, 2017, in which case, Plaintiffs and Class Counsel will have the right to, at their discretion, mutually agree to nullify this agreement (and notice that said right of nullification is being exercised must be provided to Defendant's Counsel within ten (10) calendar days of Class Counsel receiving notice from the Settlement Administrator that the workweeks threshold stated in this Paragraph has been exceeded).

4.    <u>Funding of the Total Settlement Fund</u>.  Within thirty (30) calendar days after entry of  the Final Approval Order and Judgment, provided that no Class Member has submitted any valid and timely Notice of Objection (or all such objections have been withdrawn, or no objection, appeal of an order concerning an objection, or other challenge remains pending before any court), Defendant will make a one-time deposit of the Total Settlement Fund in the amount of Four Million Five Hundred Thousand Dollars and zero cents ($4,500,000.00) into a settlement account established by the Settlement Administrator, which shall be distributed according to the Court's Final Approval Order and Judgment.  If no documents seeking appeal, review, rehearing, reconsideration, vacatur, or any other action regarding the Agreement are filed, the funds will be distributed in accordance with the Agreement and Final Approval Order and Judgment, to: (a) all Participating Class Members and FLSA Members; (b) the LWDA; (c) Plaintiffs; and (d) Class Counsel within sixty-three (63) days after the entry of the Final Approval Order and Judgment. The Settlement Administrator will then also issue a payment to itself for Court-approved services performed in connection with the Settlement.

5.    <u>Attorneys' Fees and Costs.</u> Defendant agrees not to oppose or impede any application or motion by Class Counsel for attorneys' fees of not more than One Million Five Hundred Seventy Five Thousand Dollars and zero cents ($1,575,000.00) (which is thirty-five percent (35%) of the Total Settlement Fund), plus the reimbursement of costs and expenses associated with Class Counsel's litigation and settlement of the Action, not to exceed $65,000, both of which will be paid from the Total Settlement Fund provided that such application or

motion is consistent with this Agreement and Class Counsel has not breached and is in compliance with this Agreement or in the event of a breach, has not failed to cure the breach following a reasonable opportunity to do so. Any portion of the Attorneys' Fees and Costs not awarded to Class Counsel will become part of the Net Settlement Fund.  In the event the court awards less than the above-stated attorneys' fees and cost amounts, Class Counsel will have the right to file an appeal regarding only the court's award of attorneys' fees and cost amounts.  If said appeal is filed, Class Counsel will not seek, nor be entitled to, an award of attorneys' fees and costs/expenses in excess of the amounts stated in this section.

6.      Incentive Awards.

a.      In recognition of their effort and work in prosecuting the Action on behalf of Class Members, FLSA Members, State of California, and aggrieved employees, in addition to their Individual Settlement Payments, Defendant agrees not to oppose or impede any application or motion for the following Incentive Awards:

(1)      An amount not to exceed Seven Thousand Five Hundred Dollars and zero cents ($7,500.00) to be paid to Plaintiff Thomas Beltran;

(2)      An amount not to exceed Seven Thousand Five Hundred Dollars and zero cents ($7,500.00) to be paid to Plaintiff Mario Martinez;

(3)      An amount not to exceed Seven Thousand Five Hundred Dollars and zero cents ($7,500.00) to be paid to Plaintiff Maria Obeso Cota;

(4)      An amount not to exceed Seven Thousand Seven Hundred Dollars and zero cents ($7,500.00) to be paid to Plaintiff Alexander Solorio; and

(5)      An amount not to exceed Three Thousand Five Hundred Dollars and zero cents ($3,500.00) to be paid to Plaintiff Juan Rivera.

b.      The Incentive Awards will be paid from the Total Settlement Fund. Recipients of the Incentive Awards will be solely and legally responsible to pay any and all applicable taxes on the payments made pursuant to this section and will indemnify and hold Defendant harmless from any claim or liability for taxes, penalties, or interest arising as a result of the payments, provided that such application or motion is consistent with this Agreement and Plaintiffs have not breached and are in compliance with this Agreement or in the event of a breach, have not failed to cure the breach following a reasonable opportunity to do so.

7.      Settlement Administration Costs. The Settlement Administrator will be paid for the reasonable costs of administration of the Settlement and distribution of payments from the Total Settlement Fund. These costs, which will be paid from the Total Settlement Fund will include, *inter alia*, the required tax reporting on the Individual Settlement Payments, the issuing

of 1099 and W-2 IRS Forms, preparing and distributing the Notice Packet in accordance with the Court's orders, calculating and distributing the Total Settlement Fund, providing necessary reports and declarations, and posting the Final Approval Order and Judgment.

8. <u>Labor and Workforce Development Agency Payment ("LWDA Payment")</u>. Subject to court approval, the Parties agree that One Hundred Fifty Thousand Dollars and zero cents ($150,000.00) from the Total Settlement Fund will be designated for satisfaction of Plaintiffs' and Class Members' PAGA claims. Pursuant to PAGA, Seventy-Five Percent (75%), or One Hundred Twelve Thousand Five Hundred Dollars and zero cents ($112,500.00), of this sum will be paid to the LWDA; and Twenty-Five Percent (25%), or Thirty Seven Thousand Five Hundred Dollars and zero cents ($37,500.00), will be part of the Net Class Settlement Fund. In connection with Settlement approval, the LWDA shall be notified of the existence of the Settlement, as well as provided a copy of the Court's Final Approval Order Judgment and any order in the Action that provides for or denies an award of civil penalties under PAGA, as required by California Labor Code section 2699(l)(2)-(3).

9. <u>Individual Settlement Payment Calculations.</u>

a. The Net Settlement Fund will be fully distributed without any reversion to Defendant, as follows:

(1) Seventy-five percent (75%) of the Net Settlement Fund shall be allocated to the Class Settlement ("Net Class Settlement Fund"). Each Participating Class Member will be entitled to a *pro rata* share of the Net Class Settlement Fund, calculated based on the number of Workweeks worked by an individual Participating Class Member as compared to the number of Workweeks worked by all Participating Class Members, and this share shall be paid by way of one check ("Non-FLSA Payment"). The amount of each Participating Class Member's Non-FLSA Payment will be determined by multiplying the Net Class Settlement Fund by the fraction that has as its numerator the individual Workweeks of the Participating Class Member and has as its denominator the total number of Workweeks worked by all Participating Class Members.

(2) Twenty-five percent (25%) of the Net Settlement Fund shall be allocated to the FLSA Settlement ("Net FLSA Settlement Fund"). Each FLSA Member will be issued payment of a *pro rata* share of the Net FLSA Settlement Fund, calculated based on the number of Workweeks worked by an individual FLSA Member as compared to the number of Workweeks worked by all FLSA Members, and this share shall be paid by way of one check ("FLSA Payment"). The amount each FLSA Member's FLSA Payment will be determined by multiplying the Net FLSA Settlement Fund by the fraction that has as its numerator the

individual Workweeks of the FLSA Member and has as its denominator the total number of Workweeks worked by all FLSA Members.

      b.    Each Non-FLSA Payment and FLSA Payment will be allocated as follows, for tax purposes:

      (1)  Thirty-four percent (34.00%) wages ("Wage Portion") for which an IRS Form W-2 will be issued;

      (2)  Sixty-six percent (66.00%) for penalties, interest, consideration for the waiver of rights and benefits conferred by California Civil Code Section 1542, and non-wage damages and reimbursement of business expenses ("Non-Wage Portion") for which an IRS Form 1099 will be issued.

      c.    The Non-FLSA Payment and FLSA Payment will each be reduced by any required employee's share of payroll taxes and withholdings with respect to the Wage Portion. The Non-FLSA Payment will be mailed to Participating Class Members and the FLSA Payment will be mailed FLSA Members at their last known address that is on file with the Settlement Administrator, with a check stub providing a breakdown of the components of and deductions made from the Non-FLSA Payment and FLSA Payment, and if possible, the mailing will also include the applicable IRS Tax Forms (otherwise, the Settlement Administrator will issue these tax forms to the Participating Class Members and FLSA Members separately, in a timely fashion).

      d.    <u>No Credit Towards Benefit Plans.</u> The Individual Settlement Payments made to Participating Class Members and FLSA Members under this Settlement, as well as any other payments made pursuant to this Settlement, will not be utilized to calculate any benefits under any employee benefit plans to which any Participating Class Members and/or FLSA Members may be eligible, including, but not limited to profit-sharing plans, bonus plans, 401(k) plans, stock purchase plans, vacation plans, sick leave plans, PTO plans, or any other benefit plan. Rather, it is the Parties' intention that this Agreement will not affect any rights, contributions, or amounts to which any Participating Class Members and/or FLSA Members may be entitled under any employee benefit plans.

      10.    <u>Administration Process.</u> The Parties agree to cooperate in the administration of the Settlement and to make all reasonable efforts to control and minimize the costs and expenses incurred in the administration of the Settlement.

      11.    <u>Delivery of the Class List.</u> Within thirty (30) calendar days of Preliminary Approval, Defendant will provide the Class List to the Settlement Administrator and Class Counsel. The Class List shall only be used by the Settlement Administrator for the purpose of notifying the Class Members and FLSA Members of the Settlement and distributing the Total Settlement Fund. Notwithstanding the foregoing, if requested, Class Counsel shall receive the name and address of any Class Member(s) who requested to be excluded from the Class Settlement. This Paragraph

also does not apply to contact information already provided or required to be provided to Class Counsel, which also remains subject to any restrictions or conditions imposed by the Court.

12. <u>Notice by First-Class U.S. Mail.</u> Within ten (10) calendar days after receiving the Class List from Defendant, the Settlement Administrator will translate the Notice Packet into Spanish and mail an English and Spanish version of the Notice Packet to all Class Members and FLSA Members via regular First-Class U.S. Mail, using the most current, known mailing addresses identified in the Class List.

13. <u>Confirmation of Contact Information in the Class List.</u> Prior to mailing, the Settlement Administrator will perform a search based on the National Change of Address Database for information to update and correct for any known or identifiable address changes. Any Notice Packets returned to the Settlement Administrator as non-deliverable on or before the Response Deadline will be sent promptly via regular First-Class U.S. Mail to the forwarding address affixed thereto and the Settlement Administrator will indicate the date of such re-mailing on the Notice Packet. If no forwarding address is provided, the Settlement Administrator will promptly attempt to determine the correct address using a skip-trace, or other search using the name, address and/or Social Security Number of the Class Member or FLSA Member involved, and will then perform a single re-mailing. Those Class Members and FLSA Members who are re-mailed a Notice Packet, whether because of skip-trace or by request, will have their Response Deadline extended by fifteen (15) calendar days. Unless the Settlement Administrator receives a Notice Packet returned from the United States Postal Service as non-deliverable, the Notice Packet shall be deemed mailed and received by the Class Member or FLSA Member to whom it was sent five days after mailing.

14. <u>Notice to the Class Members and FLSA Members.</u> All Class Members will be mailed a Class Notice and all FLSA Members will be mailed a FLSA Notice.

a. The Class Notice will provide: (a) information regarding the nature of the Action; (b) a summary of the Settlement's principal terms; (c) the definition of who is a Class Member; (d) the total number of Workweeks credited to the Class Member; (e) that individual Class Member's estimated Non-FLSA Payment and the general formula for calculating Non-FLSA Payments; (f) the dates which comprise the Settled Period; (h) instructions on how to submit Requests for Exclusion or Notices of Objection; (i) the deadlines by which the Class Member must postmark or fax Requests for Exclusions, postmark or fax Workweeks Disputes, or postmark Notices of Objection; (j) the claims to be released, as set forth herein, as a part of the Class Settlement; and (k) the date on which the Court will hold a hearing to determine whether the Settlement should be granted final approval (the "Final Approval Hearing").

b. The FLSA Notice will provide: (a) information regarding the nature of the Action; (b) a summary of the Settlement's principal terms; (c) the definition of who is a FLSA Member; (d) the total number of Workweeks credited to the FLSA Member; (e) the FLSA Member's estimated FLSA Payment and the general formula for calculating FLSA Payments; (f) the dates which comprise the Settled Period; (g) the deadlines by which the FLSA Member must

postmark or fax Workweeks Disputes; (h) the claims to be released, as set forth herein, as a part of the FLSA Settlement; and (i) the date on which the Court will hold a hearing to determine whether the Settlement should be granted final approval (i.e., the Final Approval Hearing).

15.    Workweeks Disputes.    Class Members and FLSA Members may challenge the Workweeks credited to them based on Defendant's records in writing ("Workweeks Dispute"), which must: (a) contain a clear statement indicating that the individual wishes to dispute or challenge the Workweeks credited to him or her; (b) contain the name, address, and the last four digits of the Social Security number and/or the employee identification number of the individual (to enable the individual to be specifically identified by the Settlement Administrator within the Class List so that the proper records and information can be reviewed to resolve the dispute); (c) be signed by the individual; (d) attach any supporting documentation the individual wishes to rely upon; and (e) be mailed or faxed to the Settlement Administrator so that it is postmarked or fax-stamped by the Response Deadline.  The date of the postmark or fax-stamp on the submission of the Workweeks Dispute shall be the exclusive means used to determine whether the Workweeks Dispute was timely submitted.  Timely Workweeks Disputes will be resolved after a review of the information and documentation (if any) submitted by a Class Member or FLSA Member with their Workweeks Dispute and any information and records that are available to Defendant which pertain to the correct number of Workweeks to be credited to the disputing Class Member or FLSA Member.  Defendant's records, however, are presumed to be correct, unless a Class Member or FLSA Member proves otherwise with documentary evidence. The Settlement Administrator will evaluate the evidence submitted by the Class Member or FLSA Member and such information and records as Defendant will make available which pertain to the correct number of Workweeks to be credited to the disputing Class Member or FLSA Member, and will make the final decision as to the dispute. The decision shall be binding on the Class Member or FLSA Member and no additional rights of appeal shall exist.

16.    Request for Exclusion Procedures.  Any Class Member wishing to opt out from the Class Settlement must complete, sign, and postmark or fax the Request for Exclusion Form or a written letter (in conformity with the requirement set forth herein) to the Settlement Administrator within the Response Deadline. All Requests for Exclusion will be submitted to the Settlement Administrator, who will certify jointly to Class Counsel and Defendant's Counsel the Requests for Exclusion that were timely submitted. **As of the Effective Date, all Class Members who do not submit a valid and timely Request for Exclusion will be deemed Participating Class Members, will bound to the Class Settlement and any judgment entered by the Court based thereon, and will be entitled to receive a Non-FLSA Payment.**  A written letter Request for Exclusion must: (a) contain a clear statement indicating that the Class Member wishes to exclude him or herself from the Class Settlement; (b) contain the name of the Class Member and either the Class Member's last four digits of the Social Security number or his/her employee identification number (to enable the individual to be specifically identified by the Settlement Administrator within the Class List, to facilitate honoring the individual's request that they not be bound to the Class Settlement, if all other requirements are satisfied); (c) be signed by the Class Member; and (d) be postmarked or fax-stamped by the Response Deadline and returned to the Settlement Administrator at the specified address or fax telephone number.  Alternatively, a Class

Member may submit the Request for Exclusion Form that will be provided as a part of the Class Notice Packet, substantially in the form that is attached here to as "**Exhibit C**."  A Request for Exclusion will not be valid if it is not timely submitted, if it is not signed by the Class Member, or if it does not contain the name and address of the Class Member.  The date of the postmark on the return mailing envelope or fax stamp on the Request for Exclusion shall be the exclusive means used to determine whether the Request for Exclusion was timely submitted.  Any Class Member who submitted a valid and timely Request for Exclusion will not be bound by the terms of the Class Settlement, will not have any right to object, appeal, or comment thereon, and will not be entitled to receive an Individual Settlement Payment.  No later than twenty-five (25) calendar days after the Response Deadline the Settlement Administrator shall provide Class Counsel and counsel for Defendant with a final list of Class Members who have timely submitted Requests for Exclusion.

17.     Defective Submissions. If a Class Member's Request for Exclusion is defective as to the requirements listed herein, that Class Member will be given an opportunity to cure the defect(s). The Settlement Administrator will mail the Class Member a cure letter within three (3) business days of receiving the defective submission to advise the Class Member that his or her submission is defective and that the defect must be cured to render the Request for Exclusion valid. The Class Member will have until the later of: (a) the Response Deadline (and any applicable extended Response Deadline) or (b) fifteen (15) calendar days from the date of the cure letter, to postmark or fax a corrected Request for Exclusion. If the corrected Request for Exclusion is not postmarked or received by fax within that period, it will be deemed untimely.

18.     Revocation of Agreement (by Defendant). Defendant has the right to withdraw from the Settlement at any time prior to the Final Approval Hearing if seven and one-half percent (7.5%) or more of all Class Members submit valid and timely Requests for Exclusion; or (b) the Settlement is construed in such a fashion that Defendant is required to pay more than the Total Settlement Fund; or (c) the Court does not conditionally certify the Class and/or does not approve the release of Released Class Claims and/or Released FLSA Claims as set forth herein, or otherwise makes an order inconsistent with any of the terms of this Agreement; or (d) Plaintiffs or Class Counsel materially breach any term herein, or in the event of a material breach, have failed to cure the breach following a reasonable opportunity to do so. In the event of Defendant's withdrawal, Defendant will pay the costs already incurred as of the date of withdrawal by the Settlement Administrator.

19.     Binding Nature of Settlement.

        a.      As of the Effective Date, all Class Members who do not submit a valid and timely Request for Exclusion (i.e., Participating Class Members), will be bound to the Class Settlement and any judgment entered by the Court based thereon, and thereby forever release and discharge the Released Class Claims.

        b.      As of the Effective Date, only those FLSA Members who cash, deposit, or otherwise negotiate their FLSA Payment (i.e., Participating FLSA Members) will be deemed to

have consented to join an action under the FLSA and opted-in on a collective basis with respect to such claims, and will be bound to the FLSA Settlement and any judgment entered by the Court based thereon, and thereby forever release and discharge the Released FLSA Claims. To effectuate the FLSA Settlement, the FLSA Payment shall contain a statement, in English and Spanish, that clearly states that if the FLSA Member cashes, deposits, or otherwise negotiates his or her check, doing so will constitute consent and an opt-in to join the action under the FLSA claims, on a collective basis, and as a result, he or she will be bound to the FLSA Settlement.  This statement shall state:

> "By endorsing this check, I consent to join the lawsuit entitled *Beltran, et. al. v. Olam West Coast, Inc.*, Eastern District of California, Fresno Division, Case No. 1:18-cv-01676-LJO-SAB, pursuant to the provisions of the Fair Labor Standards Act ("FLSA"), 29 USC Section 216(b), for purposes of participating in the settlement. I further understand and agree that my cashing, depositing, or otherwise negotiating this check constitutes a full and complete release of any and all of Released FLSA Claims and that a copy of this check, may be filed with the Court, with personal information other than my name redacted, as evidence of my consent."

      c.    The Court's approval of this Settlement, and the Final Approval Order and Judgment, shall constitute approval of settlement and release of any Released FLSA Claim to the extent that the FLSA requires court or agency approval of any settlement or release.

      d.    The Settlement Administrator shall file a declaration with the Court providing a list of all Participating FLSA Members, by name only, as proof that those individuals have "opted-in" to the FLSA Settlement. The Settlement Administrator is authorized to and shall file copies of the cashed, deposited, and/or otherwise negotiated FLSA Payments with the Court, with private information redacted, excepting the Participating FLSA Members' names, if so ordered by the Court as a condition of approval of this Settlement.

      20.    <u>Objection Procedures.</u> Any Class Member wishing to object to the approval of the Class Settlement shall inform the Court and Settlement Administrator in writing of his or her intent to object by following the procedure set forth in the Class Notice  no later than the Response Deadline.  Class Members are forever barred from objecting to the Class Settlement if they do not file and serve written objections on or before the date that is twenty-one (21) court days before the date that the Court sets for the hearing of the motion for final approval of the Settlement (the "Final Approval Hearing"). The Notice of Objection must be signed by the Class Member and state: (a) the full name of the individual; (b) the dates of employment of the individual; (c) the last four digits of the individual's Social Security number and/or the employee identification number (to enable the individual to be specifically identified by the Settlement Administrator within the Class List, as being a Class Member); (d) the basis for the objection; and (e) if the individual intends to appear at the Final Approval Hearing.  Class Members who fail to make objections in the manner specified above shall be deemed to have waived any objections and shall be foreclosed from making any objections (whether by appeal or otherwise) to the Class

Settlement.  Class Members who submit a timely Notice of Objection will have a right to appear at the Final Approval Hearing in order to have their objections heard by the Court.  Any Class Member who submits a valid and timely Request for Exclusion shall have no right to object to the Class Settlement.  At no time shall any of the Parties or their counsel seek to solicit or otherwise encourage the submission of objections to the Settlement or appeal from the contemplated Final Approval Order and Judgment.  Class Counsel shall not represent any Class Member(s) with respect to any such objections.

21.    California Labor Code Section 206.5.   The Parties acknowledge and agree that California Labor Code section 206.5 is not in any way violated by the settlement of this matter. Subdivision (a) of that section provides in pertinent part as follows:

> "An employer shall not require the execution of a release of a claim or right on account of wages due, or to become due, or made as an advance on wages to be earned, unless payment of those wages has been made."

22.    Certification Reports Regarding Individual Settlement Payment Calculations.   The Settlement Administrator will provide Defendant's counsel and Class Counsel a weekly report that certifies: (a) the number of Class Members who have submitted valid Requests for Exclusion; and (b) whether any Class Member or FLSA Member has submitted a dispute of the Workweeks credited to them. Additionally, the Settlement Administrator will provide to counsel for both Parties any updated reports regarding the administration of the Agreement as needed or requested.

23.    Cancellation of Individual Settlement Payments.  Any checks issued by the Settlement Administrator to a Participating Class Member for his or her Non-FLSA Payment and to an FLSA Member for his or her FLSA Payment will be negotiable for one hundred and eighty (180) calendar days, after which they will be cancelled. Funds associated with said cancelled checks, will be transmitted to the United Way, a non-profit organization, for the local chapters in Fresno County, Kings County, Santa Clara County, and Colusa County, which are the local chapters of the counties in which Defendant's Fresno, Firebaugh, Hanford, Lemoore, Gilroy, and/or Williams facilities in California are located, on a pro rata basis based upon the number of Class Members that worked or are working in each said county, as determined based on the Work Locations indicated in the Class List.

24.    Certification of Completion. Upon completion of administration of the Settlement, the Settlement Administrator will provide a written declaration under oath to certify such completion to the Court and counsel for all Parties.

25.    Settlement Administrator's Administration of Taxes.  The Settlement Administrator will be responsible for issuing to Plaintiff, Participating Class Members, Participating FLSA Members, and Class Counsel any W-2, 1099, or other tax forms as may be required by law for all amounts paid pursuant to this Settlement. The Settlement Administrator will also be responsible for forwarding all payroll taxes and penalties to the appropriate

government authorities.

26.  <u>Tax Liability</u>. Defendant, Defendant's Counsel, Plaintiffs, and Class Counsel make no representation as to the tax treatment or legal effect of the payments called for hereunder, and Plaintiffs, Participating Class Members, and FLSA Members are not relying on any statement, representation, or calculation by Defendant, Defendant's Counsel, Plaintiffs, Class Counsel, or by the Settlement Administrator in this regard.  Plaintiffs, Participating Class Members, and FLSA Members understand and agree that, except for payment of the employer's portion of any payroll taxes, they will be solely responsible for the payment of any taxes and penalties assessed on the payments described herein.

27.  <u>Circular 230 Disclaimer.</u> EACH PARTY TO THIS AGREEMENT (FOR PURPOSES OF THIS SECTION, THE "ACKNOWLEDGING PARTY" AND EACH PARTY TO THIS AGREEMENT OTHER THAN THE ACKNOWLEDGING PARTY, AN "OTHER PARTY") ACKNOWLEDGES AND AGREES THAT (1) NO PROVISION OF THIS AGREEMENT, AND NO WRITTEN COMMUNICATION OR DISCLOSURE BETWEEN OR AMONG THE PARTIES OR THEIR ATTORNEYS AND OTHER ADVISERS, IS OR WAS INTENDED TO BE, NOR WILL ANY SUCH COMMUNICATION OR DISCLOSURE CONSTITUTE OR BE CONSTRUED OR BE RELIED UPON AS, TAX ADVICE WITHIN THE MEANING OF UNITED STATES TREASURY DEPARTMENT CIRCULAR 230 (31 CFR PART 10, AS AMENDED); (2) THE ACKNOWLEDGING PARTY (A) HAS RELIED EXCLUSIVELY UPON HIS, HER, OR ITS OWN, INDEPENDENT LEGAL AND TAX COUNSEL FOR ADVICE (INCLUDING TAX ADVICE) IN CONNECTION WITH THIS AGREEMENT, (B) HAS NOT ENTERED INTO THIS AGREEMENT BASED UPON THE RECOMMENDATION OF ANY OTHER PARTY OR ANY ATTORNEY OR ADVISOR TO ANY OTHER PARTY, AND (C) IS NOT ENTITLED TO RELY UPON ANY COMMUNICATION OR DISCLOSURE BY ANY ATTORNEY OR ADVISER TO ANY OTHER PARTY TO AVOID ANY TAX PENALTY THAT MAY BE IMPOSED ON THE ACKNOWLEDGING PARTY; AND (3) NO ATTORNEY OR ADVISER TO ANY OTHER PARTY HAS IMPOSED ANY LIMITATION THAT PROTECTS THE CONFIDENTIALITY OF ANY SUCH ATTORNEY'S OR ADVISER'S TAX STRATEGIES (REGARDLESS OF WHETHER SUCH LIMITATION IS LEGALLY BINDING) UPON DISCLOSURE BY THE ACKNOWLEDGING PARTY OF THE TAX TREATMENT OR TAX STRUCTURE OF ANY TRANSACTION, INCLUDING ANY TRANSACTION CONTEMPLATED BY THIS AGREEMENT.

28.  <u>No Prior Assignments.</u> The Parties and their counsel represent, covenant, and warrant that they have not directly or indirectly assigned, transferred, encumbered, or purported to assign, transfer, or encumber to any person or entity any portion of any liability, claim, demand, action, cause of action or right herein released and discharged.

29.  <u>Nullification of Agreement.</u> In the event that: (a) the Court does not finally approve the Settlement as provided herein; or (b) the Settlement does not become final for any other reason, then this Agreement, with the exception of Sections 50 (no admission of liability) and 51 (Communications about Settlement), and any documents generated to bring it into effect, will be null and void, and all amounts deposited into the Total Settlement Fund will be returned to Defendant. Any order or judgment entered by the Court in furtherance of this Agreement will likewise be treated as void from the beginning. In the event of nullification of the Settlement,

Defendant will pay the costs already incurred as of the date of nullification by the Settlement Administrator.

30.     <u>Preliminary Approval Hearing.</u> Plaintiffs will obtain a hearing before the Court to request Preliminary Approval of the Agreement, and the entry of a Preliminary Approval Order that: (a) conditionally certifies the Class for settlement purposes only, (b) preliminarily approves the Agreement, and (c) sets a date for a Final Approval Hearing.  The Preliminary Approval Order will provide for the Notice Packet to be sent to all Class Members and FLSA Members as specified herein. In conjunction with the Preliminary Approval Hearing, Plaintiffs will submit this Agreement, which sets forth the terms of this Settlement, and will include the proposed Notice Packet, i.e., the proposed Class Notice, , Request for Exclusion Form, FLSA Notice, and the Mailing Envelope, attached as "**<u>Exhibit A</u>**," "**<u>Exhibit B</u>**," "**<u>Exhibit C</u>**," and "**<u>Exhibit D</u>,**" respectively. Class Counsel will be responsible for drafting all documents necessary to obtain Preliminary Approval, with review by, and in consultation with, Defendant's Counsel.

31.     <u>Final Approval Hearing and Entry of Judgment.</u> Upon expiration of the deadlines to postmark Requests for Exclusion or objections with respect to the Class Settlement, and with the Court's permission, a Final Approval Hearing will be conducted to determine whether to grant final approval of the Agreement along with the amounts properly payable for: (a) Individual Settlement Payments; (b) the LWDA Payment; (c) the Attorneys' Fees and Costs; (d) the Incentive Awards; and (e) all Settlement Administration Costs. Class Counsel will be responsible for drafting all documents necessary to obtain final approval. Class Counsel will also be responsible for drafting the application for Attorneys' Fees and Costs and Incentive Awards application to be heard at the Final Approval Hearing.

32.     <u>Judgment and Continued Jurisdiction.</u> Upon final approval of the Settlement by the Court or after the Final Approval Hearing, the Parties will present the Final Approval Order and Judgment to the Court for its approval. After entry of the Final Approval Order and Judgment, the Court will have continuing jurisdiction until all payments and obligations provided for in the Settlement have been fully executed solely for the purposes of addressing: (a) the interpretation and enforcement of the terms of the Settlement, (b) Settlement administration matters, and (c) such post-judgment matters as may be appropriate under court rules or as set forth in this Settlement.

33.     <u>Release by Plaintiffs.</u> Upon the Effective Date, Plaintiffs shall release and forever discharge the Released Parties in accordance with the General Release by Class Representatives (as defined in Section II, Paragraph 20, *infra*) and, in addition, shall cause to be dismissed every state court action described in Section II, Paragraph 1, above, for which they are a named plaintiff.

34.     <u>Exhibits Incorporated by Reference.</u> The terms of this Settlement include the terms set forth in any attached Exhibits, which are incorporated by this reference as though fully set forth herein. Any Exhibits to this Settlement are an integral part of the Settlement.

35. <u>Entire Agreement.</u> This Agreement and any attached Exhibits constitute the entirety of the Parties' settlement terms. No other prior or contemporaneous written or oral agreements may be deemed binding on the Parties. Except as otherwise provided herein, each party shall bear its own costs and attorneys' fees.

36. <u>Amendment or Modification.</u> This Agreement may be amended or modified only by a written instrument, to be signed either by authorized representatives of all Parties, their respective successors-in-interest, or their counsel for the Parties, subject to approval by the Court.

37. <u>Authorization to Enter into Agreement.</u> Counsel for all Parties warrant and represent they are expressly authorized by the Parties whom they represent to negotiate this Agreement and to take all appropriate action required or permitted to be taken by such Parties pursuant to this Agreement to effectuate its terms and to execute any other documents required to effectuate the terms of this Agreement.

38. <u>Use of Best Efforts.</u> The Parties and their counsel will cooperate with each other and use their best efforts to effect and implement all terms and conditions of the Settlement and to exercise their best efforts to accomplish the foregoing terms and conditions of the Settlement. If the Parties are unable to reach agreement on the form or content of any document needed to implement the Settlement or on any supplemental provisions that may become necessary to effectuate the terms of this Settlement, the Parties may seek the assistance of the Court to resolve such disagreement.

39. <u>Binding on Successors and Assigns.</u> This Agreement will be binding upon, and inure to the benefit of, the successors or assigns of the Parties hereto, as previously defined.

40. <u>California Law Governs.</u> All terms of this Agreement and Exhibits hereto will be governed by and interpreted according to the laws of the State of California.

41. <u>Execution and Counterparts.</u> This Agreement is subject only to the execution of all Parties. However, the Agreement may be executed in one or more counterparts. All executed counterparts and each of them, including facsimile and scanned copies of the signature page, will be deemed to be one and the same instrument provided that counsel for the Parties will exchange among themselves original signed counterparts.

42. <u>Acknowledgement that the Settlement is Fair and Reasonable.</u> The Parties believe this Agreement is a fair, adequate, and reasonable settlement of the Action and have arrived at this Settlement after arm's-length negotiations and in the context of adversarial litigation, taking into account all relevant factors, present and potential. The Parties further acknowledge that they have had an opportunity to consult with their counsel regarding the fairness and reasonableness of this Settlement.

///

43.   No Concession of Liability, Fault, Wrongdoing, Etc. Defendant and the Released Parties deny any and all claims asserted, or that could have been asserted, on behalf of the Class Member and/or FLSA Members, and deny all wrongdoing whatsoever. Regardless of whether the Agreement is finally approved, neither the Agreement nor any document statement proceeding, or conduct related to this Agreement nor any reports or accounts thereof, shall in any event be an admission or concession by Defendant of any liability, fault, wrongdoing, omission, damage, or suitability of a case for class treatment.

44.   Publicity. The Parties and their counsel will not provide statements to the press or media about the Settlement, and will be able to provide information to Class Members and FLSA Members about their rights under the Settlement and the Court's orders regarding the Settlement, upon request.  The Parties and their counsel otherwise agree to keep the Settlement, the Notice Packet, and their Settlement negotiations confidential and will not disclose that information to any third party (including the press), except as set forth herein or unless the Parties otherwise agree in writing. For purposes of this section, third parties shall not include Class Members and/or FLSA Members or attorneys representing them. Nothing herein is intended to prohibit a Class Member and Class Counsel discussing this matter and this Agreement. Notwithstanding the foregoing, Defendant shall have the right to disclose the terms of the Settlement for accounting or public filing purposes or to otherwise comply with its reporting duties as a public company.

45.   Data and Documents Produced by Defendant. Plaintiffs and Class Counsel agree to keep confidential all data and documents produced by Defendant as "confidential" during discovery as well as information and documents provided informally for mediation purposes which are subject to mediation and settlement privileges.

46.   Full Payment of Attorneys' Fees and Costs. Plaintiffs and their counsel understand and agree that any attorneys' fees and cost payments made under this Settlement will be the full, final, and complete payment of all attorneys' fees and costs related to the Action, including all attorneys' fees and costs arising from or relating to the representation of Plaintiffs, the Class Members, the FLSA Members, or any other attorneys' fees and costs associated with the investigation, discovery, and/or prosecution of the claims released under the Settlement. Plaintiffs and their counsel will release any claim they may have against Defendant for attorneys' fees or costs arising from or relating to the representation of Plaintiffs, Class Members, Participating FLSA Members, or any other attorneys' fees and costs associated with the investigation, discovery, and/or prosecution of the claims released by the Settlement and the Action.  Defendant's sole obligations to Class Counsel and the Settlement Administrator are set forth in this Settlement. Class Counsel shall not seek to recover any fees or costs awarded in excess of the terms in this Settlement; however, Plaintiffs or Class Counsel may appeal any reduction in the Attorneys' Fees and Costs below the amount they request from the Court.

47.   Invalidity and Severability of Any Provision.  If the Court declares any provision invalid, it is the intention of the Parties that the invalid provision be deemed severable from the Agreement, with the remainder of the Agreement given full force and effect.

48.    <u>Waiver of Certain Appeals.</u> The Parties agree to waive appeals and to stipulate conditionally to class certification for purposes of this Settlement only; except, however, that Plaintiffs or Class Counsel may appeal any reduction in the Attorneys' Fees and Costs and the Incentive Awards below the amount they request from the Court, and either party may appeal any court order that materially alters the Agreement's terms.

49.    <u>Waiver.</u> No waiver of any condition or covenant contained in this Agreement or failure to exercise a right or remedy by any of the Parties hereto will be considered to imply or constitute a further waiver by such party of the same or any other condition, covenant, right or remedy.

50.    <u>Mutual Preparation.</u> The Parties have had a full opportunity to negotiate the terms and conditions of this Agreement. Accordingly, this Agreement shall be deemed to be mutually prepared by the Parties.  It shall not be construed more strictly against one party than another merely by virtue of the fact that any part of it may have been prepared by counsel for one of the Parties, because, it being recognized that, because of the arms-length negotiations between the Parties, all Parties have contributed to the preparation of this Agreement.

51.    <u>Representation by Counsel.</u> The Parties acknowledge that they have been represented by counsel throughout all negotiations that preceded the execution of this Agreement, and that this Agreement has been executed with the consent and advice of counsel and reviewed in full. Further, Plaintiffs and Class Counsel warrant and represent that there are no liens against any proceeds to be paid under the Agreement.

52.    <u>All Terms Subject to Final Court Approval.</u> All amounts and procedures described in this Agreement herein will be subject to final Court approval.

53.    <u>Cooperation and Execution of Necessary Documents.</u>  All Parties will cooperate in good faith and execute all documents to the extent reasonably necessary to effectuate the terms of this Agreement.

54.    <u>Binding Agreement.</u> The Parties warrant that they understand and have full authority to enter into this Settlement, and further intend that this Agreement will be fully enforceable and binding on all parties, and agree that it will be admissible and subject to disclosure in any proceeding to enforce its terms, notwithstanding any mediation confidentiality provisions that otherwise might apply under federal or state law.

55.    <u>Notice to Parties.</u> Whenever this Settlement requires or contemplates that one party or the Settlement Administrator shall or may give notice to another, notice shall be provided by e-mail, facsimile, and/or next-day (excluding Sundays and Court holidays) express delivery service as follows:

- If to Plaintiffs and/or Class Counsel, then to:

| | | |
|---|---|---|
| Edwin Aiwazian, Esq. | Joseph Lavi, Esq. | Sahag Majarian II, Esq. |
| Lawyers *for* Justice, PC | Lavi & Ebrahimian, LLP | Law Offices of Sahag |
| 410 Arden Ave., | 8889 W. Olympic Blvd. | Majarian II |
| Suite 203 | Suite 200 | 18250 Ventura Blvd. |
| Glendale, CA 91203 | Beverly Hills, CA 90211 | Tarzana, CA 91356 |
| Phone: (818) 265-1020 | Phone: (310) 432-0000 | Phone: (818) 609-0807 |
| Fax: (818) 265-1021 | Fax: (310) 432-0001 | Fax: (818) 609-0892 |
| E-mail: | E-mail: | E-mail: |
| edwin@lfjpc.com | jlavi@lelawfirm.com | sahagii@aol.com |

• If to Defendant and/or Defendant's Counsel, then to:

Susan K. Hatmaker, Esq.
Hatmaker Law Group
A Professional Corporation
7522 North Colonial Avenue, Suite 105
Fresno, California 93711
Phone: (559) 374-0077
Fax: (559) 374-0078
E-mail:
susan@hatmakerlaw.com

## SIGNATURES

### READ CAREFULLY BEFORE SIGNING

**IT IS SO AGREED:**

Dated: April 01, 2020 _____

**PLAINTIFF**

Thomas Beltran

Dated: _____

**PLAINTIFF**

_____
Mario Martinez

Dated: _____

**PLAINTIFF**

_____
Maria Obeso Cota

24

| Edwin Aiwazian, Esq. | Joseph Lavi, Esq. | Sahag Majarian II, Esq. |
|---|---|---|
| Lawyers *for* Justice, PC | Lavi & Ebrahimian, LLP | Law Offices of Sahag |
| 410 Arden Ave., | 8889 W. Olympic Blvd. | Majarian II |
| Suite 203 | Suite 200 | 18250 Ventura Blvd. |
| Glendale, CA 91203 | Beverly Hills, CA 90211 | Tarzana, CA 91356 |
| Phone: (818) 265-1020 | Phone: (310) 432-0000 | Phone: (818) 609-0807 |
| Fax: (818) 265-1021 | Fax: (310) 432-0001 | Fax: (818) 609-0892 |
| E-mail: | E-mail: | E-mail: |
| edwin@lfjpc.com | jlavi@lelawfirm.com | sahagii@aol.com |

- If to Defendant and/or Defendant's Counsel, then to:

Susan K. Hatmaker, Esq.
Hatmaker Law Group
A Professional Corporation
7522 North Colonial Avenue, Suite 105
Fresno, California 93711
Phone: (559) 374-0077
Fax: (559) 374-0078
E-mail:
susan@hatmakerlaw.com

**SIGNATURES**

**READ CAREFULLY BEFORE SIGNING**

**IT IS SO AGREED:**

Dated: _____     **PLAINTIFF**


_____
Thomas Beltran

Dated: _April 01, 2020_____     **PLAINTIFF**



Mario Martinez

Dated: _____     **PLAINTIFF**


_____
Maria Obeso Cota

24

| | | |
|---|---|---|
| Edwin Aiwazian, Esq. | Joseph Lavi, Esq. | Sahag Majarian II, Esq. |
| Lawyers *for* Justice, PC | Lavi & Ebrahimian, LLP | Law Offices of Sahag |
| 410 Arden Ave., | 8889 W. Olympic Blvd. | Majarian II |
| Suite 203 | Suite 200 | 18250 Ventura Blvd. |
| Glendale, CA 91203 | Beverly Hills, CA 90211 | Tarzana, CA 91356 |
| Phone: (818) 265-1020 | Phone: (310) 432-0000 | Phone: (818) 609-0807 |
| Fax: (818) 265-1021 | Fax: (310) 432-0001 | Fax: (818) 609-0892 |
| E-mail: | E-mail: | E-mail: |
| edwin@lfjpc.com | jlavi@lelawfirm.com | sahagii@aol.com |

- If to Defendant and/or Defendant's Counsel, then to:

Susan K. Hatmaker, Esq.
Hatmaker Law Group
A Professional Corporation
7522 North Colonial Avenue, Suite 105
Fresno, California 93711
Phone: (559) 374-0077
Fax: (559) 374-0078
E-mail:
susan@hatmakerlaw.com

## SIGNATURES

### READ CAREFULLY BEFORE SIGNING

**IT IS SO AGREED:**

Dated: _____    **PLAINTIFF**


_____
Thomas Beltran

Dated: _____    **PLAINTIFF**


_____
Mario Martinez

Dated: _____April 1, 2020_____    **PLAINTIFF**

*Maria Obeso*
_____
Maria Obeso Cota

24

Dated: April 1, 2020

**PLAINTIFF**

Juan Rivera

Dated: _____

**PLAINTIFF**

_____

Alexander Solorio

Dated: _____

**DEFENDANT OLAM WEST COAST, INC.**

By: _____
Name:
Title:
OLAM WEST COAST, INC., erroneously
sued herein as OLAM SPICES AND
VEGETABLES, INC. and erroneously
sued herein Olam Spices and
Vegetables Ingredients

**APPROVED AS TO FORM:**

DATED: _____

HATMAKER LAW GROUP, A Professional Corporation

By: _____
SUSAN K. HATMAKER
Attorney for Defendant
OLAM WEST COAST, INC., erroneously sued herein as
OLAM SPICES AND VEGETABLES, INC. and erroneously
sued herein OLAM SPICES AND VEGETABLES INGREDIENTS

DATED: April 2, 2020

LAWYERS *FOR* JUSTICE, PC

By: _____
EDWIN AIWAZIAN
Attorney for Plaintiffs
THOMAS BELTRAN, MARIO MARTINEZ, and JUAN RIVERA

25

DocuSign Envelope ID: E4C55E04-BD97-4B48-BA3B-26DF622DD500

Dated: _____          **PLAINTIFF**


_____

Juan Rivera

Dated: _April 1, 2020_____          **PLAINTIFF**

*Alexander Solorio*

_____

Alexander Solorio

Dated: _____          **DEFENDANT OLAM WEST COAST, INC.**


By:_____

Name:

Title:

OLAM WEST COAST, INC., erroneously sued herein as OLAM SPICES AND VEGETABLES, INC. and erroneously sued herein Olam Spices and Vegetables Ingredients

**APPROVED AS TO FORM:**

DATED: _____          HATMAKER LAW GROUP, A Professional Corporation


By: _____

SUSAN K. HATMAKER

Attorney for Defendant

OLAM WEST COAST, INC., erroneously sued herein as

OLAM SPICES AND VEGETABLES, INC. and erroneously

sued herein OLAM SPICES AND VEGETABLES INGREDIENTS

DATED: _____          LAWYERS *FOR* JUSTICE, PC


By: _____

EDWIN AIWAZIAN

Attorney for Plaintiffs

THOMAS BELTRAN, MARIO MARTINEZ, and JUAN RIVERA

25

Dated: _____   **PLAINTIFF**

_____
Juan Rivera

Dated: _____   **PLAINTIFF**

_____
Alexander Solorio

Dated: __April 2, 2020_____   **DEFENDANT OLAM WEST COAST, INC.**

By: _____
Name: GREGORY C. ESTEP
Title: PRESIDENT
OLAM WEST COAST, INC., erroneously
sued herein as OLAM SPICES AND
VEGETABLES, INC. and erroneously
sued herein Olam Spices and
Vegetables Ingredients

**APPROVED AS TO FORM:**

DATED: __April 3, 2020_____   HATMAKER LAW GROUP, A Professional Corporation

By: _____
SUSAN K. HATMAKER
Attorney for Defendant
OLAM WEST COAST, INC., erroneously sued herein as
OLAM SPICES AND VEGETABLES, INC. and erroneously
sued herein OLAM SPICES AND VEGETABLES INGREDIENTS

DATED: _____   LAWYERS *FOR* JUSTICE, PC

By: _____
EDWIN AIWAZIAN
Attorney for Plaintiffs
THOMAS BELTRAN, MARIO MARTINEZ, and JUAN RIVERA

25

DATED: ___April 1, 2020___          LAVI & EBRAHIMIAN, LLP

                                    By: _Joseph Lavi_____
                                    JOSEPH LAVI
                                    **Attorney for Plaintiffs**
                                    **MARIA OBESO COTA and ALEXANDER SOLORIO**


DATED: ___April 2, 2020___          LAW OFFICES OF SAHAG MAJARIAN, II

                                    By: _Sahag Majarian, II_____
                                    Sahag Majarian, II
                                    **Attorney for Plaintiffs**
                                    **MARIA OBESO COTA and ALEXANDER SOLORIO**

# EXHIBIT A

*Thomas Beltran, et al. v. Olam Spices and Vegetables, Inc.*
United States District Court, Eastern District of California, Fresno Division, Case No. 1:18-cv-01676-LJO-SAB

### NOTICE OF CLASS ACTION SETTLEMENT

*The Court has approved this Notice. This is not a solicitation from a lawyer. You are not being sued. This notice affects your rights. Please read it carefully.*

**If you were employed at Olam West Coast, Inc.'s ("Olam" or "Defendant") Fresno, Firebaugh, Hanford, Lemoore, Gilroy, and/or Williams locations in California in one or more positions which were classified as non-exempt and/or hourly non-exempt at any time during the period from July 7, 2011 to [the date on which the Court grants preliminary approval of the Settlement] ("Class Members"), you may be eligible to receive payment from a proposed class action settlement.**

- A proposed class and collective action settlement ("**Settlement**") has been reached in this case that resolves in one lawsuit, the claims initially filed in four lawsuits alleging that Olam violated the federal Fair Labor Standards Act and California wage-and-hour laws and thereby engaged in unfair business practices under the California Business and Professions Code. The litigation involves four separate actions ("Settled Actions"): *Thomas Beltran, et al. v. Olam West Coast, Inc.* filed in the Fresno County Superior Court, Case No. 15CECG02993 ("*Beltran* Action"); *Maria Claudia Obeso Cota v. Olam West Coast, Inc.* filed in Fresno County Superior Court, Case No. 16CECG00081; *Alexander Solorio v. Olam West Coast, Inc.* filed in Fresno County Superior Court, Case No. 16CECG00513; and *Juan Rivera, et al. v. Olam West Coast, Inc.*, filed in Santa Clara Superior Court, Case No. 16CV300758.  On April 11, 2018 a Third Amended Class Action Complaint for Damages & Enforcement Under the California Labor Code § 2698, Et Seq. ("**Third Amended Complaint**"), consolidating the plaintiffs and allegations in the Settled Actions into one case, was filed in the *Beltran* Action.  The settlement reached between the parties in the Settled Actions, to resolve the Settled Actions and Released Claims, is the subject of this notice.

- The *Beltran* Action was removed to Federal Court as *Thomas Beltran, et al. v. Olam Spices and Vegetables, Inc.*, Eastern District of California, Fresno Division, Case No. 1:18-cv-01676-LJO-SAB.

- Defendant denies that it did anything wrong and argues that it has complied with all employment laws. Defendant entered into this Settlement only to resolve the Settled Actions.

Honorable Judge Stanley A. Boone of the United States District Court for the Eastern District of California ("Court") has preliminarily approved the Settlement. However, payments will not be distributed unless the Court grants final approval of the Settlement and then only in the manner and amount as provided for in the Settlement as finally approved.

**This Notice discusses the Class Settlement. You are also being provided with a separate notice about the FLSA Settlement. It is important to read both notices.**

---

**1. If I decide to participate in the Class Settlement and want to receive payment under the Class Settlement, what must I do?**

---

You do not have to do anything to receive payment for the Class Settlement.  All Class Members will automatically be included in the Class Settlement as long as they do not affirmatively "opt out" of the Class Settlement.

---

**2. Why did I get this Notice of Class Action Settlement?**

---

Olam West Coast, Inc.'s records show you are or were employed at its Fresno, Firebaugh, Hanford, Lemoore, Gilroy, and/or Williams locations in California in one or more positions which were classified as non-exempt and/or hourly non-exempt at some time during the period from July 7, 2011 to [date of Preliminary Approval] ("**Settled Period**") and are thus a Class Member.

*Questions? Call [Settlement Administrator's toll-free number]*

The Settlement was preliminarily approved in the lawsuit pending in the United States District Court for the Eastern District of California, Fresno Division, entitled *Thomas Beltran, et al. v. Olam Spices and Vegetables, Inc.*, Case No. 1:18-cv-01676-LJO-SAB. The plaintiffs are Thomas Beltran, Mario Martinez, Maria Claudia Obeso Cota, Alexander Solorio, and Juan Rivera (collectively, "**Plaintiffs**").  The judge in the case is the Honorable Stanley A. Boone.

The lawsuit alleges, among other things, that defendant Olam West Coast, Inc.  violated the California Labor Code and Industrial Welfare Commission Wage Orders by failing to pay wages for all time worked, failing to pay minimum and overtime wages in the amount required by law, failing to provide meal or rest periods as required by law, not paying final wages in a timely manner upon the end of employment, not paying all wages due during employment, not providing accurate itemized wage payment statements, not maintaining adequate payroll records, and not reimbursing all business expenses incurred, and that Olam thereby engaged in conduct constituting unfair business practices under California Business and Professions Code section 17200 *et seq.* and conduct that gives rise to civil penalties recoverable under the California Labor Code Private Attorneys General Act ("**PAGA**").

In the lawsuit Plaintiffs are pursuing class claims on behalf of the Class Members. In a class action, one or more persons who are identified as the plaintiffs file the case on behalf of themselves and other employees or former employees who have similar claims. All of these employees and former employees together make up the class and are class members for whose benefit the class action is brought.  When a class is certified by the court in the class action, the court will resolve the issues for all class members except for those who exclude themselves from the class.

| 3. What is the Class Settlement? |
|---|

"Class Settlement" means the settlement and resolution of the Released Class Claims, which will be binding on all Participating Class Members.  (See Question # 7 for more information).

Those Class Members who do not submit valid and timely Requests for Exclusion (collectively, "Settlement Class" and individually, "Participating Class Member(s)") will be bound by the Class Settlement.  (See Question #9, for more information).

| 4. Why is there a Settlement? |
|---|

After the exchange of relevant information and evidence, the parties attended private mediation to attempt to informally resolve the cases. The parties participated in mediation with mediator Hon. Edward Infante, Ret., a retired federal magistrate judge. The parties were eventually able to negotiate a settlement of the cases.

The Settlement has been modified after further discussions and the present Settlement is set forth in the Third Amended Class Action and Collective Action Settlement and Release Agreement ("**Settlement**" or "**Settlement Agreement**").

The Settlement does not mean that Olam has agreed it did anything wrong. Olam has denied, and continues to deny, the factual and legal allegations in the cases and believes that it has complied with the law.  By agreeing to settle, Olam is not admitting liability on any of the factual allegations or claims in the cases.  Olam has agreed to settle the cases as part of a compromise with Plaintiffs.

The Class Representatives and their lawyers ("**Class Counsel**") have investigated and researched the facts and circumstances underlying the issues raised in the cases and the applicable law, and while Class Counsel believe that the claims alleged in the lawsuits have merit, Class Counsel also recognize that the risk and expense of continued litigation justify settlement and further believe, based on the foregoing, that the proposed settlement is fair, adequate, reasonable, and in the best interests of Class Members. In reaching settlement, the parties have considered, among other factors, the costs and risks involved in going all the way to trial.

*Questions?  Call [Settlement Administrator's toll-free number]*

2

**THE SETTLEMENT BENEFITS – WHAT YOU RECEIVE**

---

| **5.   What are the Settlement terms?** |
| --- |

Plaintiffs and Olam have agreed to resolve the Settled Actions and Released Class Claims (see Question #7, below). As a part of the Settlement, which includes both the Class Settlement and FLSA Settlement (described in a separate notice), Olam has agreed to pay the amount of $4,500,000 ("**Total Settlement Amount**").  The following amounts will be paid from the Total Settlement Amount, subject to approval by the Court: (1) the amount of $37,000.00  to Plaintiffs for their services as the Class Representatives ("**Class Representative Incentive Awards**"); (2) the amount of up to $1,575,000 in attorneys' fees and the amount of up to $65,000 in litigation costs and expenses to Class Counsel ("**Attorneys' Fees and Costs**"); (3) the amount of $112,500.00 to the California Labor and Workforce Development Agency ("**LWDA**") for the LWDA's 75% portion of the amount allocated to PAGA penalties (the total amount allocated toward PAGA penalties is $150,000); (4) reasonable Settlement Administrator's fees and expenses, which are currently estimated not to exceed $58,000 ("**Settlement Administration Costs**"); and (5) employer's share of payroll taxes and contributions with respect to the Wage Portion, which are estimated to be between $117,000 to $168,000 (with the final amount depending on the final amount available for distribution to the Class and applicable tax rates)("**Employer Taxes**").

The Total Settlement Amount minus the Class Representative Incentive Awards, Attorneys' Fees and Costs, the payment to the LWDA, the Settlement Administration Costs, and the Employer Taxes is referred to as the "**Net Settlement Fund.**". Seventy-five percent (75%) of the Net Settlement Fund will be allocated the Class Settlement ("**Net Class Settlement Fund**") and twenty-five percent (25%) of the Net Settlement Fund will be allocated to the FLSA Settlement ("**Net FLSA Settlement Fund**").

---

| **6.   How much money will I get if I participate in the Class Settlement?** |
| --- |

Each Class Member who does not "opt out" of the Class Settlement by filing a valid and timely Request for Exclusion ("**Participating Class Member**") is entitled to payment of a share of the Net Class Settlement Fund ("Non-FLSA Payment") based on their number weeks of employment by Defendant in a Covered Position at any time during the period from July 7, 2011 to [the Preliminary Approval date] ("**Workweeks**"). Settlement payments are to be calculated and distributed as follows:

a.        The Settlement Administrator will calculate the total number of Workweeks worked by each Participating Class Member ("**Individual Workweeks**") and the total number of Workweeks worked by all Participating Class Members ("**Class Workweeks**") during the Settled Period.

b.        To determine each Participating Class Member's Non-FLSA Payment, the Settlement Administrator will use the following formula:

Non-FLSA Payment = (Individual Workweeks ÷ Class Workweeks) x (Net Class Settlement Fund).

c.        The entire Net Class Settlement Fund will be disbursed to all Participating Class Members. If there are any valid and timely Requests for Exclusion, the Settlement Administrator shall proportionately increase the Non-FLSA Payment for each Participating Class Member according to their Individual Workweeks, so that 100% of the Net Class Settlement Fund is distributed.

---

| **According to Olam's records, you worked a total of _____ Workweeks. Your gross share of the Net Class Settlement Fund is estimated to be approximately $_____.** |
| --- |

---

**If you believe the number of Workweeks credited to you above is incorrect, you may submit a written dispute to the Settlement Administrator.** All disputes must be postmarked on or before [Response Deadline].  The written dispute must: (1) contain a clear statement indicating that you wish to dispute or challenge the Workweeks credited in this Notice; (2) contain your name, address, and the last four digits of your Social Security number and/or employee identification number; (3) be signed by you; (4) attach any supporting documentation you wish to rely upon; and (5) be mailed (to the address listed in connection with Question #9 below) or faxed (to the fax number listed in connection with Question #9

*Questions?  Call [Settlement Administrator's toll-free number]*

below) to the Settlement Administrator so that it is postmarked or fax-stamped on or before [Response Deadline].  Olam's records are presumed to be correct, unless a Class Member proves otherwise with documentary evidence.

Each Participating Class Member's share of the Net Class Settlement Fund will be allocated as thirty- four percent (34%) as wages ("**Wage Portion**") for which IRS Form W-2 will be issued; and sixty-six (66%) as penalties, interest, consideration for the waiver of rights and benefits conferred by California Civil Code Section 1542, and non-wage damages ("**Non-Wage Portion**") for which IRS Form 1099-MISC will be issued.  Each Participating Class Member's share of the Net Class Settlement Fund will be paid subject to reduction for all employee's share of taxes and withholding with respect to the Wage Portion.  The Employer Taxes will be paid from the Total Settlement Amount.  IRS Forms W-2 and 1099 will be distributed to Participating Class Members and the appropriate taxing authorities reflecting the payments they receive under the Class Settlement.  Participating Class Members should consult their tax advisors concerning the tax consequences of the payments they receive under the Class Settlement.

The other notice about the FLSA Settlement will tell you how much money you may be eligible to receive if you opt-in to the FLSA Settlement.  The payment available under the FLSA Settlement is referred to as a "FLSA Payment."  Together, the FLSA Payment and Non-FLSA Payment are referred to as "Individual Settlement Payment."   Individuals Settlement Payments will be issued by way of check.

---

### 7.   What will I give up if I participate in the Class Settlement?

---

If you participate in the Class Settlement (i.e., if you do not submit a valid and timely Request for Exclusion) you will give up your right to make claims against Defendant and all Released Parties with regard to the Released Class Claims.

"**Released Class Claims**" are defined as follows:

All wage and hour claims, rights, demands, liabilities and causes of action of every nature and description, known and unknown, that were plead or could have been plead based on the factual allegations in the Third Amended Complaint, from July 7, 2011 through [the Preliminary Approval date], including, without limitation, any statutory, constitutional, contractual or common law claims for wages (including minimum wage, overtime, and premium wages, and for any failure to pay overtime based on the regular rate of pay), damages, business expenses, or penalties (including waiting time penalties), liquidated damages, punitive damages, interest, restitution, equitable relief, or any other relief, based on any and all applicable statutes, other than the Fair Labor Standards Act, including without limitation, the California Labor Code, the California Industrial Welfare Commission wage orders, Labor Code Private Attorneys General Act of 2004 (Cal. Lab. Code §§ 2698, *et seq*.) ("PAGA"), California Business and Professions Code § 17200, *et seq*., or other law, including, but not limited to, claims based on the following categories of allegations during the Settled Period: (a) all claims for unpaid overtime; (b) all claims for meal and rest period violations; (c) all claims for unpaid minimum wages; (d) all claims for untimely payment of wages upon termination; (e) all claims for untimely payment of wages during employment; (f) all claims for failure to pay wages; (g) all claims for failure to provide accurate or otherwise proper itemized wage statements; (h) all claims for failure to keep complete and accurate payroll records; (i) all claims for failure to reimburse necessary business-related expenses and costs; (j) all claims asserted, or which could have been asserted, under PAGA arising out of the aforementioned claims; (k) all claims asserted through California Business & Professions Code § 17200 *et seq*. arising out of the aforementioned claims; and (l) all other claims for penalties, liquidated damages, punitive damages, interest, attorneys' fees, litigation costs, restitution, equitable relief, or additional damages that allegedly arise out of the aforementioned claims.

With respect to the Released Class Claims, and for additional consideration that is a part of the Non-FLSA Payment, you will be deemed to release and waive any and all rights and benefits conferred upon you by California Civil Code Section 1542, which provides as follows:

A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS THAT THE CREDITOR OR RELEASING PARTY DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE AND THAT, IF KNOWN BY HIM OR HER WOULD HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR OR RELEASED

PARTY.

"**Released Parties**" means, with regard to the Released Class Claims, Defendant and any of its former and present parents, subsidiaries, affiliates, divisions, corporations in common control, predecessors, successors, joint ventures and assigns, as well as all past and present officers, directors, employees, partners, members, principals, shareholders, agents, attorneys, insurers, co-insurers, reinsurers, and any other successors, assigns, or personal or legal representatives, if any.

**YOU DO NOT RELEASE THE FLSA RELEASED CLAIMS UNLESS YOU opt-in to the FLSA Settlement which is discussed in the FLSA Notice.**

If you choose to opt out of the Class Settlement, you will **<u>not</u>** receive a payment from the Class Settlement, but you keep all your rights to sue Defendant for the Released Class Claims. The only way for you to retain your rights to sue Defendant for the Released Class Claims in this case is to send a timely and valid Request for Exclusion to the Settlement Administrator postmarked no later than [Response Deadline] (see Question #9, below).

### HOW TO GET A PAYMENT OR EXCLUDE YOURSELF FROM THE CLASS SETTLEMENT

| **8.   How and when will I get a payment?** |
| --- |

The Final Approval Hearing on the adequacy, reasonableness, and fairness of the Settlement will be held on _____, 2019 at [time] in [Courtroom] of the Court (see Question #15, below). You are not required to attend the hearing. If the Settlement is approved by the Court, and there are no appeals of such approval, your Individual Settlement Payment will be sent to the address where you received this Notice. If you would like to change the address where your Individual Settlement Payment will be mailed, please contact the Settlement Administrator whose name and address appear at Question #9, below. If after the Court grants approval of the Settlement, an appeal or other challenge to the approval is filed, you will not be sent your Individual Settlement Payment until that appeal or challenge is concluded.

**If you have questions with regard to when the checks will be mailed, please contact the Settlement Administrator.**

| **9.   How do I exclude myself from the Class Settlement?** |
| --- |

If you do not wish to participate in the Class Settlement, you may exclude by submitting a written request to the Settlement Administrator either in the form of a letter in compliance with the requirements set forth herein or by completing and returning the Request for Exclusion Form that has been provided with this Notice (either method is referred to as a "Request for Exclusion"). The written letter must: (1) contain a clear statement indicating that the Class Member wishes to exclude him or herself from the Class Settlement; (2) contain your name and the last four digits of your Social Security number and/or employee identification number; (3) be signed by you; and (4) be mailed (to the address listed immediately below) or faxed (to the fax number listed immediately below) to the Settlement Administrator so that it is postmarked or fax-stamped on or before [Response Deadline]:

> Olam Settlement Administrator
> c/o Simpluris, Inc.
> Mailing Address: [insert address]
> Fax Number: [insert fax number]

For your convenience, included with this Notice is a Request for Exclusion Form that you may use to submit a request to be excluded from the Class Settlement (instead of submitting a separate written letter).

All Requests for Exclusion must be postmarked or faxed not later than [Response Deadline]. If you submit a Request for Exclusion which is not postmarked or faxed by [Response Deadline], your Request for Exclusion will be rejected, and you will be included in the Class Settlement.

| **10. If I exclude myself, can I get anything from the Class Settlement?** |
| --- |

*Questions?  Call* *[Settlement Administrator's toll-free number]*

If you choose to be excluded from the Class Settlement, you will not be a Participating Class Member, and you will be barred from participating in the Class Settlement and will not receive a Non-FLSA Payment from the Class Settlement. You will also be barred from filing an objection to the Class Settlement (see Questions #11 and #12). Also, you will **not** be deemed to have released the Released Class Claims.

You may still participate in the FLSA Settlement if you so choose (see FLSA Notice).

## OBJECTING TO THE CLASS SETTLEMENT

| **11. How do I object to the Class Settlement?** |
| --- |

If you wish to object to the Class Settlement because you find it unfair or unreasonable, you must submit an objection to the Court and the Settlement Administrator stating why you object to the Class Settlement.  Your objection must provide: (1) the case name, Court, and number of the *Beltran* Action (*Thomas Beltran, et al. v. Olam Spices and Vegetables, Inc.,* United States District Court, Eastern District of California, Fresno Division, Case No. 1:18-cv-01676-LJO-SAB); your full name; (2) your dates of employment; (3) the last four digits of your Social Security number and/or employee identification number; (4) the basis for your objection; (5) a statement about whether you intend to appear at the Final Approval Hearing; and (6) be mailed (to the address listed in connection with Question #9 below) or faxed (to the fax number listed in connection with Question #9 below) to the Settlement Administrator, so that it is postmarked or fax-stamped on or before [Response Deadline], and filed with the Office of the Clerk of the Court (at the address listed below in connection with Question #17) not later than [Response Deadline].

Late objections will not be considered and those who submit late objections will be deemed not to have objected. By submitting an objection, you are not excluding yourself from the Class Settlement. Please note that you cannot both object to the Class Settlement and exclude yourself from the Class Settlement. You can choose one of those options only.

You may also, if you wish, appear at the Final Approval Hearing (see Questions #15 and #16) and discuss your objection regarding the Class Settlement with the Court and the parties at your own expense. You may also retain an attorney to represent you at the hearing.

If you choose to object to the Class Settlement, you will still be entitled to a Non-FLSA Payment and will be deemed to have released the Released Class Claims.

| **12. What is the difference between objecting and opting out?** |
| --- |

Objecting is informing the Court that you disagree with something in the Class Settlement. If you wish to object to the Class Settlement, you must not opt out of the Class Settlement. "Opting out" means that you are excluding yourself from the Class Settlement and informing the Court that you do not want to be part of the Class Settlement. If you exclude yourself, "opt out," you will not be able to object to the Class Settlement and will not receive any Non-FLSA Payment for the Class Settlement.

## THE LAWYERS IN THIS CASE

| **13. Do I have a lawyer in this case?** |
| --- |

The lawyers that have been appointed to serve as counsel for the Class ("Class Counsel") are:

| Edwin Aiwazian, Esq. | Joseph Lavi, Esq. | Sahag Majarian II, Esq. |
| --- | --- | --- |
| Arby Aiwazian, Esq. | Vincent C. Granberry | Law Offices of Sahag Majarian II |
| Joanna Ghosh, Esq. | Lavi & Ebrahimian, LLP | 18250 Ventura Blvd. |
| Lawyers *for* Justice, PC | 8889 W. Olympic Blvd., Suite 200 | Tarzana, CA 91356 |
| 410 Arden Ave., Suite 203 | Beverly Hills, California 90211 | Phone: (818) 609-0807 |
| Glendale, California 91203 | Phone: (310) 432-0000 | Fax: (818) 609-0892 |
| Phone: (818) 265-1020 | Fax: (310) 432-0001 | |
| Fax: (818) 265-1021 | | |

*Questions?  Call [Settlement Administrator's toll-free number]*

All inquiries by Class Members regarding this Notice and/or the Settlement should be directed to the Settlement Administrator or Class Counsel.

---

**14. Who are the lawyers representing Olam?**

---

The following lawyers represent Olam West Coast, Inc. in this case:

      Susan K. Hatmaker
      Hatmaker Law Group, PC
      7522 N. Colonial Ave., Suite 105
      Fresno, CA 93711

**THE FINAL APPROVAL HEARING**

---

**15. When and where will the Court decide whether to approve the Settlement?**

---

The Court will hold the Final Approval Hearing to decide whether to approve the Settlement on _____, 2019, at ____ a.m./p.m. in Courtroom 9 of the Robert E. Coyle Federal Courthouse located at 2500 Tulare Street, Fresno, CA 93721. The Final Approval Hearing may be moved to a different date and/or time without further notice.

At the Final Approval Hearing, the Court will consider whether the Settlement is fair, reasonable and adequate. If you have filed a timely objection to the Class Settlement (see Question #11), the Court will consider it and you may choose to speak in support of your objection to the Class Settlement at the Final Approval Hearing. The Court will also decide how much to award for Attorneys' Fees and Costs, Class Representative Incentive Awards, and Settlement Administration Costs. The Court may make its decisions at the time of the Final Approval Hearing or at a later time. We do not know how long the Court will take to provide a decision.

---

**16. Do I have to come to the Final Approval Hearing?**

---

No. Class Counsel and the lawyers for the Defendant will answer any questions the Court may have at the Final Approval Hearing. You are welcome to attend at your own expense if you would like to come. If you send in a complete and timely objection to the Class Settlement you are not required to attend to speak about it with the Court because the Court will consider all complete and timely written objections. You may, however, attend to speak about your objection to the Class Settlement or retain a lawyer to do so on your behalf, and at your expense, but you are not required to do so.

---

**17. How do I get more information?**

---

This Notice is only a summary of the case and the Settlement. For a more detailed statement of the matters involved in the cases and the Settlement, you may refer to the pleadings, the Settlement Agreement, and other papers filed in the *Beltran* Action. You may review the Settlement Agreement and other court records by using Public Access to Court Electronic Records System ("PACER") (for a fee). You may also view these documents by visiting the following courthouse location which is also where filings with the Court (such as objections) by non-attorneys may be undertaken:

      Office of the Clerk
      Robert E. Coyle Federal Courthouse
      2500 Tulare Street, Room 1501
      Fresno, CA 93721.

All inquiries by Class Members regarding this Notice and/or the Settlement should be directed to the Settlement Administrator (see contact information listed in connection with Question #9) or Class Counsel (see contact information listed in connection with Question #13).

**PLEASE DO NOT CONTACT THE CLERK OF THE COURT, THE JUDGE, OLAM, OR OLAM'S ATTORNEYS WITH INQUIRIES.**

*Questions? Call [Settlement Administrator's toll-free number]*

# EXHIBIT B

*Thomas Beltran, et al. v. Olam Spices and Vegetables, Inc.*
United States District Court, Eastern District of California, Fresno Division, Case No. 1:18-cv-01676-LJO-SAB

### NOTICE OF FLSA SETTLEMENT

***The Court has Approved this Notice. This is not a solicitation from a lawyer. You are not being sued. This notice affects your rights. Please read it carefully.***

**If you were employed at Olam West Coast, Inc.'s ("Olam" or "Defendant')) Fresno, Firebaugh, Hanford, Lemoore, Gilroy, and/or Williams locations in one or more positions which were classified as non-exempt and/or hourly non-exempt at any time during the period from July 7, 2011 to ==[the date on which the Court grants preliminary approval of the Settlement]== ("FLSA Members"), you could receive payment from a proposed collective action settlement.**

- A proposed class and collective action settlement ("**Settlement**") has been reached in this case that resolves in one lawsuit, the claims initially filed in four lawsuits alleging that Olam violated the federal Fair Labor Standards Act and California wage-and-hour laws and the California Business Professions Code. The litigation involves four separate actions:  *Thomas Beltran, et al. v. Olam West Coast, Inc*. filed in the Fresno County Superior Court, Case No. 15CECG02993 ("***Beltran*** Action"); *Maria Claudia Obeso Cota v. Olam West Coast, Inc*. filed in Fresno County Superior Court, Case No. 16CECG00081; *Alexander Solorio v. Olam West Coast, Inc*. filed in Fresno County Superior Court, Case No. 16CECG00513; and, *Juan Rivera, et al. v. Olam West Coast, Inc*., filed in Santa Clara Superior Court, Case No. 16CV300758.   On April 11, 2018 a Third Amended Class Action Complaint for Damages & Enforcement Under the California Labor Code § 2698, Et Seq. ("**Third Amended Complaint**") consolidating the plaintiffs and allegations in the Settled Actions into one case, was filed in the *Beltran* Action. The settlement reached between the parties in the Settled Actions, to resolve the Settled Actions and Released Claims, is the subject of this notice

- The *Beltran* Action was removed to Federal Court as *Thomas Beltran, et al. v. Olam Spices and Vegetables, Inc.*, Eastern District of California, Fresno Division, Case No. 1:18-cv-01676-LJO-SAB.

- Defendant denies that it did anything wrong and argues that it has complied with all employment laws. Defendant entered into this Settlement only to resolve this lawsuit and the four underlying actions.

 Honorable Judge Stanley A. Boone of the United States District Court for the Eastern District of California ("Court") has preliminarily approved the Settlement. However, payments will not be distributed unless the Court grants final approval of the Settlement and then only in the manner and amount as provided for in the Settlement as finally approved. <u>This Notice discusses only the FLSA Settlement.</u> **You will also receive a notice about the Class Settlement. It is important to read both notices.**

| **1.   If I decide to participate and want to receive the most money I can, what must I do?** |
|---|

To receive a payment under the FLSA Settlement, you need to "opt-in" to become a Participating FLSA Member. To become a Participating FLSA Member you only need to timely sign and cash, deposit, or otherwise negotiate your FLSA Payment. This is explained at Question # 8, below.

| **2.   Why did I get this Notice of FLSA Settlement?** |
|---|

Olam West Coast, Inc.'s records show you are or were employed at its Fresno, Firebaugh, Hanford, Lemoore, Gilroy, and/or Williams locations in California in one or more positions which were classified as non-exempt and/or hourly non-exempt at sometime during the period from ==July 7, 2011== to _____ [date of Preliminary Approval] ("**Settled Period**") and are thus a FLSA Member.

The lawsuit in the Eastern District of California, Fresno Division, is *Thomas Beltran, et al. v. Olam Spices and Vegetables, Inc.*, Eastern District of California, Fresno Division, Case No. 1:18-cv-01676-LJO-SAB. The plaintiffs are Thomas Beltran,

Mario Martinez, Maria Claudia Obeso Cota, Alexander Solorio, and Juan Rivera (collectively, "**Plaintiffs**").  The judge in the case is the Honorable Stanley A. Boone.

The lawsuit alleges that defendant Olam West Coast, Inc. failed to pay wages for all time worked, failed to pay minimum and overtime wages in the amount required by law, failed to provide meal or rest periods as required by law, failed to pay final wages in a timely manner upon the end of employment, failed to pay all wages due during employment, failed to provide accurate itemized wage payment statements, failed to maintain adequate payroll records, and failed to reimbursing all business expenses incurred, and thereby violated California law and the federal Fair Labor Standards Act ("**FLSA**"). The FLSA claims in the lawsuit are brought as a "collective action." In a collective action, one or more persons who are identified as the plaintiffs initiate the action and others are provided an opportunity to "opt-in" to the action and share in the recovery, if any. The Court will resolve the issues for all persons who opt-in to the FLSA Settlement.

| **3.   How do I participate in the FLSA Settlement?** |
|---|

"FLSA Settlement" means the settlement and resolution of the Released FLSA Claims, which will be binding on all Participating FLSA Members.

Those who are eligible to participate in the FLSA Settlement are defined as follows:

All current and former employees who Defendant classified as non-exempt and worked in that capacity at Defendant's Fresno, Firebaugh, Hanford, Lemoore, Gilroy and Williams facilities in California at any time during the Settled Period ("**FLSA Member(s)**").

Anyone who falls within that definition is a FLSA Member and eligible to participate in the FLSA Settlement, but to do so, they must "opt-in" and become a Participating FLSA Member (see Question #8).

"Participating FLSA Class Member(s)" are those FLSA Members who timely sign and cash, deposit, or otherwise negotiate their FLSA Payment check, and thereby consent to join the *Beltran* Action under the FLSA and opt-in on a collective basis with respect to the Released FLSA Claims.

| **4.   What will I give up if I participate in the FLSA Settlement?** |
|---|

If you participate in the FLSA Settlement (i.e., if you opt-in and become a Participating FLSA Class Member) you will give up your right to make claims against Defendant and all Released Parties with regard to the Released FLSA Claims.

"**Released FLSA Claims**" means any and all claims, debts, liabilities, demands, obligations, penalties, guarantees, costs, expenses, attorneys' fees, damages, action or causes of action of whatever kind or nature under the Fair Labor Standards Act, whether known or unknown, foreseen or unforeseen, arising out of or related to any and all facts, transactions, events, policies, occurrences, acts, disclosures, statements, omissions or failures to act, as of and including the Effective Date, which are or could be raised in the Action against the Released Parties.

"**Released Parties**" means, with regard to the Released FLSA Claims, Defendant and any of its former and present parents, subsidiaries, affiliates, divisions, corporations in common control, predecessors, successors, joint ventures and assigns, as well as all past and present officers, directors, employees, partners, members, principals, shareholders, agents, attorneys, insurers, co-insurers, reinsurers, and any other successors, assigns, or personal or legal representatives, if any.

| **5.   Why is there a settlement?** |
|---|

After the exchange of relevant information and evidence, the parties attended private mediation to attempt to informally resolve the cases. The parties participated in mediation with mediator Hon. Edward Infante, Ret., a retired federal magistrate judge. The parties were eventually able to negotiate a settlement of the cases.

The Settlement has been modified after further discussions and the present Settlement is set forth in the Third Amended Class Action and Collective Action Settlement and Release Agreement ("**Settlement**" or "**Settlement Agreement**").

The Settlement does not mean that Olam has agreed it did anything wrong. Olam has denied, and continues to deny, the factual and legal allegations in the cases and believes that it has complied with the law.  By agreeing to settle, Olam is not admitting liability on any of the factual allegations or claims in the cases.  Olam has agreed to settle the cases as part of a compromise with Plaintiffs.

The Class Representatives and their lawyers ("**Class Counsel**") have investigated and researched the facts and circumstances underlying the issues raised in the cases and the applicable law, and while Class Counsel believe that the claims alleged in the lawsuits have merit, Class Counsel also recognize that the risk and expense of continued litigation justify settlement and further believe, based on the foregoing, that the proposed settlement is fair, adequate, reasonable, and in the best interests of Class Members. In reaching settlement, the parties have considered, among other factors, the costs and risks involved in going all the way to trial.

## THE SETTLEMENT BENEFITS – WHAT YOU RECEIVE

| **6.   What are the Settlement terms?** |
|---|

Plaintiffs and Olam have agreed to settle the Settled Actions and Released FLSA Claims (see Question #4, above). As a part of the Settlement, which includes both the FLSA Settlement and Class Settlement (described in a separate notice), Olam has agreed to pay the amount of $4,500,000 ("**Total Settlement Amount**").  The following amounts will be paid from the Total Settlement Amount, subject to approval by the Court: (1) the amount of $37,000.00 to Plaintiffs for their services as the Class Representatives ("**Class Representative Incentive Awards**"); (2) the amount of up to $1,575,000 in attorneys' fees and the amount of up to $65,000 in litigation costs and expenses to Class Counsel ("**Attorneys' Fees and Costs**"); (3) the amount of $112,500.00 to the California Labor and Workforce Development Agency ("**LWDA**") for the LWDA's 75% portion of the amount allocated to penalties under the Private Attorneys General Act (the total amount allocated toward PAGA penalties is $150,000); (4) reasonable Settlement Administrator's fees and expenses, which are currently estimated not to exceed $58,000 ("**Settlement Administration Costs**"); and (5) employer's share of payroll taxes and contributions with respect to the Wage Portion, which are estimated to be between $117,000 to $168,000 (with the final amount depending on the final amount available for distribution to the Class and applicable tax rates)("**Employer Taxes**").

The Total Settlement Amount minus the Class Representative Incentive Awards, Attorneys' Fees and Costs, the payment to the LWDA, the Settlement Administration Costs, and the Employer Taxes is referred to as the "**Net Settlement Fund.**". Seventy-five percent (75%) of the Net Settlement Fund will be allocated the Class Settlement ("**Net Class Settlement Fund**") and twenty-five percent (25%) of the Net Settlement Fund will be allocated to the FLSA Settlement ("**Net FLSA Settlement Fund**").

| **7.   How much money will I get if I participate in the Settlement?** |
|---|

Each FLSA Member will be issued a check for payment of a share of the Net FLSA Settlement Fund based on the number of workweeks they worked during the period from July 7, 2011 to [the Preliminary Approval date] ("Workweeks"). These settlement payments ("FLSA Payment(s)") are to be calculated and distributed as follows:

   d.      The Settlement Administrator will calculate the total number of Workweeks worked by each FLSA Member ("Individual Workweeks") and the total number of Workweeks worked by all FLSA Members ("FLSA Workweeks") during the Settled Period.

   e.      To determine each FLSA Payment the Settlement Administrator will use the following formula:

   FLSA Payment = (Individual Workweeks ÷ FLSA Workweeks) x (Net FLSA Settlement Fund).

   f.      The FLSA Payments will be distributed by way of check which check will provide the means for each FLSA Member to "opt-in" to the FLSA Settlement and become a Participating FLSA Member.

| **According to Olam's records, you worked a total of _____ Workweeks. Your gross share of the Net FLSA Settlement Fund is estimated to be approximately $_____.** |
|---|

**If you believe the number of Workweeks credited to you above is incorrect, you may submit a written dispute to the Settlement Administrator.** All disputes must be postmarked on or before [Response Deadline]. The written dispute must: (1) contain a clear statement indicating that you wish to dispute or challenge the Workweeks credited in this Notice; (2) contain your name, address, and the last four digits of your Social Security number and/or employee identification number; (3) be signed by you; (4) attach any supporting documentation you wish to rely upon; and (5) be mailed (to the address listed immediately below) or faxed (to the fax number listed immediately below) to the Settlement Administrator so that it is postmarked or fax-stamped on or before [Response Deadline].

> Settlement Administrator
> c/o Simpluris, Inc.
> Mailing Address: [insert address]
> Fax Number: [insert fax number]

Olam's records are presumed to be correct, unless a Participating FLSA Member proves otherwise with documentary evidence.

Each Participating FLSA Member's share of the Net FLSA Settlement Fund will be allocated as thirty- four percent (34%) as wages ("Wage Portion") for which IRS Form W-2 will be issued; and sixty-six (66%) as penalties, interest, consideration for the waiver of rights and benefits conferred by California Civil Code Section 1542, and non-wage damages ("Non-Wage Portion") for which IRS Form 1099-MISC will be issued. Each Participating FLSA Member's share of the Net FLSA Settlement Fund will be paid subject to reduction for all employee's share of taxes and withholding with respect to the Wage Portion. The Employer Taxes will be paid from the Total Settlement Amount. IRS Forms W-2 and 1099 will be distributed to Participating FLSA Members and the appropriate taxing authorities reflecting the payments they receive under the FLSA Settlement. Participating FLSA Members should consult their tax advisors concerning the tax consequences of the payments they receive under the FLSA Settlement.

The other notice about the Class Settlement will tell you how much money you will be eligible to receive if you do not opt out of the Class Settlement. The payment available under the Class Settlement is referred to as a "Non-FLSA Payment." Together, the FLSA Payment and Non-FLSA Payment are referred to as "Individual Settlement Payment." Individual Settlement Payments will be issued by way of check.

### HOW TO PARTICIPATE IN AND GET A PAYMENT FROM THE FLSA SETTLEMENT

| 8. How do I get a payment for the release of Released FLSA Claims? |
| --- |

The participate in and receive payment from the FLSA Settlement, you must timely sign and cash, deposit, or otherwise negotiate your FLSA Payment check. By doing so, you will be deemed to have consented to join the *Beltran* Action under the FLSA and opted-in on a collective basis with respect to the Released FLSA Claims, and will be bound to the FLSA Settlement and any judgment entered by the Court based thereon, and thereby forever release and discharge the Released FLSA Claims.

Your FLSA Payment Check will contain the following notice that informs you of your election to opt-in to the FLSA Settlement:

> By endorsing this check, I consent to join the lawsuit entitled *Beltran, et. al. v. Olam West Coast, Inc.*, Eastern District of California, Fresno Division, Case No. 1:18-cv-01676-LJO-SAB, pursuant to the provisions of the Fair Labor Standards Act ("FLSA"), 29 USC Section 216(b), for purposes of participating in the settlement. I further understand and agree that my cashing, depositing, or otherwise negotiating this check constitutes a full and complete release of any and all of Released FLSA Claims and that a copy of this check, may be filed with the Court, with personal information other than my name redacted, as evidence of my consent.

With respect to the Released FLSA Claims, and for additional consideration that is part of the FLSA Payment, if you sign and cash, deposit, or otherwise negotiate your FLSA Payment Check, you will be deemed to release and waive all rights and benefits conferred upon you by California Civil Code Section 1542, which provides:

A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS THAT THE CREDITOR OR RELEASING PARTY DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE AND THAT, IF KNOWN BY HIM OR HER, WOULD HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR OR RELEASED PARTY.

If you do not timely opt-in to the FLSA Settlement by signing and cashing, depositing, or otherwise negotiating your FLSA Payment check, you will not be subject to the release of Released FLSA Claims. The only way for you to retain your rights to sue Defendant for the Released FLSA Claims in this case is to not sign and cash, deposit, or otherwise negotiate your FLSA Payment check.

Deciding not to opt-in to the FLSA Settlement, however, does not exclude you from participating in the Class Settlement (see separate Notice of Class Action Settlement).

---

**9.   How and when will I get a payment?**

The Final Approval Hearing on the adequacy, reasonableness, and fairness of the Settlement will be held on _____, 2019 at [time] in [Courtroom] of the Court (see Question #12, below). You are not required to attend the hearing. If the Settlement is approved by the Court, and there are no appeals of such approval, the Non-FLSA Payment will be sent to the address where you received this Notice.  If you would like to change the address where your payment will be mailed, please contact the Settlement Administrator whose name and address are listed in connection with Question #7, above. If after the Court grants approval of the Settlement, an appeal or other challenge to the approval is filed, you will not be sent your payment until that appeal or challenge is concluded.

**If you have questions with regard to when the checks will be mailed, please contact the Settlement Administrator.**

**THE LAWYERS IN THIS CASE**

---

**10. Do I have a lawyer in this case?**

The lawyers that have been appointed to serve as counsel for the Participating FLSA Members are:

| | | |
|---|---|---|
| Edwin Aiwazian, Esq. | Joseph Lavi, Esq. | Sahag Majarian II, Esq. |
| Arby Aiwazian, Esq. | Vincent C. Granberry | Law Offices of Sahag Majarian II |
| Joanna Ghosh, Esq. | Lavi & Ebrahimian, LLP | 18250 Ventura Blvd. |
| Lawyers *for* Justice, PC | 8889 W. Olympic Blvd., Suite 200 | Tarzana, CA 91356 |
| 410 Arden Ave., Suite 203 | Beverly Hills, California 90211 | Phone: (818) 609-0807 |
| Glendale, California 91203 | Phone: (310) 432-0000 | Fax: (818) 609-0892 |
| Phone: (818) 265-1020 | Fax: (310) 432-0001 | |
| Fax: (818) 265-1021 | | |

All inquiries regarding this Notice and/or the Settlement should be directed to the Settlement Administrator or Class Counsel.

---

**11. Who are the lawyers representing Olam?**

The following lawyers represent Olam West Coast, Inc. in this case:

Susan K. Hatmaker
Hatmaker Law Group, PC
7522 N. Colonial Ave., Suite 105
Fresno, CA 93711

**THE FINAL APPROVAL HEARING**

---

**12. When and where will the Court decide whether to approve the Settlement?**

The Court will hold the Final Approval Hearing to decide whether to approve the Settlement on _____, 2019, at ___ a.m./p.m. in Courtroom 9 of the Robert E. Coyle Federal Courthouse located at 2500 Tulare Street, Fresno, CA 93721. The Final Approval Hearing may be moved to a different date and/or time without further notice.

At the Final Approval Hearing, the Court will consider whether the Settlement is fair, reasonable and adequate. The Court will also decide how much to award for Attorneys' Fees and Costs, Class Representative Incentive Awards, and Settlement Administration Costs. The Court may make its decisions at the time of the Final Approval Hearing or at a later time. We do not know how long the Court will take to provide a decision.

You are not required to come to the Final Approval Hearing, but you are welcome to attend at your own expense if you would like to come.

| **13. How do I get more information?** |
|---|

This Notice provides only a summary of the most pertinent terms of Settlement. For a more detailed statement of the matters involved in the cases and the Settlement, you may refer to the pleadings, the Settlement Agreement, and other papers filed in the *Beltran* Action. You may review the Settlement Agreement and other court records by using Public Access to Court Electronic Records System ("PACER") (for a fee).  You may also view these documents by visiting the following courthouse location which is also where filings with the Court (such as objections) by non-attorneys may be undertaken:

> Office of the Clerk
> Robert E. Coyle Federal Courthouse
> 2500 Tulare Street, Room 1501
> Fresno, CA 93721.

All inquiries by FLSA Members regarding this Notice and/or the Settlement should be directed to the Settlement Administrator (see contact information in connection with Question # 7) or Class Counsel (see contact information in connection with Question #10).

**PLEASE DO NOT CONTACT THE CLERK OF THE COURT, THE JUDGE, OLAM, OR OLAM'S ATTORNEYS WITH INQUIRIES.**

# EXHIBIT C

**Thomas Beltran, et al. v. Olam Spices and Vegetables, Inc.**

United States District Court, Eastern District of California, Fresno Division, Case No. 1:18-cv-01676-LJO-SAB

## REQUEST FOR EXCLUSION FORM

This form was issued to the individual identified as follows in Defendant's records:

[Last Name], [First Name]

Last 4 digits of the Employee ID No.: [insert]

Section A: Instructions

1. In order to opt out of the Class Settlement, you must complete and sign Section B below and submit this form **on or before** _____,_____ to the Settlement Administrator, by U.S. Mail or fax, at the following mailing address or fax number:

Olam Settlement Administrator
c/o Simpluris, Inc.
Mailing Address: [insert mailing address]
Fax number: [insert fax number]

2. **If you exclude yourself from the Class Settlement, you will not be entitled to a Non-FLSA Payment, and will not be allowed to make an objection to the Class Settlement.**  For more information regarding the consequences of seeking exclusion from the Class Settlement, see the accompanying Notice of Class Action Settlement.

Section B: Certification

I wish to be excluded from the Class Settlement in *Thomas Beltran, et al. v. Olam Spices and Vegetables, Inc.* I understand that in asking to be excluded from the Class Settlement, I will not receive a Non-FLSA Payment, if the Settlement is approved by the Court in this case.

Print Full Name: _____

Sign: _____

Date: _____

# EXHIBIT D

**MAILING ENVELOPE FOR NOTICE PACKET**

No. 10 Envelope Front

*Beltran et al. v. Olam Spices and Vegetables, Inc.*
Simpluris, Inc.
P.O. Box 26170
Santa Ana, CA 92799-9834

PRESORTED

FIRST-CLASS MAIL

<u>*Important Legal Document*</u>: *You may be eligible to receive money from a settlement.  A court-ordered notice is enclosed.*

<u>*Documento legal importante*</u>: *Puede ser elegible para recibir dinero de un acuerdo. Se adjunta un aviso ordenado por el tribunal.*

No. 10 Envelope Back



# EXHIBIT 2

1              SUPERIOR COURT OF THE STATE OF CALIFORNIA

2                    FOR THE COUNTY OF FRESNO

3                          -- o0o --

4    THOMAS BELTRAN; MARIO MARTINEZ;
     individually, and on behalf of
5    other members of the general
     public similarly situated,
6                                        Case No. 15CECG02993
                  Plaintiffs,
7
          vs.
8
     OLAM SPICES AND VEGETABLES,
9    INC., an unknown business
     entity; and DOES 1 through
10   100, inclusive,

11                Defendants.

12   _____

13                     DEPOSITION OF

14   PMK of OLAM SPICES AND VEGETABLES, INC., ALBERT PEREZ

15                       VOLUME I

16
                     February 24, 2017
17
                       2:17 p.m.
18

19            7522 North Colonial, Suite 105

20                 Fresno, California

21

22            Christi A. Endo, CSR No. 12764

23

24

25



1               C E R T I F I C A T I O N

2

3               I, CHRISTI ENDO, a Shorthand Reporter and

4    notary public, within and for the State of California, do

5    hereby certify:

6               That PMK of OLAM SPICES AND VEGETABLES,

7    INC., ALBERT PEREZ, the witness whose examination is

8    hereinbefore set forth, was first duly sworn by me and that

9    this transcript of said testimony is a true record of the

10   testimony given by said witness.

11              I further certify that I am not related to

12   any of the parties to this action by blood or marriage, and

13   that I am in no way interested in the outcome of this

14   matter.

15

16              IN WITNESS WHEREOF, I have hereunto set my

17   hand this 26th day of February, 2017.

18

19   _____

20                   Christi Endo, CSR

21

22

23

24

25



1              SUPERIOR COURT OF THE STATE OF CALIFORNIA

2                    FOR THE COUNTY OF FRESNO

3

4   THOMAS BELTRAN; MARIO MARTINEZ;
    individually, and on behalf of
5   other members of the general
    public similarly situated;
6
              Plaintiffs,
7
    vs.                              Case No. 15CECG02993
8
    OLAM SPICES AND VEGETABLES, INC.,
9   an unknown business entity; and
    DOES 1 through 100, inclusive,.
10
              Defendants.
11   _____

12

13      VIDEOTAPED PERSON MOST KNOWLEDGEABLE DEPOSITION OF

14                    ALBERT M. PEREZ

15                       VOLUME II

16

17                   February 27, 2017

18                     10:13 a.m.

19

20

21         7522 North Colonial Avenue, Suite 105

22              Fresno, California

23

24

25         Victoria L. Thomas, CSR No. 12927



1     BY MR. AIWAZIAN:

2          Q.   I'm not going to tell you how.  I'm asking

3     you how.

4          MS. HATMAKER:  Same objections.

5          THE WITNESS:  No.

6     BY MR. AIWAZIAN:

7          Q.   Is Olam's timekeeping policy different for

8     the office versus non-office employees?

9          MS. HATMAKER:  Objection.  Lacks foundation,

10    assumes facts, calls for a legal conclusion.

11         THE WITNESS:  No.

12    BY MR. AIWAZIAN:

13         Q.   Is Olam's meal and rest break policies

14    different for the office versus non-office employees?

15         MS. HATMAKER:  Objection.  Compound, vague and

16    ambiguous, calls for a legal conclusion.

17         THE WITNESS:  No.  They're all provided meal

18    period, rest period.

19    BY MR. AIWAZIAN:

20         Q.   Is Olam's overtime compensation policies

21    different for the office versus non-office employees?

22         MS. HATMAKER:  Objection.  Calls for legal

23    conclusion, vague and ambiguous.

24         THE WITNESS:  Would depend.

25    ///



1    BY MR. AIWAZIAN:

2         Q.   To all -- to the various plant employees.

3         MS. HATMAKER:  Objection.  Compound, calls for

4    legal conclusion, vague and ambiguous.

5         THE WITNESS:  I don't understand your question.

6    BY MR. AIWAZIAN:

7         Q.   Can you recall a single difference between

8    the practices and procedures for providing meal and rest

9    breaks to the hourly paid employees at the various

10   plants?

11        MS. HATMAKER:  Objection.  Calls for a legal

12   conclusion, compound, vague and ambiguous, overbroad.

13        THE WITNESS:  They're provided in accordance with

14   the law.

15   BY MR. AIWAZIAN:

16        Q.   Please identify a single difference between

17   the practices and procedures for providing meal breaks

18   at the different plants.

19        MS. HATMAKER:  Objection.  Assumes facts, lacks

20   foundation, calls for a legal conclusion, asked and

21   answered, compound.

22        THE WITNESS:  I'm not aware of anyone being

23   provided with anything that's outside of the law.  So

24   no.  Can't identify any differences.

25   ///



```
 1    BY MR. AIWAZIAN:
 2         Q.   Can you identify a single difference on how
 3    Olam's timekeeping policies are applied at the various
 4    plants?
 5         MS. HATMAKER:  Objection.  Asked and answered,
 6    vague and ambiguous, overbroad, calls for a legal
 7    conclusion.
 8         THE WITNESS:  No.
 9    BY MR. AIWAZIAN:
10         Q.   Can you identify a single difference between
11    how Olam's overtime compensation policies are applied at
12    the different plants?
13         MS. HATMAKER:  Objection.  Asked and answered,
14    overbroad, compound, calls for a legal conclusion, vague
15    and ambiguous.
16         THE WITNESS:  Union employees might have a
17    different, higher premium rate.  It's possible.  I don't
18    recall off the top of my head without referring to the
19    collective bargaining agreement.
20    BY MR. AIWAZIAN:
21         Q.   You said might be possible; right, sir?
22         MS. HATMAKER:  Objection.  Misstates testimony.
23    BY MR. AIWAZIAN:
24         Q.   That's what you just said; right, sir?
25         A.   Yes.
```



1   even though we took a little extended meal break?  Do

2   you understand that?

3        A.   Yes.

4        Q.   How Olam's meal break and rest break

5   policies are applied, can you recall a single difference

6   between the plants on how Olam's meal or rest break

7   policies are actually applied?

8        MS. HATMAKER:  Objection.  Compound, asked and

9   answered several times, calls for a legal conclusion,

10  vague and ambiguous.

11       THE WITNESS:  No.

12       MS. HATMAKER:  Badgering and harassing the

13  witness.

14    BY MR. AIWAZIAN:

15       Q.   Why not?

16       MS. HATMAKER:  Objection.  Argumentative,

17  badgering, harassing the witness.

18       THE WITNESS:  Can't recall.

19    BY MR. AIWAZIAN:

20       Q.   But why?

21       MS. HATMAKER:  Objection.  Asked and answered,

22  badgering, harassing the witness.

23            You've already answered the question twice.

24  You don't need to answer it again.

25  ///



1

2

3               I, the undersigned, a Certified Shorthand

4    Reporter of the State of California, do hereby certify:

5               That the foregoing proceedings were taken

6    before me at the time and place herein set forth; that

7    any witnesses in the foregoing proceedings, prior to

8    testifying, were placed under oath; that a verbatim

9    record of the proceedings was made by me using machine

10   shorthand which was thereafter transcribed under my

11   direction; further, that the foregoing is an accurate

12   transcription thereof.

13               I further certify that I am neither

14   financially interested in the action nor a relative or

15   employee of any attorney of any of the parties.

16               IN WITNESS WHEREOF, I have subscribed my

17   name this 1st day of March, 2017.

18

19

20                      Victoria L. Thomas
                        _____
21                      Victoria L. Thomas
                        CSR No. 12927
22

23

24

25