# UNITED STATES DISTRICT COURT

### EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| THOMAS BELTRAN, et al., | Case No.  1:18-cv-01676-NONE-SAB |
| Plaintiffs, | ORDER VACATING JUNE 10, 2020 HEARING |
| v. | FINDINGS AND RECOMMENDATIONS RECOMMENDING DENYING PLAINTIFFS' MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION AND COLLECTIVE ACTION SETTLEMENT |
| OLAM SPICES AND VEGETABLES, INC., | |
| Defendant. | |
| | (ECF Nos. 25, 26) |
| | OBJECTIONS DUE WITHIN TWENTY-ONE DAYS |

Currently before the Court is Plaintiffs' motion for preliminary approval of a class action and collective action settlement.  The matter has been referred to a United States magistrate judge pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Rule 302.

The Court, having reviewed the record, finds this matter suitable for decision without oral argument.  See Local Rule 230(g).  Accordingly, the previously scheduled hearing set on June 10, 2020, will be vacated and the parties will not be required to appear at that time.

The Court issues the following findings and recommendations recommending denying the motion for preliminary approval.

1

# I.

# BACKGROUND

### A.     Beltran Action

On July 7, 2015, Plaintiff Thomas Beltran commenced a class action lawsuit against Defendant, erroneously sued as Olam Spices and Vegetables, Inc., in the Alameda County Superior Court, Case No. RG15776976 ("Beltran Action"). (Beltran Compl., ECF No. 1-1 at 5-35.) On September 9, 2015, upon a motion filed by Defendant being granted, the Beltran Action was transferred to the Fresno County Superior Court, Case No. 15CECG02993. (Defendant's Notice and Motion to Transfer Venue and Request for Reasonable Expenses and Attorney Fees, ECF No. 1-1 at 56-114; Order Granting Motion for Change of Venue, id. at 176.)   A first amended complaint ("FAC") was filed on November 10, 2015, adding Mario Martinez as a plaintiff. (FAC, ECF No. 1-2 at 6-32.)  Defendant filed a demurrer to the complaint after which the parties were ordered to meet and confer on the filing of a second amended complaint (Def. Olam West Coast Inc.'s Notice of Demurrer to Pl.'s FAC for Damages and Demurrer and Mot. to Strike, ECF No. 1-2 at 50-85; Tentative Ruling, id. at 257-58.)  A second amended complaint was filed on April 25, 2016.  ("SAC"), ECF No. 1-3 at 16-40.)  Defendant filed an answer on May 27, 2016. (Answer of Def. Olam West Coast, Inc. to SAC for Damages, ECF No. 1-3 at 48-59.)

On March 16, 2017, the parties filed a notice that the matter had settled. (Joint Notice of Class Action Settlement, ECF No. 1-13 at 47-48.)  On June 1, 2017, Plaintiffs Beltran and Martinez filed a motion for preliminary approval of a class action settlement. (Pls.' Notice of Mot. and Mot. for Preliminary Approval of Class Action Settlement; Memo. of P&A in Support, ECF No. 1-11 at 65-ECF No. 1-12 at 58.)  The motion for preliminary approval was denied on July 18, 2017. (Law and Motion Minute Order, ECF NO. 1-12 at 74-78.)

On October 6, 2017, the state judge granted the request to release the names of the putative class members to the class action administrator who did not opt out during the Belaire-West opt out notice but no mass mailing to the putative class members could be done without further order of the court. (Law and Motion Minute Order, ECF No. 1-13 at 123.)

**B.  Other Actions**

On September 15, 2015, Plaintiff Maria Claudia Obeso Cota filed a class action lawsuit against Defendant in the Sonoma County Superior Court, Case No. SCV257741 ("Cota Action"). (Decl. of Vincent C. Granberry ("Granberry Decl. ¶ 5, ECF No. 25-2 at 2-16.)  Pursuant to a stipulation and order, on or about January 22, 2016, the Cota Action was transferred to the Fresno County Superior Court, Case No. 16CECG00081.  (Id.)

On February 18, 2016, Plaintiff Alexander Solorio filed a complaint for civil penalties pursuant to PAGA against Defendant in the Fresno County Superior Court, Case No. 16CECG00513 (the "Solorio Action").  (Id. at ¶ 6.)

On October 6, 2016, Plaintiff Juan Rivera filed a complaint for civil penalties under PAGA against Defendant in the State of California for the County of Santa Clara, Case No. 16CV300758 ("Rivera Action") on behalf of the State of California and other aggrieved hourly paid or non-exempt employees who worked for Defendant since August 1, 2015.  (Id. at ¶ 7.)

**C.  Consolidation of Actions**

On March 14, 2018, the parties filed a stipulation granting Plaintiffs' leave to file a third amended class action complaint ("TAC").  (Joint Stip. Granting Pls. Leave to File TAC, ECF No. 1-13 146-191.)  The stipulation was granted and the third amended complaint was filed on April 11, 2018, adding Plaintiffs Maria Claudia Obeso Cota, Juan Rivera, Mariana Ramirez, and Alexander Solorio and claims under the Fair Labor Standards Act ("FLSA").  (ECF No. Joint Stip. and Order Granting Pls.' Leave to File TAC, ECF No. 1-13 at 194-197; TAC, id. at 214-253.)

Plaintiffs filed a renewed motion for preliminary approval of the class action settlement on June 26, 2018.  (Pls.' Renewed Notice of Mot. and Mot. for Preliminary Approval of Class Action Settlement; Memo. of P&A in Support Thereof, ECF No. 1-14 at 27-357.)  The parties were provided with the opportunity to file supplemental briefing, and supplemental briefing was filed.  (Law and Motion Minute Order, ECF No. 1-15 at 23; Def. Olam West Coast Inc. Req. for Judicial Notice in Support of Pls.' Renewed Mot. for Preliminary Approval of Class Action Settlement, ECF No. 1-15 at 33-90; Decl. of Ryan Williams, ECF No. 1-16 at 2-348; Suppl.

1   Brief in Support of Pls.' Renewed Mot. for Preliminary Approval of Class Action Settlement,

2   ECF No. 1-17 at 3-ECF No. 1-19 at 22.)  On October 25, 2018, a hearing on the motion was held

3   and the motion for preliminary approval was continued to allow the parties to file supplemental

4   briefing.[1]  (Law and Motion Minute Order, ECF No. 1-19 at 25.)

5        After the state court hearing on the motion for preliminary approval, but prior to the state

6   court deciding the renewed motion for preliminary approval, on December 10, 2018, Defendants

7   removed this matter to the Eastern District of California.  (ECF No. 1.)  A scheduling order was

8   issued on December 11, 2018 setting a mandatory scheduling conference for February 12, 2019.

9   (ECF No. 4.)  After receiving several extensions of the mandatory scheduling conference, the

10  parties filed a joint scheduling report on October 29, 2019.  (ECF Nos. 9, 11, 14, 16.)  On review

11  of the joint report, all pending dates in this matter were vacated and the parties were ordered to

12  file a motion for preliminary approval of the class action settlement on December 11, 2019, and

13  the Court indicated that it was not likely to grant any further continuances due to the age of this

14  action.  (ECF No. 18.)

15       On December 13, 2019, Plaintiffs filed a suggestion of death of Plaintiff Mariana

16  Ramirez.  (ECF No. 19.)  On December 16, 2019, a joint statement regarding the death of

17  Mariana Ramirez and an order requiring the parties to show cause why sanctions should not

18  issue for the failure to file the motion for preliminary approval were filed.  (ECF Nos. 20, 21.)

19  On December 17, 2019, the order to show cause was discharged, and the parties were ordered to

20  file a motion for preliminary approval by April 13, 2020.  (ECF No. 22.)

21       On April 8, 2020, an order issued dismissing Plaintiff Mariana Ramirez pursuant to Rule

22  25 of the Federal Rules of Civil Procedure.  (ECF No. 24.)  The instant motion for preliminary

23  approval of the class action and collective action settlement was filed on April 13, 2020.  (ECF

24  No. 25.)  On May 27, 2020, Defendant filed a statement of non-opposition to Plaintiffs' motion

25  for preliminary approval of the class settlement.

---

26  [1] The current motion states that the state court denied the motion for preliminary approval, however the minute order
    continued the hearing on the motion for supplemental briefing.  There is no order otherwise addressing the motion.

27  Further, the parties filed a stipulation to continue the hearing from January 3, 2019 to January 23, 2019 contrary to
    Plaintiff's contention that the motion for preliminary approval was denied on October 25, 2018.  (ECF No. 1-19 at

28  32-33.)

## II.

## RELEVENT THIRD AMENDED COMPLAINT ALLEGATIONS

Thomas Beltran, Mario Martinez, Juan Rivera, Maria Claudia Obeso Cota, and Alexander Solorio (collectively "Plaintiffs") were employed by Olam West Coast, Inc. ("Defendant").

Plaintiffs seek to represent a class defined as:

> All current and former persons who were employed by Defendant in a position classified by Defendant as non-exempt and/or hourly non-exempt and who worked in that capacity at Defendant's Fresno, Firebaugh, Hanford, Lemoore, Gilroy, and/or Williams locations within the State of California at any time during the period from July 7, 2011 to final judgment.

(TAC ¶ 18.)  The class is composed of approximately 6,000 individuals.

Plaintiffs Solorio, Rivera, and Ramirez provided written notice to the Labor and Workforce Development Agency ("LWDA") that Defendant had violated specific provisions of the California Labor Code.

Plaintiff Beltran was employed by Defendant as an hourly paid, non-exempt employee, from June 2006 to approximately March 2010, and from May 2011 to July 16, 2012 at Defendant's Gilroy location.  Plaintiff Beltran was an industrial line operator and packaging general labor.  His duties included performing inventory, cleaning, and processing orders.

Plaintiff Martinez was employed by Defendant as an hourly paid, non-exempt employee from August 2012 to October 2013 at Defendant's Firebaugh location.  Defendant Martinez was a warehouse and packaging forklift operator.  His duties included performing inventory, cleaning, and pulling and processing orders.

Plaintiff Rivera was employed by Defendant as an hourly paid, non-exempt employee from October 2006 to September 2015 at Defendant's Gilroy location.  Plaintiff Rivera was a forklift operator whose job included pulling and processing products, organizing, and maintaining paperwork.

Plaintiff Cota was employed by Defendant as an hourly paid, non-exempt employee at Defendant's Lemoore location from July 2013 to approximately October 2013.  Plaintiff Cota was in Paste DBH and Sanitation and her job duties included sorting.

Plaintiff Solorio was employed by Defendant as an hourly paid, non-exempt employee at Defendant's Lemoore location from approximately 2012 to October 28, 2015.

Plaintiffs bring the following causes of action against Defendant: 1) failure to pay overtime in violation of California Labor Code sections 510 and 1198; 2) failure to pay overtime in violation of the FLSA, 29 U.S.C. § 207; 3) failure to provide meal breaks in violation of California Labor Code sections 226.7 and 512(a) and the applicable industrial wage orders; 4) failure to provide rest periods in violation of California Labor Code section 226.7 and the applicable industrial wage order; 5) failure to pay minimum wages in violation of California Labor Code section 1194, 1197, and 1197.1; 6) failure to pay minimum wages in violation of the FLSA, 29 U.S.C. § 206; 7) failure to timely pay wages upon termination of employment in violation of California Labor Code sections 201 and 202; 8) failure to provide accurate wage statements in violation of California Labor Code section 226(a); 9) failure to reimburse for all necessary expenditures in violation of California Labor Code sections 2800 and 2802; 10) unfair and unlawful business practices in violation of California Business and Professions Code sections 17200, et seq.; and 11) violation of California's Public Attorney General Act ("PAGA").

### III.

### TERMS OF THIRD AMENDED SETTLEMENT AGREEMENT

Defendant agrees to pay $4,500,000.00 to settle the claims in this action.

The settlement agreement covers the period from July 7, 2011, to the date of preliminary approval.

The class is releasing all wage and hours claims that were pled or could have been pled in the TAC, including,

> any statutory, constitutional, contractual or common law claims for wages (including minimum wage, overtime, and premium wages, and for any failure to pay overtime based on the regular rate of pay), damages, business expenses, or penalties (including waiting time penalties), liquidated damages, punitive damages, interest, restitution, equitable relief, or any other relief, based on any and all applicable statutes (other than the Fair Labor Standards Act, including without limitation the California Labor Code, the California Industrial Welfare Commission wage orders, Labor Code Private Attorneys General Act of 2004 (Cal. Lab. Code §§ 2698, et seq.) ("PAGA"), California Business and Professions Code § 17200, et seq, or other law, including, but not limited to, claims based on the following categories of allegations during the Settled Period: (a) all claims for

unpaid overtime; (b) all claims for meal and rest period violations; (c) all claims for unpaid minimum wages; (d) all claims for untimely payment of wages upon termination; (e) all claims for untimely payment of wages during employment; (f) all claims for failure to pay wages; (g) all claims for failure to provide accurate or otherwise proper itemized wage statements; (h) all claims for failure to keep complete and accurate payroll records; (i) all claims for failure to reimburse necessary business-related expenses and costs; (j) all claims asserted, or which could have been asserted, under PAGA arising out of the aforementioned claims; (k) all claims asserted through California Business & Professions Code § 17200 et seq. arising out of the aforementioned claims; and (l) all other claims for penalties, liquidated damages, punitive damages, interest, attorneys' fees, litigation costs, restitution, equitable relief, or additional damages that allegedly arise out of the aforementioned claims.

(Settlement Agreement ¶ II.31.)

The FLSA collective members are releasing all FLSA claims arising out of their employment that were raised or could have been raised in this action through the effective date of the agreement.

The class representatives are releasing any and "all options, claims, causes of action, demands, damages, debts, liabilities, accounts, reckonings, obligations, losses, costs, expenses, liens, actions, and claims of any sort, whether sounding in law or in equity.  The General Release includes, but is not limited to, any and all claims, demands, causes of action, obligations and liabilities, whether or not presently known or unknown, fixed or contingent, that in any way relate to or arise from each Plaintiff's employment with Olam. . . ."  (Third Am. Class Action and Collective Action Settlement and Release Agreement (hereafter "Settlement Agreement") ¶ II.20, ECF No. 25-1.)

The settlement administrator shall be Simpluis, Inc. and the parties represent that they do not have any financial interest in or otherwise have a relationship with Simpluis, Inc. that would create a conflict of interest.  The settlement administration costs shall be paid from the total settlement fund.  The administration costs to be paid to the settlement administrator are estimated to be $58,000.00.

Defendant agrees not to oppose or impede any application or motion for attorney fees of not more than $1,575,000.00, which is thirty-five percent of the total settlement funds plus costs and expenses of not to exceed $65,000.00.  Any attorney fees not awarded will be added to the net settlement fund.

Defendant agrees not to oppose or impede any application or motion for incentive awards to the named class representatives. Plaintiffs Beltran, Martinez, Obeso Cota, and Solorio will receive an incentive award of $7,500.00 and Plaintiff Rivera will seek an award of $3,500.00.

A total of $150,000.00 will be paid to settle the PAGA claims. Of this amount $112,500.00 will be paid to the LWDA and $37,500.00 will be part of the net settlement fund.

The net settlement fund is the gross settlement fund less the settlement administration costs; attorney fees, costs, and expenses; Defendant's share of the payroll expenses; incentive payments to the named representatives, and the payment to the LDWA. Seventy-five percent of the net settlement fund is allocated to the Rule 23 class action and twenty-five percent is allocated to the FLSA collective action. Each members allocation shall be determined by multiplying the net settlement fund by the fraction that the individual member has worked. Each member's payment is allocated as thirty-four percent wages and sixty-six percent as penalties and interest. Each member's wage payment will be reduced by the employees required share of the payroll taxes and withholdings. No portion of the payment shall be credited toward calculating employee benefits under any employee benefit plan.

The settlement administrator shall mail the notice packet in Spanish and English to all Rule 23 class and FLSA collective action members at the most current, known mailing address. Prior to mailing the settlement administrator will perform a search of the National Change of Address Database to update and correct any known or identifiable address changes. Any packets that are returned as undeliverable prior to the response deadline will be resent by first class mail to any forwarding address affixed thereto. If there is no forwarding address the settlement administrator will conduct a skip trace or other search and will perform a single re-mailing. For any packet that is re-mailed, the individual will have an additional fifteen calendar days to respond.

The class notice will be mailed to all Rule 23 class members and the FLSA notice will be mailed to all FLSA members.[2] The Rule 23 class will be provided with information on how to

---

[2] The Court notes that at this time the only FLSA members are those who have filed a consent to join and currently no consents to join none have been filed.

opt out of the class action, object to the settlement or file a dispute of the workweeks credited to the class member.  To opt out, dispute the credited work weeks or object to the Rule 23 class action settlement, the form must be postmarked or a fax received sixty days from the initial mailing of the notice packet.  If a request to opt out is defective, the class member will be provided with an opportunity to cure the defect.  The settlement administrator will mail the class member a cure letter within three days.  The class member will have until the response deadline or fifteen days from the date of mailing to correct the form.

The FLSA notice will provide the deadline to postmark or fax workweeks disputes.

All class members who do not opt out will be bound by the settlement and will forever discharge and release the released class claims.  Only FLSA members who cash, deposit, or otherwise negotiate their FLSA payment will be deemed to have consented to join the FLSA collective and will be bound by the judgment.

The funds for any uncashed funds will be transmitted to the United Way for the local chapters in Fresno County, Kings County, Santa Clara County, and Colusa County.

The Court will retain jurisdiction of the settlement until all payments and obligations of the settlement agreement have been fully executed.

## IV

## LEGAL STANDARD

### A.    Rule 23 Class Action

The Ninth Circuit has declared that a strong judicial policy favors settlement of class actions.  Class Plaintiffs v. City of Seattle, 955 F.2d 1268, 1276 (9th Cir. 1992).  Nevertheless, especially where settlement occurs prior to class certification, courts must peruse the proposed settlement to ensure the propriety of class certification and the fairness of the settlement.  Staton v Boeing, 327 F.3d 938, 952 (9th Cir. 2003).

To certify a class, a plaintiff must demonstrate that all of the prerequisites of Rule 23(a), and at least one of the requirements of Rule 23(b) of the Federal Rules of Civil Procedure have been met.  Wang v. Chinese Daily News, Inc., 737 F.3d 538, 542 (9th Cir. 2013).  This requires the court to "conduct a 'rigorous analysis' to determine whether the party seeking class

1   certification has met the prerequisites of Rule 23." Wright v. Linkus Enterprises, Inc., 259

2   F.R.D. 468, 471 (E.D. Cal. 2009).

3    Federal Rule of Civil Procedure 23(e)(2) requires that any settlement in a class action be

4   approved by the court which must find that the settlement is fair, reasonable, and adequate.  The

5   role of the district court in evaluating the fairness of the settlement is not to assess the individual

6   components, but to assess the settlement as a whole.  Lane v. Facebook, Inc., 696 F.3d 811,

7   818-19 (9th Cir. 2012) reh'g denied 709 F.3d 791 (9th Cir. 2013).  In reviewing a proposed

8   settlement, the court represents those class members who were not parties to the settlement

9   negotiations and agreement.   In re Toys R Us-Delaware, Inc.--Fair & Accurate Credit

10  Transactions Act (FACTA) Litig., 295 F.R.D. 438, 448 (C.D. Cal. 2014).

11   **B.** **Collective Action Under the FLSA**

12   The FLSA establishes federal minimum-wage, maximum-hour, and overtime guarantees

13  that cannot be modified by contract or otherwise waived.   Genesis Healthcare Corp. v.

14  Symczyk, 569 U.S. 66, 69 (2013); Barrentine v. Arkansas-Best Freight Sys., Inc., 450 U.S. 728,

15  740 (1981).  The FLSA provides the right of an employee to represent similarly situated

16  employees in a suit against their employer for the failure to pay minimum wage or overtime

17  compensation.  29 U.S.C. § 216(b).  Unlike a class action under Rule 23, to participate in the

18  collective action an employee is required to give his consent in writing to become a party.  29

19  U.S.C. § 216(b); see Hoffmann-La Roche Inc. v. Sperling, 493 U.S. 165, 170 (1989) (rights in a

20  collective action under the FLSA are dependent on the employee receiving accurate and timely

21  notice about the pendency of the collective action, so that the employee can make informed

22  decisions about whether to participate).  "If an employee does not file a written consent, then

23  that employee is not bound by the outcome of the collective action."  Edwards v. City of Long

24  Beach, 467 F.Supp.2d 986, 989 (C.D. Cal. 2006).

25   Since an employee cannot waive claims under the FLSA, an FLSA claim "may not be

26  settled without supervision of either the Secretary of Labor or a district court."  Nen Thio v. Genji,

27  LLC, 14 F.Supp.3d 1324, 1333 (N.D. Cal. 2014); Selk v. Pioneers Mem'l Healthcare Dist., 159

28  F.Supp.3d 1164, 1172 (S.D. Cal. 2016); Kerzich v. Cty. of Tuolumne, 335 F.Supp.3d 1179, 1183

(E.D. Cal. 2018).   The Ninth Circuit has not established criteria for district courts to use in determining whether an FLSA collective action settlement should be approved.   Kerzich, 335 F.Supp.3d at 1183.   District courts in this circuit have used the Eleventh Circuit's approach which considers whether the settlement is a fair and reasonable resolution of a bona fide dispute.   Id.; Nen Thio, 14 F.Supp.3d at 1333; Selk, 159 F.Supp.3d at 1172.

After determining that a bona fide dispute exists, the court must determine whether the settlement is fair and reasonable.   Nen Thio, 14 F.Supp.3d at 1340; Selk, 159 F.Supp.3d at 1172. "In making this determination, many courts begin with the well-established criteria for assessing whether a class action settlement is 'fair, reasonable, adequate' under Fed. R. Civ. P. 23(e)," recognizing that not all the factors apply in an FLSA settlement   Selk, 159 F.Supp.3d at 1172; Kerzich, 335 F.Supp.3d at 1184; Smith v. Kaiser Found. Hosps., No. 3:18-CV-00780-KSC, 2019 WL 5864170, at *10 (S.D. Cal. Nov. 7, 2019).   In this circuit, courts "have balanced factors such as: the strength of the plaintiffs' case; the risk, expense, complexity, and likely duration of further litigation; the risk of maintaining class action status throughout the trial; the amount offered in settlement; the extent of discovery completed and the stage of the proceedings; the experience and views of counsel; the presence of a governmental participant; and the reaction of the class members to the proposed settlement.   Kerzich, 335 F.Supp.3d at 1184 (quoting Khanna v. Intercon Sec. Sys., Inc., No. 2:09-CV-2214 KJM EFB, 2014 WL 1379861, at *6 (E.D. Cal. Apr. 8, 2014), order corrected, 2015 WL 925707 (E.D. Cal. Mar. 3, 2015)).   If the settlement reflects a reasonable compromise over a bona fide dispute, the district court may approve the settlement in order to promote the policy of encouraging settlement of litigation.   Nen Thio, 14 F.Supp.3d at 1340; Kerzich, 335 F.Supp.3d at 1185.

**V.**

**DISCUSSION**

A.      **Deficiencies in the Proposed Settlement**

Federal Rule of Civil Procedure 23(e)(2) mandates that any settlement in a class action may only be approved by the court after finding that the settlement is fair, reasonable, and adequate after considering whether:

(A) the class representatives and class counsel have adequately represented the class;

(B) the proposal was negotiated at arm's length;

(C) the relief provided for the class is adequate, taking into account:

> (i) the costs, risks, and delay of trial and appeal;

> (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;

> (iii) the terms of any proposed award of attorney's fees, including timing of payment; and

> (iv) any agreement required to be identified under Rule 23(e)(3); and

(D) the proposal treats class members equitably relative to each other.

Fed. R. Civ. P. 23(e)(2)(A)-(D); Hanlon v. Chrysler Corp., 150 F.3d 1011, 1026 (9th Cir. 1998).

In evaluating whether the settlement under the FLSA is fair and reasonable, courts in this circuit "have balanced factors such as: the strength of the plaintiffs' case; the risk, expense, complexity, and likely duration of further litigation; the risk of maintaining class action status throughout the trial; the amount offered in settlement; the extent of discovery completed and the stage of the proceedings; the experience and views of counsel; the presence of a governmental participant; and the reaction of the class members to the proposed settlement. Kerzich, 335 F.Supp.3d at 1184 (quoting Khanna, 2014 WL 1379861, at *6.

Upon review of Plaintiff's instant motion for preliminary approval, the following obvious deficiencies preclude the Court from finding that the proposed settlement is fair and reasonable.

1.   Conflict of Interest Between Representative Plaintiffs and their Counsel and the Putative Class Members

Here, Defendants have offered $4,500,000.00 to settle the class and collective action claims. The net settlement fund is the gross settlement fund less the incentive awards of $33,500.00; settlement administration costs of $58,000.00; the LWDA payment of $112,500.00; attorney fees of $1,575,000.00 and costs of $65,000.00; and employer's share of the payroll taxes of $117,000.00 to $168,000.00. (Settlement Agreement, ¶ II.39; Motion, 13.) The net settlement fund is estimated to be $2,656,000.00 prior to the deduction of the employer's payroll

1  taxes.  With the employer's portion of the payroll taxes deducted, the net settlement fund is

2  somewhere between $2,539,000.00 and $2,488,000.00.

3       Counsel has set forth the potential value of each of the claims brought in this action.

4  (Aiwazian Decl. ¶ 28.)

| Claim | Potential Value | Discounted Amount |
|---|---|---|
| Calif. Overtime Claim | $5,502,201.65 | $352,140.90 |
| FLSA Overtime Claim | $9,609,444.56 | $384,377.78 |
| Calif. Minimum Wage Claim | $3,667,210.47 | $366,721.05 |
| FSLA Minimum Wage Claim | $3,509,746.76 | $350,974.68 |
| Meal Period and Premium Claim | $11,001,631.41 | $962,642.75 |
| Rest Period and Premium Claim | $3,667,201.47 | $366,721.05 |
| Pay Timely Wage Claim | $18,222,472.80 | $455,561.82 |
| Complaint Statement Claim | $21,508,000.00 | $537,700.00 |
| Business Expense Claim | $1,663,134.00 | $83,156.70 |
| PAGA Penalties | $2,688,500.00 | $134,425.00 |

11 (Aiwazian Decl. ¶ 28.)  Plaintiffs assert that the potential value of the claims is $81,039,543.12.

12 The discounted amount for these claims is $3,994,421.73 which is 4.9 percent of the potential

13 value of the claims brought in this action.  However, Plaintiffs have not addressed how they

14 calculated the potential value of these claims.

> Balancing the class's potential recovery against the amount offered in settlement
> is "perhaps the most important factor to consider" in preliminary approval, Cotter
> v. Lyft, Inc., 176 F.Supp.3d 930, 935 (N.D. Cal. 2016), not a hollow exercise in
> which the Court blindly accepts the parties' unsupported assertions.  As another
> court aptly put it: "Plaintiffs seeking preliminary approval should show their work
> by explaining the relative value of their claims in significant detail.  For example,
> in a wage-and-hour case like this one, plaintiffs should show or estimate how
> many employees were allegedly shortchanged, calculate and explain to the Court
> the amount by which typical employees were allegedly shortchanged on an hourly
> or daily basis, and show or estimate the number of hours or days the employees
> were allegedly shortchanged."  Eddings v. DS Servs. of Am., Inc., No. 15-CV-
> 02576-VC, 2016 WL 3390477, at *1 (N.D. Cal. May 20, 2016).

22 Haralson v. U.S. Aviation Servs. Corp., 383 F.Supp.3d 959, 970 (N.D. Cal. 2019).

23       Further, Plaintiffs have not addressed whether liquidated damages were included in the

24 FLSA damage calculation.  Under 29 U.S.C. § 216(b), an employer who violates minimum wage

25 or overtime provisions of the FLSA can be liable for an equal amount of liquidated damages in

26 addition to the unpaid compensation due.  Liquidated damages are the norm and single damages

27 are the exception in FLSA cases.  Nellis v. G.R. Herberger Revocable Tr., 360 F.Supp. d 1033,

28 1045 (D. Ariz. 2005).  Also, Plaintiffs have not indicated whether the FLSA damages are

calculated using a two or three year limitations period.  See 29 U.S.C. § 255(a).   This could mean that the discounted value of the FLSA claims is much greater than the 95 percent reflected in the above figures.

"Even a fractional recovery of the possible maximum recovery amount may be fair and adequate in light of the uncertainties of trial and difficulties in proving the case."  Millan v. Cascade Water Servs., Inc., 310 F.R.D. 593, 611 (E.D. Cal. 2015).  However, the information provided is insufficient for the Court to find that the amount offered in settlement is fair and reasonable.  In any future motion for approval of the settlement agreement, the parties will need to address these issues with the calculation of damages and more adequately explain in more detail why such large deductions are appropriate.

Another issue that the Court finds problematic arises when considering the amount of attorney fees and the incentive fees in relation to the overall settlement deductions and the actual amounts that the putative class members will receive in settlement of their claims.  The Ninth Circuit has emphasized that courts "must be particularly vigilant not only for explicit collusion, but also for more subtle signs that class counsel have allowed pursuit of their own self-interests and that of certain class members to infect the negotiations."  In re Bluetooth Headset Prod. Liab. Litig., 654 F.3d 935, 947 (9th Cir. 2011).  The Ninth Circuit has identified that the following aspects may be such signs of collusion: (1) "when counsel receive a disproportionate distribution of the settlement, or when the class receives no monetary distribution but class counsel are amply rewarded"; (2) "when the parties negotiate a 'clear sailing' arrangement providing for the payment of attorneys' fees separate and apart from class funds"; and (3) "when the parties arrange for fees not awarded to revert to defendants rather than be added to the class fund."  Id. (internal citations and quotation marks omitted).

The net settlement fund to be designated to the class settlement is $1,992,000.00.  This amount is to be distributed on a pro rata basis based on the number of weeks in the period and the length of class member's employment.  Payments to the class members are estimated as follows:

/ / /

- 6 months: [(26 Workweeks÷ 554,378 total Workweeks) x $1,992,000] = $93.42
- 1 year: [(52 Workweeks÷ 554,378 total Workweeks) x $1,992,000] = $186.85
- 2 years: [(104 Workweeks÷ 554,378 total Workweeks) x $1,992,000] = $373.69
- 3 years: [(156 Workweeks÷ 554,378 total Workweeks) x $1,992,000] = $560.54
- 4 years: [(208 Workweeks÷ 554,378 total Workweeks) x $1,992,000] = $747.39
- 5 years: [(312 Workweeks÷ 554,378 total Workweeks) x $1,992,000] = $1,121.08
- 6 years: [(364 Workweeks÷ 554,378 total Workweeks) x $1,992,000] = $1,307.93
- 7 years: [(416 Workweeks÷ 554,378 total Workweeks) x $1,992,000] = $1,494.78

(ECF No. 25 at 14.)

The net settlement fund for the FLSA collective is estimated to be $664,000.00.  (ECF No. 25 at 15.)  The FLSA settlement is distributed on a pro rata basis based on the length of the collective member's employment.  Payments to the FLSA collective are estimated as follows:

- 6 months: [(26 Workweeks÷ 554,378 total workweeks) x $664,000] = $31.14
- 1 year: [(52 Workweeks÷ 554,378 total workweeks) x $664,000] = $62.28
- 2 years: [(104 Workweeks÷ 554,378 total workweeks) x $664,000] = $124.56
- 3 years: [(156 Workweeks÷ 554,378 total workweeks) x $664,000] = $186.85
- 4 years: [(208 Workweeks÷ 554,378 total workweeks) x $664,000] = $249.13
- 5 years: [(312 Workweeks÷ 554,378 total workweeks) x $664,000] = $373.69
- 6 years: [(364 Workweeks÷ 554,378 total Workweeks) x $664,000] = $435.98
- 7 years: [(416 Workweeks÷ 554,378 total Workweeks) x $664,000] = $498.26

(ECF No. 15.)

Of the $4,500,000.00 gross settlement fund, Plaintiffs estimate that the net settlement fund will be $2,656,000.  (ECF No. 25 at 14.)  As discussed above, the putative class members claims have been discounted by more than 95 percent.  Based on the estimated class payments, class member payments can range from $31.14 to $1,993.06.  While the class representatives will receive their pro rata share of the settlement, they are also seeking an incentive payment that is almost double to over triple **the most** that any putative class member will be receiving.[3]

Similarly, in the Ninth Circuit, courts typically calculate twenty-five percent of the common fund as the "benchmark" for a reasonable fee award providing adequate explanation in the record for any special circumstances that justify departure.  In re Bluetooth, 654 F.3d at 942.  The usual range for common fund attorney fees are between twenty to thirty percent.  Vizcaino v. Microsoft Corp., 290 F.3d 1043, 1047 (9th Cir. 2002).  While the benchmark figure can adjust upward or downward to fit the individual circumstances of a case, the deviation must be

---

[3] This Court has previously approved incentive payments of $3,500.00 to $5,000.00 but requires the representative class member to submit evidence to support the amount requested.

1   accompanied by a reasonable explanation of why the benchmark is unreasonable under the

2   circumstances.  Paul, Johnson, Alston & Hunt v. Graulty, 886 F.2d 268, 273 (9th Cir. 1989).

3       Here, Plaintiffs are seeking attorney fees in the amount of $1,575,000.00 which is 35

4   percent of the gross settlement fund.[4]  Plaintiffs assert that the amount is reasonable based on the

5   length of time this action has been proceeding, the amount of time expended and the possibility

6   that the litigation would not be successful and no fees would be recovered.  But other than

7   making conclusory allegations, Plaintiffs do not set forth any argument as to why any of these

8   factors weigh in favor of awarding a percentage above the benchmark.

9       Further, the court notes that, while the parties point to the length of time that this action

10  has been proceeding, the parties agreed to settle this action in March of 2017 and this is the third

11  motion for preliminary approval that has been unsuccessful.  Counsel is advised that should this

12  matter proceed to final approval, they will be required to provide detailed billing records to

13  support the fee request.  The Court will conduct a lode star cross check for the fee request.

14  Especially, as here where there are multiple firms seeking attorney fees and the same motion has

15  been filed multiple times, the Court is concerned regarding the possibility of duplication of fees.[5]

16  See Moreno v. City of Sacramento, 534 F.3d 1106, 1112 (9th Cir. 2008) (hours for unnecessary

17  duplicative work may be deducted from a fee request).

18      Additionally, the parties have negotiated a smooth sailing agreement as Defendant has

19  agreed not to oppose the requests for incentive payments and attorney fees.  The facts that the

20  class claims have received deductions of over ninety five percent, the incentive payments are far

21  in excess of the amount that any of the putative class member will be receiving, and that the

22  attorney fees sought in this matter are far in excess of the Ninth Circuit's benchmark, raises the

23

---

24  [4] Although the Court notes that Defendant's share of the payroll taxes are being paid from the gross settlement fund. If the share of the payroll taxes that Defendant is required to pay are deducted from the gross settlement fund, then

25  the fees sought are 35.9 to 36.4 percent of the gross settlement fund.  Here the amount of the settlement fund estimated to be dispersed to the class and collective action members is 59 percent of the gross settlement fund.

26  [5] The parties are advised that to support an expense award, Plaintiffs should file an itemized list of expenses by

27  category and the total amount advanced for each category, allowing the Court to assess whether the expenses are reasonable."  Flores v. TFI Int'l Inc., No. 12-CV-05790-JST, 2019 WL 1715180, at *11 (N.D. Cal. Apr. 17, 2019).

28  At final approval counsel is required to provides receipts to support their claimed expenses.  Flores, 2019 WL 1715180, at *11.

inference that the settlement has been reached due to the self-interest of the representative Plaintiffs and their attorneys at the expense of the putative class members.  Upon review of the motion, the Court finds that there is an inference that a conflict of interest has been created between the representative Plaintiffs and class counsel that would preclude approval of the settlement agreement.

2.     FLSA Claims

The Ninth Circuit has held that "plaintiffs are similarly situated, and may proceed in a collective, to the extent they share a similar issue of law or fact material to the disposition of their FLSA claims."  Campbell v. City of Los Angeles, 903 F.3d 1090, 1117 (9th Cir. 2018). While it is unclear what standard should be used to determine if the employees are similarly situated under the FLSA, given that the employee consents to participating in the FLSA actions courts do find that "the requisite showing of similarity of claims under the FLSA is considerably less stringent than the requisite showing under Rule 23 of the Federal Rules of Civil Procedure."  Hill v. R+L Carriers, Inc., 690 F.Supp.2d 1001, 1009 (N.D. Cal. 2010); accord Millan, 310 F.R.D. at 607.  The plaintiffs can proceed as a collective action where they allege a single, FLSA-violating policy and argue a common theory of defendant's statutory violations.  Senne v. Kansas City Royals Baseball Corp., 934 F.3d 918, 949 (9th Cir. 2019). Plaintiffs need to identify the FLSA violating policy that exists and argue a common theory for the FLSA statutory violations to show that the employees who work at different locations and in different positions are similarly situated.

Additionally, in order to settle claims under the FLSA there must be a bona fide dispute. A bona fide dispute exists where there are legitimate questions about the existence and extent of a defendant's liability and there is some doubt that the plaintiffs would succeed on the merits of their FLSA claims in the litigation.  Selk, 159 F.Supp.3d at 1172.  "If there is no question that the FLSA entitles plaintiffs to the compensation they seek, then a court will not approve a settlement because to do so would allow the employer to avoid the full cost of complying with the statute." Id.

While Plaintiffs have presented evidence that Defendant did not pay for all hours worked,

1   they have not specifically addressed whether there is a bona fide dispute as to the FLSA claims.

2   Plaintiffs' motion is unclear as to why these hours have not been paid. Federal law requires that

3   all hours worked be paid and if there is no dispute that the employees should have been paid for

4   this time then Defendant cannot avoid the full cost of complying with FLSA by settling these

5   claims. The Court finds that Plaintiffs have not demonstrated that a bona fide dispute exists for

6   the FLSA claims.

7          3.     <u>Notice and Opt-in Procedures for the FLSA Collective</u>

8          The parties propose that a member will opt into the FLSA class by cashing their

9   settlement check. The FLSA payment shall contain the following statement:

> 10     By endorsing this check, I consent to join the lawsuit entitled <u>Beltran, et. al. v.</u>
> 11     <u>Olam West Coast, Inc.</u>, Eastern District of California, Fresno Division, Case No.1:18-cv-01676-LJO-SAB, pursuant to the provisions of the Fair Labor
> 12     Standards Act "FLSA"), 29 USC Section 216(b), for purposes of participating in the settlement. I further understand and agree that my cashing, depositing, or
> 13     otherwise negotiating this check constitutes a full and complete release of any and all of Released FLSA Claims and that a copy of this check, may be filed with the
> 14     Court, with personal information other than my name redacted, as evidence of my consent.

15  (Settlement Agreement ¶ III.19(b).)

16         However, the FLSA provides that "[n]o employee shall be a party plaintiff to any such

17  action unless he gives his consent in writing to become such a party and such consent is filed in

18  the court in which such action is brought." 29 U.S.C. § 216(b). Plaintiffs fail to address how

19  opting-into the class by signing the settlement check complies with the requirement that the

20  employee provide his consent in writing to become a party to this action. In essence, the

21  settlement agreement treats each employee as being included in the FLSA settlement and the

22  failure to cash the check would be the employee's decision to opt-out.

23         This Court and other courts that have considered this procedure have found that it does

24  not comply with the FLSA.[6] <u>See</u> <u>Haralson</u>, 383 F.Supp.3d at 969 (collecting cases); <u>Smothers v.</u>

25

---

26  [6] The Court is aware that other courts have approved this procedure for opting into the collective action. For example, <u>Lee v. JPMorgan Chase & Co.</u>, No. SACV13511JLSJPRX, 2014 WL 12580237 (C.D. Cal. Nov. 24,

27  2014), approved opting in by signing the back of the check, but without any discussion as to whether this complies with the FSLA opt-in requirement. This Court agrees with those courts that have considered the statutory language and the purpose of the opt-in requirement to find that opting into the FLSA collective by signing the back of the

28  settlement check is not sufficient to comply with the FLSA.

NorthStar Alarm Servs., LLC, No. 217CV00548KJMKJN, 2019 WL 280294, at * 10-11 (E.D. Cal. Jan. 22, 2019) (finding procedure suggested fatally flawed); Smith, 2019 WL 5864170, at *10 (suggested procedure is not adequate consent to participate in collective action); Hudson v. Libre Tech. Inc., No. 3:18-CV-1371-GPC-KSC, 2019 WL 5963648, at *8 (S.D. Cal. Nov. 13, 2019) (proposed "procedure flies squarely in the face of the FLSA"); Johnson v. Quantum Learning Network, Inc., No. 15-CV-05013-LHK, 2016 WL 8729941, at *1 (N.D. Cal. Aug. 12, 2016) ("proposed opt in procedure does not comply with the plain language of the FLSA"); Kempen v. Matheson Tri-Gas, Inc., No. 15-CV-00660-HSG, 2016 WL 4073336, at *9 (N.D. Cal. Aug. 1, 2016) (proposed opt-in procedure violates the FLSA).

The Court is cognizant that there is a possibility of confusion due to the parties providing notice to the FLSA class which requires them to opt-in and notice to the Rule 23 class which requires providing the class members the opportunity to opt-out at the same time. See Edwards, 467 F.Supp.2d at 992 (confusion results where a collective action and Rule 23 action are allowed to proceed in the same case); Misra v. Decision One Mortg. Co., LLC, 673 F.Supp.2d 987, 994 (C.D. Cal. 2008) (recognizing concerns related to simultaneous pursuit of FLSA opt-in collective action and Rule 23 opt-out action). However, if Plaintiffs wish to pursue this as a hybrid action the class members and collective members have the option to decide if they want to remain in the class action and whether they want to opt-in to the collective action prior to final approval of the settlement.

In an FLSA action, "the court must provide potential plaintiffs 'accurate and timely notice concerning the pendency of the collective action, so that they can make informed decisions about whether or not to participate.' " Millan, 310 F.R.D. at 607. "A collective is not formed until other plaintiffs file consent forms with the court joining (that is, 'opting into') the original named plaintiff's case." Rangel v. PLS Check Cashers of California, Inc., 899 F.3d 1106, 1109, n.1 (9th Cir. 2018). The procedure here does not provide for a putative member of the collective action to make an informed decision about whether they should choose to participate in the collective action until after final approval of the settlement agreement. Plaintiffs are required under the FLSA to provide notice of the collective action and an

1   opportunity for the putative members to opt into the collective action.  The Court finds that to

2   comply with the FLSA the parties must provide notice and an opportunity to opt-in to the FLSA

3   action prior to final approval of the settlement agreement.  The procedure proposed here, having

4   FLSA members opt-in to the collective action by signing the back of their settlement check, does

5   not comply with the requirements of the FLSA.

6        4.    Notice to the LWDA

7        Civil penalties recovered under PAGA are distributed between the aggrieved employees

8   (25%) and the LWDA (75%).  Cal. Labor Code § 2699(i).  Any settlement of PAGA claims must

9   be approved by the Court.  Cal. Labor Code § 2699(l).  The proposed settlement must also be

10  sent to the agency at the same time that it is submitted to the court.  Cal. Labor Code §

11  2699(l)(2).  Plaintiffs have not demonstrated that notice of the proposed settlement was provided

12  to the LWDA.

13       5.    Cy Press Beneficiary

14       The settlement agreement provides that all funds from uncashed checks are to be

15  transmitted to the United Way.  C*y pres* distribution allows the distribution of unclaimed funds to

16  indirectly benefit the entire class.  Six Mexican Workers v. Arizona Citrus Growers, 904 F.2d

17  1301, 1305 (9th Cir. 1990).  This requires the *cy pres* award to qualify as "the next best

18  distribution" to giving the funds directly to the class members.  Dennis v. Kellogg Co., 697 F.3d

19  858, 865 (9th Cir. 2012).  "Not just any worthy charity will qualify as an appropriate *cy pres*

20  beneficiary[,]" there must be "a driving nexus between the plaintiff class and the *cy pres*

21  beneficiary."  Dennis, 697 F.3d at 865 (quoting Nachshin v. AOL, LLC, 663 F.3d 1034, (9th Cir.

22  2011)).  The choice of distribution options should be guided by the objective of the underlying

23  statute and the interests of the class members.  Six Mexican Workers, 904 F.2d at 1307.

24       Here, Plaintiffs have not addressed the appropriateness of the United Way as a *cy pres*

25  beneficiary for any unclaimed funds, specifically how distribution to the United Way serves the

26  objectives of the underlying statutes or represents the interests of the class and collective action

27  members.

28       Also, the settlement agreement states that any uncashed checks will be paid to the *cy pres*

1   beneficiary, but does not address how any other unclaimed funds would be distributed.  For

2   example, the parties are estimating the amount of Defendant's payroll taxes and the cost of the

3   settlement administrator.  If those expenses end up being less than anticipated how will those

4   unpaid funds be distributed.  Further, what is to become of any excess funds apportioned to the

5   FSLA settlement if not all putative members opt-in to the collective action.

6          6.   Notice

7          In light of the requirement to provide accurate and timely notice of the collective action,

8   and due to "the inherent differences between Rule 23 class actions and FLSA collective actions,

9   courts considering approval of settlements in these hybrid actions consistently require class

10   notice forms to explain: '(1) the hybrid nature of th[e] action; (2) the claims involved in th[e]

11   action; and (3) the options that are available to California Class members in connection with the

12   settlement, including how to participate or not participate in the Rule 23 class action and the

13   FLSA collective action aspects of the settlement; and (4) the consequences of opting-in to the

14   FLSA collective action, opting-out of the Rule 23 class action, or doing nothing." Smith, 2019

15   WL 5864170, at *12 (quoting Pierce v. Rosetta Stone, Ltd., No. C 11-01283 SBA, 2013 WL

16   1878918, at *4 (N.D. Cal. May 3, 2013)).

17          Plaintiffs must provide for a mechanism for a recipient to participate in the Rule 23 class

18   but not opt in to the FLSA collective action that complies with the FLSA.  Further, a member

19   may choose to opt out of the Rule 23 class and opt into the FLSA collective action.  The notice

20   provided to the putative members must: "(1) explain how much of the settlement amount will be

21   paid for the release of the FLSA claims; (2) explain and provide a mechanism for recipients to

22   opt-in to the collective action that complies with the FLSA; and (3) explain the consequences of

23   opting into the FLSA collective, opting out of the Rule 23 class, or doing nothing" Smith, 2019

24   WL 5864170 at *13.

25          In addition to the above discussion finding that the proposed manner of opting into the

26   class does not comport with the FLSA, the Court notes the following corrections that need to be

27   made to both the Rule 23 class action and FLSA collective action notices.  First, the case number

28   listed in the notice is incorrect.  The case number changed upon the retirement of District Judge

21

1    Lawrence J. O'Neill, and the case number is now 1:18-cv-01676-NONE-SAB.  Also, the notice

2    states that Magistrate Judge Boone preliminarily approved the settlement and is the judge in this

3    action, however, the parties have not consented to the jurisdiction of the magistrate judge and

4    therefore it will be the district judge that would approve any settlement.  Currently, there is no

5    district judge assigned to this action and any order that issues will be signed by District Judge

6    Dale A. Drozd.

7            7.    Continuing Jurisdiction of Trial Court

8            Finally, the parties agreement states that the Court shall retain continuing jurisdiction

9    over the settlement agreement post-judgment.  The Court declines to retain jurisdiction post

10   judgment without a specific showing that it is necessary in this action.  This Court is one of the

11   busiest Court's in the country and sees no need to tie up two judges with retention of jurisdiction

12   without good cause.

13           **B.    Request for Certification of the Rule 23 Class and FLSA Collective Action**

14           The parties seek to certify a class under Rule 23 of the Federal Rules of Civil Procedure

15   and a collective action under the FLSA.  In bringing any further motion for approval of the

16   settlement agreement, the issues need to be addressed with more than conclusory allegations

17   that a uniform policy or procedure exists.

18           Here, the employees work at six different job sites and the Plaintiffs' declarations

19   themselves indicate that there may be site specific or individual issues rather than a common

20   policy or procedure that could preclude certification of the class or collective action.  The court

21   is required to pay " 'undiluted, even heightened attention' to class certification requirements in

22   a settlement context."  Hanlon, 150 F.3d at 1019 (quoting Amchem Products, Inc. v. Windsor,

23   521 U.S. 591, 620 (1997)).  "[I]n all class actions, commonality cannot be determined without a

24   precise understanding of the nature of the underlying claims.  Parsons v. Ryan, 754 F.3d 657,

25   676 (9th Cir. 2014).  "To assess whether the putative class members share a common question,

26   the answer to which 'will resolve an issue that is central to the validity of each one of the [class

27   members's] claims,' [the court] must identify the elements of the class members's case-in-

28   chief."  Parsons, 754 F.3d at 676 (citations omitted).  Further, it is not enough to set forth utterly

threadbare allegations that a group is exposed to illegal policies and practices to confer commonality.  Id. at 683.  "Rule 23(a) is not a pleading standard; rather, it requires proof that there are 'in fact ... common questions of law or fact.' "  Id. (citations omitted).

The current motion relies on the declaration of the person most knowledgeable stating that he was unable to identify any differences between the policies that are applied, but the substance of the testimony was that all policy was legally compliant.  Plaintiffs contend that they were required by Defendant's policies and procedures to be at their workstations and ready to work at the start of their scheduled shift and therefore performed work such as donning personal protective equipment and storing personal belongings prior to their start time and without compensation.  But the declarations of the named Plaintiffs state that while some employees were not allowed to clock in prior to or clock out after their shift (Decl. of Maria Claudia Obeso Cota, ¶ 6), other employees at different sites were allowed to clock in seven minutes prior to and clock out seven minutes after their scheduled start time (Decl. Thomas Beltran, ¶ 6; Decl. of Mario Martinez, ¶ 6; Decl. of Juan Rivera, ¶ 6.)  This would appear to indicate that the issue of donning and doffing may be due to decisions of the specific location and not a company-wide policy.  It is unclear from the declarations attached to the current motion whether the violations alleged are due to a system wide policy or are site or supervisor specific.

Plaintiffs also contend that they were required to purchase clothing to comply with Defendant's dress code policy, such as steel toed boots, and were not compensated for necessary business expenses.  But there is also evidence that the company had a policy offering such equipment and it was the employee's choice not to use such equipment and purchase their own.  (Decl. of Alexander Solorio, ¶ 7; Decl. of Vincent C. Granberry, ¶ 16).  This raises an issue of whether there are individualized issues that would preclude this claim from being adjudicated on a class wide basis.

Plaintiffs have not identified any specific written policy that would apply to the class and it is unclear from the current motion which unwritten policies were applied at all work locations rather than being site or supervisor specific issues.  The Court declines to sift through

1  the evidence presented in Plaintiffs' motion to try to determine which policies might be

2  sufficient to support class certification.  Plaintiffs need to identify the specific policy or policies

3  that would support class certification and address how resolution of a common question

4  regarding the policy or policies is apt to provide common answers in this action.

5      It is the party seeking to certify the class or collective action's burden to demonstrate

6  that the statutory requirements have been met, Ellis v. Costco Wholesale Corp., 657 F.3d 970,

7  979 (9th Cir. 2011), and this was precisely the reason that the state court denied approval of the

8  settlement in this matter.[7]

9                                              **VI.**

10                        **CONCLUSION AND RECOMMENDATION**

11      For the reasons discussed above, the Court finds that viewing the settlement agreement in

12  its totality demonstrates that there are glaring deficiencies that preclude a finding that the

13  settlement is fair and reasonable.  Further, Plaintiffs are advised that in filing a future motion for

14  preliminary approval of the settlement they must adequately brief the issues that the court must

15  address in determining if the settlement is fair and reasonable, providing sufficient information

16  for the court to evaluate the issues, and generic statements are not sufficient.  Haralson, 383

17  F.Supp.3d at 970.

18

19  _____

20  [7] See Reporter's Transcript of July 19, 2017 hearing, 8:22-10:7, ECF No. 1-12 at 112-139.

21      THE COURT: What are the common questions of law and fact that unite the Class?
    MR. LAVI: It's the same policies and procedures that was in place, at least that's what plaintiff is

22  claiming, Your Honor, is that the same policies, procedures, the same employee handbooks were
    in use with regards to all these non-exempt employees.  Obviously, defendants disagree and

23  defendant claims that there is no common policy and procedure, and they have their expert
    analysis showing how it is that these people should not be class members, but that was a dispute,
    and that's what basically led to the negotiations and finally the settlement agreement in this matter.

24  So our contention is that the same policies and procedures that they have applies to all of the non-
    exempt employees, which basically, in our opinion, violates the issues in this case, Your Honor.

25  THE COURT: All right. What else?
    . . .

26  THE COURT: Well, I don't think what's been submitted so far is adequate from my standpoint, so
    I think you're going to have to do more.

27  MR. LAVI: Okay. All right.
    THE COURT: I'm not denying this – I'm not denying this forever; I'm denying the current

28  application.  There's a lot of things that need to be much more discussed in detail than have been
    discussed before I can seriously evaluate this matter. . . .

Accordingly, IT IS HEREBY RECOMMENDED that the joint motion for preliminary approval of the settlement, filed April 13, 2020, be DENIED.

IT IS ORDERED that the hearing set for June 10, 2020 is VACATED and the parties do not need to appear on that date.

This findings and recommendations is submitted to the district judge assigned to this action, pursuant to 28 U.S.C. § 636(b)(1)(B) and this Court's Local Rule 304.  Within **twenty-one (21) days** of service of this recommendation, any party may file written objections to this findings and recommendations with the court and serve a copy on all parties.  Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  The district judge will review the magistrate judge's findings and recommendations pursuant to 28 U.S.C. § 636(b)(1)(C).  The parties are advised that failure to file objections within the specified time may result in the waiver of rights on appeal.  Wilkerson v. Wheeler, 772 F.3d 834, 839 (9th Cir. 2014) (citing Baxter v. Sullivan, 923 F.2d 1391, 1394 (9th Cir. 1991)).

IT IS SO ORDERED.

Dated: __**June 2, 2020**__

UNITED STATES MAGISTRATE JUDGE

25