Edwin Aiwazian (Cal. State Bar No. 232943)
Arby Aiwazian (Cal. State Bar No. 269827)
Joanna Ghosh (Cal. State Bar No. 272479)
**LAWYER *for* JUSTICE, PC**
410 West Arden Avenue, Suite 203
Glendale, California 91203
Tel: (818) 265-1020 / Fax: (818) 265-1021

*Attorneys for* Plaintiffs Thomas Beltran, Mario Martinez, and Juan Rivera

Susan K. Hatmaker (Cal. State Bar No. 172543)
Robert Branch (Cal. State Bar No. 154963)
**HATMAKER LAW GROUP**
7522 North Colonial Avenue, Suite 105
Fresno, California 93711
Tel: (559) 374-0077 / Fax: (559) 374-0078

*Attorneys for* Defendant Olam West Coast, Inc., Erroneously sued as Olam Spices and Vegetables, Inc.

## UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| THOMAS BELTRAN; MARIO MARTINEZ; MARIA CLAUDIA OBESO COTA; individually, and on behalf of other members of the general public similarly situated; JUAN RIVERA; MARIANA RAMIREZ; ALEXANDER SOLORIO; individually, and on behalf of other members of the general public similarly situated and on behalf of other aggrieved employees pursuant to the California Private Attorneys General Act;<br><br>              Plaintiffs,<br><br>vs.<br><br>OLAM SPICES AND VEGETABLES, INC., an unknown business entity; and DOES 1 through 100, inclusive,<br><br>              Defendants. | Case No. 1:18-cv-01676-NONE-SAB<br><br>**CLASS ACTION**<br><br>**OBJECTIONS TO MAGISTRATE JUDGE'S FINDINGS AND RECOMMENDATIONS THAT PLAINTIFFS' MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION AND COLLECTIVE ACTION SETTLEMENT SHOULD BE DENIED** |

Joseph Lavi (Cal. State Bar No. 209776)
Vincent C. Granberry (Cal. State Bar No. 276483)
**LAVI & EBRAHIMIAN, LLP**
8889 Olympic Blvd., Suite 200
Beverly Hills, California 90211
Tel: (310) 432-000 / Fax: (310) 432-0001

Sahag Majarian II (Cal. State Bar No. 146621)
**LAW OFFICE OF SAHAG MAJARIAN II**
18250 Ventura Boulevard
Tarzana, California 91356
Tel: (818) 609-0807 / Fax: (818) 609-0892

*Attorneys for* Plaintiffs Maria Claudia Obeso Cota and
Alexander Solorio

**Objections to Magistrate Judge's Findings and Recommendations that Plaintiffs' Motion for Preliminary Approval of Class Action and Collective Action Settlement should be Denied**

# I.    OBJECTIONS

Plaintiffs Thomas Beltran, Mario Martinez, Mario Claudia Obeso Cota, Juan Rivera, and Alexander Solorio ("Plaintiffs") and Defendant Olam West Coast, Inc., erroneously sued as "Olam Spices and Vegetables, Inc." ("Defendant") present the following objections to Magistrate Stanley A. Boone's Findings and Recommendations Denying Plaintiffs' Motion for Preliminary Approval of Class Action and Collective Action Settlement ("Magistrate's Order:"):

1.    The Magistrate's Order erroneously concludes that there are deficiencies in the Motion for Preliminary Approval that preclude the Court from finding the settlement is fair and reasonable. In regard, the Magistrate's Order erroneously concludes that:

a.   Plaintiffs have not addressed how they calculated the potential value of the claims as, Plaintiffs did in fact, as explained below, provide detailed analyses.

b.   That Plaintiffs did not discuss whether liquidated damages were included in the FLSA damage calculation, which could have easily been explained through supplemental briefing.

c.   That Plaintiffs did not mention whether the FLSA damages were calculated using a two or three-year limitations period. Again, this could have been addressed by supplemental briefing.

d.   Contrary to the Magistrate's Order, there is ample detail of the "large deductions" in the realistic value from the determined potential liability, which is laid out in the lengthy discussion of the contested issues and risk of litigation. Further information about the claims and the various discounting factors could be addressed in supplemental briefing.

e.   The Magistrate's Order improperly denies approval based upon the perceived excessive attorneys' fees because such fees were adequately supported by the work performed Class Counsel, which Class Counsel will submit extensive records for at final approval.

     f.   The Magistrate's Order improperly denies approval based upon the perceived excessive incentive fees because such fees were adequately supported by the work performed by each named plaintiff as described in their respective declarations submitted with the Motion for Preliminary Approval.

     g.   The perceived "smooth sailing" agreement for the attorneys' fees and Incentive Awards is easily addressed by its removal, which could have been addressed by supplemental briefing and an amendment to the settlement.

     h.   The conclusion in the Magistrate's Order that the findings give rise to an inference that a conflict of interest has been created between the representative Plaintiffs and the Class Counsel is not supported by the facts of the settlement and instead, as mentioned above, the attorneys' and incentive fees are adequately supported here.

2.   The Magistrate's Order erroneously concludes that Plaintiffs have not demonstrated that there is a bona fide dispute over the FLSA claims. A bona fide dispute does exist here, including, but not limited to, whether there was good faith, whether the de minimum rule applies, the amount, if any, and for the same reasons the California wage and hour claims are at risk, including whether the rounding was or was not improper.

3.   The Magistrate's Order erroneously concludes that the opt-in procedure for the FLSA claims is improper and/or inadequate. However, the check-cashing opt-in is not only acceptable, but has been approved by a number of courts, and the parameters assure adequate notice to the potential collective member that they are opting into a collective settlement and what that means.

4.   The Magistrate's Order erroneously concludes there was no notice of the settlement to the LWDA, when in fact there was, and to the extent that the giving of such notice was not clear, supplemental briefing could have easily addressed that misunderstanding.

5.    The Magistrate's Order erroneously concluded the *cy pres* was not adequately supported despite the fact that there are not fewer than five cases from the district courts in California, including the Eastern District, that have already approved the United Way as an appropriate *cy pres* in a wage and hour class action.

6.    The Magistrate's Order concludes that the Court retaining continuing jurisdiction over the settlement post-judgment is inappropriate. While the parties do not agree with the Magistrate's findings, the parties do not anticipate any post-judgment issues and therefore have agreed to remove the provision.

7.    The Magistrate's Order erroneously concludes that there is only conclusory allegations of a Uniform Policy or Procedure for purposes of certification. In fact, the basis of the claims is the practice of rounding and so the perceived differences between the clock in times at the different facilities is a difference without a distinction.

## II.    RELEVANT BACKGROUND FOR OBJECTIONS

On April 13, 2020, Plaintiffs filed a Motion for Preliminary Approval of Class and Collective Action Settlement ("Motion for Preliminary Approval") and supporting documents seeking approval of the Third Amended Class Action and Collective Action Settlement and Release Agreement ("Settlement" or "Settlement Agreement")[1] reached by and between Plaintiffs and Defendant.

On June 2, 2020, the Court issued its Findings and Recommendations raising multiple points of inquiry in connection with the Motion for Preliminary Approval and recommending denial of the Motion for Preliminary Approval. The Magistrate's Order calls for any objections to be filed within twenty-one days. The parties hereby submit this objection in order to address the Magistrate's concerns regarding the issues raised in the Magistrate's Order.

///

///

---

[1] The Third Amended Class Action and Collective Action Settlement and Release Agreement is attached as **EXHIBIT 1** to the Declaration of Edwin Aiwazian in Support of Plaintiffs' Motion for Preliminary Approval of Class and Collective Action Settlement (Dkt. 25-001) filed on April 13, 2020.

**Objections to Magistrate Judge's Findings and Recommendations that Plaintiffs' Motion for Preliminary Approval of Class Action and Collective Action Settlement should be Denied**

**III.    THE FINDINGS AND RECOMMENDATIONS SHOULD NOT BE ADOPTED BY THE COURT**

**A.    THE MAGISTRATE JUDGE'S DECISION ERRONEOUSLY CONCLUDES THAT THERE ARE DEFICIENCIES IN THE MOTION FOR PRELIMINARY APPROVAL THAT PRECLUDE THE COURT FROM FINDING THE SETTLEMENT IS FAIR AND REASONABLE**

**1.    Plaintiffs have Addressed How the Potential Value of the Claims were Calculated and Can Elaborate Further with Supplemental Briefing**

The Magistrate's Order took issue with potential value of the claims and how that was calculated.  As set forth in the Declaration of Edwin Aiwazian in Support of Plaintiffs' Motion for Preliminary Approval filed on April 13, 2020 ("Declaration of Edwin Aiwazian" or "Aiwazian Decl."), and discussed in the Motion for Preliminary Approval, both sides had the opportunity to interview witnesses and conducted significant discovery and investigation into the facts of the case.  (Aiwazian Decl., ¶ 14.)  For example, Class Counsel prepared for and took three (3) depositions of Defendant's Person Most Knowledgeable ("PMK") designees on February 24, 2017 and February 27, 2017 and prepared for and defended the depositions of Plaintiffs Beltran and Martinez on February 28, 2018. (*Ibid*).   Class Counsel also engaged in *Belaire-West* notice administration (by which Class Counsel obtained the contact information of Class Members who did not opt out of the disclosure of their information), interviewed many Class Members, and obtained and reviewed the employment records of over half a dozen Class Members and FLSA Members. (*Ibid*).   Both sides propounded and responded to multiple sets of written discovery requests in various forms.  (*Ibid*).  Class Counsel reviewed thousands of pages of data and documents, including but not limited to: Plaintiffs' and multiple other Class Members' employment records, over ten thousand pages of employee time detail records, almost fifteen thousand pages of employee payroll records, various orientation materials (such as the Orientation Training Agendas for 2011 and 2012, the 2012 Employee Orientation Checklist, the Orientation Employee Guidelines for 2011 and 2012, and the Orientation Handbook for

Production Hourly Employees for 2015), Defendant's Payroll Action Form, Defendant's Second Meal Period Waiver agreement, Defendant's policies and practices (such as the Standards of Conduct, Good Manufacturing Practices, Timekeeping Record Requirements, and Modest Plant Rules), various agreements and acknowledgements (such as the Agreement Acknowledgement of Receipt of Employee Handbook, Acknowledgement of Receipt of Company Policies, Personal Protective Equipment Policy Acknowledgment, and 2009 Conagra Foods/Code of Conduct Acknowledgement), fourteen versions/iterations of employee handbooks (such as Employee Handbooks dated September 2010, September 2012, 2013, 2014, 2015, and July 1, 2015; Employee Handbook for full time regular employees dated May 2009; Firebaugh, California Employee Handbook for seasonal employees dated March 2012 and April 2012; Gilroy, California Employee Handbook dated 2016; Firebaugh, California Employee Handbook dated 2013; Williams Employee Handbook dated 2016; Hanford Employee Handbook dated 2015 and 2016), and multiple collective bargaining agreements (such as the Collective Bargaining Agreements with Local Union 890 for the time periods of April 1, 2017 to March 31, 2012 and April 1, 2012 to March 31, 2016 and the Collective Bargaining Agreement with UFCW Local 5 for the time period from July 11, 2011 to July 6, 2014).  (*Ibid*).  The parties also engaged in extensive motion practice, researched applicable law, developed damages/valuation models in preparation for mediation, and prepared for and attended court proceedings, two (2) mediation sessions, and settlement negotiations. (*Ibid*).   Counsel for the parties also met and conferred on numerous occasions to discuss issues relating to the pleadings, venue, jurisdiction, motion practice, discovery, and the production of various documents and data prior to the mediations and engaged in extensive settlement negotiations over several months to try and resolve this matter.  (*Ibid*).

Plaintiffs' quantification of the value of the claims and *Kullar* analysis are set forth in the concurrently-filed Supplemental Declaration of Edwin Aiwazian.  (Aiwazian Supp. Decl., ¶¶ 6-67.)  As discussed therein, Plaintiffs' estimates of what could potentially be recovered warranted further discounting based on the risks involved, including, and not limited to, overcoming

Defendant's arguments in its defense, overcoming Defendant's arguments that it properly provided meal and rest breaks, paid for all hours of work, and properly reimbursed business expenses, satisfying requirement to certify a class, certify a collective, and satisfy manageability requirements, proving all of the elements of each cause of action, the derivative nature of many of the claims, the costs and expenses of further litigation, and the real possibility of no recovery after years of litigation.  (*Id.*, ¶¶ 14, 19, 24, 31, 36, 39, 45, 47-53.)

Within the context of mediation, Defendant argued that the estimates of the value of the claims were overly ambitious and significantly inflated, asserting that there were multiple challenges to certification, representative adjudication, and the merits of the claims, including and not limited to, the key claims for failure to pay overtime and minimum wages and non-compliant meal and rest periods.  (*Id.*, ¶¶ 14, 19, 24, 31, 39, & 49.)  For example, Defendant contended that employees were required to record all hours worked, that its records accurately reflected all time worked, and that it was not aware that work had been performed off-the-clock, if any.  (*Id.*, ¶ 14.)  Defendant also contended that it had a compliant overtime policy, and produced wage statements reflecting time-and-a-half overtime compensation paid to many of the employees (including, and not limited to, Plaintiffs).  (*Ibid.*)  Defendant also contended that its rounding policy, while if effect, was fair and neutral and Defendant believed in good faith that it was neutral. Defendant further contended employees worked in different locations, were subject to different collective bargaining agreements, worked different shifts, and performed different job duties, which raised highly individualized questions of fact.  (*Ibid.*)  Further, Defendant contended that any time that was unrecorded as a result of its rounding policy was *de minimis*. Defendant further contended that employees, by and large, had no written records to prove clear instances of time worked off-the-clock that was not compensated, and variation as to the circumstances that could have caused the employees to work off-the-clock (with or without Defendant's knowledge) presented potential challenges for certification with respect to commonality.  (*Ibid.*)

///

Defendant also contended that the non-compliant meal and rest period claims were meritless and unlikely to be certified because it contended that it had compliant meal and rest break policies and that putative class members were afforded the opportunity to take and did take duty-free meal and/or rest periods.  (*Id*., ¶¶ 19 & 24.)  Defendant further contended that any allegation that putative class members were forced to miss meal and rest periods, or take late, short, or interrupted ones, would require highly individualized questions of fact.  (*Ibid*.)

Plaintiffs and Class Counsel have conducted adequate investigation and discovery to be sufficiently informed of the nature and extent of the claims of Class Members and FLSA Members, and to enable both sides to fully evaluate the Settlement for its fairness, adequacy, and reasonableness.  (*Id*., ¶ 6.)  The parties have agreed that this case is well-suited for settlement given the legal issues relating to Plaintiffs' principal claims, as well as the costs and risks to both sides that would attend further litigation.  (*Id*., ¶ 59.)  The Settlement takes into account the strengths and weaknesses of each side's position, the uncertainty of how the case might have concluded at certification, trial, and/or appeal, and the risks to recovery.  (*Ibid*.)

Having the benefit of discovery, pre-lawsuit filing investigation, interviews of Plaintiffs and other employees, and data and information produced by Defendant in advance of and during the mediations and settlement negotiations, Plaintiffs recognized that if the litigation had continued, legal and factual hurdles might have been encountered that would pose significant risks to recovery on behalf of the Class Members and FLSA Members.  (Aiwazian Decl., ¶ 13.)  Although a number of cases have found wage-and-hour actions to be amenable to class or collective treatment[2], some courts have found that, for various reasons, the issues raised here—

---

[2] *Campbell v. PricewaterhouseCoopers, LLP* (E.D. 2008) 253 F.R.D. 586 , 605 (E.D. Cal. 2008) (Court certified a wage and hour action on behalf of a class of certified public accountants who plaintiff contended was misclassified as exempt and found that they met the prerequisites listed in Fed.R.Civ.P. 23(A)); *Hoffman v. Blattner Energy, Inc.* (C.D. Cal. 2016) 315 F.R.D. 324, 338–39 ("The 'predominance' prong is satisfied '[w]hen common questions present a significant aspect of the case and they can be resolved for all members of the class in a single adjudication.' ... 'Claims alleging that a uniform policy consistently applied to a group of employees is in violation of the wage and hour laws are of the sort routinely, and properly, found suitable for class treatment.'," *internal citations omitted*.); *Pena v. Taylor Farms Pac., Inc.* (E.D. Cal. 2015) 305 F.R.D. 197, 210 (Court stated in connection of the certification of a class of all current and former nonexempt hourly employees that the existence of a "policy, unofficial or otherwise, encouraging or requiring such practices...is central to all claims because the existence or absence of a uniform policy would be persuasive evidence."); *Moore v. Ulta Salon, Cosmetics &*

off-the-clock work, unpaid wages, non-compliant meal periods, non-compliant rest periods, and unreimbursed business expenses—raise individualized issues and/or are unmanageable, and thus not suitable for adjudication on a class, collective, or representative basis.[3]

Defendant contended that, in the context of a PAGA claim that is premised on the violation of multiple provisions of the California Labor Code (as is the case here) a court would not assess cumulative penalties, namely, if penalties are assessed, a penalty would only be assessed once per pay period, rather than cumulatively per violation during a pay period. (Aiwazian Supp. Decl., ¶¶ 47-48.)  Defendant also contended that, if any penalty were assessed, only an initial violation penalty rather than a heightened, subsequent violation penalty would likely be applied.  (*Id.*, ¶ 49.)  Defendant also contended that an important feature of the PAGA statute is that the court has discretion to reduce the penalties to be assessed against the employer.[4]  (*Ibid.*)

There were also multiple additional risks to recovery, including, and not limited to, the risk of possible bifurcation of discovery and/or trial of the PAGA claim–multiple courts have

---

*Fragrance, Inc.* (C.D. Cal. 2015) 311 F.R.D. 590, 604 (Court stated in connection with a wage-and-hour class action against a makeup retailer that the class action raised common questions which were susceptable to common proof.); *Stiller v. Costco Wholesale Corp.* (9th Cir. 2017) 298 F.R.D. 611, 625 (With regards to a wage and hour class action, "The Court finds the questions of whether the Alleged Policy existed, was enforced on a companywide basis, and resulted in Costco's control over employees satisfy the commonality requirement."); *Hall v. Best Buy Co.* (E.D. Pa. 2011) 274 F.R.D. 154, 165 ("Commonality is likewise satisfied because a question of law and fact is common to each class member: whether Best Buy had a uniform practice of refusing to pay for off-the-clock work that violated state wage and hour laws."); and *Rivet v. Office Depot, Inc.* (2016) 207 F.Supp.3d 417, 429 (Court found that the commonality requirement in a wage and hour class action regarding non-exempt employees was met because they were subject to the same policy).

[3] *Brown v. Fed. Express Corp.* (C.D. Cal. 2008) 249 F.R.D. 580, 587 (Court found in a wage and hour case that due to "varied individual actual issued raised by Plaintiffs [the action] is likely to be unmanageable."); *Vasquez v. First Student, Inc.* (C.D. Cal. Mar. 12, 2015) No. 2:14-CV-06760-ODW EX, 2015 WL 1125643, at *7 (Court found in a wage and hour case that where the defendant had a class-wide policy, any discrepancies to the policy could not be resolved on a class-wide basis.); and *Dunbar v. Albertson's, Inc.* (2006) 141 Cal. App. 4th 1422, 1431 (Court found with regards to a wage and hour case seeking unpaid overtime, individualized liability and significant variation in work load were predominant).

[4] Cal. Lab. Code § 2699(e)(2) ("[A] court may award a lesser amount than the maximum civil penalty amount specified by this part if, based on the facts and circumstances of the particular case, to do otherwise would result in an award that is unjust, arbitrary and oppressive, or confiscatory.); *Thurman v. Bayshore Transit Management, Inc.* (2012) 203 Cal.App.4th 1112, 1136 (holding that a court may reduce the amount of PAGA penalties awarded to an employee based upon discretionary factors other than the employer's ability to pay.)

**Objections to Magistrate Judge's Findings and Recommendations that Plaintiffs' Motion for Preliminary Approval of Class Action and Collective Action Settlement should be Denied**

taken such an approach.[5]  Given the derivative nature of the PAGA claim, Defendant contended that violations of underlying California Labor Code provisions would not only have to be proven, but that it would also have to be demonstrated that the aggrieved employees actually suffered from said violations, and that in doing so, a court would also have to be satisfied that Defendant's right to due process would not be abridged.  (*Id.*, ¶ 53.)  While class certification requirements, strictly speaking, do not need to be satisfied with respect to the PAGA claim, there was a risk that the Court would determine that the PAGA claim was not sufficiently "manageable" and that representative adjudication would interfere with Defendant's right to due process.[6]  Taking into account the risks of litigating the PAGA claim, Plaintiffs' estimate of the value of the PAGA claim was conservative, and this estimate warranted further discounting based on multiple additional risks relating to representative adjudication of the PAGA claim. (Id., ¶ 56.)

///

---

[5] See *Amalgamated Transit Union, Local 1756 v. Superior Court* (2009) 46 Cal.4th 993, 1001 (Noting that PAGA "require[s] a plaintiff to have suffered an injury resulting from an unlawful action"); *Stafford v. Dollar Tree Stores, Inc.* (E.D. Cal. Nov. 21, 2014) 2014 WL 6633396, *4 (Court found that judicial economy supported bifurcation because of the difficulties and inherent uncertainties of being able to establish liability with respect to a large number of potentially aggrieved employees and noted that "PAGA's public purpose would be ill—served if the court finds [the plaintiff] has not been aggrieved by a Labor Code violation"); *Grappo v. Coventry Fin. Corp.* (1991) 235 Cal.App.3d 496, 504 (Trial courts have "broad discretion to determine the order of proof in the interest of judicial economy)*; see also* Cal. Code Civ. Proc. § 598 (The court may "when the convenience of witnesses, the ends of justice, or the economy and efficiency of handling the litigation would be promoted thereby, on motion of a party, after notice and hearing, make an order. . . that the trial of any issue or any part thereof shall precede the trial of any other issue or any part thereof in the case[.]"); Cal. Code Civ. Proc. § 1048(b) (Court can separate trial of any cause of action or of any separate issue in the interest of convenience or to avoid prejudice); Cal. Code Civ. Proc. § 2019.020(b) (Courts have the power to "establish the sequence and timing of discovery for the convenience of parties and witnesses and in the interests of justice"); *see Horton v. Jones* (1972) 26 Cal.App.3d 952, 955 (Bifurcation and sequencing of litigation is allowed to avoid waste of time and money on trial and litigation of issue s could be rendered made moot.)

[6] See, e.g., *Litty v. Merrill Lynch & Co.*, No. CV-14-0425-PA, WL 5904904 at *3 (C.D. Cal. Nov. 10, 2014); *Ortiz v. CVS Caremark Corp.*, No. C-12-05859, 2014 WL 1117614 (N.D. Cal. March, 18, 2014); see also *Duran v. US. Bank National Association* (2014) 59 Cal.4th 1, 25, 29, 31, and 34-35 (Plaintiff needs to be able to demonstrate the illegal effects of the policy or de facto practice efficiently and manageably, and in litigating representative actions the procedures utilized by the court "may not be used to abridge a party's substantive rights," including "abridge[ing] [the defendant's] presentation of [a defense] simply because that defense was cumbersome to litigate," because of "principles of due process"); see also *Knight v. Cashcall, Inc.* (2014) 231 Cal.App.4th 112, 131 (noting "due process principles" require that defendants have the opportunity "to fairly litigate individual liability questions").

**Objections to Magistrate Judge's Findings and Recommendations that Plaintiffs' Motion for Preliminary Approval of Class Action and Collective Action Settlement should be Denied**

Based on the risks involved and the costs and expenses of protracted litigation, and with the help of the mediator, Plaintiffs and Class Counsel concluded that it was in the best interests of the Class Members and FLSA Members to reach a settlement. (*Id.*, ¶ 61.) Class Counsel submit that, based on all of the available information reviewed, the Settlement presented for preliminary approval is within a reasonable range of outcomes in light of all of the strengths and weaknesses of the claims at issue between the parties.

Neither certification, liability, damages, nor entitlement to monetary recovery on a class-wide, collective, or representative basis is clear-cut, which is why the parties elected to settle this matter. Class Counsel applied appropriate discounts in light of the defenses asserted, developments in the law, the facts and circumstances in this case, and the risks associated with certification and representative adjudication. (*Id.*, ¶¶ 16, 21, 26, 33, 36, 41, 45, & 55-56.) The risks included, and were not limited to, the costs and uncertainty of further litigating this case through trial and appeals, as well as consideration of the issues of, *inter alia*, whether each employee worked off-the-clock, whether each employee worked in excess of 8 hours in a day or 40 hours in a week, whether each employee was not properly compensated for all hours worked, whether each employee was not provided with compliant meal and rest periods, whether each employee incurred reimbursable expenses that were not reimbursed, whether Defendant knew or should have known about uncompensated work, and the derivative nature of the other claims asserted in this case. (*Ibid.*) This Settlement, like most others, resolves disputed claims and is the product of compromise.

In sum, for the aforementioned reasons, as well as the reasons and quantification set forth in the concurrently filed Supplemental Declaration of Edwin Aiwazian, the settlement of this matter is fair, reasonable, and adequate in light of the strengths and weaknesses of Plaintiffs' claims.

///

///

///

**Objections to Magistrate Judge's Findings and Recommendations that Plaintiffs' Motion for Preliminary Approval of Class Action and Collective Action Settlement should be Denied**

2. **Plaintiffs Did Consider Liquidated Damages in the FLSA Damage Calculation and Could Have Clarified with Supplemental Briefing**

Plaintiffs did consider liquidated damages when calculating the value of the FLSA claims. *See* Suppl. Aiwazian Decl., ¶ 15. The potential value of the minimum wage claim under the FLSA is estimated to be $3,509,746.76, inclusive of liquidated damages and the potential value of the overtime wage claims under the FLSA is estimated to be $9,609,444.56, inclusive of liquidated damages. *Id.*

3. **Plaintiffs Used the Three Year Statute of Limitations in Calculating FLSA Damages and Could Have Explained with Supplemental Briefing**

To calculate the damages of the minimum wage and overtime wage claims under the FLSA, Plaintiffs used data from the three-year statute of limitations. *See* Aiwazian Suppl. Decl., ¶¶ 7 & 15.  During the three-year statute of limitations period (i.e., from July 2, 2012) there was approximately 484,103 workweeks, which was used to calculate the estimated potential values described above in section III.A.2. *Id.*

4. **Plaintiffs provide Ample Basis for the "Large Deductions" in Settlement from the Maximum Liability**

As discussed above in section III.A.2., and in the concurrently filed Supplemental Declaration of Edwin Aiwazian, Plaintiffs appropriately discounted the potential value of the claims based on Defendant's arguments, the evidence and information obtained, the circumstances and realities of the case, the current state of the law, the costs of continued litigation, and the risks of recovery. It should be noted that the steepest discounts were applied to derivative claims (i.e., waiting-time penalties and wage statements) where recovery is contingent on the other underlying claims being successful and on finding by the Court that Defendant acted willfully. Totaling the potential value of only substantive (non-derivative) claims, the Total Settlement Fund is closer to 11% of the potential value.

The potential value of the claims represents an assessment of a best-case-scenario that was  discounted in three separate stages that take into account: (1) risks of obtaining and maintaining certification on each claim, (2) risks of succeeding on the merits and establishing

liability on each claim after obtaining certification on the claim, and (3) risks associated with proving damages for each claim. A straight discount was not applied; rather, the risks at each of these stages were considered in a thoughtful, three-part discounting model based on the facts and circumstances of the case

**5.     The Magistrate's Order Improperly Denies Approval Based Upon the Perceived Excessive Attorneys' Fees**

The Settlement provides for a Total Settlement Fund of $4,500,000 and an award of attorneys' fees not to exceed 35% of the Total Settlement Fund (i.e., $1,575,000).

Here, Class Members and FLSA Members will receive full and fair notice of the attorneys' fees and costs allocations provided for by the Settlement and to be sought by Class Counsel at the final approval stage.  Ultimately, the award of attorneys' fees is made by the court at the final approval hearing, using either the percentage-of-recovery or lodestar method, or both. *Vizcaino v. Microsoft Corp.* (9th Cir. 2002) 290 F.3d 1043, 1047; *In re Bluetooth Headset Prod. Liab. Litig.* (9th Cir. 2011) 654 F.3d 935, 942.  Therefore, the question of whether Class Counsel is entitled to an attorneys' fee award in an amount up to $1,575,000 should be addressed when Class Counsel brings an application for attorneys' fees to be decided at the final approval hearing, after Class Members and FLSA Members have had an opportunity to receive notice and an opportunity to comment on the Settlement.

### a.   A Fee Award of a Percentage of the Entire Fund is Appropriate.

Courts have long recognized that an appropriate method for determining an award of attorneys' fees is based on a percentage of the total value of benefits made available to class members by the settlement. See, *Boeing Co. v. Van Gemert* (1980) 444 U.S. 472, 478; *Vincent v. Hughes Air West, Inc.* (9th Cir. 1977) 557 F.2d 759, 769; *Serrano v. Priest* (1977) 20 Cal.3d 25, 34. The purpose of this equitable doctrine is to spread litigation costs proportionally among all beneficiaries so that the active beneficiary does not bear the entire burden alone.  See *Vincent v. Hughes Air West, Inc.* (9th Cir. 1977) 557 F.2d 759, 769.  When others may derive benefits from a litigant's efforts, the litigant may require the passive beneficiaries to compensate those

1    who made the benefits available. See, R. Pearle, California Attorney Fee Awards (CEB, 1993)

2    §7 A, p. 7-5.  Both state and federal courts have embraced this approach.   See, e.g., *Serrano*,

3    *supra*, 20 Cal.3d at 35; *Crampton v. Takegoshi* (1993) 17 Cal.App.4th 308, 317; *Vincent*, *supra*,

4    557 F.2d at 769.

5          In the Ninth Circuit, twenty-five percent (25%) of the settlement amount is the

6    "benchmark" for attorneys' fees awarded under the percentage method. *Staton v. Boeing* (9th

7    Cir. 2003), 327 F.3d 938, 968; *Vizcaino*, 290 F.3d at 1048. However, importantly, district courts

8    may adjust the twenty-five percent (25%) benchmark upward if "the percentage recovery would

9    be [] too small [] in light of the hours devoted to the case or other relevant factors." *Six Mexican*

10   *Workers,* 904 F.2d, *supra*, at 1311.  In California, attorneys' fees tend to be awarded above the

11   twenty-five percent (25%) federal benchmark. *See Van Vranken v. Atl. Richfield Co.* (N.D. Cal.

12   1995) 901 F.Supp.294 at 297 (holding that fee awards of 30-50% are more typical where total

13   recovery is less than $10 million); *Craft v. Cnty. of San Bernardino* (C.D. Cal. 2008) 624

14   F.Supp.2d 1123, 1127 (holding that fee awards in cases where the settlement amount is below

15   $10 million are often more than the 25% benchmark).

16         In *Vizcaino*, the Ninth Circuit laid out the factors to be considered in adjusting a fee

17   award from the "benchmark." *Vizcaino*, *supra*, 290 F.3d at 1047-1050.  These factors include:

18   (i) the size of the fund made available (and thus the resulting size of the percentage fee award);

19   (ii) the results obtained; (iii) the risk taken on by plaintiff's counsel in pursuing the case with no

20   guarantee of victory or payment for the time and effort expended; (iv) incidental or non-

21   monetary benefits conferred by the settlement; (v) the effort expended by plaintiff's counsel; (vi)

22   plaintiff's counsel's reasonable expectations based on the circumstances of the case and fee

23   awards in other cases; and, to a certain extent, (vii) the percentage fee award originally

24   contracted for between plaintiff and plaintiff's counsel.  *Id.*  Each of these factors favors the

25   attorneys' fees award provided for under the Settlement and contemplated to be sought by Class

26   Counsel.

27   ///

28   ///

**Objections to Magistrate Judge's Findings and Recommendations that Plaintiffs' Motion for Preliminary Approval of Class Action and Collective Action Settlement should be Denied**

**1.   The Risk Assumed by Class Counsel.**

Class Counsel have borne all the risks and costs of litigation by taking on this case on a contingency basis.  Class Counsel invested time, effort, and money with no guarantee of recovery.  In cases where the "recovery is far from certain," an award of more than twenty-five percent (25%) of the settlement amount as attorneys' fees, is appropriate.  *In re Washington Public Power* (9th Cir. 1994) 19 F.4d 1291, 1300; *Vizcaino*, 290 F.3d, at 1048.

**2.   The Value of the Settlement for the Class Members and FLSA Members.**

As a result of this litigation and extensive settlement negotiations, Defendant agreed to pay a Total Settlement Fund of $4,500,000 to resolve this matter.  The Net Settlement Fund to be distributed to Class Members who do not opt out of the Settlement ("Participating Class Members") and FLSA Members is estimated to be $2,656,000[7], with 75% (or $1,992,000) being distributed to Participating Class Members and 25% (or $664,000) being distributed to FLSA Members. The Settlement offers significant and present monetary relief to the Class Members and FLSA Members while avoiding further expense, risk, and delay in obtaining possible further recovery at an unknown time in the future with respect to highly-disputed claims.

**3.   Efforts Expended by Class Counsel.**

This was a highly contested case that required a significant amount of time and labor since it was commenced on July 5, 2015.  Both sides used the pre-mediation time period to investigate the veracity, strength, and scope of the claims, and Class Counsel were actively preparing the matter for class certification. (Aiwazian Decl., ¶¶ 11 & 13.) Class Counsel conducted a thorough investigation into the facts of the case, including, *inter alia*, interviews with Plaintiffs and other Class Members and FLSA Members.  (*Id.*, ¶ 11-14.)  Class Counsel propounded and reviewed Defendant's responses to multiple sets of written discovery requests in

---

[7] The Net Settlement Fund is the amount remaining after deducting the following from the Total Settlement Fund: (1) attorneys' fees of up to $1,575,000 and reimbursement of litigation costs and expenses of up to $65,000 to Class Counsel; (2) Incentive Awards of up to $33,500 collectively to Plaintiffs; (3) $112,500 to the LWDA for its share of the amount allocated toward civil penalties under PAGA; (4) Settlement Administration Costs, which are currently estimated to be $58,000; and (5) employer's share of payroll taxes and contributions with respect to the wage portion of the Non-FLSA Payment and FLSA Payment ("Employer Taxes").

various forms and prepared for and took the deposition of three (3) of Defendant's Person Most Knowledgeable witnesses and prepared for and defended the depositions of Plaintiffs Beltran and Martinez.   (*Id*., ¶ 14.)   Class Counsel reviewed and analyzed thousands of pages of data and documents produced by Defendant and obtained through other sources; met and conferred with Defendant's counsel on numerous occasions over issues relating to the pleadings, jurisdiction, discovery, mediation, and the settlement negotiations; and prepared for and attended court proceedings, settlement negotiations, and two (2) mediation sessions.   (*Id*., ¶¶ 12 & 14.)

Class Counsel dedicated staffing and monetary resources necessary to prosecute the case diligently and with maximum efficiency and has spent a great deal of hours performing tasks in this case.   (Aiwazian Supp. Decl., ¶ 7.)   Class Counsel's work will continue through the settlement administration process and in seeking approval of the Settlement.   (*Ibid*.) Accordingly, Class Counsel has expended and continues to expend significant efforts on this matter, and this factor weighs in favor of the contemplated attorneys' fees.

### 4.   The Skill and Reputation of the Attorneys.

Class Counsel are recognized class action law firms that employed their attorneys' knowledge, skills, and experience in bringing this case to a successful conclusion.   (Aiwazian Decl., ¶¶ 4-7; Declaration of Vincent Granberry in Support of Plaintiffs' Motion for Preliminary Approval of Class and Collective Settlement ("Granberry Decl."), ¶¶ 16-17.)   Class Counsel have years of complex and class action litigation experience, have recovered millions of dollars on behalf of thousands of individuals in California, and have successfully handled numerous significant wage-and-hour class action and complex cases.   (*Ibid*.)   Defendant retained well-respected counsel to represent its defenses, and the ability of Class Counsel to obtain the significant monetary recovery provided by the Settlement in the face of formidable legal opposition, confirms the quality of Class Counsel's representation. *See In re KeySpan Corp. Sec. Litig*. (E.D.N.Y. Sept. 30, 2005) No. 01-cv-5852 (ARR) (MDG) 2005 WL 3093399, at *11 ("The quality of opposing counsel is also important in evaluating the quality of Class Counsel's work").

### 5. Federal Courts Regularly Award Fees in Excess of the Percentage Amount Sought by Class Counsel.

Class Counsel's request for attorneys' fees of up to 35% of the Total Settlement Fund is commensurate with federal court and, in particular, Ninth Circuit decisions, namely, case surveys reflect that awards within this range, or more, are common. *See, e.g.,* Newberg, Newberg on Class Actions, 4th Ed., 2002 §14.6.   Many courts have approved percentage fee awards equivalent to or greater than the percentage requested here, even when the award has involved a substantial lodestar multiplier. See, e.g., *In re Ampicillin Antitrust Litigation* (D.D.C. 1981) 526 F.Supp. 494  (awarding attorneys' fees in the amount of **45%** of the settlement amount); *Beech Cinema, Inc. v. Twentieth-Century Fox Film Corp.* (S.D.N.Y. 1979) 480 F.Supp. 1195, *aff'd* (2nd Cir. 1980) 622 F.2d 1106 (awarding approximately **53%** of settlement amount as attorneys' fees); *Van Gemert v. Boeing Co.* (S.D.N.Y. 1981) 516 F.Supp. 412, 420 (awarding attorneys' fees in the amount of approximately **36%** of the settlement amount); *In re Buspirone Patent & Antitrust Litig.* (S.D.N.Y. Apr. 11, 2003) MDL No. 1413, 2003 U.S. Dist. LEXIS 26538 (applying a multiplier over eight times counsel's lodestar); *North Shore Hematology-Oncology Assoc., P.C. v. Bristol-Myers Squibb Co.* (D.D.C. Nov. 30, 2004) No. 1:04-cv-248 (EGS) (applying a multiplier of over eight times counsel's lodestar); *In re Relafen Antitrust Litig.* (Order and Final Judgment dated Apr. 9, 2004) (D. Mass) No. 1:01-cv-12239 (WGY) (applying a multiplier of 4.88).

### b. The Lodestar Methodology Also Justifies the Attorneys' Fees Provided for Under the Settlement.

While the percentage-of the-benefit approach is warranted as the primary basis of the fees award, courts may also use the lodestar method to "cross-check" the results of the other. *Vizcaino*, 290 F.3d, *supra*, at 1050; *Laffitte v. Robert Half Int'l, Inc.* (2016) 1 Cal.5th at 506 (explaining that "[a] lodestar cross-check is simply a quantitative method for bringing a measure of the time spent by counsel into the trial court's reasonableness determination"); *Wershba v. Apple Computer, Inc.*, *supra*, 91 Cal.App. at 253.  Importantly, "the lodestar calculation . . . does not override the trial court's primary determination of the fee as a percentage" of the settlement

amount and "does not impose an absolute maximum or minimum on the potential fee award." *Laffitte*, *supra*, 1 Cal.5th at 505.

As discussed in Section IV.A.3, *supra*, and in the Motion for Preliminary Approval, Class Counsel have spent a considerable amount of time and effort investigating, litigating, mediating, and settling this case, and have spent numerous hours performing tasks on behalf of Plaintiffs, the Class, and the FLSA Collective to date.  (Aiwazian Supp. Decl., ¶ 7.)  Class Counsel's work in this matter will continue through administration and final approval of the Settlement.  (*Id.*, ¶ 8.) Class Counsel will provide evidence as to the time worked, litigation efforts, and further argument at the time of filing the motion for final approval of the Settlement and application for Attorneys' Fees and Costs, Incentive Awards, and Settlement Administration Costs, to be heard at the Final Approval Hearing.

In light of the work performed to date and the work to be done in the future to obtain the significant Settlement, the fees awarded in similar class action matters in California, and the results obtained despite multiple risks to recovery, the contemplated attorneys' fees award is well within the range of reasonableness. Accordingly, Plaintiffs respectfully requests that the Court grant preliminary approval of the allocation of attorneys' fees in an amount of $1,575,000 to Class Counsel.

Further, it should be noted that Class Counsel seeks attorneys' fees in an amount **up to** $1,575,000 (i.e., 35%) leaving a possibility that the Court may award less.

**6.    The Magistrate's Order Improperly Denies Approval based upon the Perceived Excessive Incentive Fees**

The proposed Settlement provides for a Plaintiffs Beltran, Martinez, Obeso Cota, and Solorio will each receive an Incentive Award of $7,500 and Plaintiff Rivera will receive an Incentive Award of $3,500, which shall be paid out of the Total Settlement Fund.  The requested incentive awards are fair, reasonable, and adequate in light of the time and effort that Plaintiffs have devoted to this case, as well as the risks that they have undertaken on behalf of the Class.

///

Plaintiffs were available whenever Class Counsel needed them and actively tried to obtain information that would benefit the Class.   Plaintiffs stayed involved and maintained contact with Class Counsel throughout the litigation, since it was commenced nearly five years ago.   They have each contributed a considerable amount of time and effort to this litigation on behalf of the Class and FLSA Collective, by assisting Class Counsel in identifying documents, gathering and producing relevant documents and information, providing the facts and evidence necessary to prove the allegations, speaking with other Class Members about the case, and discussing with Class Counsel about their work experiences with Defendant.   Additionally, as stated in the Declaration of Thomas Beltran submitted in support of the Motion for Preliminary Approval of Class and Collective Action Settlement ("Beltran Declaration"), Plaintiff Beltran spent a substantial amount of time providing responses and producing documents in response to multiple sets of formal, written discovery requests propounded by Defendant, which included form interrogatories, special interrogatories, and requests for document production.   Plaintiff Beltran also spent a number of hours preparing for and attending a full day of deposition.

Plaintiff Martinez was also available whenever Class Counsel needed him and actively tried to obtain and provide information that would benefit the Class.   As stated in the Declaration of Mario Martinez submitted in support of the Motion for Preliminary Approval of Class and Collective Action Settlement ("Martinez Declaration"), Plaintiff Martinez spent a substantial amount of time providing responses and producing documents in response to multiple sets of formal, written discovery requests propounded by Defendant.   Plaintiff Martinez also spent a number of hours preparing for and attending a full day of deposition.   Plaintiff Martinez has contributed a considerable amount of time and effort to this litigation on behalf of the Class, by assisting Class Counsel in identifying documents, gathering and producing relevant documents and information, providing the facts and evidence necessary to prove the allegations, and discussing with Class Counsel about his work experiences with Defendant.   Plaintiff Martinez has also actively maintained contact with Class Counsel throughout the litigation.

///

**Objections to Magistrate Judge's Findings and Recommendations that Plaintiffs' Motion for Preliminary Approval of Class Action and Collective Action Settlement should be Denied**

Plaintiffs Obeso Coto, Solorio, and Rivera were also available whenever Class Counsel needed them and actively tried to obtain and provide information that would benefit the Class. Plaintiffs Obeso Coto, Solorio, and Rivera have contributed a considerable amount of time and effort to this litigation on behalf of the Class, by assisting Class Counsel in identifying documents, gathering and producing relevant documents and information, providing the facts and evidence necessary to prove the allegations, and discussing with Class Counsel about their work experiences with Defendant.  Plaintiffs Obeso Coto, Solorio, and Rivera have also actively maintained contact with Class Counsel throughout the litigation.

In light of the considerable number of hours that each of the Plaintiffs have spent to push forward the case and benefit the Class, it is appropriate and just for Plaintiff Beltran, Martinez, Obeso Coto, and Solorio to receive a reasonable Incentive Awards in the amount of $7,500 and for Plaintiff Rivera to receive a reasonable Incentive Awards in the amount of $3,500, in addition to their Individual Settlement Payments, for their services on behalf of the Class.

### 7. The Perceived "Smooth Sailing" Provision for The Attorneys' Fees and Incentive Fees is Easily Addressed by Removal of Such Provision and the Magistrate's Order Could Have Provided for This Rather Condition Than Denying the Motion

The parties have already agreed to remove the perceived "smooth sailing" language regarding the attorneys' fees in Section III, paragraph 5 ("Defendant agrees not to oppose or impede any application of motion by Class Counsel for attorneys' fees . . ..") and regarding the Incentive Awards ("Defendant agrees not to oppose or impede any application or motion for the…Incentive Awards").

### B. PLAINTIFFS HAVE DEMONSTRATED THAT THERE IS A BONA FIDE DISPUTE RE THE FLSA CLAIM

An FLSA collective action may exist where workers are similarly situated. *Campbell v. City of Los Angeles*, 903 F.3d 1090, 1100 (9th Cir. 2018).  Workers are similarly situated and may proceed as a collective, to the extent they share a similar issue of law or fact material to the

disposition of the FLSA claims. *Id*. at 1117. Settlement is permissible when there is a bona fide dispute such that there are legitimate questions about FLSA coverage and extent of defendant's FLSA liability. *Nen Thio v. Genji, LLC*, 14 F.Supp.3d 1324, 1333 (N.D. Cal. 2014). The court may approve such a settlement in order to promote the policy of encouraging the settlement of litigation. *Ibid*. Here, there is a bona fide dispute regarding both the issue of the scope of coverage and the potential liability.

Addressing the issue of liability first, the amount of wages which can be recovered under the FLSA here is limited to those not recovered under California law because the basis of the claims is the same. *See Maravilla v. Rosas Brothers Construction, Inc.*, 401 F.Supp.3d 886, 898, n. 11 (N.D. Cal. 2019)(No double recovery); *see e.g. Sillah v. Command International Security Services*, 154 F.Supp.3d 891, 912-13 (N.D. Cal. 2015)(where both California and FLSA overtime claims, court found damages based on California law calculation). Here, the basis of the Second Cause of Action under the FLSA is for allegedly unpaid overtime and is based on the same facts as the First Cause of Action for unpaid overtime under California law. Thus, the analysis of the risk of recovery for the overtime cause of action under California law, discussed above, equally applies here and constitutes a bona fide dispute. This logic also applies to the claims for minimum wages under California law and the claims for minimum wages under FLSA (i.e., the third and fourth causes of action).

In addition to the bona fide dispute as to liability, the recoverability of liquidated damages under the FLSA is also subject to bona fide dispute. As to availability of liquidated damages, there is a bona fide dispute because Defendant contests that it violated the law regarding overtime wages. Defendant contends that even if an employee's hours were inaccurate from time to time as a result of the rounding, liquidated damages are unavailable because Defendant acted with both subjective and objective good faith. See *Chao v. A-One Medical Services, Inc.*, 346 F.3d 908, 919-20 (9th Cir. 2003) (exception to award of liquidated damages where defendant acted with both subjective and objective good faith). Specifically, the claim that overtime was not paid is partially grounded in Defendant's rounding policies, however, Defendant contends its rounding policy was developed and applied with both the subjective and

objective good faith belief it was compliant as facially neutral and neutral in application. *See Selk v. Pioneers Memorial Healthcare District*, 159 F.Supp.3d 1164, 1174 (S.D. Cal. 2016)(state of law on rounding was uncertain and subject to bona fide dispute).[8] Thus the availability and appropriateness of recovering liquidated damages creates a bona fide dispute.

The bona fide dispute on whether Defendant acted in good faith also gives rise to a bona fide dispute over whether the statute of limitations is two or three years. *See e.g. Alvarez Perez v. Sanford-Orlando Kennel Club, Inc.*,

Further, there is a bona fide dispute regarding the calculation of any liquidated damages. As a preliminary matter, any liquidated damages would be calculated based on the amount recoverable under the FLSA rather than California law. *Sillah v. Command International Security Services*, 154 F.Supp.3d 891,913 (N.D. Cal. 2015). Thus, whether a two or three-year statutory limitation period applies creates a bona fide dispute as to the amount of any liquidated damages. Defendant contends that dispute is particularly impactful here because if the FLSA claim has a two-year statute of limitations the earliest date to which the FLSA would apply would be April 11, 2016, because there is no relation back for FLSA claims, which is only approximately 7 months prior to the time Defendant contends it discontinued rounding altogether. Defendant contends that given the claim for overtime wages under the FLSA is partially rooted in Defendant's allegedly non-compliant rounding policy, the determination of what statute of limitations period applies creates a bona fide dispute. It has been recognized that the question of when a neutral rounding policy may produce consequences that implicate the FLSA is unsettled and can give rise to a bona fide dispute. *Selk v. Pioneers Memorial Healthcare District*, 159 F.Supp.3d 1164, 1174 (S.D. Cal. 2016).  Moreover, the de minimis rule applies to the FLSA and Defendant contends that any time that was unrecorded as a result of its rounding policy was de minimis. *Corbin v. Time Warner Entertainment-Advance/Newhouse Partnership*, 821 F.3d 1069, 1081-82 (9th Cir. 2016). Given the various, and as Defendant describes, trivial claims, of time lost (or gained) through rounding, this also creates a bona fide dispute. *See ibid.*

---

[8]The critical date on the status of the issue of rounding is December of 2016, when Defendant contends the practice of rounding was stopped. Thus, the issue of good faith focuses on the state of the law prior to that time. In fact, the complaint here was filed July 7, 2015. The *Selk* decision of January 2016 is in the heart of the time in issue.

**Objections to Magistrate Judge's Findings and Recommendations that Plaintiffs' Motion for Preliminary Approval of Class Action and Collective Action Settlement should be Denied**

**C.    THE OPT-IN PROCEDURE FOR THE FLSA CLAIM IS APPROPRIATE AND SHOULD HAVE BEEN APPROVED BY THE MAGISTRATE**

The Magistrate's Order expresses a clear opposition to the use of a check cashing opt-in to the FLSA collective. The Magistrate concludes that to comply with the FLSA, the parties must provide notice and an opportunity to opt-in to the FLSA prior to final approval of the settlement agreement. There are five responses to this observation. First, there are a number of cases within the California federal district courts approving similar procedures, including the one after which the process here was modeled. Second, the procedure here does include substantial pre-final approval notice. Third, the process here is not just simply cashing a check but includes, after the aforementioned notice, a consent form (i.e., a signed, cashed check) providing the means for confirming a willingness to join the action. *See Stone v. Troy Construction, LLC*, 935 F.3d 141, 153 (3rd Cir. 2019) ("[c]ourts have shown considerable flexibility in what constitutes 'written consent' as long as the signed document indicates consent to join the lawsuit"). Fourth, this case was originally filed in July of 2015 and placing unnecessary burdens on joining the FLSA class serves no purpose but will likely reduce the number of participants. And fifth, there is no authority requiring the ability to opt-in be provided prior to the final approval. In fact, the governing statute, 29 U.S.C. §216(b), neither specifies a form for the consent nor the time a consent must be filed. "The FLSA does not specify when a person must opt-in to a collective action, rather, the deadline is set by the court." *Ruggles v. Wellpoint, Inc.*, 687 F.Supp.2d 30, 37 (N.D. N.Y. 2009). As a final observation, there is no one here waiting in the wings to file a case for non-participating persons eligible to be in the FLSA collective action and certainly not with the capability of filing a new action that would cover anywhere near the time frame included here. *Manning v. Gold Belt Falcon, LLC*, 817 F.Supp.2d 451, 453-54 (D. N.J. 2011).

Instructive in analyzing the situation here is the case of *Franco v. Ruiz Food Products, Inc.*, 2012 WL 5941801 (E.D. Cal. Nov. 27, 2012) ("*Franco*"). That the opt-in procedure in *Franco* and that here are very similar is no accident. The opt-in utilized here is modeled off that which obtained final approval in *Franco* from a magistrate of the Eastern District, Fresno Division, Sheila K. Oberto. In granting final approval of the opt-in procedure in a hybrid

settlement of a class and collective action, the court approved the following as the opt-in procedure:

> "All Settlement Award checks issued to Class Members shall contain, on the back of the check, the following language, which shall be the opt-in consent required by the FLSA: "By endorsing this check, I consent to join the Class in *Franco, et. al. v. Ruiz Food Products, Inc.*, elect to participate in the Settlement, and agree to release all of my claims that are covered by the Settlement ." Class Members must only cash one Settlement Award check to opt-in to the Class. Any checks that are not cashed will be paid by Defendant to Ruiz–4–Kids and the Chicana Latina Foundation. Declarations from the Settlement Administrator of proof of payments, and a list of all persons who have cashed a Settlement Award check, will be filed with the Court 120 calendar days after Settlement Award checks are issued. Such declarations shall be provided to Class Counsel and Defendant's Counsel; . . .."

> *Franco*, 2012 WL 5941801, *24.

Here, paragraph 19 of Section III of the Settlement spells out the opt-in process that has a consent on the back of the check, in English and Spanish, and provides that should the court require it, the checks shall be filed with the court to evidence the consent of those opting into the collective action. Paragraph 19, subdivision b, of Section III, states:

> As of the Effective Date, only those FLSA Members who cash, deposit, or otherwise negotiate their FLSA Payment (i.e., Participating FLSA Members) will be deemed to have consented to join an action under the FLSA and opted-in on a collective basis with respect to such claims, and will be bound to the FLSA Settlement and any judgment entered by the Court based thereon, and thereby forever release and discharge the Released FLSA Claims. To effectuate the FLSA Settlement, the FLSA Payment shall contain a statement, in English and Spanish, that clearly states that if the FLSA Member cashes, deposits, or otherwise negotiates his or her check, doing so will constitute consent and an opt-in to join the action under the FLSA claims, on a collective basis, and as a result, he or she will be bound to the FLSA Settlement.  This statement shall state:

> > "By endorsing this check, I consent to join the lawsuit entitled Beltran, et. al. v. Olam West Coast, Inc., Eastern District of California, Fresno Division, Case No. 1:18-cv-01676-LJO-SAB, pursuant to the provisions of the Fair Labor Standards Act ("FLSA"), 29 USC Section 216(b), for purposes of participating in the settlement. I further understand and agree that my cashing, depositing, or otherwise negotiating this check constitutes a full and complete release of any and all of Released FLSA Claims and that a copy of this check, may be filed with the Court, with personal information other than my name redacted, as evidence of my consent."

The check includes clear language of the rights of each FLSA Member as well as information on the possibility that their check will be filed with the court as evidence of their consent to opt-in to

the FLSA Collective. Further, the Settlement Agreement provides for the filing of a declaration with the Court by the Settlement Administrator providing a list of all Participating FLSA Members, by name only, as proof that those individuals have "opted-in" to the FLSA Settlement and further authorized the Settlement Administrator to file copies of the cashed, deposited, and/or otherwise negotiated FLSA Payments with the Court, with private information redacted, excepting the Participating FLSA Members' names, if so ordered by the Court as a condition of approval of this Settlement. (Settlement Agreement, Section III, ¶ 19, subd. d.) Moreover, and not mentioned in the Magistrate's Order, the check will be preceded by a 6 page Notice of FLSA Settlement ("FLSA Notice") explaining the FLSA settlement, the applicable workweeks and the opt-in procedure and, by the time the check can be cashed, the court will have approved the FLSA settlement as fair and reasonable.

This procedure is analogous, and even more thorough, than that approved by Magistrate Judge Oberto in *Franco*. *See also*, *Castro v. Paragon Industries, Inc.*, 2020 WL 1984240, \*2, \*19, n. 3 (E.D. Cal. Apr. 2, 2020) (Drozd, J.) (where a nearly identical opt in procedure was preliminarily approved).

Magistrate Judge Oberto is not alone in approving a check cashing opt-in procedure for the settlement of FLSA claims. Other cases doing so, either as preliminary or final approval, in the federal districts of California include, *Castro v. Paragon Industries, Inc.*, 2020 WL 1984240, \*3, n. 3 (E.D. Cal. Apr. 2, 2020) (Drozd, J.); *Otey v. CrowdFlower Inc.*, 2015 WL 4076620, \*3 (N.D. Cal. July 2, 2015) (Tigar, J.); *Foster v. Advantage Sales and Marketing LLC*, 2019 WL 6699793, \*2-3 (N.D. Cal. Dec. 9, 2019) (Beeler, M.J.); *Lazarin v. Pro Unlimited Inc.*, 2013 WL 3541217, \*2 (N.D. Cal. July 11, 2013) (Lloyd, M.J.).

The Magistrate's Order simply dismisses the cases supporting the opt-in process here in a footnote that mentions a 2014 case from the Central District in a footnote, i.e. *Lee v. JPMorgan Chase & Co.*, 2014 WL 12580237 (C.D. Cal. Nov. 24, 2014).  In contrast, the Magistrate's Order cites to six cases as rejecting such a process without any discussion as to the details of the opt-in procedures and the perceived inadequacies. An examination of those decisions shows they do not support the Magistrate's conclusion.

In *Haralson v. U.S. Aviation Services Corp.*, 383 F.Supp.3d 959, 969 (N.D. Cal. 2019), the lead cite in the string cite of cases relied on by the Magistrate, Judge Jon S. Tigar, did not even rule that a check cashing opt-in was categorically unacceptable. In fact, the court expressly did not make such a ruling but instead stated that:

> "Finally, even were the Court to preliminarily certify a collective action, Plaintiff would have to address how the Settlement's procedures comply with the FLSA's requirement that "[n]o employee shall be a party plaintiff to any [collective] action unless he gives his consent in writing to become such a party and such consent is filed in the court in which such action is brought." 29 U.S.C. § 216(b). Under Plaintiff's proposal, class members would agree to release any FLSA claims by signing and cashing a settlement check. ECF No. 74-1 at 46 (<u>"[T]he Release shall not include the release of claims under the FLSA unless you actually cash your Individual Settlement Payment."</u>). Many courts, having consulted § 216(b)'s requirements, have rejected this opt-in by settlement check proposal."

> . . .

> "In short, the parties face a formidable series of obstacles to justifying the release of FLSA claims in the Settlement. <u>Because Plaintiff's motion does not discuss these additional issues, the Court expresses no conclusive opinion on them.</u> But the Court expects that any renewed motion, if it includes such a release, will thoroughly address the concerns raised by these other courts." (Emphasis added).

In making these comments, the Court did not mention that many courts had approved such a process. Moreover, the single sentence recited in the Court's comments is the only provision in the settlement agreement before the court in *Haralson* on the issue of opting in and is in no way comparable to the process presented here. Moreover, there was no decision on the issue because the parties dropped the FLSA from settlement.

*Smothers v. NorthStar Alarm Servs.*, 2019 WL 208294 (E.D. Cal. Jan. 22, 2019), also relied on by the Magistrate, is distinguishable, and addresses a completely different concern than that expressed in the Magistrate's Order. In *Smothers*, the court focuses on "the parties' agreement to have the Settlement Administrator "maintain copies of all negotiated checks . . . and file with the Court at least 14 days prior to the Final Approval and Fairness Hearing, a declaration at the conclusion of the check-cashing period listing the names . . .." *Smothers*, *11. The Court observes that "Plaintiffs provide no justification for distributing settlement funds **before settlement has finally been approved**." *Ibid*. (emphasis added). This does not happen

27

**Objections to Magistrate Judge's Findings and Recommendations that Plaintiffs' Motion for Preliminary Approval of Class Action and Collective Action Settlement should be Denied**

here and this is not the concern raised in the Magistrate's Order. Moreover, *Smothers* barely mentions the *Franco* decision, and then only to misleadingly characterize it as being "with no citation whatsoever to §216's opt-in language." While the court in *Franco* did not cite "§216" by number in addressing opting in, it stated that "All Settlement Award checks issued to Class Members shall contain, on the back of the check, the following language, which **shall be the opt-in consent required by the FLSA**: "By endorsing this check, I consent to join the Class in *Franco, et. al. v. Ruiz Food Products, Inc.*, elect to participate in the Settlement, and agree to release all of my claims that are covered by the Settlement." *Franco*, *24 (emphasis added). Here, while notice is provided prior to final approval, the checks are not sent until after. This provides for both pre-approval notice and appropriate opt-in. See, *Franco*, *24 (final approval); *Castro*, *3 n. 3 (preliminary approval); *Otey*, *3 (final approval); *Foster*, *2 (preliminary approval), *Lazarin*, *9 (final approval).

        None of the other four cases cited in the string cite in the Magistrate's Order present any binding or persuasive authority to require a certain form of consent or restrict the court's discretion on when the consents need to be filed. In fact, only one, *Smith v. Kaiser Foundation Hospitals*, 2019 WL 5864170, *10 (S.D. Cal. Nov. 7, 2019), even refers to a concern about a post-approval opt-in expressed in the Magistrate's Order and then, only in a comment made without citation to any authority. Even though there is such a comment in *Smith*, it does not support the Magistrate's Order conclusion. The court in *Smith* does not dissect the check-cashing "opt-in" from the rest of the opt-in procedure. To the contrary, the opinion is clear that notice and check-cashing are considered together. The court in *Smith* stated:

> "Second, as is discussed further in Section IV.C.5 below, the proposed procedure and language does not give adequate notice or explanation of the FLSA implications. As the Supreme Court has explained, the benefits of collective action "depend on employees receiving accurate and timely notice concerning the pendency of the collective action, so that they can make informed decisions about whether to participate." *Hoffmann-La Roche, Inc. v. Sperling*, 493 U.S. 165, 170 (1989). <u>Under the proposed procedure, however, individuals would have notice of the opportunity opt-in to the case only upon receipt of the settlement check, which is issued after approval of the final settlement agreement.</u> [Doc. No. 67-2, ¶ 4.2.] Even if this procedure could be construed as adequate consent, which it cannot, obtaining consent to join the litigation after final approval of the settlement leaves an opt-in plaintiff with little opportunity to participate meaningfully in the litigation." *Smith*, *11.

**Objections to Magistrate Judge's Findings and Recommendations that Plaintiffs' Motion for Preliminary Approval of Class Action and Collective Action Settlement should be Denied**

The inadequate notice referred to by the court is later explained as follows:

> "Here, the proposed notice does not list the claims asserted in the FAC. Nor does it acknowledge the hybrid nature of this lawsuit. It also does not provide any mechanism for a recipient to participate in the Rule 23 class but not opt in to the FLSA collective action." *Smith*, *13.

If this is not enough to distinguish *Smith* from the situation here, in *Smith*, "the procedure proposed by plaintiffs forces Rule 23 class members to opt-out of the settlement of their state law claims if they do not wish to opt-in to the FLSA collective action and also release those claims." *Smith*, *11. Thus, the observation about participating meaningfully, read in context, is driven at least in part by the fact there is no notice of the FLSA until the checks are received, and then with no explanation. This is not the case here.[9]

Plaintiffs believe that if given the opportunity to revisit his comment in the Magistrate's Order that "[i]n essence, the settlement agreement treats each employee as being included in the FLSA settlement and the failure to cash the check would be the employee's decision to opt-out," the Magistrate would retract such observation. If the potential collective member does nothing they are not in the collective. It is the affirmative act of cashing the check, in light of the substantial information provided, that is opting into the collective. Doing nothing is not "opting out." To say otherwise turns the idea of opting in or opting out on its head. The opt-in here is logically no different than if there was a severable "stub" on the check that had to be signed and sent in along with the cashing of the check. The only difference is the cashed check is what is available to be filed with the court if it is so ordered.

For these reasons, the Court should not adopt the finding and recommendation of the Magistrate's Order on the opt-in but should grant preliminary approval.

### D.   THE SETTLEMENT WAS PROVIDED TO THE LWDA BY PLAINTIFFS

Plaintiffs did properly submit the Settlement to the LWDA as required. *See* Aiwazian Suppl. Decl., ¶ 58.   Specifically, the moving and supporting papers for the Motion for Preliminary Approval of Class and Collective Action Settlement (Dkt. No. 25) together with the

---

[9] *Smith* has been cited twice; once in the Magistrate's Order and in *Englert v. City of Merced*, 2020 WL 2215749, *3 (E.D. Cal. May 7, 2020) (Boone, M.J.).

Third Amended Class Action and Collective Action Settlement and Release Agreement, were submitted to the LWDA on April 14, 2020 by way of online submission on the LWDA's website at http://www.dir.ca.gov/Private-Attorneys-General-Act/Private-Attorneys-General-Act.html. *Id.*

## E. THE UNITED WAY HAS ROUNTINELY BEEN APPROVED AS *CY PRES* IN THE FEDERAL DISTRICT COURTS IN CALIFORNIA AND SHOULD HAVE BEEN APPROVED BY THE MAGISTRATE

Not fewer than five cases from the district courts of California, including the Eastern District, have approved the United Way as an appropriate *cy pres* in a wage and hour class action. It is simply not necessary to reinvent the wheel here.

Important to the analysis is the scope of the provision naming the United Way as *cy pres*. The Settlement Agreement states, at paragraph 23, that: "Funds associated with [] cancelled checks, will be transmitted to the United Way, a non-profit organization, for the local chapters in Fresno County, Kings County, Santa Clara County, and Colusa County, which are the local chapters of the counties in which Defendant's Fresno, Firebaugh, Hanford, Lemoore, Gilroy, and/or Williams facilities in California are located, on a *pro rata* basis based upon the number of Class Members that worked or are working in each said county, as determined based on the Work Locations indicated in the Class List." This puts the money in the hands of the United Way in each of the affected areas.

The use of the United Way as a *cy pres* in wage and hour class settlements is well recognized in the district courts of California. In *Djukich v. Autonation Inc.*, the court stated in granting final approval of a wage and hour class action settlement:

> United Way of California is a charity that "advances the health, education[,] and financial sustainability ... through education and advocacy." *About Us*, UNITED WAY, https: //www.unitedwaysca.org/who-we-are/about-us (last visited Nov. 6, 2015). United Way also invests in and advocates for "job training, workforce development programs, apprenticeships, and other opportunities that create family-sustaining employment." *Income*, UNITED WAY, https://www.unitedwaysca.org/ourwork/income#workforce (last visited Nov. 6, 2015). While Plaintiffs do not analyze whether United Way satisfies the requirements set forth in *Lane*, other courts have previously approved United Way as a *cy pres* beneficiary in wage and hour cases. *See, e.g., Ogbuehi v. Comcast of Cal./Colo./Fla./Or., Inc.*, 303 F.R.D. 337, 354 (E.D. Cal. 2014). Further, Defendant does not object to the use of United Way as a *cy pres* beneficiary.

**Objections to Magistrate Judge's Findings and Recommendations that Plaintiffs' Motion for Preliminary Approval of Class Action and Collective Action Settlement should be Denied**

Given that United Way appears to account for the nature of Plaintiffs' lawsuit, *Lane*, 696 F.3d at 819, the Court finds that United Way is an appropriate *cy pres* beneficiary.

*Djukich v. Autonation Inc.*, 2015 WL 13756099, *9 (C.D. Cal. Nov. 12, 2015).

In *Terry v. Hoovestol, Inc.*, the court echoed the sentiments of the court in *Djukick* in granting preliminary approval of the United Way of California as *cy pres* in wage and hour class action, stating:

> The Settlement Agreement now names the United Way of California as the *cy pres* recipient of these unclaimed funds. Settlement Agreement ¶ III.I.11. As the Agreement explains, the United Way provides direct service "programs aimed at promoting steady, gainful employment of Californians," as well as advocating for the interests of employees at a policy level. *Id.* Because this is a class action brought by employees against their employer, the Court concludes that the parties have met their burden to show "a driving nexus between the plaintiff class and the *cy pres* beneficiaries." Dennis v. Kellogg Co., 697 F.3d 858, 865 (9th Cir. 2012) (citation omitted). An award to the United Way of California is "guided by (1) the objectives of the underlying statute(s) and (2) the interests of the silent class members." *Id.* (citation omitted). Accordingly, the *cy pres* distribution plan described in the revised Settlement Agreement poses no barrier to preliminary approval.

*Terry v. Hoovestol, Inc.*, 2018 WL 6439167, *5 (N.D. Cal., Dec. 7, 2018)

In the Eastern District, the United Way of Fresno County was approved by Magistrate Oberto as *cy pres* in a wage and hour case for a local meat packaging plant with a class of 1,837. *Barbosa v. Cargill Meat Solutions Corp.*, 297 F.R.D. 431, 456 (E.D. Cal. 2013). Similarly, preliminary approval of United Way as *cy pres* in wage and hour class action and FLSA collective action was also granted in the Eastern District, Judge Kimberly Mueller, in *Ogbuehi v. Comcast of California/Colorado/Florida/Oregon, Inc.*, 303 F.R.D.337, 354 (E.D. Cal. 2014). Other California district courts approving the United Way as *cy pres* for a wage and hour settlement include *Quezada v. Schneider Logistics Transloading & Distribution, Inc.*, 2014 WL 12584436, *3 (C.D. Cal., May 12, 2014) (Inland Empire United Way approved as cy pres in wage and hour and PAGA settlement).

Thus, there can be no doubt that the United Way is an appropriate *cy pres* and the Settlement Agreement lays out a distribution likely to provide for direct and indirect assistance to class and collective members. Moreover, to the extent the Court wants more information, supplemental briefing is an appropriate vehicle.

**F.   THE NOTICES CAN BE EASILY CORRECTED**

The criticism of the FLSA Notice relating to the opt-in to the FLSA becomes moot with acceptance of that procedure as addressed above. The only other observations in the Magistrate's Order (i.e., that LJO was in the case number instead of NONE, and that Judge Boone had preliminarily approved the settlement) are minor revisions which could easily be corrected therefore, supplemental briefing, including revised notices, should be permitted.

**G.   RETAINING CONTINUING JURISDICITON**

The Magistrate's Order declines to approve such a provision without "a specific showing that it is necessary in this action." In doing so, the Magistrate's Order conflates retaining jurisdiction with some time commitment. Although the court is not obligated to reserve jurisdiction, if it does not, then it cannot aide in enforcement of the settlement in the present action. *See Kokkonen v. Guardian Life Ins. Co. of America*, 511 U.S. 375 (1994). Federal courts have ancillary jurisdiction to enforce a settlement agreement only "if the parties' obligation to comply with the terms of the settlement agreement ha[s] been made part of the order of dismissal—either by separate provision (such as a provision 'retaining jurisdiction' over the settlement agreement) or by incorporating the terms of the settlement agreement in the order." *K.C. ex rel. Erica C. v. Torlakson*, 762 F.3d 963, 967 (9th Cir. 2014) *quoting Kokkonen*, 511 U.S. at 381. Courts have reserved jurisdiction when there is future performance under a settlement agreement. *See e.g. Chan v. Forster & Garbus, LLP*, 2020 WL 2464752, *2 (E.D. Cal. May 12, 2020); *Kirchner v. Shred-It USA Inc.*, 2015 WL 13855940, *1 (E.D. Cal. Oct. 22, 2015); *see also e.g. Clayton v. Knight Transp.*, 2014 WL 1154098, *7 (E.D. Cal. Mar. 21, 2014) (Boone, M.J.). Here, there are a number of post-approval obligations but there is no anticipation that they will not be adequately and timely performed. Thus, the reservation of jurisdiction is not a commitment by the Court to spend time but to provide an avenue for Plaintiffs to assure that enforcement, if necessary, will not cause the class, collective or both, to file an enforcement action in the unlikely event everything does not go as planned.

///

///

## H.   CERTIFICATION IS WARRANTED

The Magistrate's Order erroneously concludes that there is only conclusory allegations of a Uniform Policy or Procedure for purposes of certification. In fact, one basis on which a number of the claims are based is the alleged practice of rounding and so the perceived differences between the clock in times at the different facilities, referred to in the Magistrate's Order, is a difference without a distinction. Moreover, the fact of such a consistently applied policy is included in the declarations of Edwin Aiwazian (¶26), Thomas Beltran (¶6), Mario Martinez (¶6) and Juan Rivera (¶6) and supports the conclusion that the policy of rounding was practiced throughout the facilities from which the class is drawn. Further, and again, this alleged rounding underlies many of the claims relating to unpaid wages and their derivative claims. See Third Amended Complaint, ¶¶46 (rounding as a policy), ¶48 (rounding re meal periods), ¶¶82, 92 (rounding re overtime), ¶105 (rounding re meal periods) and ¶¶127, 134 (rounding re minimum wage). The fact that rounding is a hotly disputed issue does not mean it cannot suffice to meet the commonality and predominance requirements in justifying certification of the class. To the contrary, such a rule would turn the certification process into a trial, something it is not. See Amgen, Inc. v. Connecticut Retirement Plans and Trust Funds, 568 U.S. 455,  469-70 (2013); Ontiveros v. Zamora, 2014 WL 3057506, *10 (E.D. Cal. July 7, 2014).

## IV.   CONCLUSION

The district court has discretion whether to consider evidence presented for the first time in a party's objection to a magistrate judge's recommendation and in addressing the presentation of such evidence, the district court must actually exercise its discretion, rather than summarily accepting or rejecting such evidence. U.S. v. Howell, 231 F.3d 615, 621-22 (9th Cir. 2000); Brown v. Roe, 279 F.3d 742, 744 (9th Cir. 2002); see 28 U.S.C. §636(b)(1)(C)(Federal Magistrates Act providing, in pertinent part, that: "The judge may also receive further evidence or recommit the matter to the magistrate with instructions."). Here, the new evidence and argument illuminates and reinforces the reasons to grant the motion and does not raise new issues.

For these reasons, the Court should sustain the parties' Objections to the Findings and Recommendations and grant preliminary approval or provide Plaintiffs the opportunity to provide supplemental briefing.

Date: June 23, 2020                    **LAWYERS FOR JUSTICE, PC**


                                       BY:  /s/ Edwin Aiwazian
                                       _____
                                            Edwin Aiwazian
                                            *Attorneys for* Plaintiffs Thomas Beltran,
                                            Mario Martinez, and Juan Rivera


Date: June 23, 2020                    **HATMAKER LAW GROUP**


                                       BY:  /s/ Susan K. Hatmaker
                                       _____
                                            Susan K. Hatmaker
                                            Robert W. Branch
                                            *Attorneys for* Defendant

**Objections to Magistrate Judge's Findings and Recommendations that Plaintiffs' Motion for Preliminary Approval of Class Action and Collective Action Settlement should be Denied**