1   Edwin Aiwazian (Cal. State Bar No. 232943)
        *edwin@calljustice.com*
2   Arby Aiwazian (Cal. State Bar No. 269827)
        *arby@calljustice.com*
3   Joanna Ghosh (Cal. State Bar No. 272479)
        *joanna@calljustice.com*
4   **LAWYERS *for* JUSTICE, PC**
    410 West Arden Avenue, Suite 203
5   Glendale, California 91203
    Tel: (818) 265-1020 / Fax: (818) 265-1021
6
7   *Attorneys for* Plaintiffs Thomas Beltran, Mario Martinez, and
    Juan Rivera
8
    [Additional Counsel Listed on the Next Page]
9

10                     **UNITED STATES DISTRICT COURT**

11                     **EASTERN DISTRICT OF CALIFORNIA**

12   THOMAS BELTRAN; MARIO                    Case No.: 1:18-cv-01676-NONE-SAB
     MARTINEZ; MARIA CLAUDIA OBESO
13   COTA; individually, and on behalf of other
     members of the general public similarly     **CLASS ACTION**
14   situated; JUAN RIVERA; MARIANA
     RAMIREZ; ALEXANDER SOLORIO;             **SUPPLEMENTAL DECLARATION OF**
15   individually, and on behalf of other members  **EDWIN AIWAZIAN IN SUPPORT OF**
     of the general public similarly situated on   **PLAINTIFFS'S MOTION FOR**
16   behalf of other aggrieved employees pursuant  **PRELIMINARY APPROVAL OF CLASS**
     to the California Private Attorneys General    **AND COLLECTIVE ACTION**
17   Act;                                    **SETTLEMENT**
18
                     Plaintiffs,
19                                           Complaint Filed:    July 7, 2015
                                             FAC Filed:          November 10, 2015
20         vs.                               SAC Filed:          April 25, 2016
                                             TAC Filed:          April 11, 2018
21   OLAM SPICES AND VEGETABLES, INC.,       Jury Trial Date:    None Set
     an unknown business entity; and DOES 1
22   through 100, inclusive,
23                     Defendants.
24
25
26
27
28

---

**SUPPLEMENTAL DECLARATION OF EDWIN AIWAZIAN IN SUPPORT OF PLAINTIFF'S MOTION FOR PRELIMINARY APPROVAL OF CLASS AND COLLECTIVE ACTION SETTLEMENT**

1  Joseph Lavi (SBN 209776)
   Vincent C. Granberry (SBN 276483)
2  **LAVI & EBRAHIMIAN, LLP**
3  8889 Olympic Blvd., Suite 200
   Beverly Hills, California 90211
4  Tel: (310) 432-000 / Fax: (310) 432-0001

5  Sahag Majarian II (SBN 146621)
6  **LAW OFFICE OF SAHAG MAJARIAN II**
   18250 Ventura Boulevard
7  Tarzana, California 91356
   Tel: (818) 609-0807 / Fax: (818) 609-0892
8
   *Attorneys for* Plaintiffs Maria Claudia Obeso Cota and
9  Alexander Solorio

10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**LAWYERS *for* JUSTICE, PC**
410 West Arden Avenue, Suite 203
Glendale, California 91203

1

**SUPPLEMENTAL DECLARATION OF EDWIN AIWAZIAN IN SUPPORT OF PLAINTIFFS' MOTION FOR PRELIMINARY APPROVAL OF CLASS AND COLLECTIVE ACTION SETTLEMENT**

LAWYERS *for* JUSTICE, PC
410 West Arden Avenue, Suite 203
Glendale, California 91203

## SUPPLEMENTAL DECLARATION OF EDWIN AIWAZIAN

I, **Edwin Aiwazian**, hereby declare as follows:

1.      I am an attorney duly licensed to practice law before all courts of the State of California and all United States District Courts in the State of California. I am a member of Lawyers *for* Justice, PC, attorneys of record for Plaintiffs Thomas Beltran, Mario Martinez, and Juan Rivera ("Plaintiffs") in the above-captioned action.  The facts set forth in this declaration are within my personal knowledge or based on information and belief and, if called as a witness, I could and would competently testify thereto.

2.      On April 13, 2020, Plaintiffs filed a Motion for Preliminary Approval of Class and Collective  Action Settlement ("Motion for Preliminary Approval") and supporting documents seeking approval of the settlement reached by Plaintiffs and Defendant Olam West Coast, Inc. ("Defendant") (together, "Parties").

3.      On June 2, 2020, the Magistrate issued its Findings and Recommendations raising multiple points of inquiry in connection with the Motion for Preliminary Approval ("Magistrate's Order").  Plaintiffs submit this supplemental declaration in support of its Motion for Preliminary Approval.

### ATTORNEYS' FEES AND COST AWARD

4.      Class Counsel have spent a significant number of hours to obtain a substantial recovery and anticipate spending additional time through the notice and settlement administration process, and to seek final approval of the Settlement.

5.      The allocation for an award of attorneys' fees in the amount of up to $1,575,000 is fair, reasonable, and adequate, and justified on a percentage-basis and also based on a lodestar cross-check. The ongoing work has been extensive, demanding, and ultimately successful in achieving a substantial settlement resolution.  During the course of the litigation of the cases, Class Counsel prepared for and took three (3) depositions of Defendant's Person Most Knowledgeable ("PMK") designees and prepared for and defended the depositions of Plaintiffs Beltran and Martinez.  Class Counsel also engaged in *Belaire-West* notice administration (by which Class Counsel obtained the contact information of Class Members who did not opt out of

**SUPPLEMENTAL DECLARATION OF EDWIN AIWAZIAN IN SUPPORT OF PLAINTIFFS' MOTION FOR PRELIMINARY APPROVAL OF CLASS AND COLLECTIVE ACTION SETTLEMENT**

the disclosure of their information), interviewed many Class Members, and obtained and reviewed the employment records of over half a dozen Class Members and FLSA Members. Class Counsel propounded and responded to multiple sets of written discovery requests in various forms. Class Counsel reviewed thousands of pages of data and documents, including but not limited to: Plaintiffs' and multiple other Class Members' employment records, over ten thousand pages of employee time detail records, almost fifteen thousand pages of employee payroll records, various orientation, Defendant's policies and practices, various agreements and acknowledgements, fourteen versions/iterations of employee, and multiple collective bargaining. The parties also engaged in extensive motion practice, researched applicable law, developed damages/valuation models in preparation for mediation, and prepared for and attended court proceedings, two (2) mediation sessions, and settlement negotiations. Counsel for the parties also met and conferred on numerous occasions to discuss issues relating to the pleadings, venue, jurisdiction, motion practice, discovery, and the production of various documents and data prior to the mediations and engaged in extensive settlement negotiations over several months to try and resolve this matter. Class Counsel's work in this matter will continue through the notice and settlement administration process and to seek final approval of the Settlement. To date, Class Counsel has borne all of the risks and costs of litigation and will not receive any compensation until recovery is obtained.

## ESTIMATE OF THE VALUE OF THE CLAIMS

6.     Plaintiffs' action alleges that Defendant has violated the California Labor Code, California Business and Professions Code, and Fair Labor Standards Act ("FLSA") by engaging in a uniform policy and systematic scheme of wage abuse against Plaintiffs, Class Members, and FLSA Members, including *inter alia*, failing to properly compensate overtime and minimum wages, failing to provide compliant meal and rest periods and associated premium pay, failing to timely pay wages upon termination and associated waiting-time penalties, failing to provide compliant wage statements, and failing to reimburse necessary business expenses. Plaintiffs further contend that Defendant thereby engaged in unfair business practices under the California

LAWYERS *for* JUSTICE, PC
410 West Arden Avenue, Suite 203
Glendale, California 91203

**SUPPLEMENTAL DECLARATION OF EDWIN AIWAZIAN IN SUPPORT OF PLAINTIFFS' MOTION FOR PRELIMINARY APPROVAL OF CLASS AND COLLECTIVE ACTION SETTLEMENT**

Business and Professions Code and engaged in conduct that gives rise to penalties under the Private Attorneys General Act ("PAGA").

7.     Based on data provided by Defendant, the total number of Class Members during the period from July 7, 2011 to December 31, 2018 was estimated to be 7,261 individuals who worked a total of 554,378 workweeks with an average hourly rate of pay of $13.23. Additionally, the total of workweeks from July 7, 2012 to December 31, 2018 was approximately 484,103 workweeks.

8.     As set forth in the Declaration of Edwin Aiwazian in Support of Plaintiffs' Motion for Preliminary Approval filed on April 13, 2020 ("Declaration of Edwin Aiwazian"), and discussed in the Motion for Preliminary Approval, both sides had the opportunity to interview witnesses, conducted discovery and investigations into the facts of the case, and informally exchanged information and class-wide data.

**A.** **Failure to Pay Overtime and Minimum Wages**

9.     Plaintiffs assert causes of action for failure to pay overtime and minimum wages. Plaintiffs contended that Defendant's uniform policies, practices, and procedures required employees to perform work during meal and rest periods and before clocking-in and after clocking-out. For example, Plaintiffs contended that Defendant had a policy of requiring all employees to perform job duties continuously and at all times during their scheduled work day, even when they were clocked out for meal periods.  Plaintiffs contended that they and Class Members and FLSA Members were required to be at their workstations and ready to work at the scheduled shift starting time, and therefore, they performed work such as donning personal protective equipment ("PPE") and storing personal belongings prior to their scheduled start time. Plaintiffs also contended that Defendant utilized a rounding policy which consistently operated against Plaintiffs, Class Members, and FLSA Members.  Plaintiffs contended that Defendant failed to properly compensate Plaintiffs and employees at their applicable minimum, regular, or overtime rates for all of the hours they worked.

///

///

LAWYERS *for* JUSTICE, PC
410 West Arden Avenue, Suite 203
Glendale, California 91203

**SUPPLEMENTAL DECLARATION OF EDWIN AIWAZIAN IN SUPPORT OF PLAINTIFFS' MOTION FOR PRELIMINARY APPROVAL OF CLASS AND COLLECTIVE ACTION SETTLEMENT**

10.     California Labor Code section 510 provides that when an employee works more than eight (8) hours in any workday, more than forty (40) hours in any workweek and/or more than six (6) days in a workweek, the employer must pay the employee at least one and one-half times the employee's regular rate of pay for all overtime hours worked.  The employer must pay the employee no less than twice his or her regular rate of pay for hours worked in excess of twelve (12) hours in one day or in excess of eight (8) hours on the seventh consecutive day of work.  California Labor Code section 1198 and the applicable Industrial Welfare Commission ("IWC") Wage Order(s) provide that it is unlawful to employ persons without compensating them at a rate of pay either time-and-one-half or two-times that person's regular rate of pay, depending on the number of hours worked by the person on a daily or weekly basis.

11.     The Fair Labor Standards Act, 29 U.S.C. section 207(a)(1) provides that when an employee works more than forty (40) hours in a workweek, the employer must pay the employee at least one and one-half times the employee's regular rate of pay for all overtime hours worked. The Fair Labor Standards Act also provides that, if an employer violates 29 U.S.C. section 207, the employee who suffers overtime violations is entitled to recover the amount of the unpaid overtime compensation and an additional equal amount as liquidated damages.  Fair Labor Standards Act, 29 U.S.C. § 216(b).

12.     California Labor Code section 1197 provides that it is unlawful to pay employees at a rate less than the minimum wage.  California Labor Code sections 1194, 1194.2, 1197, and 1197.1 provide that an employee may seek to recover unlawfully unpaid wages by court action, as well as liquidated damages in an amount equal to the wages unlawfully not paid and interest thereon.  California Labor Code section 1197.1 provides for civil penalties, which, arguably, may only be recovered by the Labor Commissioner during a one-year statute of limitations period.  However, Plaintiffs asserts a cause of action under the Private Attorneys General Act ("PAGA") which is discussed below.

13.     The Fair Labor Standards Act, 29 U.S.C. section 206(b) provides that an employer must pay each employee not less than minimum wage.  29 U.S.C. § 206(b). The Fair Labor Standards Act also provides that, if an employer violates 29 U.S.C. section 206, the employee

**SUPPLEMENTAL DECLARATION OF EDWIN AIWAZIAN IN SUPPORT OF PLAINTIFFS' MOTION FOR PRELIMINARY APPROVAL OF CLASS AND COLLECTIVE ACTION SETTLEMENT**

LAWYERS *for* JUSTICE, PC
410 West Arden Avenue, Suite 203
Glendale, California 91203

who suffers minimum wage violations is entitled to recover the amount of the unpaid minimum wages and an additional equal amount as liquidated damages.  Fair Labor Standards Act, 29 U.S.C. § 216(b).

14.    Defendant contended, *inter alia*, that its overtime policies and practices comply with federal and California state law, and that it paid all employees over the California and federal minimum wage rate for all hours worked.  Defendant also produced wage statements reflecting overtime compensation paid to many of the employees (including, and not limited to, Plaintiffs).  Defendant further contended that all employees were required to record all time worked and were given the opportunity to make any necessary timecard revisions or changes, and that Defendant was not aware that any work had been performed off-the-clock.  Defendant contended that even if off-the-clock work occurred, any violation was not willful, that Defendant acted in good faith, and that, under the Fair Labor Standards Act, Defendant is not liable for liquidated damages because there were reasonable grounds to believe that its actions did not violate the Fair Labor Standards Act.  See 29 U.S.C. § 260.  Defendant also argued that individual liability issues predominate, including: (a) whether each employee worked off-the-clock; (b) whether Defendant knew or should have known about each employee's off-the-clock work; (c) whether each employee worked overtime; (d) whether Defendant knew or should have known that each employee performed overtime work.  Defendant also contended that the employees worked in different locations, were subject to different collective bargaining agreements, worked different shifts, and performed different job duties and that these circumstances would raise highly individualized questions of fact and would pose challenges to certification and the merits of the claims for overtime and minimum wages.  Defendant further contended that the rounding policy was fair and neutral to Plaintiffs and other employees.  Further, Defendant contended that any time that was unrecorded as a result of its rounding policy was *de minimis*.  Defendant also contended that there is a possibility that Class Members and FLSA Members may have been subject to purported exemptions from overtime pay under the FLSA.

///

**LAWYERS** *for* **JUSTICE, PC**
410 West Arden Avenue, Suite 203
Glendale, California 91203

**SUPPLEMENTAL DECLARATION OF EDWIN AIWAZIAN IN SUPPORT OF PLAINTIFFS' MOTION FOR PRELIMINARY APPROVAL OF CLASS AND COLLECTIVE ACTION SETTLEMENT**

**LAWYERS *for* JUSTICE, PC**
410 West Arden Avenue, Suite 203
Glendale, California 91203

15.     Class Counsel considered information obtained through investigations and from Plaintiffs and other employees, as well as class data provided by Defendant, and created damages/valuation models prior to the mediation.  Based thereon, assuming that it could be proven that Defendant failed to pay half an hour of overtime wages every workweek during the relevant time period, the potential value of the overtime claim under the California Labor Code was estimated to be $5,502,201.65 (554,378 workweeks x 0.5 hour of overtime wages x overtime hourly rate of $19.85, which is based on the average hourly rate of $13.23).  Assuming that it could be proven that Defendant failed to pay half an hour of overtime wages every workweek during the three year statute of limitations period, the potential value of the overtime claim under the Fair Labor Standards Act was estimated to be $9,609,444.56 [(484,103 workweeks x 0.5 hour of overtime wages every other workweek x overtime hourly rate of $19.85, which is based on the average hourly rate of $13.23) x 2 for liquidated damages].  Assuming that it could be proven that Defendant failed to pay half an hour of minimum wages every workweek, the potential value of the minimum wage claim under the California Labor Code was estimated to be $3,667,210.47 [(554,378 workweeks x 0.5 hours of unpaid minimum wages x average hourly rate of $13.23)].  Assuming that it could be proven that Defendant failed to pay half an hour of minimum wages every workweek, the potential value of the minimum wage claim under the Fair Labor Standards Act was estimated to be $3,509,746.76 [(484,103 x 0.5 hours of minimum wages x federal minimum wage of $7.25) x 2 for liquidated damages].

16.     However, this assumes an exposure based on a class and collective having been certified and Plaintiffs having proven all elements of the overtime and minimum wage claims, despite risks associated with obtaining and maintaining certification, risks to establishing liability, and significant additional costs that would have to be incurred in order to certify a class and collective, establish liability, and prove the extent of damages.  Plaintiffs also faced the risk of the Court finding that individualized issues predominate, such that class and collective treatment are not suitable.  While Class Counsel disagreed with Defendant's arguments and factual contentions, Class Counsel recognized the circumstances and realities of the case, applicable case law and regulations, the costs and expenses of further litigation and certification,

**SUPPLEMENTAL DECLARATION OF EDWIN AIWAZIAN IN SUPPORT OF PLAINTIFFS' MOTION
FOR PRELIMINARY APPROVAL OF CLASS AND COLLECTIVE ACTION SETTLEMENT**

and risks to recovery, and applied appropriate discounts for them, as discussed in the Declaration of Edwin Aiwazian.

**B.   Failure to Provide Compliant Meal Periods and Associated Premiums**

17.   Plaintiffs' theory of liability was also based on Defendant's failure to provide timely, full, and/or uninterrupted meal periods.  Plaintiffs contended, *inter alia*, that Defendant's policies, practices, and procedures required employees to perform job duties during their meal periods and prevented them from regularly receiving compliant meal periods.  For example, Plaintiffs also contended that meal periods were often missed and interrupted by work-related inquiries and to perform job duties, and were scheduled in a manner so as to not disrupt the workflow.  Plaintiffs further contended that Defendant did not pay meal period premiums for missed, late, short, or interrupted meal periods.

18.   Under California law, an employer must provide an employee with uninterrupted meal periods of not less than thirty (30) minutes before the employee works more than five (5) hours, except that if the total work period per day of the employee is no more than six (6) hours, the meal period may be waived by mutual consent of both the employer and employee.  Cal. Lab. Code § 512(a).  A second meal period of not less than thirty (30) minutes is required if an employee works more than ten (10) hours per day, except that if the total hours worked is no more than twelve (12) hours, the second meal period may be waived by mutual consent of the employer and employee only if the first meal period was not waived.  *Id.*  An "on-duty" meal period may be agreed to only if "the nature of the work prevents an employee from being relieved of all duty and when by written agreement between the parties an on-the-job paid meal period is agreed to."  IWC Wage Orders 1 through 15, § 11; IWC Wage Order 16, § 10.  An employer must pay each employee to whom it fails to "provide" a meal period one hour of wages at his or her regular rate of pay "for each work day that the meal or rest period is not provided."  Cal. Lab. Code § 226.7(b).

19.   Defendant contended that it had practices, policies, and procedures to provide meal periods every workday to its employees that fully complied with California law.  To the extent that putative class members failed to take their meal periods or took a short or late meal

**LAWYERS** *for* **JUSTICE, PC**
410 West Arden Avenue, Suite 203
Glendale, California 91203

**LAWYERS** *for* **JUSTICE, PC**
410 West Arden Avenue, Suite 203
Glendale, California 91203

period, Defendant contended that they did so voluntarily and that all applicable meal periods were still provided to them.  Thus, Defendant argued that it did not act unlawfully to deprive putative class members of meal periods.  Defendant also contended that there were multiple individual issues that would pose challenges to certification, including and not limited to, (a) whether any meal periods were non-compliant, and (b) why they were non-compliant. Defendant also contended that the putative class members worked in different locations and departments and had different job duties, and that as a result, there was variation to the circumstances that could allegedly cause the employees to be deprived of the opportunity to take legally-compliant, duty-free meal periods, and this variation in circumstances raised highly individualized questions of fact.

20.    Class Counsel considered information obtained through investigations and from Plaintiffs and other putative class members, as well as class data provided by Defendant, and created damages/valuation models prior to the mediation.  Based thereon, assuming that it could be proven that three meal period premiums are due for every two week period, the potential value of this claim was estimated to be $11,001,210.47 (554,378 workweeks x 1.5 meal period premiums x average hourly rate of $13.23).

21.    Class Counsel also considered the risk of further litigating the case, including the significant additional costs that will be incurred by both sides if the case does not settle, as litigating a class action through class certification, trial, and/or appeals is very expensive. Moreover, litigating meal period claims is inherently difficult as an employer's records, as is the case here, do not usually indicate when a meal period is interrupted.  While Class Counsel disagreed with Defendant's arguments and factual contentions, Class Counsel recognized the circumstances and realities of the case, applicable case law and regulations, costs and expenses of further litigation and certification, and risks to recovery, and applied appropriate discounts for them, as further discussed in the Declaration of Edwin Aiwazian.

**C.  Failure to Provide Compliant Rest Periods and Associated Premiums**

22.    Plaintiffs' theory of liability was also based on Defendant's failure to provide its employees with timely, full, and/or uninterrupted rest periods. Plaintiffs contended that

**SUPPLEMENTAL DECLARATION OF EDWIN AIWAZIAN IN SUPPORT OF PLAINTIFFS' MOTION FOR PRELIMINARY APPROVAL OF CLASS AND COLLECTIVE ACTION SETTLEMENT**

LAWYERS *for* JUSTICE, PC
410 West Arden Avenue, Suite 203
Glendale, California 91203

1   Defendant's employment policies, practices, and procedures required employees to perform job

2   duties during their rest periods and prevented them from regularly receiving compliant rest

3   periods.  For example, Plaintiffs contended putative class members' rest periods were regularly

4   interrupted to perform job duties. Additionally, Plaintiffs alleged that rest periods were often

5   missed and interrupted by work-related inquiries and to perform job duties, and were scheduled

6   in a manner so as to not disrupt the workflow.

7       23.     California law requires an employer to provide rest periods to all employees at the

8   rate of ten (10) minutes every four hours of work or major fraction thereof.  Cal. Lab. Code §

9   226.7.  When an employer fails to provide a compliant rest period, the employer is required to

10  either (a) provide another rest period or (b) pay one additional hour of pay at the regular rate of

11  pay "for each work day that the meal or rest period is not provided." *Augustus v. ABM Security

12  Services, Inc.* (2016) 2 Cal.5th 257, 271-272; Cal. Lab. Code § 226.7(b).  However, employees

13  are exempt from the rest breaks law, if their duties and responsibilities qualify for one or more

14  of the exemptions under California or federal law.  See Cal. Lab. Code § 226.7(e); see e.g., 49

15  CFR § 395.

16      24.     Defendant contended that it had methods, policies, and procedures to provide all

17  applicable rest periods every workday to putative class members that fully complied with the

18  law.  Defendant argued that the reasons why a putative class member failed to receive a

19  compliant rest period raised individual issues that could not be certified.

20      25.     Class Counsel considered information obtained through investigations and from

21  Plaintiffs and other putative class members, as well as class data provided by Defendant, and

22  created damages/valuation models prior to the mediation.  Based thereon, assuming that it could

23  be proven that one (1) rest period premium is due for every other workweek, the potential value

24  of this claim was estimated to be $3,667,210.47 (554,378 workweeks x 0.5 rest period premium

25  x average hourly rate of $13.23).

26      26.     Class Counsel also considered the risk of further litigating the case, as well as

27  significant additional costs that will be incurred by both sides if the case does not settle, as

28  litigating a class action through class certification, trial, and/or appeals is very expensive.

**SUPPLEMENTAL DECLARATION OF EDWIN AIWAZIAN IN SUPPORT OF PLAINTIFFS' MOTION
FOR PRELIMINARY APPROVAL OF CLASS AND COLLECTIVE ACTION SETTLEMENT**

LAWYERS *for* JUSTICE, PC
410 West Arden Avenue, Suite 203
Glendale, California 91203

Moreover, litigating rest period claims is inherently difficult as an employer's records, as is the case here, do not usually indicate when a rest period is short, late, interrupted or missed entirely. While Class Counsel disagreed with Defendant's arguments and factual contentions, Class Counsel recognized the circumstances and realities of the case, applicable case law and regulations, the costs and expenses associate with further litigation and certification, and risks to recovery, and applied appropriate discounts for them, as further discussed in the Declaration of Edwin Aiwazian.

## D. Waiting-Time Penalties for Failure to Timely Provide Wages Upon Termination

27.    California Labor Code sections 201 and 202 provide that if an employer discharges an employee, the wages earned and unpaid at the time of discharge are due and payable immediately.  If an employee quits his or her employment, his or her wages shall become due and payable not later than seventy-two (72) hours of quitting, unless the employee has given seventy-two (72) hours of notice of his or her intention to quit, in which cases the employee is entitled to his or her wages at the time of quitting.

28.    California Labor Code section 203 provides that if an employer fails to pay an employee all wages due at termination or within seventy-two (72) hours of resignation, in accordance with sections 201 and 202, then that employee's wages shall continue as a penalty until paid for a period of up to thirty (30) days from the date they were due.  California Labor Code section 203 further provides that the statute of limitations to recover the penalty is the same as the statute of limitations for recovery of the unpaid wages from which the penalties arise, i.e. three years.

29.    Plaintiffs alleged that Defendant intentionally and willfully failed to pay Plaintiffs and the other putative class members all wages due to them upon termination, within the time period permissible under California law.  For example, Plaintiffs alleged that putative class members are entitled to unpaid wages arising from, *inter alia*, off-the-clock work, as well as meal and rest period premiums, thereby triggering waiting-time penalties under California Labor Code section 203.

///

**SUPPLEMENTAL DECLARATION OF EDWIN AIWAZIAN IN SUPPORT OF PLAINTIFFS' MOTION FOR PRELIMINARY APPROVAL OF CLASS AND COLLECTIVE ACTION SETTLEMENT**

30.     Based on information and data provided by Defendant, it was estimated that approximately 5,739 putative class members had been terminated during the three-year statute of limitations (i.e., from July 7, 2012).  Assuming that these individuals were not timely paid all wages due to them upon termination, the potential value of waiting-time penalties claim was estimated to be $18,222,472.80 collectively (5,739 individuals x [30 days x hourly rate of $13.23 x 8 hours]), or approximately $3,175.20 per individual.  However, this presumes that Plaintiffs would prevail on the underlying California Labor Code claims, which is necessary to show that Defendant failed to timely pay wages that were due to the putative class members upon termination.

31.     Defendant was adamant that no waiting-time penalties should be awarded. Defendant pointed out that waiting-time penalties are derivative of each and every other underlying cause of action and contended that it paid the terminated employees all wages due and owing.  Moreover, Defendant emphasized that, under California Labor Code section 203, employers are only obligated to pay waiting-time penalties if they "willfully" fail to pay wages due and owing at the time of termination or resignation.  As Title 8, California Code of Regulations, section 13520 states, a willful failure to pay wages within the meaning of Labor Code Section 203 occurs when an employer intentionally fails to pay wages to an employee when those wages are due. However, a good faith dispute that any wages are due will preclude imposition of waiting time penalties under Section 203.

32.     A "good faith dispute" that any wages are due occurs when an employer presents a defense, based in law or fact, which, if successful, would preclude any recovery on the part of the employee. The fact that a defense is ultimately unsuccessful will not preclude a finding that a good faith dispute did exist. Defenses presented which, under all the circumstances, are unsupported by any evidence, are unreasonable, or are presented in bad faith, will preclude a finding of a "good faith dispute."

33.     Accordingly, to assess the likely recovery of waiting-time penalties, Class Counsel also took into consideration the chances of prevailing on each of the underlying causes of action, as well as the additional hurdles of prevailing on the claim for waiting-time penalties,

**SUPPLEMENTAL DECLARATION OF EDWIN AIWAZIAN IN SUPPORT OF PLAINTIFFS' MOTION FOR PRELIMINARY APPROVAL OF CLASS AND COLLECTIVE ACTION SETTLEMENT**

LAWYERS *for* JUSTICE, PC
410 West Arden Avenue, Suite 203
Glendale, California 91203

including the inherent difficulty in proving the "willful" prong of section 203, applicable case law, costs and expenses associated with further litigation and certification, the circumstances and realities of the case, and risks to recovery, and applied appropriate discounts for them.

**E.  Wage Statement Violations**

34.    Plaintiffs also alleged a cause of action under California Labor Code section 226(a).  That section states that an employer must provide an accurate and itemized wage statement twice a month or each time wages are paid, whichever is the more frequent.  Failure to do so entitles employees to recover the greater of all actual damages or fifty dollars ($50) for the initial pay period in which a violation occurs and one hundred dollars ($100) for each violation in a subsequent pay period, not exceeding an aggregate penalty of four thousand dollars ($4,000).  See Cal. Lab. Code § 226(e).  Arguably, actual damages may be sought, under a three-year statute of limitations, or, statutory penalties may be sought, under a one-year statute of limitations.

35.    Based on data provided by Defendant, it was estimated that 5,377 putative class members worked during the one-year statutory limitations period (i.e., from July 7, 2014), and that these putative class members worked a total of 274,580 pay periods.  Assuming that an injurious wage statement could be proven for each of these putative class members for each of these pay periods, the potential value of this claim was calculated to be $21,508,000 ([5,377 class members x $4,000 statutory maximum penalties]).

36.    Defendant contended that Plaintiffs and putative class members suffered no actual injury from the alleged wage statement violations.  Defendant also contended that this cause of action is entirely derivative of the foregoing causes of action.  In other words, Plaintiffs would have to prove, for example, that off-the-clock work occurred, that overtime was worked, that all hours of work had not been properly recorded and compensated, and/or that non-compliant meal and rest periods occurred and that Defendant did not pay premiums, etc., to demonstrate that the wage statements were inaccurate.  Defendant further contended, *inter alia*, that if off-the-clock and/or overtime work occurred and was not reflected in the wage statements, it was because the work was hidden from Defendant. Defendant also contended that no actual injury could be

LAWYERS *for* JUSTICE, PC
410 West Arden Avenue, Suite 203
Glendale, California 91203

**SUPPLEMENTAL DECLARATION OF EDWIN AIWAZIAN IN SUPPORT OF PLAINTIFFS' MOTION FOR PRELIMINARY APPROVAL OF CLASS AND COLLECTIVE ACTION SETTLEMENT**

shown.  When assessing the value of this claim, Class Counsel considered these factors, the derivative nature of this cause of action, the chances of prevailing on each of the underlying causes of action, applicable case law and regulations, costs and expenses associated with further litigation and certification, realities of the case, and risks to recovery, and applied appropriate discounts for them, as further discussed in the Declaration of Edwin Aiwazian.

**F.  Unreimbursed Business Expenses**

37.  Plaintiffs contended that Defendant failed to reimburse Plaintiffs and other putative class members for necessary business expenses, including but not limited to, the costs associated with purchasing clothing to comply with Defendant's dress code policy and protective equipment, including but not limited to steel toed boots and office supplies.

38.  California Labor Code section 2802 requires an employer to indemnify its employees for all necessary expenditures made by the employee in direct consequence of the discharge of his or her duties, or of his or her obedience to the directions of the employer.

39.  Defendant contended that it has a policy and practice of reimbursing employees for necessary business-related expenses.  Defendant also contended that, with respect to the alleged expenses for which Plaintiffs and other putative class members never requested reimbursement from Defendant, Defendant did not know and had no reason to know that the alleged business-related expenses were incurred.  Defendant further contended that the reason for why a putative class member undertook certain expenses, while not others, and failed to receive reimbursement for certain expenses while not others, would raise individual issues that could not be certified.

40.  Defendant also contended that the California Labor Code only requires reimbursement of "necessary" expenses—as opposed to any expense that is incurred in the course of performing work—and argued that distinguishing a necessary expense from an unnecessary one would require individualized inquiry.  See, Cal. Lab. Code § 2802; *Gattuso v. Harte-Hanks Shoppers, Inc*. (2007) 42 Cal.4th 554.  Furthermore, whether or not an expense was necessary, would depend, in part, on the reasonableness of the employee's choice, and whether or not an expense was incurred, would have to be established by way of extensive

LAWYERS *for* JUSTICE, PC
410 West Arden Avenue, Suite 203
Glendale, California 91203

**SUPPLEMENTAL DECLARATION OF EDWIN AIWAZIAN IN SUPPORT OF PLAINTIFFS' MOTION FOR PRELIMINARY APPROVAL OF CLASS AND COLLECTIVE ACTION SETTLEMENT**

individual factual inquiry and/or statistical evidence. *Cochran v. Schwan's Home Services, Inc.* (2014) 228 Cal.App.4th 1137.

41.     If Plaintiffs proved that Defendant willfully failed to reimburse necessary business-related expenses for 7,261 putative class members in the amount of $5 each per workweek, the potential value of this claim would be $1,663,134 (554,378 total workweeks x $3 business expenses).  Class Counsel also took into consideration that, not only would it have to be established that expenses were incurred, but also that the nature of the expenses were such that Defendant was required to reimburse them.   While Class Counsel disagreed with Defendant's arguments and factual contentions, Class Counsel considered Defendant's arguments, applicable case law and regulations, the costs and expenses associated with further litigation and certification, the circumstances and realities of the case, and risks to recovery, and applied appropriate discounts for them.

**G. Unfair Business Practices**

42.     Plaintiffs plead this cause of action in order to augment the other causes of action and aid in their prosecution.  California's Unfair Competition Law, Business and Professions sections 17200, *et seq.* ("UCL") prohibits any "unlawful, unfair or fraudulent business practices."  A violation of the UCL may be predicated on the violation of any law.

43.     Arguably, California Business and Professions Code section 17208 extends the statute of limitations on Plaintiffs' other claims, which qualify as unfair business practices, to four (4) years.  However, claims brought under the UCL are equitable actions for injunctive or restitutionary relief, and a court may take into consideration equitable defenses when fashioning equitable remedies.  Restitution under the UCL is limited to returning to Plaintiffs and putative class members monies unlawfully withheld, such as unpaid wages or unpaid meal or rest period premiums, or restitutionary disgorgement.

44.     Plaintiffs contended that each of Defendant's alleged violations of the California Labor Code (for which other causes of action were asserted) constitutes business practices that are either unlawful (i.e., is forbidden by law) and/or unfair (i.e., harm to victim outweighs any benefit).  In order to prevail on the UCL cause of action, Plaintiffs would have to prove that

**LAWYERS *for* JUSTICE, PC**
410 West Arden Avenue, Suite 203
Glendale, California 91203

**SUPPLEMENTAL DECLARATION OF EDWIN AIWAZIAN IN SUPPORT OF PLAINTIFFS' MOTION FOR PRELIMINARY APPROVAL OF CLASS AND COLLECTIVE ACTION SETTLEMENT**

LAWYERS *for* JUSTICE, PC
410 West Arden Avenue, Suite 203
Glendale, California 91203

Defendant violated the predicate provisions of law, and that the violations constitute unlawful and/or unfair business acts and practices in violation of California Business and Professions Code sections 17200, *et seq.* Plaintiffs would have to prove that Defendant's conduct throughout the time period at issue has been unfair, unlawful, harmful, and injurious to Plaintiffs and putative class members. With respect to the UCL's standing requirement, Plaintiffs would also have to prove that they suffered an economic injury as a result of Defendant's conduct.

45. As discussed above, Defendant vigorously challenged the likelihood of Plaintiffs' success in establishing that any of provisions of the California Labor Code, on which the UCL claim is predicated, were violated and that such violations were injurious. Throughout this litigation, Defendant also relentlessly challenged Plaintiffs' standing and adequacy to assert class claims and contended there were individualized issues that would pose challenges to certification. When assessing the likelihood of prevailing on this cause of action, Class Counsel considered all of the above, as well as Defendant's factual contentions and legal arguments, the chances of prevailing on the other causes of action, costs and expenses associated with further litigation and certification, and risks to recovery, and applied appropriate discounts for settlement purposes.

## H. **PAGA Penalties**

46. Under the PAGA, as amended, California Labor Code sections 2698, *et seq.*, civil penalties that may be assessed and collected by the state labor agency, for a violation of the California Labor Code, may, as an alternative, be recovered by an aggrieved employee Plaintiffs. If the California Labor Code already specifies and provides a civil penalty for the violation of a provision of the California Labor Code, said civil penalty is recoverable by the aggrieved employee Plaintiffs. Additionally, the PAGA statute establishes a civil penalty that is recoverable by an aggrieved employee Plaintiffs, for violation of provisions of the California Labor Code for which the California Labor Code does not specifically provide for a civil penalty, as follows: one hundred dollars ($100) for each aggrieved employee per pay period for the initial violation and two hundred dollars ($200) for each aggrieved employee per pay period for each subsequent violation. Cal. Lab. Code § 2699(f). Pursuant to California Labor Code

section 2699(i), seventy-five percent (75%) of the penalties recovered are to be allocated to the State of California, with the remaining twenty-five percent (25%) allocated to the aggrieved employees. The statute of limitations period applicable to such penalties is one year prior to the filing of the complaint. Cal. Civ. Proc. Code § 340.

47. Defendant contended that violations of multiple provisions of the California Labor Code do not give rise to cumulative penalties, but that instead, the initial violation penalty and subsequent violation penalty provided by statute, should only apply once per pay period, if at all, rather than cumulatively for each separate California Labor Code provision that is, arguably, violated during a pay period.

48. Defendant also contended that an important feature of the PAGA statute is that, when determining whether or not to assess a penalty, the court exercises the same discretion that the Labor Commissioner has, and may reduce the penalties to be assessed against the employer pursuant to California Labor Code section 2699(e)(1)-(2). As such, Defendant contended that, with respect to a PAGA claim, the Court was unlikely to assess cumulative penalties for the maximum number of possible, separate California Labor Code violations, because it would be unjust, arbitrary, oppressive, and/or confiscatory, especially where certain conduct may be governed by multiple provisions of the California Labor Code that are interrelated and work in tandem.

49. Defendant also maintained and continues to maintain that it had legally-compliant employment policies and practices throughout the statutory period. Defendant denied and continues to deny that it ever violated any provision of the California Labor Code and argued, that, even if, *arguendo*, such violations occurred, Defendant will not be treated as having engaged in subsequent violations giving rise to heightened penalties. In other words, Defendant argued that heightened civil penalties for subsequent violations would not be assessed unless it could be shown that Defendant had notice that it was violating the law, e.g. because it had been cited by a labor agency or adjudged by a court to have done so. See, e.g., *Amaral v. Cintas Corp. No. 2* (2008) 163 Cal.4th 1157, 1209. Defendant argued that it would be able to show a lack of willfulness in the violations, such that the alleged California Labor Code violations

**SUPPLEMENTAL DECLARATION OF EDWIN AIWAZIAN IN SUPPORT OF PLAINTIFFS' MOTION FOR PRELIMINARY APPROVAL OF CLASS AND COLLECTIVE ACTION SETTLEMENT**

LAWYERS *for* JUSTICE, PC
410 West Arden Avenue, Suite 203
Glendale, California 91203

LAWYERS *for* JUSTICE, PC
410 West Arden Avenue, Suite 203
Glendale, California 91203

would not be considered "willful." Defendant contended that, at best, even if a violation giving rise to a penalty was shown for each pay period, only the lower civil penalty associated with initial violations would apply.

50.     Importantly, to prevail on the PAGA claim, Defendant contended that some courts have required Plaintiffs to show at the outset that they have suffered injury, in order to establish standing, and that Plaintiffs would also have to prove all requisite elements to prove violations of the underlying California Labor Code provisions, in order to show that Defendant's conduct gives rise to penalties.  The overtime and meal and rest period allegations are fundamental to this action; however, for the reasons discussed above, there were substantial challenges to showing liability and exposure for these claims.  Defendant argued that Plaintiffs would not be able to establish violations of the underlying California Labor Code provisions and the fundamental allegations regarding overtime and meal and rest periods.   Defendant also contended that multiple individualized issues vitiated the manageability of representative adjudication of PAGA penalties.

51.     Defendant would also likely seek bifurcation of discovery and/or trial of the PAGA claim—multiple courts have taken such an approach.

52.     Defendant also maintained that, in addition to its strong arguments against the underlying claims, taking the current unsettled state of law, it would be unjust to award the maximum potential PAGA penalties.  There was a dearth of law and guidance regarding trials and/or assessment of penalties under the PAGA statute, and there is no clearly-established methodology for the valuation and/or assessment of PAGA penalties.

53.     Defendant also contended that, before a PAGA claim could be tried, under existing law, the court of law would have to be satisfied that the adjudication of the PAGA claim, based on a theory of uniform wage and hour practices relating to a large group of aggrieved employees, is sufficiently "manageable" so as not to interfere with Defendant's right to due process.  Defendant alleged that the putative class members' work locations, job duties, and work hours varied.  Defendant contended that there was variation as to the circumstances that could allegedly cause the employees to work overtime or to be deprived of the opportunity

**SUPPLEMENTAL DECLARATION OF EDWIN AIWAZIAN IN SUPPORT OF PLAINTIFFS' MOTION FOR PRELIMINARY APPROVAL OF CLASS AND COLLECTIVE ACTION SETTLEMENT**

LAWYERS *for* JUSTICE, PC
410 West Arden Avenue, Suite 203
Glendale, California 91203

1   to take legally-compliant, duty-free meal and/or rest periods.  Defendant further contended that

2   these issues presented challenges not only to liability, but challenges to Plaintiffs' ability to

3   show that a PAGA claim could be efficiently and manageably adjudicated without abridging

4   Defendant's due process rights.

5          54.    Defendant pointed to case law that held that, given the derivative nature of a

6   PAGA claim, it would stand or fall based on the claims from which it derives, and the success

7   of showing, *inter alia,* off-the-clock work, failure to properly pay wages, failure to reimburse

8   for expenses, etc.  Defendant also pointed to case law demonstrating that courts have attributed

9   little separate value to PAGA claims, for example, allowing them to be resolved for $0 where

10  the other underlying California Labor Code claims are being resolved.  See, e.g. *Matter of*

11  *Nordstrom Commission Cases* (2010) 186 Cal.App.4th 576, 588-590 (No abuse of discretion by

12  the trial court in approving the allocation of $0 toward PAGA penalties, where PAGA claim is

13  resolved as a part of an overall resolution of the underlying California Labor Code violations);

14  *Franco v. Ruiz Food Prods, Inc.* (E.D. Cal. Nov. 27, 2012) No. 1:10-cv-02354-SKO, 2012 WL

15  5941801, at *14 (Approving allocation of $10,000, out of the settlement of $2.5 million, toward

16  the settlement of the PAGA claim); *Garcia v. Gordon Trucking* (E.D. Cal. Oct. 31, 2012)

17  No.1:10-CV-0324-AWI-SKO, 2012 WL 5364575, at *3 (Approving the allocation of $10,000,

18  out of the settlement of $3.7 million, toward the settlement of the PAGA claim); *Chu v. Wells*

19  *Fargo Investments, LLC* (N.D. Cal. Feb. 16, 2011) No. C 05-4526 MHP, C 0647924 MHP, 2011

20  WL 672645, at *1 (Approving the allocation of $10,000, out of the settlement of $6.9 million,

21  toward the settlement of the PAGA claim); *Jack v. Hartford Ins. Co.* (S.D. Cal. Oct. 13, 2011)

22  No. 3:09-cv-1683-MMA (JMA), 2011 WL 4899942, at *18 (Approving the allocation of $3,000,

23  out of the settlement of $1.2 million, toward the settlement of the PAGA claim); *Schiller v.*

24  *David's Bridal, Inc.* (E.D. Cal. June 11, 2012) 2012 WL 2117001, at *14 (approving the

25  allocation of $10,000, out of the settlement of $518,245, toward settlement of the PAGA claim).

26         55.    Assuming that the Court would be satisfied that the PAGA claim was susceptible

27  to being efficiently tried and adjudicated on a representative basis, and assuming that it could

28  be shown that civil penalties in the amount of $500 are owed for each of 5,377 aggrieved

**SUPPLEMENTAL DECLARATION OF EDWIN AIWAZIAN IN SUPPORT OF PLAINTIFFS' MOTION
FOR PRELIMINARY APPROVAL OF CLASS AND COLLECTIVE ACTION SETTLEMENT**

1   employees who were estimated to have worked during the one-year statutory period, the PAGA

2   penalties at issue, which the Court could determine whether or not to assess and whether or not

3   to reduce, were estimated to be approximately $2,688,500 (5,377 individuals x $500 civil

4   penalties).

5        56.    Class Counsel recognized the realities of Defendant's arguments, evidence and

6   information obtained through investigations as well as from Defendant, the circumstances and

7   realities of the case, the current state of the law, the costs of continued litigation, and the risks

8   to recovery, and applied appropriate discounts for them.

9   **I.   Summary**

10       57.    The foregoing discussion confirms that the amount of the Settlement is adequate

11  in light of the merits of this case, Plaintiffs' allegations and causes of action, the evidence at

12  issue with respect to those allegations and causes of action, and legal and factual arguments and

13  circumstances which pose challenges to monetary recovery.  The conclusion to be drawn from

14  the foregoing analysis is that neither class certification, liability, nor the ability to adjudicate

15  and/or recover monetary relief on a class-wide, collective or representative basis is clear-cut,

16  which is why the Parties elected to settle this matter.   Class Counsel recognized the

17  circumstances and realities of the case, applicable case law and regulations, the costs and

18  expenses of further litigation and certification, and risks to recovery and applied appropriate

19  discounts as discussed above. This Settlement involves highly disputed claims and, like most

20  other settlements, is the product of compromise.

21              **SUBMISSION OF THE SETTLEMENT TO THE LWDA**

22       58.    The moving and supporting papers for the Motion for Preliminary Approval of

23  Class and Collective Action Settlement (Dkt. No. 25) together with the Third Amended Class

24  Action and Collective Action Settlement and Release Agreement, were submitted to the LWDA

25  on April 14, 2020 by way of online submission on the LWDA's website at

26  http://www.dir.ca.gov/Private-Attorneys-General-Act/Private-Attorneys-General-Act.html.

27  ///

28  ///

LAWYERS *for* JUSTICE, PC
410 West Arden Avenue, Suite 203
Glendale, California 91203

**SUPPLEMENTAL DECLARATION OF EDWIN AIWAZIAN IN SUPPORT OF PLAINTIFFS' MOTION
FOR PRELIMINARY APPROVAL OF CLASS AND COLLECTIVE ACTION SETTLEMENT**

1        59.    Class Counsel submit that the settlement presented for preliminary approval is

2  within a reasonable range of recoveries for this type of litigation, and is fair, reasonable,

3  adequate, and in the best interest of the Class Members and FLSA Members, given the inherent

4  cost and risks of further litigation.

5        I declare under penalty of perjury under the laws of the State of California that the

6  foregoing is true and correct.

7        Executed on this 23rd day of June 2020, at Glendale, California.

8

9               /s/ Edwin Aiwazian

10                Edwin Aiwazian

LAWYERS for JUSTICE, PC
410 West Arden Avenue, Suite 203
Glendale, California 91203

**SUPPLEMENTAL DECLARATION OF EDWIN AIWAZIAN IN SUPPORT OF PLAINTIFFS' MOTION FOR PRELIMINARY APPROVAL OF CLASS AND COLLECTIVE ACTION SETTLEMENT**