UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| THOMAS BELTRAN, et al.,<br><br>Plaintiffs,<br><br>v.<br><br>OLAM SPICES AND VEGETABLES, INC.,<br><br>Defendant. | No. 1:18-cv-01676-NONE-SAB<br><br><u>ORDER DIRECTING THE FILING OF SUPPLEMENTAL BRIEFING AND DOCUMENTATION RE MOTION FOR PRELIMINARY APPROVAL OF CLASS AND COLLECTIVE ACTION SETTLEMENT</u><br><br>(Doc. Nos. 25, 26, 27, 28) |

**BACKGROUND**

On July 7, 2015, plaintiff Thomas Beltran commenced a class action lawsuit against defendant, erroneously sued as Olam Spices and Vegetables, Inc., in the Alameda County Superior Court, Case No. RG15776976 ("Beltran Action"). (Doc. No. 1-1 at 5–35.) On September 9, 2015, upon a motion of defendant, the Beltran Action was transferred to the Fresno County Superior Court, Case No. 15CECG02993. (Doc. No. 1-1 at 56–114, 176.) Plaintiff Mario Martinez was added as a named plaintiff to that action. (Doc. No. 1-2 at 4, 6–32.) On June 1, 2017, plaintiffs in the Beltran Action filed a motion for preliminary approval of class action

/////

/////

/////

settlement (Doc. No. 1-11 at 65), which was denied without prejudice by the state court.[1]  (Doc. No. 1-12 at 74–78.)  On April 11, 2018, the parties in the Beltran Action added Mario Claudia Obeso Cota, Mariana Ramirez, Alexander Solorio, and Juan Rivera as plaintiffs.  (Doc. No. 1-11 at 146–185.)  The parties also added claims under the Fair Labor Standards Act.[2]  (*Id.*)  On June 27, 2018, plaintiffs filed a renewed motion for preliminary approval of class action settlement.  (Doc. No. 1-14 at 27–357.)  Contrary to the parties' assertion that the renewed motion for preliminary approval was denied, it appears that the hearing on that motion was continued, and the state court allowed the parties to submit supplemental briefing.  (Doc. No. 1-19 at 25.)

However, before the Fresno County Superior Court ruled upon plaintiffs' motion for preliminary approval of class settlement, defendant removed this action to this federal court on December 10, 2018.  (Doc. No. 1.)  On April 13, 2020, an unopposed motion for preliminary approval of a class and collective action settlement was filed in this case and the motion was referred to a United States Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Rule 302 for issuance of findings and recommendations.

On June 2, 2020, the assigned magistrate judge entered findings and recommendations, noting numerous deficiencies with the motion and concluding that the proposed settlement was not fair and reasonable.  (Doc. No. 27.)  The findings and recommendations recommended denying the motion for approval of the class and collective action settlement.  Those findings and recommendations were served on the parties and contained notice that any objections thereto were to be filed within twenty-one days from the date of service.  On June 23, 2020, plaintiffs filed objections to the findings and recommendations.

---

[1] The Fresno County Superior Court denied the motion for preliminary approval at that time because it found the class definition to be "wholly inadequate"; the legal and factual bases of each claim were found to be conclusory; the FLSA opt-in procedure was found inadequate because plaintiffs were required to opt-in in writing; the proposed settlement's release was broader than the claims alleged by plaintiffs in their complaint; the proposed notice to potential class members was only to be in the English language; and the proposed settlement lacked an adequate explanation regarding the award of attorneys' fees and costs.  (Doc. No. 1-12 at 75–78.)

[2] Prior to joining the Beltran Action, plaintiffs Obeso Cota, Solorio, and Rivera had initially each filed their own complaints in the Fresno County Superior Court and the Santa Clara County Superior Court respectively.  (Doc. No. 25-2 at 2–16.)

This court has reviewed the pending findings and recommendations, including the parties' objections thereto, in light of the entire record. For the reasons set forth below, the court will direct the parties to submit supplemental briefing and documentation adequately addressing several issues raised by the pending motion.

**A.      Inference of a Conflict of Interest**

The parties object to the magistrate judge's finding of an inference of a conflict of interest between the plaintiffs and their class counsel. (Doc. No. 28 at 4.) Specifically, the magistrate judge found that an inference of such a conflict of interest had been raised for the following reasons: 1) plaintiffs' failure to address how they calculated the potential value of their claims at $81,039,543.12 and the discounted value at $3,994,421.73, which was merely 4.9% of the overall potential value of the claims (Doc. No. 27 at 13); 2) plaintiffs' failure to address whether liquidated damages were included in the FLSA damage calculation and the applicable statute of limitations period, which could affect the overall valuation of plaintiffs' claims (*id.* at 13–14); 3) plaintiffs' counsel's unjustified request for 35% (of the overall $4,500,000 settlement) for attorneys' fees, exceeding the Ninth Circuit's 25% benchmark (*id.* at 15–16); 4) excessive class representative incentive fees (*id.* at 15); and 5) the existence of a smooth sailing provision in the proposed settlement agreement (*id.* at 16).

Below, the court will address each basis for the magistrate's finding of an inference of a conflict of interest and orders the parties to file supplemental briefing where indicated.

        1.      Smooth Sailing Agreement

The pending findings and recommendations concluded that the proposed settlement agreement contained a "smooth sailing" agreement in which defendant "agreed not to oppose the requests for incentive payments and attorney fees." (Doc. No. 27 at 16.) In their objections, the parties indicate their willingness to remove the "perceived 'smooth sailing' language" and amend the settlement.[3] (Doc. No. 28 at 4, 21.) The findings and recommendations appropriately

---

[3] The agreement states: "Defendant agrees not to oppose or impede any application of motion by Class Counsel for attorneys' fees" and "Defendant agrees not to oppose or impede any application or motion for the following Incentive Awards"). (Doc. No. 25-1 at 36–37.)

expressed a legitimate concern as to the inclusion of a smooth sailing provision, however, the parties' planned removal of that provision alleviates that concern such that it no longer contributes to the overall conflict of interest analysis. *See In re Bluetooth Headset Prod. Liab. Litig.*, 654 F.3d 935, 947 (9th Cir. 2011) (identifying sign of collusion when parties negotiate "clear sailing" arrangement providing for payment of attorneys' fees separate and apart from class funds, which carries "the potential of enabling a defendant to pay class counsel excessive fees and costs in exchange for counsel accepting an unfair settlement on behalf of the class").

### 2. Excessive Incentive Fees

Plaintiffs Thomas Beltran, Mario Martinez, Maria Obeso Cota, and Alexander Solorio each seek an incentive award of $7,500 and plaintiff Juan Rivera seeks an incentive award of $3,500. (Doc. No. 25 at 13.) The findings and recommendations found that an inference of a conflict of interest had been raised where the class representatives' incentive payments were "almost double to triple the most that any putative class member will be receiving." (Doc. No. 27 at 15 (emphasis omitted).) The estimated distribution to other class members under the proposed settlement ranges between $31.14 to $1,993.06, depending on the class member's number of workweeks. (*Id.* at 14–15.) The class representatives seek to receive their pro rata shares of the settlement in addition to the aforementioned incentive payments. (Doc. No. 25 at 23.) The findings and recommendations further noted that while this court has previously approved incentive payments of $3,500 to $5,000, the class representative must submit evidence to support the amount requested. (Doc. No. 27 at 15 n.3.)

The parties object to the findings and recommendations on the grounds that they improperly found that the proposed incentive fees were excessive, arguing that such fees ($7,500 and $3,500) were adequately supported by the named plaintiffs' declarations. (Doc. No. 28 at 4, 19–21.) In support of the proposed incentive payments to the named plaintiffs, the parties argue that "Plaintiffs were available whenever Class Counsel needed them and actively tried to obtain information that would benefit the Class." (Doc. No. 28 at 20.) The parties further argue that the plaintiffs maintained contact with Class Counsel since litigation commenced nearly five years ago

/////

and that they have each contributed a "considerable amount of time and effort to this litigation." (*Id.*)

One judge of this court has found that a proposed incentive payment of $7,500 was excessive where it comprised 1.8% of the total settlement amount ($400,000) and the average class member's share of the settlement was $65.79. *See Monterrubio v. Best Buy Stores, L.P.*, 291 F.R.D. 443, 463 (E.D. Cal. 2013). That judge reasoned that the efforts expended on the litigation of that case, including consulting with counsel, researching and identifying potential witnesses, and attending a deposition and mediation, constituted insufficient evidence of providing more assistance to counsel than the average case. *See id.* (citing *Knight v. Red Door Salons, Inc.*, No. 08-01520, 2009 WL 248367, at *7 (N.D. Cal. Feb. 2, 2009) (awarding $5,000 for named plaintiffs expending 40 to 50 hours each to help recover $500,000)).

On the other hand, in *Gonzales v. CoreCivic of Tennessee, LLC* the undersigned preliminarily approved $15,000 and $10,000 incentive payments, while also recognizing that such incentive payments were disproportionately higher by 333 to 500% than that of the prospective award to be made to the average class member (ranging between $888 to $1,168). No. 1:16-cv-01891-DAD-JLT, 2020 WL 1475991, at *12–13 (E.D. Cal. Mar. 26, 2020) (citing *Aguilar v. Wawona Frozen Foods*, No. 1:15-cv-00093-DAD-EPG, 2017 WL 2214936, at *8 (E.D. Cal. May 19, 2017) (approving an incentive award of $7,500 to each class representative where the average class recovery was approximately $500)). However, this court cautioned counsel in the *Gonzales* case to provide clear and specific evidence at the final approval stage demonstrating significant contributions by the named plaintiffs in light of the limited evidence and conclusory assertions presented in seeking preliminary approval. *See id; see also Alvarado v. Nederend*, No. 1:08-cv-01099-OWW-DLB, at *2, *5, *10–11 (E.D. Cal. May 17, 2011) (approved a $7,500 incentive payment, which did not exceed 1.5% of the total settlement, as reasonable because the plaintiff traveled from Bakersfield to Sacramento for mediation, assisted counsel in investigating and substantiating the claims in the case, assisted in preparing the complaint, produced evidence to counsel, assisted in settlement, and undertook financial risk if litigation was unsuccessful).

/////

Given that the parties here have addressed some of the other issues that led the findings and recommendations to find an inference of a conflict of interest, the undersigned is not yet persuaded that the proposed incentive payments are so disproportionate that they cannot be approved. However, as explained below, the undersigned is also not yet satisfied that the parties have sufficiently supported the proposed incentive payments with respect to certain named plaintiffs.

a. *Plaintiff Beltran*

The parties represent that plaintiff Beltran spent a "substantial amount of time" responding to discovery requests and spent "a number of hours preparing for and attending a full day of deposition." (*Id.*) In support of his requested $7,500 incentive fee, plaintiff Beltran declares that he: 1) spent four hours researching attorneys; 2) initially consulted with Lawyers for Justice, PC attorneys for five hours; 3) "[s]ince becoming involved in this matter, [he] has spent over 23 hours meeting with [his] attorneys regarding the case and fulfilling [his] responsibilities as a class representative"; 4) spent an additional nine hours providing case information and identifying potential witnesses, and spent an additional six hours reviewing discovery requests and providing responses; 5) attended a five-hour deposition and spent four hours traveling to and from the deposition; 6) dedicated at least two hours preparing for the deposition and another two hours to review the deposition transcript with attorneys; and 7) spent six hours reviewing settlement documents and three hours discussing the settlement with attorneys. (Doc. No. 25-3 ¶¶ 9–13.)

The court notes that plaintiff Beltran's requested incentive payment is approximately 1.67% of the overall settlement amount. *See Monterrubio*, 291 F.R.D. at 463 (finding a $7,500 incentive payment to be excessive where it comprised 1.8% of total settlement and reducing the incentive payment to $2,500). The court is not convinced that the present record supports a $7,500 incentive payment to this plaintiff. Among other things, it is unclear from plaintiff Beltran's declaration whether he collectively spent twenty-three hours fulfilling his role as a class representative or substantially more. Accordingly, in connection with the pending motion for preliminary approval the parties are directed to file supplemental briefing providing more detailed

support for plaintiff Beltran's requested incentive payment of $7,500.

b. *Plaintiff Martinez*

Like plaintiff Beltran, the parties represent that plaintiff Martinez spent a "substantial amount of time" responding to discovery requests and spent "a number of hours preparing for and attending a full day of deposition." (Doc. No. 28 at 20.) In reviewing the support for plaintiff Martinez's requested $7,500 incentive payment, he declares that he: 1) spent two hours researching attorneys; 2) initially consulted with Lawyers for Justice, PC attorneys for four hours; 3) "[s]ince becoming involved in the matter, [he] has spent over 18 hours meeting with [his] attorneys regarding the case and fulfilling [his] responsibilities as a class representative"; 4) spent an additional thirteen hours providing case information and identifying potential witnesses, and spent an additional six hours reviewing discovery requests and providing responses; 5) attended a four-hour deposition and spent at least one hour traveling to and from the deposition; 6) dedicated at least four hours preparing for the deposition and another three hours to review the deposition transcript with attorneys; and 7) spent five hours reviewing settlement documents and four hours discussing the settlement with attorneys. (*Id.* ¶¶ 9–13.)

As with the Beltran declaration, it is unclear from plaintiff Martinez's declaration whether he collectively spent eighteen hours fulfilling his role as a class representative or substantially more. (*See id.*) Accordingly, the parties will be directed to file supplemental briefing providing more detailed support for plaintiff Martinez's requested incentive payment of $7,500 for purposes of the pending preliminary approval motion.

c. *Plaintiff Obeso Cota*

The parties represent that plaintiff Obeso Cota was "available whenever Class Counsel needed [her] and actively tried to obtain and provide information that would benefit the class." (Doc. No. 28 at 21.) The parties further state that plaintiff Obeso Cota has "contributed a considerable amount of time and effort to this litigation on behalf of the Class, by assisting Class Counsel in identifying documents, gathering and producing relevant documents and information, providing the facts and evidence necessary to prove the allegations, and discussing with Class Counsel about their work experiences with defendant." (*Id.*)

In support of the requested $7,500 incentive payment, plaintiff Obeso Cota declares that she: 1) spent more than 35 hours on the case; 2) "provided information and [has] been available to [her] attorneys since approximately February 2015; 3) helped and has been willing to support the lawsuit in any way she can for sixty-two months; 4) met with her attorneys to see if they would represent her; 5) met with her attorneys to discuss the company's policies, procedures, and practices for paying wages for the hours that she worked; 6) spent time searching for policies, procedures, w-2s, handbooks, paystubs, and other documents that were given to her; 7) produced documents to her attorneys and responded to all of her attorneys' inquiries either in-person or by phone; 8) met with her attorneys on multiple occasions to review and discuss the proposed settlement agreement; and 9) accepted the risk of having to pay the costs associated with the lawsuit if unsuccessful and of loss of income to fulfill her responsibilities attendant to the litigation. (Doc. No. 25-2 at 42, ¶¶ 12–14.)  In light of the above, the court does not require supplemental briefing with respect to plaintiff Obeso Cota.

        d.    *Plaintiff Solorio*

As with plaintiff Obeso Cota, the parties represent that plaintiff Solorio was "available whenever Class Counsel needed [him] and actively tried to obtain and provide information that would benefit the class." (Doc. No. 28 at 21.)  The parties further represent that plaintiff Solorio has "contributed a considerable amount of time and effort to this litigation on behalf of the Class, by assisting Class Counsel in identifying documents, gathering and producing relevant documents and information, providing the facts and evidence necessary to prove the allegations, and discussing with Class Counsel about their work experiences with defendant." (*Id.*)

In support of plaintiff Solorio's requested $7,500 incentive payment, he declares that he: 1) spent more than 50 hours on the case; 2) "provided information and [has] been available to [his] attorneys since approximately December 2015; 3) helped and has been willing to support the lawsuit in any way he can for fifty-two months; 4) met with his attorneys to see if they would represent him; 5) met with his attorneys to discuss the company's policies, procedures, and practices for paying wages for the hours that he worked; 6) spent time searching for policies, procedures, w-2s, handbooks, paystubs, and other documents that were given to him; 7) produced

documents to his attorneys and responded to all of his attorneys' inquiries either in-person or by phone; 8) met with his attorneys on multiple occasions to review and discuss the settlement agreement; and 9) accepted the risk of having to pay the lawsuit's costs if unsuccessful and loss of income to fulfill his responsibilities attendant to the litigation. (Doc. No. 25-2 at 48–49, ¶¶ 14–16.) The court does not require supplemental briefing with respect to plaintiff Solorio's requested incentive payment for purposes of preliminary approval.

         e.    *Plaintiff Rivera*

In support of the requested $3,500 incentive payment, plaintiff Rivera declares that he: 1) spent three hours researching attorneys; 2) initially consulted with Lawyers for Justice, PC attorneys for almost four hours; 3) "[s]ince becoming involved in this matter, [he] spent over 17 hours meeting with [his] attorneys regarding the case and fulfilling [his] responsibilities as a named plaintiff and representative of the class"; 4) spent an additional nine hours providing case information and identifying potential witnesses, and 5) spent five hours reviewing settlement documents and two hours discussing the settlement with attorneys. (Doc. No. 25-5 ¶¶ 10–14.)

As is the case with the Beltran and Martinez declarations, it is unclear from plaintiff Rivera's declaration whether he collectively spent seventeen hours fulfilling his role as a class representative or substantially more. (*See id.*) Accordingly, the parties will be directed to file supplemental briefing providing further support for plaintiff Rivera's requested incentive payment of $3,500.

    3.    <u>Excessive Attorneys' Fees</u>

The findings and recommendations also concluded that the attorneys' fees requested by plaintiffs' counsel were excessive because they represented 35% ($1,575,000.00) of the gross settlement fund under the proposed settlement. (Doc. No. 27 at 16.) In the Ninth Circuit, courts typically utilize 25% of the common fund as the "benchmark" for a reasonable fee award, with adjustments provided if there is adequate explanation in the record for any special circumstances justifying departure. *See In re Bluetooth*, 654 F.3d at 942, 947 (noting that a sign of collision may exist "when counsel receive a disproportionate distribution of the settlement"). The usual range for common fund attorney fees is between 20% to 30%. *Vizcaino v. Microsoft Corp.*, 290

F.3d 1043, 1047 (9th Cir. 2002). Therefore, the findings and recommendations concluded that the requested attorneys' fees were excessive given that plaintiffs only advanced conclusory explanations justifying the proposed 35% of the common fund fee award. (Doc. No. 27 at 16.)

The parties object to the findings and recommendation in this regard on the grounds that such fees were "adequately supported by the work performed [by] Class Counsel, which Class Counsel will submit extensive records for at final approval." (Doc. No. 28 at 3, 14–19.) The parties' objections do not sufficiently explain why this court should depart from the recommendation in this regard.[4] Specifically, the type and amount of work described by counsel appears to reflect the tasks attendant to most litigation, and therefore does not address why counsel's significantly above-benchmark fee request is justified, even in a general sense. *See In re Bluetooth*, 654 F.3d at 947. While the parties are not necessarily required to provide as detailed of an explanation at the preliminary approval stage as will be required at the final approval, prior to preliminary approval, the court will require at least a general showing as to why plaintiffs' counsel's representation in this matter warrants a significantly above-benchmark fee award. Accordingly, plaintiffs will be directed to file supplemental briefing justifying the above-benchmark attorneys' fees request at this preliminary approval stage.

### 4. Valuation of Claims

The findings and recommendations also found that the parties failed to adequately address the 95% discounted valuation of plaintiffs' claims, which in part led to the recommendation that an inference of a conflict of interest had been raised. (Doc. No. 27 at 13–14.) Specifically, the parties assert that the potential value of plaintiffs' claims is $81,039,543.12. (*See* Doc. No. 28-1 ¶ 28.) However, the in the parties proposed settlement is for $3,994,421.73, which is only 4.9% of the potential value. (*See id.*)

The parties object to the findings and recommendations in this regard on the grounds that plaintiffs provided detailed analyses of how they calculated the potential value of their claims. (Doc. No. 28 at 3, 6–12.) The parties reiterate that Class Counsel prepared for and took

---

[4] Moreover, the undersigned notes the magistrate judge's concern regarding plaintiffs' counsel's potential duplication of fees. (Doc. No. 27 at 16.)

depositions of three of defendant's "Person Most Knowledgeable" witnesses, engaged in *Belaire-West* notice administration, propounded and responded to multiple sets of discovery requests, and reviewed thousands of pages of documents. (Doc. No. 28 at 6.) This objection, however, does not address in any way the finding that counsel failed to adequately explain how they calculated the potential value of plaintiffs' claims. (Doc. No. 27 at 13 (citing Doc. No. 25-1 ¶ 28).)

In their objections to the findings and recommendations plaintiffs maintain that they initially provided a detailed analyses of how they valued their claims. (Doc. No. 28 at 3.) Nonetheless, they also have submitted supplemental briefing addressing this issue.[5] (Doc. No. 28-1.) In reviewing that supplemental submission, including attorney Edwin Aiwazian's supplemental declaration, the undersigned finds that plaintiffs' counsel has belatedly identified how they valued plaintiffs' claims with sufficient specificity. (*See, e.g.*, Doc. No. 28-1 ¶¶ 7, 14–16, 19–21, 24–26, 30–31, 35–36, 39, 45, 47–56.)

     5. <u>Liquidated Damages</u>

The findings and recommendations concluded that plaintiffs did not address whether liquidated damages were included in the FLSA damage calculation for purposes of settlement. (Doc. No. 27 at 13.) An employer who violates minimum wage or overtime provisions of the FLSA can be liable for an equal amount of liquidated damages in addition to the unpaid compensation due. 29 U.S.C. § 216(b). Thus, whether plaintiffs included liquidated damages in their calculations is significant because doing so could affect the overall valuation of plaintiffs' claims. (Doc. No. 27 at 13–14.)

In their objections to the findings and recommendations, plaintiffs clarify that they "considered liquidated damages when calculating the value of the FLSA claims." (Doc. No. 28 at 13.) The parties state that the potential value of the FLSA minimum wage claim is estimated to

---

[5] In their objections plaintiffs repeatedly argue that the magistrate judge could have easily ordered supplemental briefing rather than to recommend denial of the motion. Plaintiffs' counsel appear to have this backwards. The onus is on *counsel* to support their position with material information and briefing in the first instance. The failure to do so may result in the denial of the requested relief and unnecessarily prolong court proceedings. Plaintiffs' counsel has had other motions for preliminary approval of class settlement before this court and should have a far better understanding of their responsibilities at this point. *See, e.g.*, *Ferrell v. Buckingham Prop. Mgmt.*, 1:19-cv-00332-NONE-SAB; *Castro v. Paragon Indus.*, No. 1:19-cv-00755-DAD-SKO.

1  be $3,509,746.76, including liquidated damages. (*Id.*) The potential value of the FLSA overtime

2  wage claims is estimated to be $9,609,444.56, including liquidated damages. (*Id.*) While the

3  parties initially failed to include information regarding whether liquidated damages was included

4  in their valuation of plaintiffs' FLSA claim and the settlement thereof, the undersigned finds that

5  they have now belatedly but sufficiently addressed the concern expressed in this regard in the

6  pending findings and recommendations.

7        6.      FLSA Limitations Period

8  The findings and recommendations concluded that plaintiffs did not address whether the

9  FLSA damages period was two or three years in this case. (Doc. No. 27 at 13.) The statute of

10 limitations for FLSA claims is two years after the cause of action accrues, or three years in cases

11 involving willful violations. *See* 29 U.S.C. § 255(a). Thus, whether plaintiffs utilized a two or

12 three-year limitations period in their calculations is again significant because doing so could

13 affect the overall valuation of plaintiffs' claims. (Doc. No. 27 at 13–14.)

14 In their objections plaintiffs have now clarified that they used the three-year statute of

15 limitations to calculate FLSA damages. (Doc. No. 28 at 3, 13.) While the parties failed to

16 include such information regarding the limitations period in their initial briefing, the court now

17 finds that the parties have sufficiently addressed this deficiency noted by the findings and

18 recommendations.

19 **B.**    ***Bona Fide* Dispute Over FLSA Claims**

20 The findings and recommendations also found that the parties had failed to address

21 whether there is a *bona fide* dispute over the FLSA claims here. (Doc. No. 27 at 17–18 (citing

22 *Nen Thio v. Genji, LLC*, 14 F. Supp. 3d 1324, 1333 (N.D. Cal. 2014)).) The parties have objected

23 to the findings and recommendations in this regard on the ground that a *bona fide* dispute exists

24 as to the issue of liability, the availability of liquidated damages when an employer acts in good

25 faith, whether the statute of limitations period should be two or three years with respect to

26 plaintiffs' FLSA claim, and whether the *de minimus* rule applies to unrecorded time. (Doc. No.

27 28 at 4, 21–23.)

28 /////

While the undersigned agrees with the pending findings and recommendations that the parties initially failed to address whether there was a *bona fide* dispute with respect to the FLSA claims in the motion for preliminary approval of class action settlement, the court has reviewed the additional information provided in the objections and concludes that a *bona fide* dispute exists in this case. The parties' objection in this regard will therefore be sustained.

**C.     FLSA Notice and Opt-in Procedure**

The findings and recommendations concluded that the parties' proposed FLSA opt-in procedure, in which FLSA members could merely opt-in by signing the back of their settlement checks, did not comply with FLSA's notice and consent requirements. (Doc. No. 27 at 19–20.) The undersigned will separately analyze the parties' proposed FLSA notice and opt-in procedures.

    1.     Notice

The parties propose to provide a "Notice of FLSA Settlement" in both English and Spanish after receiving preliminary approval, which contains, in relevant part: 1) names of the settled actions; 2) an instruction to read both sets of instructions for the Class Settlement and FLSA Settlement; 3) instructions to opt-in, including deadlines and a notification that declining to opt-in to the FLSA Settlement does not exclude participation in the Class Settlement; 4) a general explanation of the claims and eligible employees; 5) explanation of the released claims and parties; 6) the settlement terms and explanation of how payments will be calculated, including dispute procedures; and 7) notice of the final approval hearing. (*See* Doc. Nos. 25-1 at 66–70; Doc. No. 25-6 at 4–5.) In a hybrid Rule 23 and FLSA action, the undersigned concludes that the parties' class notice forms are adequate. *See Thompson v. Costco Wholesale Corp.*, No. 14-cv-2778-CAB-WVG, 2017 WL 697895, at *8 (S.D. Cal. Feb. 22, 2017) (listing notice requirements for approval in hybrid Rule 23 and FLSA actions as: "(1) the hybrid nature of th[e] action; [ ] (2) the claims involved in th[e] action; (3) the options that are available to California Class members in connection with the settlement, including how to participate or not participate in the Rule 23 class action and the FLSA collection action aspects of the settlement; and (4) the consequences of opting-in to the FLSA collective action, opting-out of the Rule 23 class action, or doing nothing."

(quoting *Pierce v. Rosetta Stone, Ltd.*, No. 4:11-cv-01283-SBA, 2013 WL 1878918, at *4 (N.D. Cal. May 3, 2013)). Given that the putative FLSA collective members will receive the notice after preliminary approval, this should alleviate the magistrate judge's concern as to whether sufficient notice is given before the final approval hearing.

### 2. Consent

Finding that the parties' FLSA notice procedure is sufficient, the court will next address the adequacy of the proposed FLSA opt-in procedure, in which FLSA members can opt-in and consent by signing the back of their settlement checks. The FLSA provides: "No employee shall be a party plaintiff to any such action unless he gives his consent in writing to become such a party and such consent is filed in the court in which such action is brought." 29 U.S.C. § 216(b).

Here, the "Notice of FLSA Settlement," which will be sent to putative class members after preliminary approval, provides:

> The [sic] participate in and receive payment from the FLSA Settlement, you must timely sign and cash, deposit, or otherwise negotiate your FLSA Payment check. By doing so, you will be deemed to have consented to join the *Beltran* Action under the FLSA and opted-in on a collective basis with respect to the Released FLSA Claims, and will be bound to the FLSA Settlement and any judgment entered by the Court based thereon, and thereby forever release and discharge the Released FLSA Claims.
>
> Your FLSA Payment Check will contain the following notice that informs you of your election to opt-in to the FLSA Settlement:
>
>> By endorsing this check, I consent to join the lawsuit entitled *Beltran, et. al. v. Olam West Coast, Inc.*, Eastern District of California, Fresno Division, Case No. 1:18-cv-01676-LJO-SAB, pursuant to the provisions of the [FLSA], for purposes of participating in the settlement. I further understand and agree that my cashing, depositing, or otherwise negotiating this check constitutes a full and complete release of any and all Released FLSA Claims and that a copy of this check, may be filed with the Court, with personal information other than my name redacted, as evidence of my consent.

(Doc. No. 25-1 at 69.)

The undersigned has previously preliminarily approved a similar FLSA opt-in procedure in which FLSA collective members cash their checks. *See Castro v. Paragon Indust.*, 2020 WL 1984240, at *3 n.3 ("FLSA Members need only cash their FLSA Payment Check to opt-in to the

14

FLSA Settlement); *Maciel v. Bar 20 Dairy, LLC*, No. 1:17-cv-00902-DAD-SKO, 2020 WL 5095885, at *3 n.2 ("Class Claimants need only cash their FLSA Settlement Check to opt-in to the FLSA Settlement); *see also Franco v. Ruiz Food Prods., Inc.*, No. 1:10-cv-02354-SKO, 2012 WL 5941801, at *24 (E.D. Cal. Nov. 27, 2012) (approving FLSA opt-in procedure in which members consent by endorsing check); *De Leon v. Ricoh USA, Inc.*, No. 18-cv-03725-JSC, 2019 WL 6311379, at *4 (N.D. Cal. Nov. 25, 2019) (granting preliminary approval of FLSA opt-in procedure by cashing check); *Vikram v. First Student Mgmt.*, LLC, No. 17-cv-04656-KAW, 2019 WL 1084169, at *3 (N.D. Cal. Mar. 7, 2019) (same); *Del Toro Lopez v. Uber Techs., Inc.*, No. 17-cv-06255-YGR, 2018 WL 5982506, at *25 (N.D. Cal. Nov. 14, 2018) (same); *Lazarin v. Pro Unlimited, Inc.*, No. C11-03609 HRL, 2013 WL 3541217, at *2 (N.D. Cal. July 11, 2013) (same).

However, in none of these cases has the issue of whether such a process comports with the FLSA been seriously discussed. A recent decision from one judge of this court calls into question the "opt-in by settlement check" approach. *See Smothers v. Northstar Alarm Servs., LLC*, No. 2:17-cv-00548-KJM-KJN, 2019 WL 280294 (E.D. Cal. Jan. 22, 2019) (holding § 216(b)'s written consent requirement was not satisfied where parties proposed FLSA opt-in procedure by endorsing back of check). There, the court explicitly joined other courts that have rejected "opt-in by settlement check" proposals. *Id*. at *11. The parties point out, correctly, that the *Smothers* court was simultaneously concerned that the proposed settlement planned to send out a round of settlement checks—the same checks that would be used, among other things, to allow potential FLSA collective members to "opt in"—*before* final approval of the settlement. *Id*. Yet the decision in *Smothers* clearly adopted the reasoning of other courts that did not face this premature check-cutting issue. *Id*. (citing *Johnson v. Quantum Learning Network, Inc*., No. 15-CV-05013-LHK, 2016 WL 8729941, at *1 (N.D. Cal. Aug. 12, 2016) (finding that a settlement provision allowing FLSA members to opt-in by cashing or depositing settlement checks "does not comply with the plain language of the FLSA" and constitutes a "deficiency" that precluded settlement approval); *Kempen v. Matheson Tri-Gas, Inc.*, No. 15-CV-00660-HSG, 2016 WL 4073336, at *9 (N.D. Cal. Aug. 1, 2016) (same); *Robinson v. Flowers Baking Co. of Lenexa, LLC*, No. 16-2669-JWL, 2017 WL 4037720, at *1 n.1 (D. Kan. Sept. 13, 2017) (same)).

The parties suggest without explicitly discussing that it is somehow more acceptable to allow opt-in by cashing a check when it is set to occur *after* final approval, as opposed to before final approval, as was the case in *Smothers*. (*See* Doc. No. 28 at 27–28.) The court does not entirely understand the logic of this argument. Although waiting until after final approval to distribute settlement funds certainly does away with the concern expressed in *Smothers* that it is generally improper to distribute any settlement funds prior to final approval, the opt-in by cashing a check concern remains in both scenarios. At least one court has pointed out that opting in after final approval "leaves an opt-in plaintiff with little opportunity to participate meaningfully in the litigation." *Smith v. Kaiser Foundation Hospitals*, 2019 WL 5864170, *11 (S.D. Cal. Nov. 7, 2019).[6] This is why "[t]here is typically a preliminary approval hearing . . . followed by notice and an opt-in period, and then a final hearing." *Marichal v. Attending Home Care Servs., LLC*, 432 F. Supp. 3d 271, 282 (E.D.N.Y. 2020). But here, unlike in *Smith*, the parties plan a notice process that will provide potential FLSA collective members with notice in advance of the final approval hearing, so that they can "meaningfully participate" should they choose to do so, even if the formal opt-in period does not occur until after final approval. It is the combination of the fact that the parties intend to send separate FLSA and Rule 23 payments (Doc. No. 25-1 at 38 ¶ 9(a)(1)–(2)) along with the content of the proposed Notice that *may* satisfy the undersigned that the opt-in by check-cashing is appropriate for the FLSA settlement in this case. The parties will be required to address this issue in far more detail in any motion for final approval in the event that preliminary approval is eventually granted.[7]

/////

---

[6] The court tentatively agrees with the parties that the settlement procedure in this case—which contains a plan to send out a separate "FLSA Settlement" check—does obviate the concern raised in *Smith* that sending out a single check containing both FLSA and Rule 23 class settlement payments, improperly forces Rule 23 class members to opt out of the settlement of class claims if they do not wish to opt into the FLSA collective action. *See Smith*, 2019 WL 5864170, at *11.

[7] Having fully vetted the issue and the applicable caselaw in this order, the court will expect effective briefing by the parties. The court gives the parties no assurance as to whether it will find the proposed consent by check cashing provision of the proposed settlement appropriate at the final approval stage of these proceedings if that stage is reached.

The proposed Notice explains to the potential FLSA collective members in detail exactly what their rights are regarding opt-in and opt-out in connection with the FLSA settlement and clearly distinguishes between that procedure and the Rule 23 settlement "opt-out" process. (*Id.* at 66–71.) The court will require, however, that the Notice be modified to explicitly make it even more clear that any person who is potentially part of both the FLSA collective and the Rule 23 class may receive multiple checks. The parties shall revise the Notice accordingly and submit it (in redlined form) along with the other supplemental briefing called for in this order.

### D.     Correcting Outdated Notices

The findings and recommendations noted several areas for correction on the settlement notice, including the case number and assigned judge. (Doc. Nos. 27 at 21–22; 28 at 32.) The parties argue that the minor revisions can be easily corrected through supplemental briefing and revised notices. (Doc. No. 28 at 32.) The court notes the parties' intent to correct the notices and will direct them to do so.

### E.     Notice to California Labor and Workforce Development Agency

The findings and recommendations correctly found that the parties failed to demonstrate whether notice of the settlement was provided to the LWDA. (Doc. No. 27 at 20 (citing Cal. Lab. Code § 2699(l)(2)).) However, plaintiffs' counsel Aiwazian has now stated in his sworn declaration that the parties notified the LWDA of the settlement. (Doc. No. 28-1 ¶ 58.) The court therefore finds that the parties have addressed the concern noted in the findings and recommendations regarding the required notice to the LWDA.

### F.     *Cy Pres* Recipient

The findings and recommendations also correctly found that the parties previously failed to address in any way how distribution to the United Way serves the objectives of the underlying statutes or represents the interests of the class and collective action members. (Doc. No. 27 at 20.) The undersigned has reviewed the parties' objections to the findings and recommendations (Doc. No. 28 at 30–31) and finds that they have now, belatedly, supported distribution to the United Way.

/////

The findings and recommendations further inquired about how "excess funds apportioned to the FLSA settlement if not all putative members opt-in to the collective action" would be redistributed. (Doc. No. 27 at 21.) Based on the court's review of the settlement agreement, the undersigned interprets that such unused FLSA funds will be distributed to the United Way. (*See* Doc. No. 25-1 at 44) ("[a]ny checks issued by the Settlement Administrator to a . . . FLSA Member for his or her FLSA Payment will be negotiable" for 180 days, "after which they will be cancelled" and "[f]unds associated with said cancelled checks, will be transmitted to the United Way.").) The Settlement Agreement states that the "entire Total Settlement Fund will be fully paid out and no portion of it will revert of be retained by Defendant." (Doc. No. 25-1 at 35.)

If the court's interpretation of this provision of the proposed settlement is incorrect in any way, the parties are directed to file supplemental briefing clarifying their position in this regard.

**G.     Continuing Jurisdiction**

The parties object to the finding that retaining continuing jurisdiction over the settlement post-judgment is inappropriate absent a specific showing that it is necessary. (Doc. No. 28 at 5.) However, the parties contend that they "do not anticipate any post-judgment issues and therefore have agreed to remove the provision." (*Id.*) Therefore, the court need not address the parties' additional arguments (*id.* at 32) and will deny their objection in this regard as moot.

**H.     Request for Class Certification of the Rule 23 Class and FLSA Collective Action**

The findings and recommendations concluded that the class or collective action plaintiffs failed to meet their burden demonstrating commonality based merely upon conclusory allegations that a uniform policy or procedure existed. (Doc. No. 27 at 22–25.) It was noted that the employees work at six different job sites and that the plaintiffs' declarations themselves indicate that there may be site-specific or individual issues rather than a common policy or procedure that could preclude certification of the class or collective action. (Doc. No. 27 at 22–24.)

The parties object to the findings and recommendations in this regard on the grounds that they erroneously conclude there are "only conclusory allegations of a Uniform Policy or Procedure for purposes of certification," and identify the class representatives' declarations to support the finding of uniform practices and policies. (Doc. No. 28 at 5, 33.) The undersigned

has reviewed the declarations and finds that they are sufficient to establish commonality with respect to defendant's rounding policies and plaintiffs' claims regarding donning and doffing.

Plaintiffs Beltran, Martinez, and Rivera, who worked at defendant's Gilroy and Firebaugh facilities, state in their declarations that defendant prohibited them from clocking in or out more than seven minutes before or after their shifts. (*See* Doc. Nos. 25-3 ¶ 6; 25-4 ¶ 6; 25-5 ¶ 6.) Additionally, plaintiff Obeso Cota, who worked at defendant's Lemoore facility, states that she was not allowed to clock in before her shifts started despite being required to have her protective gear on before clocking in, which typically took ten minutes to put on. (Doc. No. 25-2 ¶¶ 6–7.) While there are some minor differences between the seven minutes plaintiffs Beltran, Martinez, and Rivera claim that they were unable to clock in for their shifts, and plaintiff Obeso Cota's ten minutes of claimed uncompensated time, the undersigned concludes that common issues predominate with respect to the plaintiffs' claims relating to donning and doffing. *See Barbosa v. Cargill Meat Sols. Corp.*, 297 F.R.D. 431, 444 (E.D. Cal. 2013) ("despite minor factual differences among Class Members, such as the number of hours or weeks worked, common issues predominate").

However, the objections do not address the concern expressed in the findings and recommendations regarding whether the plaintiffs' allegation that defendant failed to reimburse plaintiffs for purchasing dress code approved-clothing was an individualized or site-specific issue, especially where the record indicates that defendant had a policy of offering equipment to employees and providing employees with the option of purchasing their own equipment. (*See* Doc. Nos. 27 at 23; 28; *see also* Doc. No. 25-2 ¶ 6.) Additionally, the findings and recommendations correctly noted that the parties have not identified any specific written policy to support their contention that uniform policies and procedures existed that would apply to all class members. (*Id.* at 23.) Therefore, the parties will be directed to file supplemental briefing and documentation addressing the commonality of the claim involving defendant's alleged failure to reimburse plaintiffs for their work equipment.

/////

/////

CONCLUSION

For the reasons explained above:

1. The parties shall file supplemental briefing and documentation addressing the following issues raised by the pending motion for preliminary approval within thirty (30) days from the date of this order:

    a. The incentive payments for class representative plaintiffs Beltran, Martinez, and Rivera;

    b. The above-benchmark attorneys' fees;

    c. Revised FLSA and Class Settlement notices indicating that putative class and collective members may receive multiple checks, and a redlined copy of the revised FLSA and Class Settlement notices;

    d. Evidence supporting commonality of the plaintiffs' claims; and

    e. Any other issues identified above.

IT IS SO ORDERED.

Dated: **December 29, 2020**

_____
UNITED STATES DISTRICT JUDGE