1
2
3
4
5
6

# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

7
8

| | |
|---|---|
| 9 THOMAS BELTRAN, et al., | Case No. 1:18-cv-01676-NONE-SAB |
| 10       Plaintiffs, | SUPPLEMENTAL FINDINGS AND RECOMMENDATIONS RECOMMENDING |
| 11     v. | GRANTING PLAINTIFFS' MOTION FOR PRELIMINARY APPROVAL OF CLASS |
| 12 OLAM SPICES AND VEGETABLES, INC., | ACTION AND COLLECTIVE ACTION SETTLEMENT |
| 13       Defendant. | (ECF Nos. 25, 26, 27, 28, 30, 34, 38, 40, 41) |
| 14 | OBJECTIONS DUE WITHIN FOURTEEN |
| 15 | DAYS |

16
17

## I.

18

## BACKGROUND

19  On April 13, 2020, a motion for preliminary approval of a class and collective action

20 settlement was filed in this matter. (ECF No. 25.) On May 27, 2020, Defendant filed a

21 statement of non-opposition to the motion for preliminary approval. (ECF No. 26.) On June 2,

22 2020, findings and recommendations issued recommending denying the motion for preliminary

23 approval and setting forth specific deficiencies with the motion. (ECF No. 27.) On June 23,

24 2020, Plaintiffs filed objections to the findings and recommendations. (ECF No. 28.) On

25 December 30, 2020, the district judge directed Plaintiffs to file supplemental briefing and

26 documentation within thirty days. (ECF No. 29.) On January 28, 2021, Plaintiffs filed a

27 supplemental brief. (ECF No. 30.) On March 9, 2021, Plaintiffs' motion for preliminary

28 approval of a class and collective action settlement was re-referred to the magistrate judge for

1   further consideration in light of supplemental briefing filed.  (ECF No. 31.)

2          On March 23, 2021, an order issued setting a hearing on the motion for preliminary

3   approval and providing the parties with the opportunity to file supplemental briefing.  (ECF No.

4   32.)  On April 5, 2021, Plaintiff filed a supplemental brief requesting a two week extension of

5   time to present supplemental briefing to address the issues of the opt in procedure for the FLSA

6   class, the notice to the class, and class counsel.  (ECF No. 34.)  On April 6, 2021, an order issued

7   granting the request for an extension of time to file supplemental briefing to April 21, 2021.

8   (ECF No. 35.)  On April 21, 2021, a stipulation was filed to further extend time for supplemental

9   briefing.  (ECF No. 36.)  The stipulation was granted and Plaintiff was to file supplemental

10  briefing by May 12, 2021.  (ECF No. 37.)  On May 12, 2021, the parties filed a joint brief further

11  requesting an extension of time to file supplemental briefing.  (ECF No. 38.)  On May 13, 2021,

12  an order was filed continuing the hearing on the motion for preliminary approval and extending

13  the time for the parties to file an amended settlement agreement.  (ECF No. 39.)  On May 21,

14  2021, a fourth amended settlement agreement was filed.  (ECF No. 40.)  On May 26, 2021, the

15  fully executed fourth amended settlement agreement was filed.  (ECF No. 41.)  On May 28,

16  2021, an order issued vacating the hearing on the motion for preliminary approval of the class

17  and collective action settlement.  (ECF No. 42.)

18         Having reviewed the moving papers, objections, the order directing the filing of

19  supplemental briefing and the supplemental brief, the Court issues the following supplemental

20  findings and recommendations recommending granting the motion for preliminary approval of

21  the class action and collective action settlement.

22                                          **II.**

23                                     **DISCUSSION**

24         Due to the numerous deficiencies in the motion for preliminary certification of the

25  settlement of this action that precluded finding the agreement as a whole was fair and reasonable,

26  the Court did not address the substance of the motion in the June 2, 2020 findings and

27  recommendations, but only identified those issues that precluded such a finding.  Now that the

28  parties have supplemented the record to correct the deficiencies identified in the findings and

recommendations the Court shall consider whether the proposed settlement should be approved.

District courts review class action settlements in two stages. First, as here, plaintiffs file a motion for preliminary approval, along with a motion to certify the class for purposes of settlement if certification has not occurred. If the district court grants preliminary approval and certifies the class, class members are then notified and given an opportunity to object to the settlement or opt-out of the settlement. See Cotter v. Lyft, Inc., 176 F.Supp.3d 930, 935 (N.D. Cal. 2016). Thereafter, plaintiffs typically file a motion for final approval, and after a final fairness hearing and considering any objections to the settlement, the district court determines whether to grant final approval. Id.

Even where a proposed settlement is unopposed, the Court must fully examine whether the proposed settlement class satisfies Rule 23(a)'s requirements of numerosity, commonality, typicality, and adequacy of representation. Wright v. Linkus Enterprises, Inc., 259 F.R.D. 468, 472 (E.D. Cal. 2009) (citing Hanlon v. Chrysler Corp., 150 F.3d 1011, 1019 (9th Cir. 1998)). The Ninth Circuit and Supreme Court have emphasized that Rule 23(e) governing settlement is an additional, not a superseding requirement, and thus "just because a settlement appears to be fair, reasonable, and adequate under Rule 23(e) does not mean a class has met the certification requirements of Rule 23(a) and (b)." In re Online DVD-Rental Antitrust Litig., 779 F.3d 934, 942 (9th Cir. 2015) (citing Amchem Products, Inc. v. Windsor, 521 U.S. 591, 620–21 (1997)).

This action is currently at the first stage where the Court shall consider whether preliminary approval of the proposed settlement is appropriate, and whether the class should be certified for purposes of settlement only. The Court incorporates the June 2, 2020 findings and recommendations. The Court now turns to determine whether certification of the class is appropriate for purposes of settlement.

**A.      Certification of the Class for Purposes of Settlement**

1.      Numerosity

Numerosity is met if "the class is so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). There is no absolute number or cut-off for determining numerosity, and the specific facts of each case may be examined. Schwarm v. Craighead, 233

1   F.R.D. 655, 660 (E.D. Cal. 2006); Cervantez v. Celestica Corp., 253 F.R.D. 562, 569 (C.D. Cal.

2   2008).   "A reasonable estimate of the number of purported class members satisfies the

3   numerosity requirement of Rule 23(a)(1)."   In re Badger Mountain Irr. Dist. Sec. Litig., 143

4   F.R.D. 693, 696 (W.D. Wash. 1992); see also Cervantez, 253 F.R.D. at 569 ("Courts have not

5   required evidence of specific class size or identity of class members to satisfy the requirements

6   of Rule 23(a)(1).")

7           Based on data provided by Defendant, there are 7,261 individuals in the class.[1]  (Suppl.

8   Decl. of Edwin Aiwazian, ("Aiwazian Suppl. Decl."), ¶ 7, ECF No. 28-1.)  The Court finds the

9   proposed class of 7,261 members satisfies the numerosity requirement as joinder of such

10  members is impracticable.   See Celano v. Marriott Int'l, Inc., 242 F.R.D. 544, 549 (N.D. Cal.

11  2007) (noting "courts generally find that the numerosity factor is satisfied if the class comprises

12  40 or more members and will find that it has not been satisfied when the class comprises 21 or

13  fewer."); Cervantez, 253 F.R.D. at 569 ("Courts have held that numerosity is satisfied when

14  there are as few as 39 potential class members.")

15          2.      Commonality

16          Commonality is satisfied where "there are questions of law or fact common to the class."

17  Fed. R. Civ. P. 23(a)(2).   The Ninth Circuit has stated that Rule 23(a)(2) is construed

18  permissively and that "[a]ll questions of fact and law need not be common to satisfy the rule."

19  Staton v. Boeing Co., 313 F.3d 447, 462 (9th Cir. 2002) (quoting Hanlon, 150 F.3d at 1019).

20  Indeed, "[t]he existence of shared legal issues with divergent factual predicates is sufficient, as is

21  a common core of salient facts coupled with disparate legal remedies within the class."   Id.

22  "[T]he key inquiry is not whether the plaintiffs have raised common questions," but "whether

23  class treatment will 'generate common answers apt to drive the resolution of the litigation.' "

24  Arredondo v. Delano Farms Co., 301 F.R.D. 493, 503 (E.D. Cal. Feb. 21, 2014) (citations

25  omitted).   Commonality is not required for all of the claims.   It may sufficient if there is one

26  single issue common to the proposed class.   Wal-Mart Stores, Inc. v. Dukes, 564 U.S. 338, 359

---

27  [1] In the motion for preliminary approval, Plaintiffs asserted that there were 8,211 individuals in the class.  (Decl. of
    Edwin Aiwazian, ("Aiwazian Decl."), ¶ 10, ECF No. 25-1.)  Plaintiffs do not explain why the class is now
28  approximately 1,000 individuals less than asserted in the prior declaration.

1  (2011) (stating that even a single common question will satisfy Rule 23(a)(2)); True v. American

2  Honda Motor Co., 749 F.Supp.2d 1052, 1064 (C.D. Cal. 2010); Haley v. Medtronic, Inc., 169

3  F.R.D. 643, 648 (C.D. Cal. 1996) ("Indeed, for the commonality requirement to be met, there

4  must only be one single issue common to the proposed class."); see also In re Paxil Litig., 212

5  F.R.D. 539, 549 (C.D. Cal. 2003) (noting that "the commonality requirement is interpreted to

6  require very little").

7       In the June 2, 2020, findings and recommendations, the Court found concerns regarding

8  whether Plaintiffs had adequately allege commonality or if the alleged policies and practices

9  complained of were location or supervisor specific rather than the result of a company-wide

10  policy.  (ECF No. 27 at 22-24.)

11       Plaintiff Beltran worked for Defendant from June 2006 to March 2010 and from May

12  2011 to July 2012.  (Decl. of Thomas Beltran ("Beltran Decl."), ¶ 2, ECF No. 25-3.)  During this

13  time, he worked at the Gilroy facility as line operator from June 2006 to March 2010.  (Id., ¶ 2.)

14  From May 2011 to July 12 Plaintiff Beltran worked as general laborer in the packaging

15  department.  (Id.)  During his employment, Plaintiff Beltran was required to perform work off

16  the clock before his shift, after his shift, and during meal periods such as donning and doffing

17  protective gear and storing his belongings, working to ensure that product was packaged in a

18  timely manner, following health and safety and security procedures, adhering to Good

19  Manufacturing Practices, assisting and communicating with other co-workers, cleaning and

20  performing upkeep of the premises, covering for co-workers positions and tasks to ensure that

21  operations continued uninterrupted and according to schedule, and responding to calls and

22  business related enquiries.  (Id., ¶ 5.)  Plaintiff Beltran was precluded from clocking in more than

23  seven minutes prior to his scheduled start time and from clocking out more than seven minutes

24  after his scheduled end time.   (Id., ¶ 6.)   Plaintiff Beltran was instructed to perform all

25  preparatory activities prior to the scheduled start time of his shift and all conclusory activities

26  after the scheduled end time of his shift.  (Id.)  Defendant rounded Plaintiff Beltran's time

27  punches to the nearest quarter hour.  (Id.)  Plaintiff Beltran was unable to take uninterrupted ten

28  minute rest breaks and thirty minute meal periods.  (Id., ¶ 7.)  He often was required to work

1  during meal and rest periods or the periods were interrupted, late, short, or missed entirely.  (<u>Id.</u>)

2  Plaintiff Beltran incurred work related expenses for work attire, such as steel toed shoes, and was

3  not fully reimbursed for them.  (<u>Id.</u>, ¶ 8.)

4       Plaintiff Martinez worked for Defendant from August 2012 to October 2013 as a forklift

5  operator at the Firebaugh facility.  (Decl. of Mario Martinez ("Martinez Decl."), ¶ 2, ECF No.

6  25-4.)  Plaintiff Martinez was required to perform work off the clock such as donning and

7  doffing protective gear and storing his personal belongings, ensuring that product was being

8  packaged and shipped in a timely manner, following health and safety and security procedures,

9  adhering to Good Manufacturing Practices, assisting and communicating with co-workers,

10  cleaning and performing upkeep of the premises, ensuring that operations continued

11  uninterrupted and according to schedule, covering other co-workers positions to ensure that there

12  were no breaks in production or shipments, and responding to calls and business related

13  inquiries.  (<u>Id.</u>, ¶ 5.)  Plaintiff Martinez was prohibited from clocking in more than seven minutes

14  prior to his scheduled start time and from clocking out more than seven minutes after his

15  scheduled end time.  (<u>Id.</u>, ¶ 6.)  Plaintiff Martinez was instructed to perform all preparatory

16  activities prior to his scheduled start time and all conclusory activities after his scheduled end

17  time.  (<u>Id.</u>)  His time punches were rounded to the nearest fifteen minutes.  (<u>Id.</u>)  During his

18  employment, on many occasions he was unable to take timely, uninterrupted thirty minute meal

19  periods and ten minute rest breaks.  (<u>Id.</u>, ¶ 7.)  He was frequently required to work during meal

20  and rest periods, and his meal and rest breaks were often interrupted, late, short, or missed

21  entirely.  (<u>Id.</u>)  During meal and rest period he was required to work to ensure that orders were

22  being fulfilled in a timely manner, to follow health and safety and security procedures, adhere to

23  the Good Manufacturing Practices, assist and communicate with other co-workers, clean and

24  perform upkeep of the premises, ensure that operations continue uninterrupted and according to

25  schedule, cover other co-workers' positions to ensure that there were no breaks in operations,

26  and respond to calls and business-related inquiries.  (<u>Id.</u>)  Plaintiff Martinez was never paid a

27  premium for any short, late, or missed meal or rest period.  (<u>Id.</u>)  Plaintiff Martinez incurred

28  work related expenses, such as work gloves and steel toed shoes, and was not reimbursed for

them.  (Id., ¶ 8.)  He received wage statements that failed to state the corresponding number of hours worked for each hourly rate of pay.  (Id., ¶ 9.)

Plaintiff Obeso Cota worked for Defendant from July 2013 through October 2013 as an non-exempt employee in the position of sorter at Defendant's Lemoore facility.  (Decl. of Maria Claudia Obeso Cota ("Obeso Cota Decl."), ¶ 3, ECF No. 25-2.)  During this same period, she worked in Defendant's tomato paste and salsa departments at the Lemoore facility.  (Id.)  Plaintiff typically worked 1:30 p.m. to 9:00 p.m. (Id., 4.)  Defendant required Plaintiff Obeso Cota to put on her protective gear prior to clocking in for her shift and estimated that it took approximately 10 minutes to put on all protective gear.  (Id., ¶ 6.)  If Plaintiff Obeso Cota clocked in prior to or clocked out after her shift, Defendant would change her punch time to the nearest quarter hour.  (Id., ¶ 7.)  Defendant would change the time that she punched in and out for meal breaks and she rarely received a full thirty minute mean period and was not paid an hour for meal periods that were less than thirty minutes.  (Id., ¶ 8.)  At the end of her shift, Plaintiff Obeso Costa was required to punch out prior to removing her protective gear.  (Id., ¶ 9.)

Plaintiff Solorio worked for Defendant from July through October 2015 and July through October 2016 at the Lemoore facility.  (Decl. of Alexander Solorio ("Solorio Decl."), ¶ 3, ECF No. 25-2.)  During 2015, Plaintiff Solorio worked as an hourly non-exempt employee in Defendant's sanitation department.  (Id.)  During the 2016 season, he worked as a fork lift operator.  (Id.)  During both seasons, Plaintiff Solorio was required to wear protective gear.  (Id., ¶¶ 6, 7.)  At some point during both seasons, Defendant offered a program to provide steel toed boots, but Plaintiff already had his own and he was not reimbursed for the cost of his boots.  (Id., ¶¶ 6, 7.)  During both seasons, Plaintiff Solorio worked what was described as shift differentials which meant that there were three different shifts.  (Id., ¶ 9.)  Paystubs did not include the amount for the shift differentials that Plaintiff Solorio worked so he was unable to tell if he was paid for his split shift differential.  (Id., ¶ 10.)

Plaintiff Juan Rivera was employed by Defendant from October 2006 through September 2015 at the Gilroy facility as a LTO/driver.  (Decl. of Juan Rivera ("Rivera Decl."), ¶ 2, ECF No. 25-5.)  During his employment, he was required to perform work off the clock, such as storing

1   personal belongings, working to ensure the fulfillment of orders in a timely manner, following

2   health and safety and security procedures, adhering to Good Manufacturing Practices, assisting

3   and communicating with other co-workers, cleaning and performing upkeep of the premises,

4   ensuring that operations continue uninterrupted and according to schedule, covering other co-

5   workers positions to ensure there were no breaks in production or shipments, and responding to

6   calls and business related enquiries.  (Id., ¶ 5.)  Plaintiff Rivera was precluded from clocking in

7   more than seven minutes before his scheduled start time and from clocking out more than seven

8   minutes after his scheduled end time.  (Id., ¶ 6.)  His time punches were rounded to the nearest

9   fifteen minutes.  (Id.)  Plaintiff Rivera was unable to take timely, uninterrupted thirty minute

10  meal periods and ten minute rest breaks.  (Id., ¶ 7.)  He was often required to work during such

11  periods to ensure that orders were being fulfilled in a timely manner, to follow health and safety

12  and security procedures, to adhere to Good Manufacturing Practices, assist and communicate

13  with other co-workers, clean and perform upkeep of the premises, ensure that operations

14  continued uninterrupted and according to schedule, cover other co-workers positions to ensure

15  that there were no breaks in operations, and respond to calls and business related enquiries.  (Id.)

16  Plaintiff Rivera was never paid a premium for short, late, or interrupted meal or rest breaks.  (Id.)

17  He incurred business related expenses, such as clothing and steel toed shoes, that he was never

18  reimbursed for.  (Id., ¶ 8.)

19          In the order directing the parties to file supplemental briefing, the district judge reviewed

20  the declarations and found that they were sufficient to establish commonality with respect to

21  Defendant's rounding policies and Plaintiffs claims regarding donning and doffing.  (ECF No. 29

22  at 18-19.)  Having found commonality exists as to these claims, the facts and legal issues

23  underlying this action are sufficiently similar and given the permissive standard under the rule,

24  the Court finds that Plaintiffs have demonstrated commonality as they have sufficiently shown

25  that they suffered common injuries that are capable of resolution on a class-wide basis.  See Wal-

26  Mart Stores, Inc., 564 U.S. at 350; Millan v. Cascade Water Servs., Inc., 310 F.R.D. 593, 612

27

28

1  (E.D. Cal. 2015).[2]

2      3.  <u>Typicality</u>

3      Rule 23 also requires that "the claims or defenses of the representative parties are typical

4  of the claims or defenses of the class."  Fed. R. Civ. P. 23(a)(3).  Under the rule's permissive

5  standard, claims "need not be substantially identical," but are typical if the representative's

6  claims are "reasonably co-extensive with those of the absent class members."  <u>Parsons v. Ryan</u>,

7  754 F.3d 657, 685 (9th Cir. 2014) (quoting <u>Hanlon v. Chrysler Corp.</u>, 150 F.3d 1011, 1019 (9th

8  Cir. 1998)).  Typicality is based on the "nature of the claim or defense of the class representative,

9  and not to the specific facts from which it arose or the relief sought."  <u>Parsons</u>, 754 F.3d at 685

10 (quoting <u>Hanon v. Dataproducts</u>, 976 F.2d at 508).  Typicality tests "whether other members

11 have the same or similar injury, whether the action is based on conduct which is not unique to

12 the named plaintiffs, and whether other class members have been injured by the same course of

13 conduct."  <u>Id.</u>  The requirements of commonality and typicality occasionally merge, and "[b]oth

14 serve as guideposts for determining whether under the particular circumstances maintenance of a

15 class action is economical and whether the named plaintiff's claim and the class claims are so

16 interrelated that the interests of the class members will be fairly and adequately protected in their

17 absence."  <u>Parsons</u>, 754 F.3d at 685 (quoting <u>Wal-Mart Stores, Inc.</u>, 564 U.S. at 349 n.5).

18     Plaintiffs argue that the typicality requirement is satisfied here because the cause of the

19 injury is the same, and the injury claimed by the named plaintiffs is similar to that of the

20 unnamed class members.  (Mot. for Preliminary Approval ("Mot."), 19.)  The named Plaintiffs

21 emphasize that their claims are typical of those among the putative class members, and although

22 some factual differences may exist, the claims arise from the same events or course of conduct

23 and are based on the same legal theories.  (<u>Id.</u>)  Plaintiffs also argue that their claims are typical

24

25 [2] In their supplemental briefing, filed January 28, 2021, Plaintiffs addressed the unreimbursed business expense claim.  (ECF No. 30 at 14-15.)  Plaintiffs contend that all employees were required to maintain their work attire and there was no policy for reimbursing employees for these expenses.  (<u>Id.</u>)  Further, Defendant required employees to
26 purchase and maintain their own personal protective equipment such as steel toed shoes, work gloves, and safety glasses.  (<u>Id.</u> at 15.)  Defendant contends that they had a practice of reimbursing employees for the costs of
27 purchasing steel toed boots and had a practice of offering employees steel toed boots to employees at no cost and therefore the issue is highly individualized.  (<u>Id.</u>)  The Court has already found that there are other claims common to the class
28 and any issues with the unreimbursed expenses claims would not defeat class certification.

of the claims of the unnamed class members and arise from the same common, uniform, and systematic practices that applied to all class members during the settled period.  (Id.; Aiwazian Decl., ¶¶ 25-28.)

The named Plaintiffs allege that they were required to don and doff protective gear prior to and after clocking in and were not paid for this time and that they did not always receive meal breaks and rest periods and were not provided with a premium payment.  For purposes of preliminary certification and settlement, Plaintiffs have sufficiently demonstrated there are claims that are typical to the class.  See Millan, 310 F.R.D. at 605 (finding typicality satisfied based on the presence of at least one shared claim, the failure to pay overtime claim, and noting "[a]lthough potentially different in extent and frequency from the putative class members, Plaintiff appears to have suffered the same injury—under payment for overtime—as the putative class.")  The Court finds that the typicality requirement has been met.

4.     Adequacy of Representation

The Court must ensure "the representative parties will fairly and adequately protect the interests of the class."  Fed. R. Civ. P. 23(a)(4).  In determining whether the named plaintiffs will adequately represent the class, the courts must resolve two questions: "(1) do the named plaintiffs and their counsel have any conflicts of interest with other class members and (2) will the named plaintiffs and their counsel prosecute the action vigorously on behalf of the class?" Ellis v. Costco Wholesale Corp., 657 F.3d 970, 985 (9th Cir. 2011) (quoting Hanlon, 150 F.3d at 1020).  "Adequate representation depends on, among other factors, an absence of antagonism between representatives and absentees, and a sharing of interest between representatives and absentees."  Ellis, 657 F.3d at 985 (citing Molski v. Gleich, 318 F.3d 937, 955 (9th Cir. 2003)). Class representatives "must be part of the class and possess the same interest and suffer the same injury as the class members."  Amchem Prod., 521 U.S. at 626 (internal quotations and citations omitted).  This factor also tends to merge with the commonality and typicality criteria of Rule 23.  Id. at 626 n.20.

The named plaintiffs here argue their interests align with the putative class members as all of them were employed by Defendant within California, and the claims are typical as the

10

1   Class Members are confined to a limited group of similarly situated employees during the settled
2   period.  (Mot., 28.)

3        Here, the Court finds that the Plaintiffs share common injuries and possess the same
4   interest as the unnamed class members.  Plaintiffs do not appear to have any interests that are
5   antagonistic to the class.  Further, based on review of the submitted declarations, the Court finds
6   Plaintiffs' counsel have demonstrated that they have sufficient experience handling employment
7   class actions and complex wage-and-hour litigation.  (Aiwazian Decl., ¶¶ 2-7.)

8        Accordingly, the Court finds that Plaintiffs have demonstrated they will adequately and
9   fairly protect the interests of the class.  Fed. R. Civ. P. 23(a)(4).

10            5.    Rule 23(b) Criteria

11        Plaintiffs must also meet one of the three subdivisions of Rule 23(b) to certify the class.
12   Fed. R. Civ. P. 23(b).  Plaintiffs argue the proposed class meets the requirements of Rule
13   23(b)(3).  Under Rule 23(b)(3), a class action may proceed where "the court finds that the
14   questions of law or fact common to class members predominate over any questions affecting
15   only individual members, and that a class action is superior to other available methods for fairly
16   and efficiently adjudicating the controversy."  Fed. R. Civ. P. 23(b)(3).  Matters pertinent to this
17   determination include: "(A) the class members' interests in individually controlling the
18   prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning
19   the controversy already begun by or against class members; (C) the desirability or undesirability
20   of concentrating the litigation of the claims in the particular forum; and (D) the likely difficulties
21   in managing a class action."  Fed. R. Civ. P. 23(b)(3)(A)-(D).  The fact that the parties have
22   reached a settlement is relevant to consideration of these factors and when "[c]onfronted with a
23   request for settlement-only class certification, a district court need not inquire whether the case,
24   if tried, would present intractable management problems [under Rule 23(b)(3)(D)], for the
25   proposal is that there be no trial."  Amchem Prod., 521 U.S. at 620.  However, "other
26   specifications of the Rule—those designed to protect absentees by blocking unwarranted or
27   overbroad class definitions—demand undiluted, even heightened, attention in the settlement
28   context."  Id.

1        Plaintiffs argue that the class is sufficiently cohesive to warrant certification for

2  settlement purposes, as common questions of fact and law affecting the class members

3  predominate over any questions that may affect only individual members.  (Mot., 29.)  In this

4  regard, Plaintiffs emphasize that Defendant's alleged failure to properly pay Class Members for

5  all hours worked and to provide compliant meal and rest periods are alleged to arise from

6  Defendant's uniform policies, practices, and procedures.  (Id.)  Plaintiffs also argue that class

7  resolution is superior to other available methods for the fair and efficient adjudication of the

8  controversy as the individual resolution of class member claims would be uneconomical given

9  the relatively small amount of damages for individuals, and thus class resolution is a superior

10  method to pursue recovery.  (Id.)

11        Given the common claims pertaining to the class members as current and former

12  employees that are alleged to be subject to the same employer policies, the Court finds questions

13  of law or fact common to class members predominate over any questions affecting only

14  individual members.  Given the difficulties of pursuing individual claims in this context, "the

15  class members' interests in individually controlling the prosecution or defense of separate

16  actions" is outweighed by the "desirability . . . of concentrating the litigation of the claims" in

17  this forum, and there is no indication of other litigation concerning the controversy already

18  begun by or against class members."  Fed. R. Civ. P. 23(b)(3)(A)-(C).  The Court need not weigh

19  potential difficulties in managing the class action given the parties have reached settlement.

20  Amchem Prod., 521 U.S. at 620.  Therefore, the Court also finds that a class action is the

21  superior method for adjudicating the claims in this action.

22        Accordingly, the Court finds Plaintiffs have sufficiently met the requirements of Rule

23  23(b)(3), and recommends the class be certified for purposes of settlement.

24        **B.**    **Certification of the FLSA Collective Actions**

25        Plaintiffs also request that this matter be certified as a collective action under the FLSA.

26  (Mot., 29-30.)  The FLSA provides the right of an employee to represent similarly situated

27  employees in a suit against their employer for the failure to pay minimum wage or overtime

28  compensation.  29 U.S.C. § 216(b).  Unlike a class action under Rule 23, to participate in the

1   collective action, an employee is required to give his consent in writing to become a party.  29

2   U.S.C. § 216(b); see Hoffmann-La Roche Inc. v. Sperling, 493 U.S. 165, 170 (1989) (rights in a

3   collective action under the FLSA are dependent on the employee receiving accurate and timely

4   notice about the pendency of the collective action, so that the employee can make informed

5   decisions about whether to participate).  "If an employee does not file a written consent, then

6   that employee is not bound by the outcome of the collective action."  Edwards v. City of Long

7   Beach, 467 F.Supp.2d 986, 989 (C.D. Cal. 2006).

8        Determining whether a collective action is appropriate is within the discretion of the

9   district court.  Leuthold v. Destination Am., Inc., 224 F.R.D. 462, 466 (N.D. Cal. 2004).

10  However, "[n]either the FLSA, nor the Ninth Circuit, has defined the term 'similarly situated'

11  for purposes of certifying a collective action."  Nen Thio v. Genji, LLC, 14 F.Supp.3d 1324,

12  1340 (N.D. Cal. 2014).  While it is unclear what standard should be used to determine if the

13  employees are similarly situated under the FLSA, given that the employee consents to

14  participating in the FLSA actions, courts do find that "[t]he requisite showing of similarity of

15  claims under the FLSA is considerably less stringent than the requisite showing under Rule 23

16  of the Federal Rules of Civil Procedure."  Hill v. R+L Carriers, Inc., 690 F.Supp.2d 1001, 1009

17  (N.D. Cal. 2010) (citation and quotation marks omitted); accord Millan, 310 F.R.D. at 607.

18       Courts in the Ninth Circuit have generally utilized a two-step approach to determine

19  whether to allow the collective action to proceed.  Tijero v. Aaron Bros., Inc., 301 F.R.D. 314,

20  323 (N.D. Cal. 2013); Millan, 310 F.R.D. at 607.  Initially, the court determines whether the

21  potential collective action members should receive notice of the action based on a finding that

22  the plaintiffs are "similarly situated."  Id.  "At this initial stage, plaintiffs can satisfy their

23  burden to show that they are 'similarly situated' by making substantial allegations, supported by

24  declarations or discovery, that the putative class members were together the victims of a single

25  decision, policy, or plan."  Nen Thio., 14 F.Supp.3d at 1340 (internal citations and quotation

26  marks omitted).  Such determination is "based on a fairly lenient standard, and typically results

27  in conditional certification."  Id.  The second certification decision is usually made at the close

28  of discovery when the defendant brings a motion to decertify the class and the "courts apply a

1  stricter standard for similarly situated employees and review several factors, including whether

2  individual plaintiffs' claims involve disparate factual or employment settings; the various

3  defenses available to the defendant which appear to be individual to each plaintiff; as well as

4  fairness and procedural considerations." Id. at 1341.

5      In the June 2, 2020 findings and recommendations, the Court found that Plaintiffs had

6  not addressed the requirement to demonstrate that a bona fide disputes exists as to the FLSA

7  claims. (ECF No. 27 at 17-18.)  In the December 20, 2020 order, the district judge found that,

8  while the original motion failed to address whether there was a bona fide dispute, Plaintiffs'

9  objections to the findings and recommendations had provided additional information to

10  demonstrate that a bona fide dispute exists. (ECF No. 29 at 12-13.)

11      Given the district judge's December 30, 2020 ruling, the Court finds that the FLSA's

12  lenient standard the first step has been met.  As Defendant will not seek decertification of the

13  class, the Court need not consider the second step.  See Millan, 310 F.R.D. at 607 ("As this

14  Court now considers a settlement agreement, it is clear that Defendant will not seek

15  decertification of the class conditionally certified for purposes of settlement.  Absent an

16  argument that the parties are not similarly situated, this Court need not look to the second step at

17  all.").

18      The third amended and previous settlement agreements provided that the FLSA members

19  would consent to join the FLSA action by cashing their settlement check.  (Third Amended Class

20  Action and Collective Action Settlement and Release Agreement, III.19(b).)  As discussed in the

21  June 2, 2020 findings and recommendations, the Court found that this procedure failed to

22  comport with the statutory requirements of the FLSA.  (ECF No. 27 at 18-20.)

23      Section 216 provides that no employee shall be a party plaintiff to any collective action

24  "unless he gives his consent in writing and such consent is filed in the court in which such action

25  is brought"  29 U.S.C. § 216(b).  As addressed in the December 30, 2020 order, those cases

26  which approve such a procedure do not seriously discuss whether it comports with the FLSA and

27  there is authority to call into question this "opt in" approach.  (ECF No. 29 at 15.)

28      To address these concerns, the parties revised the agreement to provide for a two-step opt

in procedure in the fourth amended settlement agreement.  (Fourth Amended Class Action and Collective Action Settlement and Release Agreement (hereafter "Fourth Amended Settlement Agreement, ECF No. 41.)  The first step involves mailing the notice of the FLSA action, an opt-in card, and the settlement terms.  The deadline to opt into the collective action settlement is sixty calendar days from the mailing of the notice packet.  (Id., II.35.)

Each FLSA member will be issued a pro rata share of the net FLSA settlement fund, which is twenty five percent of the net settlement fund.  (Id., III.9.a.1.)  Each members share will be calculated based on the number of workweeks worked by the individual member compared to the number of workweeks worked by all participating members.  (Id., III.9.b)  The class will be sent the FLSA notice which includes a opt-in card that the member may return to opt into the collective action and information on the other ways to opt into the collective action.  (Id., III.14.b.)  There will be four ways for a collective action member to opt into the settlement.  (Id., III.19.b)  A member may return the FLSA opt in card, may access the settlement website and print out an opt in form to be mailed to the settlement administrator, may access and complete the fillable opt in form on the settlement website, or may submit their own written statement reflecting that they consent and are opting to join the collective action.  (Id.)  A reminder FLSA mailing will be provided to inform the potential members of the existence of the settlement website, the deadlines to opt into the collective action, and the number of days remaining to opt into the collective action.  (Id., II.36, III.14.c.)  Only those FLSA members who give their consent in writing to become a party and have their consent form filed with the Court will be deemed to have consented to join the FLSA action.  (Id., III.19.b.)  The settlement administrator with the assistance of class counsel will have the opt in forms filed with the court within five days of the opt in deadline.  (Id.)

The FLSA notice informs the potential members that they must opt into the collective action settlement and of the means by which they may do so.  (Notice of FLSA Settlement, ECF No. 41 at 48-54.)  The Court finds that the fourth amended settlement agreement has corrected the deficiencies identified in the FLSA collective action settlement and the opt in procedure comports with 29 U.S.C. § 216(b).

**C.     Whether the Proposed Settlement is Fair, Reasonable, and Adequate**

Rule 23 requires that a court must make a preliminary determination that the settlement of a class action "is fair, reasonable, and adequate[.]"  Rollins v. Dignity Health, 336 F.R.D. 456, 461 (N.D. Cal. 2020) (quoting Fed. R. Civ. P. 23(e)(2)).  At the preliminary approval stage the court determines whether the settlement falls "within the range of possible approval."  Rollins, 336 F.R.D. at 461 (quoting In re Tableware Antitrust Litig., 484 F.Supp.2d 1078, 1080 (N.D. Cal. 2007)).

Similarly, a collective action under the FLSA may not be settled without supervision of either the Secretary of Labor or a district court.  Kerzich v. Cty. of Tuolumne, 335 F.Supp.3d 1179, 1183 (E.D. Cal. 2018); Nen Thio, 14 F.Supp.3d at 1333; Selk v. Pioneers Mem'l Healthcare Dist., 159 F.Supp.3d 1164, 1172 (S.D. Cal. 2016).  Once a bona fide dispute is established, courts often apply the Rule 23 factors used in determining the fairness of a proposed class action settlement when evaluating the fairness of an FLSA settlement, although it is recognized that some of those factors do not apply due to the inherent differences between class actions and FLSA actions.  Selk, 159 F.Supp.3d at 1172; Kerzich, 335 F.Supp.3d at 1184; Smith v. Kaiser Found. Hosps., No. 3:18-CV-00780-KSC, 2019 WL 5864170, at *10 (S.D. Cal. Nov. 7, 2019).  If a settlement in an employee FLSA suit does reflect a reasonable compromise over issues, such as FLSA coverage or computation of back wages, that are actually in dispute, the district court may approve the settlement in order to promote the policy of encouraging settlement of litigation."  Nen Thio, 14 F.Supp.3d at 1333 (internal punctuation and citations omitted).

The role of the district court in evaluating the fairness of the settlement is not to assess the individual components, but to consider the settlement as a whole.  Lane v. Facebook, Inc., 696 F.3d 811, 818-19 (9th Cir. 2012).  "Assessing a settlement proposal requires the district court to balance a number of factors: the strength of the plaintiffs' case; the risk, expense, complexity, and likely duration of further litigation; the risk of maintaining class action status throughout the trial; the amount offered in settlement; the extent of discovery completed and the stage of the proceedings; the experience and views of counsel; the presence of a governmental

participant; and the reaction of the class members to the proposed settlement." Hanlon, 150 F.3d at 1026 (citing Torrisi v. Tucson Elec. Power Co., 8 F.3d 1370, 1375 (9th Cir. 1993)); Rollins, 336 F.R.D. at 461–62.

"To determine whether a settlement falls within the range of possible approval, a court must focus on substantive fairness and adequacy, and "consider plaintiffs' expected recovery balanced against the value of the settlement offer." Lusby v. Gamestop, Inc., 297 F.R.D. 400, 415 (N.D. Cal. 2013) (quoting In re Tableware Antitrust Litig., 484 F.Supp.2d at 1080). "If the proposed settlement appears to be the product of serious, informed, non-collusive negotiations, has no obvious deficiencies, does not improperly grant preferential treatment to class representatives or segments of the class, and falls within the range of possible approval, then the court should direct that the notice be given to the class members of a formal fairness hearing." In re Tableware Antitrust Litigation, 484 F.Supp.2d at 1079 (quoting Manual for Complex Litigation, Second § 30.44 (1985)).

When the settlement takes place before formal class certification, as it has in this instance, settlement approval requires a "higher standard of fairness." Lane, 696 F.3d at 819 (quoting Hanlon, 150 F.3d at 1026).

This more exacting review of class settlements reached before formal class certification is required to ensure that the class representatives and their counsel do not receive a disproportionate benefit "at the expense of the unnamed plaintiffs who class counsel had a duty to represent." Lane, 696 F.3d at 819. As recently emphasized by the Ninth Circuit, agreements that are approved prior to a class being certified "must withstand an even higher level of scrutiny for evidence of collusion or other conflicts of interest than is ordinarily required under Rule 23(e) before securing the court's approval as fair." Roes, 1-2 v. SFBSC Mgmt., LLC, 944 F.3d 1035, 1049 (9th Cir. 2019) (quoting In re Bluetooth Headset Prod. Liab. Litig. ("In re Bluetooth"), 654 F.3d 935, 946 (9th Cir. 2011)). "This more 'exacting review' is warranted 'to ensure that class representatives and their counsel do not secure a disproportionate benefit' 'at the expense of the unnamed plaintiffs who class counsel had a duty to represent.' " Roes, 1-2, 944 F.3d at 1049 (quoting Lane, 696 F.3d at 819 and Hanlon, 150 F.3d at 1027.) The "subtle

signs" of collusion which the district court must look for include,

> (1) "when counsel receive a disproportionate distribution of the settlement;" (2) "when the parties negotiate a 'clear sailing' arrangement" (i.e., an arrangement where defendant will not object to a certain fee request by class counsel); and (3) when the parties create a reverter that returns unclaimed [funds] to the defendant.

Roes, 1-2, 944 F.3d at 1049 (quoting Allen v. Bedolla, 787 F.3d 1218, 1224 (9th Cir. 2015) and In re Bluetooth, 654 F.3d at 947).

      1.    Stage of the Proceedings

This action was filed on July 7, 2015.  (ECF No. 1-1 at 5-35.)  The parties filed a notice that the case had settled on March 16, 2017.  (ECF No. 1-13 at 47-48.)  During the time period that this matter was in state court, the parties filed two motions for preliminary approval of the class action.  (ECF Nos. 1-11 at 65 - 1-12 at 58, 1-14 at 27-357.)  Before the state court decided the second motion for preliminary approval, Defendant removed the action to federal court on December 10, 2018.  (ECF No. 1.)  Plaintiff filed a third motion for preliminary approval of the class action settlement on April 13, 2020.  (ECF No. 25.)

Plaintiffs argue that the parties have actively litigated this case since it was commenced and conducted a thorough investigation into the facts of the case, including, interviews with Plaintiffs and many class members and collective action members, review of thousands of pages of data and documents including: Plaintiffs' and class members' employment records, including detailed time and pay records; Defendant's orientation materials, policies and practices; and multiple collective bargaining agreements.  (Mot., 19-20; Aiwazian Decl., ¶ 14.)  The parties conducted extensive formal and informal discovery and investigation into the facts of the action. Class counsel deposed Defendant's Person Most Knowledgeable regarding the organization structure over the course of two days.  (Id.)  The parties engaged in a Belaire-West notice administration,[3] by which Class/Collective Counsel obtained the contact information of Class Members who did not opt-out of the disclosure of their information.  (Id.)  Written discovery was

---

[3]  A Belaire-West notice is where putative class members are provided with a written notice informing them of the lawsuit and giving them an opportunity to opt-out of contact by plaintiffs' counsel.  See Austin v. Foodliner, Inc., No. 16CV07185HSGDMR, 2018 WL 1168694, at *1 (N.D. Cal. Mar. 6, 2018); Belaire-W. Landscape, Inc. v. Superior Court, 149 Cal. App. 4th 554, 557-58 (2007).

propounded and responded to by both sides, and the parties met and conferred on numerous occasions regarding issues related to jurisdiction, motion practice, discovery, mediation and settlement. (Id.)

Here, the parties agreed to settle this action in 2017 and after having conducted an adequate amount of discovery, have moved for the third time for approval of the settlement in this Court. The Court finds that the extent of discovery completed and the stage of the proceedings weigh in favor of granting preliminary approval of the class action settlement. See Uschold v. NSMG Shared Servs., LLC, 333 F.R.D. 157, 170 (N.D. Cal. 2019) (citations omitted) ("The use of an experienced private mediator and presence of discovery supports the conclusion that Plaintiffs were 'armed with sufficient information about the case' to broker a fair settlement.").

2.     Strength of the Case and Risks Associated with Continued Litigation

Plaintiffs contend that they face numerous risks in continued litigation, including the risk of receiving no recovery if a class or collective action is not certified or if no liability is found. (Mot., 22.) Plaintiffs argue that the court could determine that adjudication on a class or representative basis is unmanageable and not appropriate. (Id.) Plaintiffs also assert that they face the real possibility that if this case went to trial they could be awarded an amount less than the negotiated settlement agreement. (Id.)

Here, the parties dispute whether Defendant is liable in this action and Defendant contends that Plaintiffs' estimate on the value of the claims is overly ambition and significantly inflated. (Mot., 8.) If this action were to proceed to class certification Defendant would present multiple challenges to certification. (Id.) Defendant contends that its policies were compliant and that it was unaware that employees were performing work off the clock. (Id.) Defendant points to the fact that the employees worked at different locations, were subject to different collective bargaining agreements, worked different shifts, performed different job duties which raises highly individualized questions of fact. (Id.)

Considering the costs of and risks associated with continued litigation the parties agree that this case is well suited to settlement given the legal issues with Plaintiff's principal claims.

1  (Mot., 9.)  Plaintiffs' counsel recognized that if the litigation continued there were legal and
2  factual hurdles that might have been encountered that would pose significant risks to recovery on
3  behalf of the class.  (Id.)

4       This action was filed in 2015 and has been litigated for almost seven years.  The Court
5  considers the risks associated with continued litigation, and the reality that due to the judicial
6  emergency within this district, any potential trial is this matter would be several years in the
7  future.  Here, the parties agreed to settle this matter in 2017 and have now moved for the third
8  time to approve the settlement which will allow the class members to receive substantial
9  compensation without incurring further costs or face the risk of no recovery for the claims raised
10  in this action.  The Court finds that the risks and costs of continued litigation weigh in favor of
11  granting preliminary approval of the settlement.

12       3.    <u>Amount Offered in Settlement</u>

13       The Settlement Agreement provides for a total settlement fund of $4,500,000.00 and
14  there is no reversionary provision.  (Fourth Amended Settlement Agreement, II.40.)  Seventy-
15  five percent of the net settlement fund is to be distributed to the Rule 23 class action and twenty-
16  five percent is to be distributed to the FLSA collective action.  (Id., III.9.a.)  The net settlement
17  fund is the gross amount of $4,500,000.00 less the approved attorney fees and costs, settlement
18  administration costs, incentive awards, LWDA payment, and the employer's taxes.[4]  (Id., II.8.)
19  Plaintiffs contend the amount is reasonable considering the risks relating to certification,
20  liability, and the ability to recover monetary relief on a class-wide, collective, or representative
21  basis.  (Mot., 21)  Plaintiffs also emphasize settlement now guarantees a monetary recovery in a
22  relatively short period of time compared to waiting additional years for the same or possibly no

23
24  [4] The agreement provides for attorney fees of not more than $1,575.00.00 (thirty-five percent of gross settlement fund); costs not to exceed $65,000.00; total incentive awards in the amount of $33,500.00; settlement administration costs estimated to be $45,000.00; LWDA payment of $112,500.00; and $117,000.00 to $168,000.00 for the
25  employer's payroll taxes.  (Fourth Amended Settlement Agreement, II.8, 14, 39, III.5-8; Mot., 4.)  Since the gross settlement amount includes Defendant's share of payroll taxes, this amount should be deducted from the gross
26  settlement amount "because it goes to Defendant's separate obligation to the State and Federal governments, not to its alleged obligation to its employees."  <u>Uschold</u>, 333 F.R.D. at 172.  The Court notes that the amount of attorney fees requested will be in excess of thirty-five percent of the gross settlement funds once Defendant's share of the payroll
27  taxes is considered.  In seeking final approval, the parties shall clearly identify the amount of the Defendant's separate tax obligation that was deducted from the settlement fund.
28

recovery if this matter were to proceed to trial.[5]  (Mot., 21.)

Through investigation, collection, and review of data and information, Plaintiffs argue class/collective counsel was able to calculate the value of the claims and monetary recovery that could potentially be awarded, and used this information in negotiating a settlement that fairly compensated the class members and FLSA collective members.  (Mot., 20-21.)  Counsel considered the potential risks and rewards inherent in any case and particularly this one, and counsel performed a damages and valuation analysis based on the sampling of time and pay data provided by Defendant.  (Mot., 21; Aiwazian Decl., ¶¶ 16, 25.)

In the findings and recommendations, the Court identified several issues with the valuation of the claims.  (Findings and Recommendations, 13-14.)  Specifically, Plaintiffs were proposing to settle this action for 4.9 percent of the potential value of the claims and had not addressed how they had calculated the total value of the claims, whether liquidated damages were included in the FLSA calculation, or the limitations period used for the FLSA calculation.  (Id.)  In their objections to the findings and recommendations, Plaintiffs submitted information regarding how the claims were valued, that liquidated damages were considered in the potential value of the FLSA claims which was $3,509,746.76, and that they used a three year statute of limitations for the FLSA claims.  (Suppl. Briefing, 13-14, ECF No. 28-1; Order re Suppl. Briefing, 11-12.)

"To determine whether a settlement 'falls within the range of possible approval' a court must focus on 'substantive fairness and adequacy,' and 'consider plaintiffs' expected recovery balanced against the value of the settlement offer.' "  Collins v. Cargill Meat Sols. Corp., 274 F.R.D. 294, 302 (E.D. Cal. 2011) (quoting In re Tableware Antitrust Litig., 484 F.Supp.2d at 1080).

In the supplemental briefing, Plaintiffs argue that they have appropriately discounted the potential value of the claims based on Defendant's arguments, the evidence and information

---

[5] The Court notes that the parties initially agreed to settle this action in March of 2017.  (ECF No. 1-3 at 47-48.)  During the four years since they agreed to settle, this is the third motion Plaintiffs have filed in an attempt to have a court approve the settlement.  (ECF Nos. 1-11 at 56-ECF No. 1-12 at 58; ECF No. 1-14 at 27-357; ECF No. ECF No. 25.)

obtained, the circumstances and realities of the case, the current state of the law, the costs of continued litigation, and the risks of recovery.  (Suppl. Briefing, 13.)  Plaintiffs note that the steepest discounts were given to the derivative claims where recovery is dependent upon them prevailing on other underlying claims and a finding that Defendant's conduct is willful.  (Id.) Plaintiffs argue that if you consider the potential value of the substantive claims, the total settlement fund is closer to eleven percent of the potential value.  (Id.)  Plaintiffs contend that a straight discount was not applied, but the risks were considered in a thoughtful, three part discounting model based on the facts and circumstances of the case.  (Id.)

The district court reviewed the supplement briefing and found that Plaintiffs have now addressed these areas of concern and that the valuation of the claims have been addressed with sufficient specificity.  (Order re Suppl. Briefing, 10-11).  Given the district court's finding that Plaintiffs have adequately addressed the issues identified and the discounts applied to the potential value of the claims, the Court finds that the settlement amount is within the bounds of reasonableness for preliminary approval of the class settlement.

"It is well-settled law that a cash settlement amounting to only a fraction of the potential recovery will not per se render the settlement inadequate or unfair," and "[i]t is the complete package taken as a whole, rather than the individual component parts, that must be examined for overall fairness."  Officers for Justice v. Civil Serv. Comm'n of City & Cty. of San Francisco, 688 F.2d 615, 628 (9th Cir. 1982); In re Mego Fin. Corp. Sec. Litig., 213 F.3d 454, 459 (9th Cir. 2000) (same); City of Detroit v. Grinnell Corp., 495 F.2d 448, 455 (2d Cir. 1974) ("In fact there is no reason, at least in theory, why a satisfactory settlement could not amount to a hundredth or even a thousandth part of a single percent of the potential recovery."), abrogated by Goldberger v. Integrated Res., Inc., 209 F.3d 43 (2d Cir. 2000).

For purposes of preliminary approval, the Court finds the proposed recovery falls within the range of possible approval and taken as a whole, weighs toward finding the settlement agreement fair, reasonable, and adequate and in the best interests of the class and collective members in light of all known facts and circumstances.

/ / /

4.      Experience and Views of Counsel

Initially, Plaintiffs argue, that "[a]n initial presumption of fairness is usually involved if the settlement is recommended by class counsel after arm's-length bargaining." Harris v. Vector Mktg. Corp., No. C-08-5198 EMC, 2011 WL 1627973, at *8 (N.D. Cal. Apr. 29, 2011) (citation omitted); see also Nat'l Rural Telecommunications Coop. v. DIRECTV, Inc., 221 F.R.D. 523, 528 (C.D. Cal. 2004) ("A settlement following sufficient discovery and genuine arms-length negotiation is presumed fair," and "[g]reat weight is accorded to the recommendation of counsel, who are most closely acquainted with the facts of the underlying litigation.") (internal quotations and citations omitted).  However, the Ninth Circuit has recently emphasized that this is not a valid presumption, particularly where settlement is negotiated prior to class certification:

> Nowhere in the final approval order, however, did the district court cite or otherwise acknowledge our longstanding precedent requiring a heightened fairness inquiry prior to class certification.  To the contrary, the district court declared that, "[w]here a settlement is the product of arms-length negotiations conducted by capable and experienced counsel, the court begins its analysis with a *presumption that the settlement is fair and reasonable*."  (Emphasis added.)  But such a presumption of fairness is not supported by our precedent, and the district court cites no Ninth Circuit case which adopted this standard.  Particularly in light of the fact that we not only have never endorsed applying a broad presumption of fairness, but have actually required that courts do the opposite—by employing extra caution and more rigorous scrutiny—when it comes to settlements negotiated prior to class certification, the district court's declaration that a presumption of fairness applied was erroneous, a misstatement of the applicable legal standard which governs analysis of the fairness of the settlement.

Roes, 944 F.3d at 1049.  Thus, the Court's review does not begin with a presumption of fairness based on apparent arms-length negotiations.  Nonetheless, it is still a factor in determining whether the proposed settlement is fair, reasonable, and adequate.

Plaintiffs contend the data and documents produced and reviewed allowed class counsel to prepare damages/valuation models in preparation for mediation and settlement negotiations, to determine the potential value and strength of the claims, as well as to estimate the potential claim of each putative class and collective action member.  (Mot., 20; Aiwazian Decl., ¶¶ 23, 28.) Significantly, the parties reached settlement after reviewing the above discussed data and documents and then participating in a mediation conducted by the Honorable Edward Infante, "a retired federal magistrate judge who is highly experienced in mediating complex wage-and-hour

1    matters, and extensive negotiations thereafter."   (Mot., 20; Aiwazian Decl., ¶ 12; Granberry

2    Decl., ¶ 10.)   Prior to reaching settlement, the parties exchanged information and discussed

3    various factors, including the risks and delays of further litigation, the risk of proceeding with

4    class and collective certification and representative adjudication, the law relating to the claims,

5    the evidence produced and analyzed, and the possibility of appeals.   (Mot., 20-21; Aiwazian

6    Decl., ¶ 13; Granberry Decl., ¶ 10.)   Plaintiffs state that while the parties disagree over the merits

7    and certifiability of Plaintiffs' claims, they agree that the settlement is fair, reasonable, and

8    adequate, as well as in the best interest of the class and FLSA collective members, in light of all

9    known facts and circumstances.   (Mot., 21.)

10           The settlement in this action appears to be the result of vigorous, arms-length

11   negotiations between the parties.   Further, the parties engaged in mediation with a mediator

12   experienced in wage and hour actions in arriving at a settlement.   Plaintiffs' counsel is

13   experienced with wage and hour class actions and after considering the strengths and weakness

14   in the case and weighing the risk opines that this settlement is fair, reasonable, and adequate.

15   The Court finds that this factor also weighs in favor of approving settlement of the class action.

16           5.   <u>Signs of Collusion</u>

17           The findings and recommendations identified several additional "subtle signs" of

18   collusion, <u>Roes, 1-2</u>, 944 F.3d at 1049, that were present in the settlement agreement including

19   the attorney fee provision which includes a smooth sailing provision and the incentive payments

20   to the class representatives which are far in excess of the recovery that any class member will be

21   receiving, and considering the large deductions that were applied to the claims of the putative

22   class. (Findings and Recommendations, 14-16.)

23           a.   **Clear Sailing Agreement**

24           In the objections to the findings and recommendations, the parties agreed to remove the

25   language that Defendant agreed not to oppose the motion for attorney fees or request for

26   incentive payments.   The district judge found that the removal of this language from the

27   settlement agreement alleviated the concern so it no longer applied to the analysis.   (Order re

28   Suppl. Briefing, 4; <u>see</u> Am. No. 1, attached as Exhibit 2, ECF No. 30-1 at 29.)

1    **b.    Incentive Payments**

2    In assessing the appropriateness of class representative enhancements or incentive

3    payments, the Court must consider factors such as the actions the plaintiffs took to protect the

4    interests of the class, the degree to which the class has benefitted, the amount of time and effort

5    the plaintiff expended in pursuing litigation, and any notoriety or personal difficulties

6    encountered by the representative plaintiff.  Khanna v. Intercon Sec. Systems, Inc., No. 2:09-cv-

7    2214 KJM EFB, 2014 WL 1379861, at *10 (E.D. Cal. Apr. 8, 2014); Reibstein v. Rite Aid

8    Corp., 761 F.Supp.2d 241, 257 (E.D. Penn. 2011); see also Staton v. Boeing Co., 327 F.3d 938,

9    975-77 (9th Cir. 2003).

10    In the findings and recommendations, the Court considered that the range of recovery in

11    this action would be from $93.42 for a class member who worked for 6 months to $1,494.78 for

12    a class member who worked for 6 years.  (ECF No. 27 at 14-15.)  The payout to the FLSA class

13    would range from $31.14 for a collective action member that worked six months to $498.26 for a

14    collective action member who worked seven years.  (Id., 15.)  Accordingly, the least that a

15    member could receive if they belonged to both the class and collective action would be $124.56,

16    and the most that member would be expected to receive if they belonged to both the class and the

17    collective action would be $1,993.04.  The named class members are seeking an incentive

18    payment that ranges from more than 3 to more than 60 times the amount that the putative class

19    members will receive.  Given the significant discounts that were given to the claims, the Court

20    found this raised at least the inference that the named class members could be settling this matter

21    for their benefit at the expense of the unnamed class members.

22    The district judge also addressed the proposed incentive payments to the class

23    representatives finding that it was unclear from the declarations of Plaintiffs Beltran, Martinez,

24    and Rivera the amount of time that they expended in this action and they were directed to file

25    supplemental briefing providing more detailed support for the requested fees.  (ECF No. 29 at 6-

26    7, 9.)  The district judge found that Plaintiffs Obeso Cota and Solorio had adequately set forth

27    their efforts in this action.  (Id., 8-9.)  Plaintiff Obeso Cota spent more than 35 hours on this case

28    and Plaintiff Solorio spent more than 50 hours on this case.  (Id., 7-8.)  Plaintiffs state that

1   Plaintiff Beltran expended approximately 69 hours in this action; Plaintiff Martinez expended 61

2   hours in this action; and Plaintiff Rivera expended approximately 40 hours in this action.  (Suppl.

3   Brief, 12-14.)  Plaintiffs merely cite to the declarations which have been found to be too vague to

4   establish the amount of time that was expended to argue that the incentive payments should be

5   approved.

6        Plaintiffs Beltran, Martinez, Obeso Cota, and Solorio each request an incentive award of

7   $7,500.  (Mot., 23.)  The district judge found that Plaintiffs Obeso Cota and Solorio adequately

8   set forth their efforts in this action and are seeking both their share of the settlement fund and an

9   incentive payment.  Plaintiff Obeso Cota worked for Defendant from July 2013 through October

10  2013, and earned $10.26 per hour.  (Obeso Cota Decl., ¶¶ 3, 4.)  During the pendency of this

11  action Plaintiff Obeso Cota estimates that she expended more than 35 hours on this action and

12  she is seeking approximately $214.00 per hour for that time.  (Id., ¶ 14.)

13       Similarly, Plaintiff Solorio worked for Defendant from July through October 2015, and

14  from July through October 2016.  (Solorio Decl., ¶ 3.)  Plaintiff Solorio estimates that he spent

15  more than 50 hours on this matter.  (Id., ¶ 16.)  Plaintiff Solorio is seeking approximately

16  $150.00 per hour for that time.

17       Plaintiff Beltran worked for Defendant from June 2006 to March 2010 and from May

18  2011 to July 2012.  (Beltran Decl., ¶ 2.)  His hourly wage was approximately $11.17.  (Id.)

19  Plaintiff Beltran spent approximately 4 hours researching class actions and employment law in

20  California after speaking with the attorneys in this action.  (Id., ¶ 9.)  He consulted the attorneys

21  for almost 5 hours discussing his situation, class action lawsuits in general, and what it would

22  mean to be a class representative.  (Id.)  Since becoming involved in this matter he has expended

23  over 23 hours meeting with attorneys regarding the case and fulfilling his obligations as a class

24  representative.  (Id., ¶ 10.)  He spent at least 6 hours review discovery requests, locating

25  documents and providing responses to his attorneys.  (Id., ¶ 11.)  He attended a deposition that

26  lasted at least 5 hours and spent 2 hours preparing for the deposition and 4 hours traveling to and

27  from the deposition.  (Id., ¶ 12.)  After the deposition, he spent 2 hours reviewing the deposition

28  and discussing it with his attorney.  (Id.)  He estimates he spent about 6 hours reviewing the

1  settlement documents and 3 hours asking questions before he signed.  (Id., ¶ 13.)  If this time is

2  not duplicative, Plaintiff Beltran expended 60 hours in this action and is seeking $7,500.00 as an

3  incentive payment.  He is seeking $125.00 per hour for his time.

4        In their supplemental briefing, Plaintiffs argue that Plaintiff Martinez expended

5  approximately 61 hours on this action.  (Suppl. Briefing, 13.)  On review of Plaintiff Martinez'

6  declaration, he asserts that he expended 18 hours in meeting with his attorneys and fulfilling his

7  obligations in this matter.  (Martinez Decl., ¶ 12.)  He spent an additional 13 hours speaking with

8  his attorneys about the case, identifying potential witnesses and providing documents and

9  information.  (Id., ¶ 13.)  He spent 6 hours reviewing document requests, locating documents,

10  and providing responses to his attorney during the discovery phase.  (Id., ¶ 13.)  He attended a

11  deposition that lasted approximately 4 hours, spent 4 hours preparing for the deposition and 1

12  additional hour traveling to and from the deposition.  (Id., ¶ 14.)  After the deposition, Plaintiff

13  Martinez spent 3 hours reviewing the deposition and discussing its content with his attorney.

14  (Id.)  He spent 5 hours reviewing the settlement documents and approximately 4 hours asking

15  questions about the proposed settlement before signing.  (Id., ¶ 15.)  This would equal

16  approximately 58 hours expended on this action if none of these hours are duplicative.  Plaintiff

17  Martinez is seeking $129.00 per hour for the time he expended in this action.

18        Juan Rivera worked for Defendant from October 2006 through September 2015.  (Rivera

19  Decl., ¶ 2.)  He received an hourly wage of approximately 22.18 per hour.  (Id.)  He spent

20  approximately 3 hours investigating wage and hour actions on his own.  (Id., ¶ 10.)  Thereafter,

21  he consulted with the attorneys for almost 4 hours describing his work experiences, the law suit,

22  and what it meant to be a representative in this action.  (Id.)  He spent over 17 hours meeting

23  with the attorneys since becoming involved in this action.  (Id., ¶ 11.)  He spent an additional 9

24  hours speaking with his attorneys and identifying potential witness and procedures.  (Id., ¶ 12.)

25  Plaintiff Rivera spent approximately 5 hours reviewing the settlement documents, and 2 hours

26  asking questions before signing the documents.  (Id., ¶ 13.)  If all this time is not duplicative, it

27  would be 40 hours expended on this action.  Plaintiff Rivera is seeking $3,500.00 as an incentive

28  payment which would be $88.50 dollars per hour.

The district judge found that he was not satisfied that the incentive payments were so disproportionate that they could not be approved. As the parties were previously advised, this Court has previously relied on other cases in this district to award incentive payments ranging from $3,000.00 to 5,000.00 in such actions.[6] At final approval, the named plaintiffs will be required to sufficiently support the proposed incentive payments including submitting declarations that clarify the total, non-duplicative time, they expended in this matter.

6.    Class Release

Initially, one of the issues identified by the state court in denying preliminary approval was the scope of the release of claims for the class members. (See July 18, 2017 Tentative Ruling attached to Law and Motion Minute Order, ECF No. 1-12 at 77 ("The scope of the releases are considerably more broad then the claims alleged in the complaint and will not be permitted."). The settlement agreement now provides that released class claims means,

> means all wage and hour claims, rights, demands, liabilities and causes of action of every nature and description, known and unknown, that were plead or could have been plead based on the factual allegations in the Third Amended Complaint, from July 7, 2011 through the Preliminary Approval date, including, without limitation, any statutory, constitutional, contractual or common law claims for wages (including minimum wage, overtime, and premium wages, and for any failure to pay overtime based on the regular rate of pay), damages, business expenses, or penalties (including waiting time penalties), liquidated damages, punitive damages, interest, restitution, equitable relief, or any other relief, based on any and all applicable statutes (other than the Fair Labor Standards Act, including without limitation the California Labor Code, the California Industrial Welfare Commission wage orders, Labor Code Private Attorneys General Act of 2004 (Cal. Lab. Code §§ 2698, et seq.) ("PAGA"), California Business and Professions Code § 17200, et seq, or other law, including, but not limited to, claims based on the following categories of allegations during the Settled Period: (a) all claims for unpaid overtime; (b) all claims for meal and

---

[6] See Gonzalez v. Harris Ranch Beef Co., No. 1:14-CV-00038-LJO, 2015 WL 4964794, at *5 (E.D. Cal. Aug. 19, 2015), report and recommendation adopted in part, rejected in part, No. 1:14-CV-00038-LJO, 2015 WL 5173524 (E.D. Cal. Sept. 3, 2015) (awarding $2,500 to class representative); Valdez v. Neil Jones Food Co., No. 1:13-CV-00519-SAB, 2016 WL 4247911, at *14 (E.D. Cal. Aug. 10, 2016); Monterrubio v. Best Buy Stores, L.P., 291 F.R.D. 443, 462-63 (E.D. Cal. 2013) (awarding class representative $2,500 where action settled for $400,000.00 and each class member will receive $65.79); Wolph v. Acer America Corporation, No. C 09-01314 JSW, 2013 WL 5718440, at *6 (N.D. Cal. Oct. 21, 2013) (reducing incentive award to $2,000 where named representatives did not demonstrate any great risk to either finances or reputation in bringing the class action); Rigo v. Kason Industries, Inc., No. 11-cv-64-MMA(DHB), 2013 WL 3761400, at *8 (S.D. Cal. July 16, 2013) (finding $2,500 incentive award for more than two years of service well within the acceptable range); Vinh Nguyen v. Radient Pharmaceuticals Corp., No. SACV 11-00406 DOC (MLGx), 2014 WL 1802293 (C.D. Cal. May 6, 2014) (approving $2,000 for class representatives where settlement was reached after discovery was completed, class representatives participated in depositions, and class settled for $2.5 million).

28

rest period violations; (c) all claims for unpaid minimum wages; (d) all claims for untimely payment of wages upon termination; (e) all claims for untimely payment of wages during employment; (f) all claims for failure to pay wages; (g) all claims for failure to provide accurate or otherwise proper itemized wage statements; (h) all claims for failure to keep complete and accurate payroll records; (i) all claims for failure to reimburse necessary business-related expenses and costs; (j) all claims asserted, or which could have been asserted, under PAGA arising out of the aforementioned claims; (k) all claims asserted through California Business & Professions Code § 17200 et seq. arising out of the aforementioned claims; and (l) all other claims for penalties, liquidated damages, punitive damages, interest, attorneys' fees, litigation costs, restitution, equitable relief, or additional damages that allegedly arise out of the aforementioned claims.  For consideration provided by the Settlement, Released Class Claims specifically include the release and waiver of any and all claims, rights, or benefits that a Class Member may have under California Civil Code Section 1542 relating to any claims described in this Paragraph, which provides:

A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS THAT THE CREDITOR OR RELEASING PARTY DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE AND THAT, IF KNOWN BY HIM OR HER, WOULD HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR OR RELEASED PARTY.

(Fourth Amended Settlement Agreement, I.31.)

The FLSA released claims means:

"Released FLSA Claims" means any and all claims, debts, liabilities, demands, obligations, penalties, guarantees, costs, expenses, attorneys' fees, damages, action or causes of action of whatever kind or nature under the Fair Labor Standards Act, whether known or unknown, foreseen or unforeseen, arising out of or related to any and all facts, transactions, events, policies, occurrences, acts, disclosures, statements, omissions or failures to act, as of and including the Effective Date of this Agreement, which are or could be raised in the Action.  For consideration provided by the Settlement, Released FLSA Claims specifically include the release and waiver of any and all claims, rights, or benefits that a Participating FLSA Member may have under California Civil Code Section 1542 relating to any claims described in this Paragraph, which provides:

A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS THAT THE CREDITOR OR RELEASING PARTY DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE AND THAT, IF KNOWN BY HIM OR HER, WOULD HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR OR RELEASED PARTY.

(Id., II.32.)

The settlement agreement now provides that the claims released fall within the scope of the allegations raised in the complaint and is limited to such claims.  The Court finds that concerns regarding the released claims have been addressed as the parties have narrowed the

1   claims to those wage and hour claims that could have been raised in the third amended

2   complaint.

3        7.    The Settlement Falls Within the Range of Possible Approval

4        The Court finds that reviewing the settlement agreement as a whole it falls within the

5   range of possible approval and recommends that the settlement agreement be approved for the

6   FLSA collective action and Rule 23 class action.

7   **D.    Attorney Fees**

8        Counsel seeks an award of attorneys' fees in the amount of thirty-five percent (35%) of

9   the Maximum Settlement Amount.[7]   (Fourth Amended Settlement Agreement, III.5.)   This

10  amount is not *per se* excessive, however, the Court is not likely to approve an amount over the

11  Ninth Circuit's benchmark of twenty-five percent (25%) absent a showing that counsel achieved

12  extraordinary results or otherwise prove they are entitled to such an amount.

13       In assessing the whether the relief provided the class is adequate, the Court is to consider

14  "the terms of any proposed award of attorney's fees, including timing of payment." Fed. R. Civ.

15  P. 23(e)(2)(C)(iii).  Here, the Agreement provides that class counsel may petition the Court for

16  attorney's fees of not more than $1,575,000.00, which the court finds to be in excess of thirty

17  five percent of the gross settlement fund, and costs and expenses not to exceed $65,000.00.

18  (Fourth Amended Settlement Agreement, III.5.)

19       Federal Rule 23(h) provides that "[i]n a certified class action, the court may award

20  attorney's fees and nontaxable costs that are authorized by law or by the parties' agreement."

21  The Ninth Circuit has affirmed the use of two separate methods of calculating attorney's fees,

22  depending upon the case.  Hanlon, 150 F.3d at 1029.  "In 'common-fund' cases where the

23  settlement or award creates a large fund for distribution to the class, the district court has

24  discretion to use either a percentage or 'lodestar method.' "  Id.  In the Ninth Circuit, courts

25  typically utilize twenty-five percent of the common fund as the "benchmark" for a reasonable fee

26  award, with adjustments provided there is adequate explanation in the record for any special

27

28  [7] Although as the Court noted above, when you consider that Defendant's share of the payroll taxes are being paid from the gross settlement fund the amount sought is in excess of thirty-five percent.

1   circumstances that justify departure.   In re Bluetooth, 654 F.3d at 942.   The usual range for
2   common fund attorney fees are between twenty to thirty percent.   Vizcaino v. Microsoft Corp.,
3   290 F.3d 1043, 1047 (9th Cir. 2002).

4          The "lodestar" method is typically used where the benefit received by the class is
5   primarily injunctive in nature, and therefore, monetary benefit is not easily calculated.   In re
6   Bluetooth, 654 F.3d at 941.   The "lodestar" approach calculates attorney fees by multiplying the
7   number of hours reasonably expended by a reasonable hourly rate.   Gonzalez v. City of
8   Maywood, 729 F.3d 1196, 1202 (9th Cir. 2013); Camacho v. Bridgeport Fin., Inc., 523 F.3d 973,
9   978 (9th Cir. 2008).   Since the benefit to the class is easily calculated in a common find case,
10  courts may award a percentage of the common fund rather than engaging in a "lodestar" analysis
11  to determine the reasonableness of the fee request.   In re Bluetooth, 654 F.3d at 942.   When
12  applying the percentage of the common fund method in calculating attorney fees, courts use the
13  "lodestar" method as a crosscheck to determine the reasonableness of the fee request.   See
14  Vizcaino, 290 F.3d at 1050.   "This amount may be increased or decreased by a multiplier that
15  reflects any factors not subsumed within the calculation, such as 'the quality of representation,
16  the benefit obtained for the class, the complexity and novelty of the issues presented, and the risk
17  of nonpayment.' "   Adoma v. Univ. of Phoenix, Inc., 913 F. Supp. 2d 964, 981 (E.D. Cal. 2012)
18  (quoting In re Bluetooth, 654 F.3d at 942).

19         Plaintiffs are forewarned that the Court will not grant an upward departure from the 25%
20  "benchmark" for a reasonable fee award unless, at final approval, Plaintiffs present compelling
21  evidence supporting such a departure.   This appears to be relatively straight forward wage and
22  hour case and lacks a complexity which may justify a higher than benchmark rate, and presently,
23  counsel have not demonstrated the achievement of exceptional results that would justify a
24  departure, particularly in light of the steep discounts from the original valuations and that there
25  have been three separate motions for preliminary approval filed in the four years since the parties
26  agreed to settle this action.   However, counsel can and should show otherwise at the final
27  settlement proceeding if a greater rate is sought.

28         Therefore, given the award can be determined at the final approval hearing, there is no

1  longer any express clear sailing agreement, and given any reduction in the award will revert back

2  to the funds available for the class members, the Court finds this aspect of the agreement is fair,

3  reasonable, and adequate for purposes of preliminary approval.  See Millan, 310 F.R.D. at 613

4  (despite concerns regarding the anticipated request for attorney's fees based on one-third of the

5  net settlement fund despite the twenty-five percent (25%) benchmark, stating "the Court need not

6  resolve this matter at the preliminary approval stage, since the propriety of the fee request is an

7  issue that can be determined at the Final Fairness Hearing," and that "Plaintiffs' counsel should

8  be mindful of this issue and should be prepared to present a lodestar calculation in connection

9  with their motion for attorneys' fees and for final approval.").

10          Counsel argues that the lodestar will support the fees requested.  However, as counsel

11  was previously advised, the Court is concerned here regarding the possibility of duplication of

12  fees due to the numerous duplicative motions for preliminary approval that have been filed, the

13  number of counsel seeking reimbursement, and the length of the time this matter has been

14  proceeding since the parties agreed to settle the matter.  See Moreno v. City of Sacramento, 534

15  F.3d 1106, 1112 (9th Cir. 2008) (hours for unnecessary duplicative work may be deducted from

16  a fee request).  At the final approval hearing, the Court will employ the lodestar method as a

17  cross check on the percentage method to ensure a failure and reasonable result.  Alberto v.

18  GMRI, Inc., 252 F.R.D. 652, 668 (E.D. Cal. 2008).  Therefore, counsel is advised that in

19  submitting the final approval of class action settlement they will be required to provide a

20  thorough fee award petition that details the hours reasonably spent representing Plaintiffs with

21  sufficient specificity for the Court to evaluate the hours expended in this action.  The parties are

22  further advised that to support an expense award, Plaintiffs should file an itemized list of

23  expenses by category and the total amount advanced for each category, allowing the Court to

24  assess whether the expenses are reasonable."  Flores v. TFI Int'l Inc., No. 12-CV-05790-JST,

25  2019 WL 1715180, at *11 (N.D. Cal. Apr. 17, 2019).  At final approval counsel will also be

26  required to provides receipts to support their claimed expenses.  Flores, 2019 WL 1715180, at

27  *11.

28  / / /

1        **E.      The Proposed Class Notice and Settlement Administration**

2        For proposed settlements under Rule 23, "the court must direct notice in a reasonable

3   manner to all class members who would be bound by the proposal."  Fed. R. Civ. P. 23(e)(1);

4   see also Hanlon, 150 F.3d at 1025 ("Adequate notice is critical to court approval of a class

5   settlement under Rule 23(e).").  For a "class certified under Rule 23(b)(3)— or upon ordering

6   notice under Rule 23(e)(1) to a class proposed to be certified for purposes of settlement under

7   Rule 23(b)(3)—the court must direct to class members the best notice that is practicable under

8   the circumstances, including individual notice to all members who can be identified through

9   reasonable effort."  Fed. R. Civ. P. 23(c)(2)(B).  The notice may be by one or more of the

10  following methods: United States mail, electronic means, or other appropriate means.  Id.  The

11  "notice must clearly and concisely state in plain, easily understood language: (i) the nature of

12  the action; (ii) the definition of the class certified; (iii) the class claims, issues, or defenses; (iv)

13  that a class member may enter an appearance through an attorney if the member so desires; (v)

14  that the court will exclude from the class any member who requests exclusion; (vi) the time and

15  manner for requesting exclusion; and (vii) the binding effect of a class judgment on members

16  under Rule 23(c)(3)."  Id.  A class action settlement notice "is satisfactory if it generally

17  describes the terms of the settlement in sufficient detail to alert those with adverse viewpoints to

18  investigate and to come forward and be heard."  Churchill Vill., LLC v. Gen. Elec., 361 F.3d

19  566, 575 (9th Cir. 2004) (internal quotations and citations omitted).

20        1.      Notice Packet

21        In the findings and recommendations, the Court noted several errors in the notice for the

22  class action that the parties have now corrected.  (See Findings and Recommendations, 21.)

23        Plaintiffs argue, and the Court agrees that the substance of the notice packet is sufficient

24  in that it provides information on: (1) the nature of the lawsuit; (2) the definition of the class and

25  the proposed FLSA collective; (3) the terms of the settlement; (4) information regarding the

26  hybrid nature of the action and the claims involved in the action; (5) the scope of the released

27  claims; (6) the binding effect of the settlement; (7) the consequences of opting into the FLSA

28  collective to participate in the FLSA settlement and receive payment; and (8) the allocations for

attorney fees and costs, incentive awards, and settlement administration costs.   (Mot. 30.)

Further, each class member's claim form and the FLSA form will state the number of

workweeks and estimated class settlement share or estimated FLSA settlement share.  (Mot.,

30.)  The notice packet also summarizes the proceedings and will provide the date, time, and

place of the final approval hearing.  (Notice of Class Action Settlement, ECF No. 41 at 39-46;

Notice of FLSA Settlement, ECF No. 41 at 48-54.)  Finally, the Court also agrees that the notice

provides a brief, neutral explanation of the case from the perspective of both parties; recognizes

that the Court has not granted final approval of the settlement; and sets forth the procedures and

deadlines governing the submission of class claim forms, FLSA forms, requests for exclusion,

notices of objections, and disputes regarding the number of workweeks credited to class

members and proposed FLSA collective members.  (Mot., 31.)

The district judge required the parties to revise the notice to make it more clear that a

person who is potentially part of both the FLSA collective action and Rule 23 class action may

receive multiple checks.  (Order re Suppl. Briefing, 17.)  The parties have amended the class

action notice to add: "

> This Non-FLSA Payment check relates only to the Class Settlement.  You will
> potentially receive a second check if you are also a member of the FLSA
> Settlement mentioned above which is explained in the Notice of FLSA
> Settlement.  You will receive a Notice of FLSA Settlement if you are a potential
> member of the proposed collective.

(ECF No. 41 at 42.)

The FLSA collective action notice was amended to add:

> This FLSA Payment check relates only to the FLSA Settlement.  You will
> potentially receive a second check if you are also a member of the Class
> Settlement mentioned above which is explained in the Notice of Class Action
> Settlement.  You will receive a Notice of Class Action Settlement if you are a
> potential member of the proposed class.

(Id. at 50.)

The FLSA collective action notice has now been revised to inform the potential FLSA

members of the collective action and the manner in which they may opt into the collective

action to obtain their share of the settlement.  The notice states, "To receive a payment under the

FLSA Settlement, you need to "opt-in" to become a Participating FLSA Member" and describes

1   the methods by which a member can opt into the settlement.  (ECF No. 41 at 49.)

2          The Court finds that the notice is now sufficient and recommends that the Notice of

3   Class Action Settlement and Notice of FLSA Settlement be approved.

4          2.      Manner of Notice

5          Plaintiffs contend that all class members can be identified by Defendant through a review

6   of its business records.  (Mot. 31.)  Initially, the third amended settlement agreement provided

7   that within thirty days of preliminary approval of the settlement, Defendant will provide the class

8   list to the settlement administrator.  (Third Amended Settlement Agreement, ¶ 11.)  Within ten

9   calendar days of receipt of the class list, the settlement administrator will translate the notice

10  packet into Spanish and will mail a English and Spanish version of the notice packet to all class

11  members and potential FLSA collective action member via first class United States mail using

12  the most current, known mailing address identified in the class list.  (Id., ¶ 12.)  Prior to mailing

13  the notice packet, the settlement administrator will perform a search based on the National

14  Change of Address Database for information to update and correct any known or identifiable

15  address changes.  (Id., ¶ 13.)  If any notice packet is returned as undeliverable on or before the

16  response deadline, the settlement administrator will promptly re-mail it to any forwarding

17  address provided.  (Id.)  If no forwarding address is provided, the settlement administrator

18  promptly attempt to determine the correct mailing address using skip trace or other search using

19  the name, address, and social security number of the member and will perform a single

20  remailing.  (Id.)

21         The Court raised the concerned the that the mailing of a single notice would not be

22  sufficient to inform the class members of the pendency of this action.  Notably, this action was

23  filed in 2015 and the class period covers employees from July 7, 2011 to final judgment.  Based

24  on the evidence in the record, Defendant is involved the food and agri-business and the putative

25  class members include seasonal employees who worked for short periods of time.  (Obeso Cota

26  Decl., ¶ 3, ECF No. 25-2 at 39; Solorio Decl., ¶ 3, ECF No. 25-2 at 46; see also Decl. of Ryan

27  Williams in Support of Pl.'s Renewed Mot. for Preliminary Approval of Class Action

28  Settlement, ¶ 8, ECF No. 1-15 at 4.)  Given the nature of the workforce and that the class

includes all non-exempt employees that have worked since July 2011, a period of almost ten years, it appears likely there will be a large percentage of employees that will have moved and mailing may not be the best notice that is practicable under the circumstances.

Recently the Ninth Circuit held a single mailed notice, along with the placement of information posters in the buildings where employees worked, was not the best practicable under the circumstances, finding "it particularly problematic that, despite concerns that former employees in particular might be difficult to reach by mail, the settlement provided no other means of reaching former employees," and "when at least 12% of the mailed notices were ultimately determined to be undeliverable—meaning those class members had not received notice—still no additional means of notice reasonably calculated to reach those class members was attempted." Roes, 944 F.3d at 1046.  In Roes, the class members were former and current employees in adult entertainment clubs, and "[a]lthough the mailed notice was supplemented with posters that were hung in the defendant night clubs, those posters were likely to be seen only by class members who were still working at the nightclubs, and those class members are also the precise group of people for whom the defendants likely had a current address such that mail notice could successfully be effected." Id.  Further, "[a]s to those former employees for whom the claims administrator *was* able to identify a valid address, the lack of reminder notices is particularly relevant, given that the posters would serve no function." Id. at 1047.  The Ninth Circuit held that "[i]n sum, the notice process was not 'reasonably calculated, under all the circumstances,' to apprise all class members of the proposed settlement, because the 'circumstances' included the district court's and parties' belief that class members were 'transient' and thus might be difficult to reach by mail, and the posters also were not reasonably calculated to reach all of the absent class members who could not be notified by mail or to serve as a reminder to those who did receive the single mailed notice." Id.

The parties met and conferred and have revised the notice manner of notice in the fourth amended settlement agreement.  The parties contend that the manner of notice of the settlement agreement is the best notice practicable as it now provides that the notice packet shall be mailed to the last known address of each class or collective action member, a follow up mailing of a

reminder card will be sent approximately halfway through the opt in period for those who have not yet opted into the FLSA collective action, and a mobile phone accessible settlement website will be established containing information on the settlement.  (ECF No. 38 at 8.)  The settlement website shall be included on the notice mailed to the putative members and will also be sent by way of an email and text blast to the known or last known cell phone number or email address. (Id.)

The fourth amended settlement agreement provides that the settlement administrator shall mail a notice packet in English and Spanish to the most current, known mailing address identified in the class list.  (Fourth Amended Settlement Agreement, III.12.)  The settlement administrator shall also establish a website that is accessible to the public on the internet in a mobile friendly format that contains links to PDF files that may be printed or downloaded containing the settlement agreement, notice packet and FLSA opt in form in English and Spanish, and the final approval order once entered.  (Id.)  To the extent that defendant is in possession of cellphone numbers and email addresses, a message will be "blast" texted and emailed to the putative class and collective action members advising them of the settlement website. (Id.)

The Court finds that the settlement agreement provides the best notice possible under the circumstances that is reasonably calculated to inform the putative members of the settlement of the class and collective actions.

### F.     Notice to the LWDA

The findings and recommendations found that the motion for preliminary approval was deficient because it did not address notice to the LWDA.

Civil penalties recovered under PAGA are distributed between the aggrieved employees (25%) and the LWDA (75%).  Cal. Labor Code § 2699(i).  Any settlement of PAGA claims must be approved by the Court.  Cal. Labor Code § 2699(l).  The proposed settlement must also be sent to the agency at the same time that it is submitted to the court.  Cal. Labor Code § 2699(l)(2).  The settlement agreement provides that $150,000.00 shall be designated to the settlement of the PAGA claims.  (Fourth Amended Settlement Agreement, ¶ III(8).)

1    In their objections to the findings and recommendations, Plaintiffs submitted the

2  declaration of counsel which states that the motion for preliminary approval of the class action

3  settlement was submitted to the LWDA on April 14, 2020. (Aiwazian Suppl. Decl., ¶ 58, ECF

4  No. 28-1.) The district court found that Plaintiffs had demonstrated that the LWDA had been

5  served with notice of the settlement. (Order Re Suppl. Briefing, 17.) The LWDA has not filed

6  an objection to the terms of the settlement.

7    **G.    Cy Press Beneficiary**

8    The settlement agreement provides that all funds from uncashed checks are to be

9  transmitted to the United Way. The findings and recommendations found that Plaintiffs had not

10 demonstrated that the United Way was an appropriate *cy pres* beneficiary. C*y pres* distribution

11 allows the distribution of unclaimed funds to indirectly benefit the entire class. <u>Six Mexican</u>

12 <u>Workers v. Arizona Citrus Growers</u>, 904 F.2d 1301, 1305 (9th Cir. 1990). This requires the *cy*

13 *pres* award to qualify as "the next best distribution" to giving the funds directly to the class

14 members. <u>Dennis v. Kellogg Co.</u>, 697 F.3d 858, 865 (9th Cir. 2012). "Not just any worthy

15 charity will qualify as an appropriate *cy pres* beneficiary[,]" there must be "a driving nexus

16 between the plaintiff class and the *cy pres* beneficiary." <u>Dennis</u>, 697 F.3d at 865 (quoting

17 <u>Nachshin v. AOL, LLC</u>, 663 F.3d 1034, (9th Cir. 2011)). The choice of distribution options

18 should be guided by the objective of the underlying statute and the interests of the class

19 members. <u>Six Mexican Workers</u>, 904 F.2d at 1307.

20   The district court found that Plaintiffs objections sufficiently demonstrated the required

21 nexus and had sufficiently supported the United Way as a *cy pres* beneficiary in this matter.

22 (Order Re Suppl. Briefing, 17.)

23   **H.    Class Representatives**

24   Plaintiffs Beltran, Martinez, Obeso Cota, Solorio and Rivera seek to be appointed as

25 representatives for the class. (Mot., 3.) "Adequate representation depends upon 'an absence of

26 antagonism [and] a sharing of interests between representatives and absentees.' " <u>Radcliffe v.</u>

27 <u>Experian Info. Sols. Inc.</u>, 715 F.3d 1157, 1165 (9th Cir. 2013) (quoting <u>Molski</u>, 318 F.3d at

28 955).

1       Based upon review of the record, Plaintiffs appear to share common injuries and possess
2   the same interest as the unnamed class members.  Plaintiffs do not appear to have any interests
3   that are antagonistic to the class.  Accordingly, the Court shall recommend that Plaintiffs
4   Beltran, Martinez, Obeso Cota, Solorio and Rivera be appointed as representatives for the class
5   and collective actions.

6   **I.      Class Counsel**

7       Originally, counsel Edwin Aiwazian, Arby Aiwazian, and Goanna Gosh of Lawyers for
8   Justice, PC; counsel Joseph Lavi and Vincent Granberry of Lavi and Ebrahimian L.L.P; and
9   counsel Sahag Majarian, II of Law Offices of Sahag Majarian, II sought to be appointed as class
10  counsel.  (Mot., 3.)   In the current briefing, the parties have agreed that counsel Edwin
11  Aiwazian, Arby Aiwazian, and Goanna Gosh of Lawyers for Justice, PC shall be appointed as
12  counsel for the class and collective action.

13      Edwin Aiwazian has been practicing in the area of class action other complex cases
14  since he obtained his license to practice law in December of 2004.  (Aiwazian Decl., ¶ 4, ECF
15  No. 25-1.)  Lawyers for Justice, PC has been almost exclusively focused on the prosecution of
16  consumer and employment class actions since it's inception around October of 2008.  (Id., ¶ 6.)
17  In April 2020, they were the attorney of record in over a dozen employment related class actions
18  in both state and federal court and had successfully litigated cases involving overtime
19  exemptions and minimum wage and overtime compensation requirement under California law.
20  (Id.)

21      The Court recommends appointing counsel Edwin Aiwazian, Arby Aiwazian, and
22  Goanna Gosh of Lawyers for Justice, PC as counsel for the class and collective action.

23  **J.      Settlement Administrator**

24      The parties have selected, and seek approval of, Simpluris, Inc. ("Simpluris") as the
25  Settlement Administrator to handle the notice and administration of the settlement.  Simpluris
26  will format, print, and mail a notice packet (in English and Spanish) to each class member and
27  proposed FLSA collective member; will receive, review, and process claim forms, requests for
28  exclusion, notices of objection, and written disputes regarding workweeks.   (Mot., 31.)

Simpluris will calculate estimated class settlement shares, estimated FLSA settlement shares, individual class payments, and individual FLSA payments; will withhold applicable taxes and withholdings; prepare and transmit necessary tax documentation and filings; and transmit all required payments, handle inquiries from class members and perform any usual and customary duties for administering the class action and collective action settlement agreement.  (Id., 31-32; Fourth Amended Settlement Agreement, II.38, 39.)  Settlement administration costs are currently estimated to be $45,000.00, and will be paid out of the gross settlement fund.  (Id., II.39.)

The Court recommends that Simpluris be approved as settlement administrator in this matter.

## VI.

## CONCLUSION AND RECOMMENDATION

For the reasons discussed above, the Court finds that viewing the settlement agreement in its totality demonstrates that the settlement is fair and reasonable.

Accordingly, IT IS HEREBY RECOMMENDED that:

1. The joint motion for preliminary approval of the class action and collective action settlement, filed April 13, 2020, be GRANTED;

2. For the purposes of settlement, the following Rule 23 class be conditionally certified:

> All persons who were employed by Olam West Coast, Inc. ("Defendant") in a position that Defendant classified as non-exempt and/or hourly non-exempt and worked in that capacity at Defendant's Fresno, Firebaugh, Hanford, Lemoore, Gilroy and/or Williams facilities in California and for which Class Members and FLSA Members were paid on a non-exempt basis ("Covered Position"), at any time during the period from July 7, 2011 to the date the Court enters this Order ("Settled Period"), or the estates of such individuals.

3. For purposes of settlement the following collective action be conditionally certified:

> All persons who were employed by Olam West Coast, Inc. (Defendant") at Defendant's Fresno, Firebaugh, Hanford, Lemoore, Gilroy, and/or Williams locations in one or more positions which were classified as non-exempt and/or hourly non-exempt at any time during the period from July 7, 2011 to [the date on which the Court grants preliminary approval of the Settlement] ("FLSA Members").

4.      Plaintiffs Thomas Beltran, Mario Martinez, Mario Claudia Obeso Cota, Juan Rivera, and Alexander Solorio be appointed as representatives of the class action;

5.      Edwin Aiwazian, Arby Aiwazian, and Joanna Ghosh of Lawyers for Justice, PC be appointed as class counsel;

6.      Simpluris, Inc. be appointed as the settlement administrator; and

7.      The Rule 23 class action notice, FLSA collective action notice, Rule 23 class action request for exclusion, and FLSA collective action opt in forms be approved.

This findings and recommendations is submitted to the district judge assigned to this action, pursuant to 28 U.S.C. § 636(b)(1)(B) and this Court's Local Rule 304.  Within **fourteen (14) days** of service of this recommendation, any party may file written objections to this findings and recommendations with the court and serve a copy on all parties.  Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  The district judge will review the magistrate judge's findings and recommendations pursuant to 28 U.S.C. § 636(b)(1)(C).  The parties are advised that failure to file objections within the specified time may result in the waiver of rights on appeal.  Wilkerson v. Wheeler, 772 F.3d 834, 839 (9th Cir. 2014) (citing Baxter v. Sullivan, 923 F.2d 1391, 1394 (9th Cir. 1991)).

IT IS SO ORDERED.

Dated:   **June 4, 2021**

_____
UNITED STATES MAGISTRATE JUDGE