# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| THOMAS BELTRAN, et al., | Case No.  1:18-cv-01676-JLT-SAB |
| Plaintiffs, | FINDINGS AND RECOMMENDATIONS RECOMMENDING GRANTING MOTION |
| v. | FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT AND GRANTING |
| OLAM SPICES AND VEGETABLES, INC., | MOTION FOR ATTORNEYS' FEES, COSTS, AND INCENTIVE AWARDS IN |
| Defendant. | PART WITH REDUCTION IN FEES, COSTS, AND AWARDS |
| | (ECF Nos. 58, 60, 63) |
| | **OBJECTIONS DUE WITHIN FOURTEEN DAYS** |

## I.

## INTRODUCTION

Plaintiffs bring this action on behalf of themselves and others similarly situated against Defendant Olam Spices and Vegetables, Inc., alleging various wage and hour violations under California state law, and claims under the Fair Labor Standards Act, 29 U.S.C. § 201 *et seq.* ("FLSA").  Currently before the Court is Plaintiffs' motions for final approval of a class and collective action settlement, and Plaintiffs' motion for attorneys' fees, costs, and incentive awards.  (ECF Nos. 58, 60.)  The Court held a hearing on the motion on January 25, 2023. Having considered the moving papers, the declarations and exhibits attached thereto, the

1   arguments presented at the January 25, 2023 hearing, the late-filed declaration of the settlement

2   administrator, as well as the Court's file, the Court issues the following findings and

3   recommendations recommending granting Plaintiffs' motion for final approval of the class and

4   collective action settlement, and granting in part Plaintiffs' motion for fees, costs, and incentive

5   awards, with a reduction in the requested fees, costs, and awards.

6                                              **II.**

7                                       **BACKGROUND**

8        **A.      Procedural History**

9        The proposed settlement resolves litigation initiated by the filing of four (4) separate

10   cases: <u>Thomas Beltran, et al. v. Olam Spices and Vegetables, Inc.</u>, Superior Court of California,

11   for the County of Alameda, Case No. RG15776976, which was filed on July 7, 2015, and

12   subsequently transferred to the Superior Court of California, for the County of Fresno, Case No.

13   15CECG02993, and then removed to United States District Court for the Eastern District of

14   California and initially assigned Case No. Case No. 1:18- cv-01676-NONE-SAB ("<u>Beltran</u>

15   Action"); <u>Maria Claudia Obeso Cota v. Olam West Coast, Inc.</u>, Superior Court of California, for

16   the County of Sonoma, Case No. SCV257741, which was filed on September 15, 2015, and

17   subsequently transferred to the Superior Court of California, for the County of Fresno, Case No.

18   16CECG00081 ("<u>Cota</u> Action"); <u>Alexander Solorio v. Olam West Coast, Inc.</u>, Fresno County

19   Superior Court, Case No. 16CECG00513, filed on February 18, 2016 ("<u>Solorio</u> Action"); and

20   <u>Juan Rivera, et al. v. Olam West Coast, Inc.</u>, Santa Clara County Superior Court Case No.

21   16CV300758, filed on October 6, 2016 ("<u>Rivera</u> Action").[1]  Plaintiffs Maria Claudia Obeso Cota

22   ("Cota") and Alexander Solorio ("Solorio"), are represented by Lavi & Ebrahimian, LLP

23   ("L&E") and Law Offices of Sahag Majarian II ("Majarian").  Plaintiffs Thomas Beltran

24   ("Beltran"), Mario Martinez ("Martinez"), and Juan Rivera ("Rivera"), are represented by

25   Lawyers *for* Justice, PC ("LFJ").[2]

---

[1]  A more detailed summary and review of the procedural history underlying the separate actions is contained in the
Court's prior recommendation, which the Court incorporates by way of reference.  (ECF No. 27 at 2-4.)

[2]  As stated in the Settlement Agreement, the Parties agreed, for the sake of efficiency and ease, that Lawyers *for*
Justice, PC will be appointed as counsel for the Class and FLSA Members and identified as such in the Class Notice

On March 14, 2018, the parties filed a stipulation agreeing to granting Plaintiffs' leave to file a third amended class action complaint ("TAC") in the Beltran Action.  (Joint Stip. Granting Pls. Leave to File TAC, ECF No. 1-13 146-191.)   The stipulation was granted and the third amended complaint was filed on April 11, 2018, adding Plaintiffs Cota, Solorio, and Rivera, as well as previous and now deceased plaintiff Ramirez, as named plaintiffs, and added one cause of action under the Private Attorneys General Act, California Labor Code section 2698, *et seq.* ("PAGA") and two causes of action under the Fair Labor Standards Act ("FLSA").  (Pls.' Mem. P. & A. Supp. Mot. Final Approval ("Mot.") 9, ECF No. 58; ECF No. 1-13 at 194-197; TAC, id. at 214-253.)

On June 26, 2018, Plaintiffs filed a renewed motion for preliminary approval of the class action settlement.  (ECF No. 1-14 at 27-357.)  The parties were provided with the opportunity to file supplemental briefing, and supplemental briefing was filed.  (ECF No. 1-15 at 23; Def. Olam West Coast Inc. Req. Judicial Notice Supp. Pls.' Renewed Mot. Preliminary Approval, ECF No. 1-15 at 33-90; Decl. of Ryan Williams, ECF No. 1-16 at 2-348; Suppl. Brief Supp. Pls.' Renewed Mot. Preliminary Approval, ECF No. 1-17 at 3-ECF No. 1-19 at 22.)  On October 25, 2018, a hearing on the motion was held and the motion for preliminary approval was continued to allow the parties to file supplemental briefing.[3]  (ECF No. 1-19 at 25.)

On December 10, 2018, after the initial state court hearing on the renewed motion for preliminary approval but prior to the continued hearing date, Defendant removed the Beltran Action to the Eastern District of California.  (ECF No. 1.)  On December 11, 2018, an order issued setting a mandatory scheduling conference for February 12, 2019.  (ECF No. 4.)  After receiving several extensions of the mandatory scheduling conference, the parties filed a joint

---

to the Class Members and FLSA Notice to the FLSA Members, but that all Plaintiffs' Counsel will cooperate to implement the Settlement and the attorneys' fees and costs award provided for by the Settlement will be sought on behalf of Plaintiffs' Counsel.  (Pls.' Mem. P & A. Supp. Atty. Fees ("Mot. Fees") at 7, ECF No. 60.)

[3] The current motion again states that the state court denied the motion for preliminary approval, however as noted in the first issued findings and recommendations, (ECF No. 27 at 4 n.1), the minute order continued the hearing on the motion for supplemental briefing, and there appears no order otherwise addressing the motion.  The Court previously further noted that on December 5, 2018, the parties filed a stipulation to continue the hearing from January 3, 2019 to January 23, 2019, contrary to Plaintiff's contention that the motion for preliminary approval was denied on October 25, 2018.  (ECF No. 1-19 at 32-33.)

scheduling report on October 29, 2019.  (ECF Nos. 9, 11, 14, 16.)  On October 31, 2019, upon review of the joint report, all pending dates in this matter were vacated and the parties were ordered to file a motion for preliminary approval of the class action settlement on or  before December 11, 2019, and the Court indicated that it was not likely to grant any further continuances due to the age of this action.  (ECF No. 18.)

On December 13, 2019, Plaintiffs filed a suggestion of death of Plaintiff Mariana Ramirez.  (ECF No. 19.)  On December 16, 2019, a joint statement regarding the death of Mariana Ramirez was filed.  (ECF No. 20.)  On the same date, the Court issued an order requiring the parties to show cause why sanctions should not issue for the failure to file the motion for preliminary approval.  (ECF Nos. 20, 21.)  On December 17, 2019, in light of the joint statement, the order to show cause was discharged, and the parties were ordered to file a motion for preliminary approval by April 13, 2020.  (ECF No. 22.)  On April 8, 2020, an order issued dismissing Plaintiff Mariana Ramirez pursuant to Rule 25 of the Federal Rules of Civil Procedure.  (ECF No. 24.)

On April 13, 2020, a motion for preliminary approval of a class and collective action settlement was filed in this matter.  (ECF No. 25.)  On May 27, 2020, Defendant filed a statement of non-opposition to the motion for preliminary approval.  (ECF No. 26.)  On June 2, 2020, findings and recommendations issued recommending denying the motion for preliminary approval and setting forth specific deficiencies with the motion.  (ECF No. 27.)  On June 23, 2020, Plaintiffs filed objections to the findings and recommendations.  (ECF No. 28.)  On December 30, 2020, the district judge directed Plaintiffs to file supplemental briefing and documentation within thirty days.  (ECF No. 29.)  On January 28, 2021, Plaintiffs filed a supplemental brief.  (ECF No. 30.)  On March 9, 2021, Plaintiffs' motion for preliminary approval of a class and collective action settlement was re-referred to the magistrate judge for further consideration in light of supplemental briefing filed.  (ECF No. 31.)

On March 23, 2021, an order issued setting a hearing on the motion for preliminary approval and providing the parties with the opportunity to file additional supplemental briefing. (ECF No. 32.)  On April 5, 2021, Plaintiff filed a supplemental brief requesting a two week

1   extension of time to present further supplemental briefing to address the issues of the opt-in

2   procedure for the FLSA class, the notice to the class, and class counsel.  (ECF No. 34.)  On April

3   6, 2021, an order issued granting the request, continuing the hearing until April 28, 2021, and

4   extending the time to file supplemental briefing to April 21, 2021.  (ECF No. 35.)  On April 21,

5   2021, a stipulation was filed to further extend time to file supplemental briefing.  (ECF No. 36.)

6   The stipulation was granted, the deadline to file supplemental briefing was extended until May

7   12, 2021, and the hearing on the motion was continued until May 19, 2021.  (ECF No. 37.)

8           On May 12, 2021, the parties filed a joint brief further requesting an extension of time to

9   file supplemental briefing.  (ECF No. 38.)  On May 13, 2021, the Court issued an order requiring

10  the executed settlement agreement be filed on or before May 21, 2021, and continuing the

11  hearing on the motion until June 2, 2021.  (ECF No. 39.)  On May 21, 2021, a fourth amended

12  settlement agreement was filed.  (ECF No. 40.)  The May 21, 2021, filing did not contain one

13  signature, and on May 26, 2021, the fully executed fourth amended settlement agreement was

14  filed.  (ECF No. 41.)  On May 28, 2021, an order issued vacating the hearing on the motion for

15  preliminary approval of the class and collective action settlement.  (ECF No. 42.)

16          On June 4, 2021, the Court issued supplemental findings and recommendations

17  recommending granting Plaintiffs' motion for preliminary approval.  (ECF No. 43.)   On

18  September 23, 2021, the District Judge adopted the findings and recommendations and granted

19  the motion for preliminary approval.  (ECF No. 44.)

20          On September 28, 2021, the Court issued an order setting a hearing on final approval of

21  the settlement for March 30, 2022.  (ECF No. 45.)  On January 7, 2022, this action was

22  reassigned to District Judge Jennifer L. Thurston.  (ECF No. 47.)  On March 1, 2022, the parties

23  filed a stipulated request to continue the final approval hearing.  (ECF No. 49.)  On March 2,

24  2022, the Court granted the request, continued the final approval hearing until August 25, 2022,

25  and ordered the notice process be completed prior to the filing of the motion for final approval.

26  (ECF No. 50.)

27          On  July 29, 2022, with no motion filed, the Court issued an order requiring the parties to

28  advise the Court of the status of the motion for final approval.  (ECF No. 51.)  The parties filed a

1    joint status report on August 1, 2022, and on August 2, 2022, the Court continued the final

2    approval hearing until January 25, 2023, and ordered the final approval motion be filed on or

3    before December 21, 2022.  (ECF No. 54.)

4           On December 21, 2022, Plaintiff filed the motion for final approval of the class and

5    collective action settlement that is currently before the Court.  (ECF No. 58.)  On December 22,

6    2022, the motion for attorneys' fees, costs, and incentive awards, was filed untimely.  (ECF No.

7    60.)  On December 29, 2022, pursuant to the parties' stipulation, the Court deemed the filing of

8    the Plaintiffs' motion for attorneys' fees timely filed.  (ECF Nos. 61, 62.)

9           On January 25, 2023, the Court held a hearing on the motion for final approval and

10   motion for fees, costs, and incentive awards.   Counsel Ovsanna Takvoryan and Vincent

11   Granberry appeared via videoconference on behalf of Plaintiffs, and counsel Douglas Farmer

12   appeared via videoconference on behalf of Defendant.  The hearing was held in open court and

13   no class members or separate counsel appeared to submit any objections or statements.

14          At the hearing, the Court addressed the issue that the declaration of the settlement

15   administrator was not provided with the filed motion, despite the fact the motion refers to the

16   declaration.  Counsel cited a filing error, and the Plaintiffs filed the declaration of the settlement

17   administrator after the final approval hearing, on January 25, 2023.  (Decl. Lindsay Kline Re.

18   Notice & Settlement Admin. ("Simpluris Decl."), ECF No. 63.)

19          **B.      The Operative Third Amended Complaint**

20          Thomas Beltran, Mario Martinez, Juan Rivera, Maria Claudia Obeso Cota, and

21   Alexander Solorio (collectively "Plaintiffs") were employed by Olam West Coast, Inc.

22   ("Defendant").  Plaintiffs seek to represent a class defined as:

> All current and former persons who were employed by Defendant in a position
> classified by Defendant as non-exempt and/or hourly non-exempt and who
> worked in that capacity at Defendant's Fresno, Firebaugh, Hanford, Lemoore,
> Gilroy, and/or Williams locations within the State of California at any time during
> the period from July 7, 2011 to final judgment.

26   (TAC ¶ 18.)  The class is composed of approximately 6,000 individuals.  (TAC ¶ 20(a).)

27          Plaintiffs Solorio, Rivera, and Ramirez provided written notice to the Labor and

28

Workforce Development Agency ("LWDA") that Defendant had violated specific provisions of the California Labor Code.

Plaintiff Beltran was employed by Defendant as an hourly paid, non-exempt employee, from June 2006 to approximately March 2010, and from May 2011 to July 16, 2012 at Defendant's Gilroy location. Plaintiff Beltran was an industrial line operator and packaging general labor. His duties included performing inventory, cleaning, and processing orders.

Plaintiff Martinez was employed by Defendant as an hourly paid, non-exempt employee from August 2012 to October 2013 at Defendant's Firebaugh location. Defendant Martinez was a warehouse and packaging forklift operator. His duties included performing inventory, cleaning, and pulling and processing orders.

Plaintiff Rivera was employed by Defendant as an hourly paid, non-exempt employee from October 2006 to September 2015 at Defendant's Gilroy location. Plaintiff Rivera was a forklift operator whose job included pulling and processing products, organizing, and maintaining paperwork.

Plaintiff Cota was employed by Defendant as an hourly paid, non-exempt employee at Defendant's Lemoore location from July 2013 to approximately October 2013. Plaintiff Cota was in Paste DBH and Sanitation and her job duties included sorting.

Plaintiff Solorio was employed by Defendant as an hourly paid, non-exempt employee at Defendant's Lemoore location from approximately 2012 to October 28, 2015.

Plaintiffs bring the following causes of action against Defendant: 1) failure to pay overtime in violation of California Labor Code sections 510 and 1198; 2) failure to pay overtime in violation of the FLSA, 29 U.S.C. § 207; 3) failure to provide meal breaks in violation of California Labor Code sections 226.7 and 512(a) and the applicable industrial wage orders; 4) failure to provide rest periods in violation of California Labor Code section 226.7 and the applicable industrial wage order; 5) failure to pay minimum wages in violation of California Labor Code section 1194, 1197, and 1197.1; 6) failure to pay minimum wages in violation of the FLSA, 29 U.S.C. § 206; 7) failure to timely pay wages upon termination of employment in violation of California Labor Code sections 201 and 202; 8) failure to provide accurate wage

1   statements in violation of California Labor Code section 226(a); 9) failure to reimburse for all

2   necessary expenditures in violation of California Labor Code sections 2800 and 2802; 10) unfair

3   and unlawful business practices in violation of California Business and Professions Code

4   sections 17200, et seq.; and 11) violation of California's Public Attorney General Act ("PAGA").

5                                                    **III.**

6                                          **LEGAL STANDARD**

7        Class actions require the approval of the district court prior to settlement.  Fed. R. Civ. P.

8   23(e) ("The claims, issues, or defenses of a certified class may be settled, voluntarily dismissed, or

9   compromised only with the court's approval.").  The Ninth Circuit has repeatedly affirmed that a

10  strong judicial policy favors settlement of class actions.  Allen v. Bedolla, 787 F.3d 1218, 1223

11  (9th Cir. 2015).  Nevertheless, courts have long recognized that the settlement of class actions

12  presents unique due process concerns for the absent class members.  Id.; In re Bluetooth Headset

13  Products Liability Litigation ("In re Bluetooth"), 654 F.3d 935, 946 (9th Cir. 2011).  Thus, "the

14  district court has a fiduciary duty to look after the interests of the absent class members."  Allen,

15  787 F.3d at 1223.

16       Review of the proposed settlement of the parties generally proceeds in two phases.  True v.

17  American Honda Motor Co., 749 F.Supp.2d 1052, 1062 (C.D. Cal. 2010).  At the preliminary

18  approval stage, the court determines whether the proposed agreement is within the range of

19  possible approval and whether or not notice should be sent to class members.  True, 749 F.Supp.2d

20  at 1063.  "[I]f the proposed settlement appears to be the product of serious, informed, non-

21  collusive negotiations, has no obvious deficiencies, does not improperly grant preferential

22  treatment to class representatives or segments of the class, and falls within the range of possible

23  approval, then the court should direct that the notice be given to the class members of a formal

24  fairness hearing."  In re Tableware Antitrust Litigation, 484 F.Supp.2d 1078, 1079 (N.D. Cal.

25  2007) (quoting Manual for Complex Litigation, Second § 30.44 (1985)).

26       Federal Rule of Civil Procedure 23(e)(2) requires that any settlement in a class action be

27  approved "only after a hearing and only on finding that it is fair, reasonable, and adequate after

28  considering whether":

**(A)** the class representatives and class counsel have adequately represented the class;

**(B)** the proposal was negotiated at arm's length;

**(C)** the relief provided for the class is adequate, taking into account:

> **(i)** the costs, risks, and delay of trial and appeal;

> **(ii)** the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;

> **(iii)** the terms of any proposed award of attorney's fees, including timing of payment; and

> **(iv)** any agreement required to be identified under Rule 23(e)(3); and

**(D)** the proposal treats class members equitably relative to each other.

Fed. R. Civ. P. 23(e)(2)(A)-(D).

At the final approval stage, the court takes a closer look at the settlement, taking into consideration objections and other further developments in order to make the final fairness determination. True, 749 F.Supp.2d at 1063. The primary inquiry is whether the proposed settlement "is fundamentally fair, adequate, and reasonable." Lane v. Facebook, Inc., 696 F.3d 811, 818 (9th Cir. 2012) (citing Fed. R. Civ. P. 23(e); Hanlon v. Chrysler Corp., 150 F.3d 1011, 1026–27 (9th Cir. 1998)). "It is the settlement taken as a whole, rather than the individual component parts, that must be examined for overall fairness." Hanlon, 150 F.3d at 1026 (citing Officers for Justice v. Civil Serv. Comm'n of City & Cty. of San Francisco, 688 F.2d 615, 628 (9th Cir. 1982)); see also Lane v. Facebook, Inc., 696 F.3d at 818–19. In determining whether a settlement is fair, reasonable, and adequate, district courts are to consider several factors, including: (1) the strength of plaintiffs' case; (2) the risk, expense, complexity, and likely duration of future litigation; (3) the risk of maintaining class action status throughout the trial; (4) the amount offered in settlement; (5) the extent of discovery completed, and the stage of the proceedings; (6) the experience and views of counsel; (7) the presence of a governmental participant; and (8) the reaction of the class members to the proposed settlement. Staton v. Boeing

1  Co., 327 F.3d 938, 953 (9th Cir. 2003) (citations omitted); Hanlon, 150 F.3d at 1026.

2      When the settlement takes place before formal class certification, as it has in this

3  instance, settlement approval requires a "higher standard of fairness."  Lane v. Facebook, Inc.,

4  696 F.3d at 819 (quoting Hanlon, 150 F.3d at 1026).  This more exacting review of class

5  settlements reached before formal class certification is required to ensure that the class

6  representatives and their counsel do not receive a disproportionate benefit "at the expense of the

7  unnamed plaintiffs who class counsel had a duty to represent."  Id.  As recently emphasized by

8  the Ninth Circuit, this requires courts to apply "an even higher level of scrutiny for evidence of

9  collusion or other conflicts of interest than is ordinarily required under Rule 23(e)."  Roes, 1-2 v.

10 SFBSC Mgmt., LLC, 944 F.3d 1035, 1043 (9th Cir. 2019) (quoting In re Bluetooth, 654 F.3d at

11 946).  When reviewing a district court's final approval of a settlement negotiated prior to

12 certification, the Ninth Circuit ensures the district court: (1) comprehensively explored all

13 factors; (2) has given a reasoned response to all non-frivolous objections; (3) adequately

14 developed the record to support its final approval decision; and (4) "looked for and scrutinized

15 any subtle signs that class counsel have allowed pursuit of their own self-interests . . . to infect

16 the negotiations."  Roes, 944 F.3d at 1043 (quoting Allen, 787 F.3d at 1223).

17     Having already completed a preliminary examination of the settlement agreement, the court

18 reviews it again, mindful that the law favors the compromise and settlement of class action suits.

19 See, e.g., In re Syncor ERISA Litig., 516 F.3d 1095, 1101 (9th Cir. 2008); Churchill Vill., L.L.C.

20 v. Gen. Elec., 361 F.3d 566, 576 (9th Cir. 2004).  Ultimately, "the decision to approve or reject a

21 settlement is committed to the sound discretion of the trial judge because [they are] exposed to the

22 litigants and their strategies, positions, and proof."  Staton, 327 F.3d at 953 (quoting Hanlon, 150

23 F.3d at 1026).

24                                    **IV.**

25                              **DISCUSSION**

26     **A.      The Settlement Agreement**

27     Plaintiffs move for final approval of the Fourth Amended Class Action and Collective

28 Action Settlement and Release Agreement ("Settlement," "Agreement," or "Settlement

1   Agreement"), entered into by and between Plaintiffs and Defendant Olam West Coast, Inc.,

2   erroneously sued as "Olam Spices and Vegetables, Inc." and further erroneously sued as "Olam

3   Spices and Vegetables Ingredients."  (Mot. 6; Agreement, ECF No. 41 at 5-62.)

4           1.      The Class and FLSA Collective

5   Plaintiffs proffer the Agreement defines the Rule 23 Class as follows:

> All persons who were employed by Olam West Coast, Inc. ("Defendant")
> in a position that Defendant classified as non-exempt and/or hourly non-
> exempt and worked in that capacity at Defendant's Fresno, Firebaugh,
> Hanford, Lemoore, Gilroy and/or Williams facilities in California and for
> which Class Members and FLSA Members were paid on a non-exempt
> basis ("Covered Position"), at any time during the period from July 7,
> 2011 through September 22, 2021 ("Settled Period"), or the estates of such
> individuals.

11  (Mot. 6, citing Agreement § II(6).)  To be clear, Section II(6) provides that: " '**Class Member(s)**'

12  or '**Class**' means, with respect to all Released Class Claims, all persons who were employed by

13  Defendant in a Covered Position at any time during the Class Period, or the estates of such

14  individuals." (Agreement § II(6), ECF No. 41 at 6.)  Section II(9) of the Agreement provides that:

15  " '**Covered Position**' means all positions that Defendant classified as non-exempt and/or hourly

16  non-exempt, that Class Members and FLSA Members worked in, at Defendant's Fresno,

17  Firebaugh, Hanford, Lemoore, Gilroy, and/or Williams facilities in California (collectively, '**Work**

18  **Location(s)**'), and for which Class Members and FLSA Members were paid on a non-exempt

19  basis, at any time during the Settled Period.  Exempt positions are excluded from the Covered

20  Position and the Settlement."  (Agreement § II(9), ECF No. 41 at 6-7.)  " '**Defendant**' means

21  Defendant Olam West Coast, Inc."  (Agreement § II(11), ECF No. 41 at 7.)

22          The Notice of Class Action Settlement provides the following notice in line with the

23  proffered definition: "**If you were employed at Olam West Coast, Inc.'s ("Olam" or**

24  **"Defendant") Fresno, Firebaugh, Hanford, Lemoore, Gilroy, and/or Williams locations in**

25  **California in one or more positions which were classified as non-exempt and/or hourly non-**

26  **exempt at any time during the period from July 7, 2011 to [the date on which the Court**

27  **grants preliminary approval of the Settlement] ("Class Members"), you may be eligible to**

28  **receive payment from a proposed class action settlement.**"  (ECF No. 41 at 39.)

Plaintiffs proffer that the Agreement defines the FLSA Collective as follows:

> All persons who were employed by Olam West Coast, Inc. (Defendant") at Defendant's Fresno, Firebaugh, Hanford, Lemoore, Gilroy, and/or Williams locations in one or more positions which were classified as non-exempt and/or hourly non-exempt at any time during the period from July 7, 2011 to September 22, 2021 ("FLSA Members").

(Mot. 6.)[4]  This citation refers to Exhibit B of the filed Agreement, the Notice of FLSA Settlement, which provides:

> If you were employed at Olam West Coast, Inc.'s ("Olam" or "Defendant')) Fresno, Firebaugh, Hanford, Lemoore, Gilroy, and/or Williams locations in one or more positions which were classified as non-exempt and/or hourly non-exempt at any time during the period from July 7, 2011 to [the date on which the Court grants preliminary approval of the Settlement] ("FLSA Members"), you could receive payment from a proposed collective action settlement.

(ECF No. 41 at 48.)  Those who are eligible to participate in the FLSA Settlement are defined as follows: "All current and former employees who Defendant classified as non-exempt and worked in that capacity at Defendant's Fresno, Firebaugh, Hanford, Lemoore, Gilroy and Williams facilities in California at any time during the Settled Period ('**FLSA Member(s)**').  (Id. at 49.) The Agreement § II(18) provides that: " '**FLSA Member(s)'** means, with respect to all Released FLSA Claims, all persons who were employed by Defendant in a Covered Position at any time during the Settled Period, or the estates of such individuals."  (Id. at 7.)

2.    The Settlement Amounts

Under the terms of the Settlement Agreement, Defendant has agreed to pay a Total Settlement Fund of $4,500,000.00 on a non-reversionary basis.  (Agreement § III(40) ("The entire Total Settlement Fund will be fully paid out and no portion of it will revert or be retained by Defendant.").)

Plaintiffs move for final approval of all payments allocated and provided for by the Settlement, to be paid from the Total Settlement Fund, including and not limited to: Class Representative Incentive Awards in the amount of $7,500.00 each to Plaintiffs Beltran, Martinez,

---

[4]  The Court notes that the order adopting preliminarily approval was signed on September 22, 2021, but not entered on the docket until September 23, 2021.  (ECF No. 44.)

Obeso, Cota, and Solario, and in the amount of $3,500.00 to Plaintiff Rivera ("Incentive Awards") (Agreement §§ II(21), III(6)); attorneys' fees in the amount of $1,575,000.000 and reimbursement of litigation costs and expenses in the amount of $63,201.23 to Plaintiffs' Counsel (Agreement §§ I(3-4), III(5)); allocation of the penalties under PAGA in the amount of $150,000.00, of which 75%, or $112,500.00, will be distributed to the State of California's Labor and Workforce Development Agency ("LWDA Payment") and the remaining 25%, or $37,500.00, will be included in the Net Settlement Fund (Agreement §§ II(23), III(8)); Settlement Administration Costs in the amount of $78,187.00 to the Settlement Administrator, Simpluris, Inc. ("Simpluris") (Agreement §§ II(39), III(7)); and the employer's share of payroll taxes and contributions with respect to the Wage Portion of the Non-FLSA Payment and FLSA Payment, in the estimated amount of approximately $167,501.44 ("Employer Taxes) (Agreement §§ II(8), II(14), II(40), III(5-9); Simpluris Decl. ¶¶ 18, 25).  (Mot. 6-7.)

The Net Settlement Fund is the amount that will be available for distribution to Class Members who did not submit a timely and valid Request for Exclusion ("Participating Class Members") and FLSA Members who submitted a timely and valid FLSA Opt-In Form, FLSA Opt-In Card, Opt-In-Electronic Form, or written consent to opt-in and participate in the FLSA Settlement ("Participating FLSA Members").  (Agreement §§ II(22), II(27)-(28).)  Seventy-five percent (75%) of the Net Settlement Fund is allocated to the Class Settlement and is available for distribution to the Participating Class Members ("Net Class Settlement Fund"), and the remaining twenty-five percent (25%) of the Net Settlement Fund is allocated to the FLSA Settlement and is available for distribution to Participating FLSA Members ("Net FLSA Settlement Fund"). (Agreement §§ III(9)(a)(1)-(2).)

If the Court were to award the full amounts noted above, Plaintiffs proffer that the Net Settlement Fund that will be available for distribution to Participating Class Members and Participating FLSA Members is estimated to be $2,470,110.33, the Net Class Settlement Fund is estimated to be $1,852.582.75, the Net FLSA Settlement Fund is estimated to be $617,527.58,19, and there is no reversion to Defendant.  (Simpluris Decl. ¶¶ 18, 20; Agreement § III(9)(a).)

The Settlement Administrator will calculate each Participating Class Member's *pro rata*

1    share of the Net Class Settlement Fund ("Non-FLSA Payment"), as follows:

> Each Participating Class Member will be entitled to a *pro rata* share of the Net Class Settlement Fund, calculated based on the number of Workweeks worked by an individual Participating Class Member as compared to the number of Workweeks worked by all Participating Class Members, and this share shall be paid by way of one check ("Non-FLSA Payment").  The amount of each Participating Class Member's Non-FLSA Payment will be determined by multiplying the Net Class Settlement Fund by the fraction that has as its numerator the individual Workweeks of the Participating Class Member and has as its denominator the total number of Workweeks worked by all Participating Class Members.

(Agreement § III(9)(a)(1).)   The Settlement Administrator will calculate each Participating FLSA Member's *pro rata* share of the Net FLSA Settlement Fund ("FLSA Payment"), as follows:

> Each Participating FLSA Member will be issued a payment of a *pro rata* share of the Net FLSA Settlement Fund, calculated based on the number of Workweeks worked by an individual Participating FLSA Member as compared to the number of Workweeks worked by all Participating FLSA Members, and this share shall be paid by way of one check ("FLSA Payment"). The amount each Participating FLSA Member's FLSA Payment will be determined by multiplying the Net FLSA Settlement Fund by the fraction that has as its numerator the individual Workweeks of the Participating FLSA Member and has as its denominator the total number of Workweeks worked by all Participating FLSA Members.

(Agreement § III(9)(a)(2).)

3.   Settlement Administration Process

Class Members had sixty (60) calendar days from the initial mailing of the Class Notice, FLSA Notice, class action request for exclusion form, and FLSA collective action opt in form (together, the "Class Packet") to dispute the number of Workweeks credited to each of them, opt out of the Settlement, and/or object to the Settlement ("Response Deadline").  (Agreement §§ II(35), III(9)(a)(2).)   FLSA Members had until the Response Deadline to opt into the FLSA Settlement and become a Participating FLSA Member.  (Agreement § II(35).)

Each Non-FLSA Payment and FLSA Payment will be allocated as thirty-four percent (34%) as wages ("Wage Portion"), for which an IRS Form W-2 will be issued; and sixty-six percent (66%) as penalties, interest, consideration for the waiver of rights and benefits conferred by California Civil Code Section 1542, and non-wage damages and reimbursement of business

expenses ("Non-Wage Portion"), for which an IRS Form-1099 will be issued.  (Agreement § III(9)(b).)  The Non-FLSA Payment and FLSA Payment will each be reduced by the employee's share of payroll taxes and withholding with respect to the Wage Portion.  (Agreement § III(9)(c).)  Defendant's portion of all federal, state, and local taxes on the Wage Portion (i.e., Employer Taxes) will be paid from the Total Settlement Fund.  (Agreement §§ II(8), II(14), II(40), III(5)-(9).)

Any Non-FLSA Payment and FLSA Payment checks issued by the Settlement Administrator that are not cashed, deposited, or otherwise negotiated within one hundred eighty (180) calendar days from the date of their mailing will be cancelled and the funds associated with such cancelled checks will be transmitted to the *cy pres*, the United Way, a non-profit organization, for the local chapters of the counties in which Defendant's Fresno, Firebaugh, Hanford, Lemoore, Gilroy, and/or Williams facilities in California are located, on a *pro rata* basis based upon the number of Class Members that worked or are working in each said county, as determined based on the Work Locations indicated in the Class List.  (Id.; id. at § III(23).)

Plaintiffs submit that the Court-appointed Settlement Administrator, Simpluris, has taken all necessary steps to effectuate the notice and settlement administration process, as set forth in the Court's September 23, 2021, preliminary approval order.  (Mot. 14.)  On September 24, 2021, Simpluris received a copy of the Court-approved Notice Packet from Class Counsel.  (Simpluris Decl. ¶ 5.)  On October 25, 2021, Defense Counsel provided Simpluris with a mailing list containing Class Members' names, most recent mailing address, Social Security numbers, and dates of employment for each Class Member during the Class Period (collectively, the "Class List").  (Id. at ¶ 6.)  The Class List contained data for eight thousand one hundred and seventy-eight (8,178) Class Members.  (Id.)

Simpluris processed the names and addresses through the National Change of Address Database ("NCOA") and updated the Class List with six hundred and eight (608) addresses located using NCOA prior to the mailing of the Notice Packet.  (Id. at ¶ 7.)  On August 12, 2022, Notice Packets were mailed to eight thousand one hundred and seventy-eight (8,178) Class Members with addresses contained in the Class List via First Class mail or updated via the NCOA search.  (Id. at

¶ 8.)  A copy of the Notice Packet is attached as Exhibit A to the Simpluris Declaration.  (Id., Ex. A, ECF No. 63 at 7.)  On August 12, 2022, Notice Packets were emailed to one thousand seven hundred and four (1,704) Class Members with an email address provided in the Class List.  (Id. at ¶ 9.)

A total of eight hundred and fourteen (814) Notice Packets were returned to Simpluris.  (Id. at ¶ 10.)  Of these, zero (0) were returned with a forwarding address.  (Id.)  If a Notice Packet was returned by the USPS as undeliverable and without a forwarding address, Simpluris performed an advanced address search (i.e. skip trace) on all of these addresses by using Accurint, a research tool owned by Lexis-Nexis.  (Id.)  Simpluris used the respective Class Member's name and previous address to locate a current address.  (Id.)  Through the advanced address searches, Simpluris was able to locate six hundred ninety-seven (697) updated addresses and Simpluris promptly mailed a Notice Packet to those updated addresses.  (Id.)  Ultimately, there are one hundred and seventeen (117) Notice Packets that remain undeliverable.  (Id. at ¶ 10.)

On or around October 11, 2022, Simpluris was informed that Class Members were inadvertently left off of the Class List for the initial mailing ("Omitted Class Members").  (Id. at ¶ 11.)  After review of the new data file, Simpluris determined there were five hundred and sixty-two (562) Omitted Class Members.  (Id.)  On October 21, 2022, Simpluris sent a Notice Packet to five hundred and sixty-two (562) Omitted Class Members via First Class mail.  (Id. at ¶ 12.)

The Response Deadline was October 11, 2022.  (Id. at ¶ 13.)  The Response Deadline for Omitted Class Members was December 20, 2022.  (Id.)  As of the filing of the motion for final approval, the Settlement Administrator had received twenty-six (26) valid written requests to be excluded from the Settlement ("Request for Exclusion").  (Id. at ¶ 14.)  As of the filing of the filing of the motion for final approval, the Settlement Administrator had received one (1) dispute regarding Workweeks from a Class Members.  (Id. at ¶ 17.)  It has not yet been determined if the dispute will be accepted or denied.  (Id.)  As of the filing of the motion for final approval, the Settlement Administrator had received one thousand two hundred and thirty-five (1,235) FLSA Claim Forms from FLSA Members.  (Id. at ¶ 15.)  Additionally, as of the filing of the motion, the Settlement Administrator had not received any written Objections to the Settlement.  (Id. at ¶ 16.)

Simpluris anticipated additional responses may still be received as timely postmarked from Omitted Class Members.  (Id. at ¶ 13.)  The parties stated in their motion that they would provide an update to the Court at the final approval hearing with any additional response received by the Settlement Administrator between the date of the filing of the Motion and the hearing on the Motion.  (Mot. 16.)  At the hearing, the Court directed its attention to the fact no Simpluris declaration was even submitted, and Plaintiffs' counsel affirmed that the declaration would be filed the same day of the hearing.  Plaintiffs' counsel provided no update as to the new numbers since the filing of the motion for final approval, and such information was not provided in the Simpluris Declaration filed after the hearing.  (ECF No. 63.)[5]

4.   Estimated Payments to Class and FLSA Collective Members

As of the date of the filing of the Motion: the aggregate total Workweeks worked by all Participating Class Members was 617,382.53; the aggregate total Workweeks worked by all Participating FLSA Members was 190,067; the highest gross estimated Non-FLSA Payment to a Participating Class Member was approximately $1,686.40, the lowest gross estimated Non-FLSA Payment to a Participating Class Member was approximately $3.00; the average gross estimated Non-FLSA Payment to a Participating Class Member was approximately $212.62; the highest gross estimated FLSA Payment to a Participating FLSA Member was approximately $1,825.94; the lowest gross estimated FLSA Payment to a Participating FLSA Member was approximately $3.25; and the average gross estimated FLSA Payment to a Participating FLSA Member was approximately $500.02.  (Simpluris Decl. ¶¶ 21-24.)  As of the filing of the Motion, the estimated employer share of payroll taxes was approximately $167,501.44.  (Id. at ¶ 25.)

Plaintiffs argue the Court should grant final approval of the settlement as fair and reasonable.  (Mot. 17.)[6]

**B.  Final Approval of the Class Action Settlement**

At the final approval stage, the court takes a closer look at the settlement, taking into

---

[5]  The Court will require the parties to provide updated numbers in objections to the recommendations.

[6]  The Court notes Plaintiffs only cite California state cases, and no federal law in their arguments in the proffer of the general legal standards here.  (See Mot. 17.)

consideration objections and other further developments in order to make the final fairness determination.  True, 749 F.Supp.2d at 1063.  The executed settlement agreement in this action was filed on the Court's docket (ECF No. 41), and class members have been given an opportunity to object thereto.  The Court now turns to the adequacy of notice, certification of the class on final approval, and review of the settlement following the final fairness hearing.

Plaintiffs argue the Settlement Agreement is fair, adequate, and reasonable, is the product of good-faith negotiations by experienced counsel presided over by a highly regarded mediator experienced in handling complex wage-and-hour class action lawsuits, and emphasize that as of the date of the filing of the motion, no objections to the settlement were received by the Settlement Administrator.  (Mot. 8, 17; Simpluris Decl. ¶ 16.)

In first recommending denial of preliminary approval, the Court identified what it described as "glaring deficiencies" in the settlement.  (ECF No. 27 at 24.)  Below, the Court notes many of the deficiencies previously identified and that have now been rectified, and highlights some outstanding issues the Court forewarned the parties concerning including attorneys' fees, costs, and incentive awards.  The Court notes additional deficiencies below, including significantly that the final hearing date was incorrect on the Class Notice.

1.   Adequate Notice to the Class

For proposed settlements under Rule 23, "the court must direct notice in a reasonable manner to all class members who would be bound by the proposal."  Fed. R. Civ. P. 23(e)(1); see also Hanlon, 150 F.3d at 1025 ("Adequate notice is critical to court approval of a class settlement under Rule 23.").  For a "class certified under Rule 23(b)(3)— or upon ordering notice under Rule 23(e)(1) to a class proposed to be certified for purposes of settlement under Rule 23(b)(3)—the court must direct to class members the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort."  Fed. R. Civ. P. 23(c)(2)(B).  "The notice may be by one or more of the following: United States mail, electronic means, or other appropriate means."  Id.  The "notice must clearly and concisely state in plain, easily understood language: (i) the nature of the action; (ii) the definition of the class certified; (iii) the class claims, issues, or defenses; (iv) that a class member may enter an appearance through

1    an attorney if the member so desires; (v) that the court will exclude from the class any member who

2    requests exclusion; (vi) the time and manner for requesting exclusion; and (vii) the binding effect of

3    a class judgment on members under Rule 23(c)(3)."  Id. at (c)(2)(B)(i)-(vii).

4          A class action settlement notice "is satisfactory if it generally describes the terms of the

5    settlement in sufficient detail to alert those with adverse viewpoints to investigate and to come

6    forward and be heard."  Churchill Vill., LLC, 361 F.3d at 575 (internal quotations and citations

7    omitted).  Any notice of the settlement sent to the class should alert class members of "the

8    opportunity to opt-out and individually pursue any state law remedies that might provide a

9    better opportunity for recovery."  Hanlon, 150 F.3d at 1025.  It is important for class notice to

10   include information concerning the attorneys' fees to be awarded from the settlement because it

11   serves as "adequate notice of class counsel's interest in the settlement."  Staton, 327 F.3d at 963

12   n.15 (Where the class was informed of the amount of fees only indirectly and where the failure

13   to give more explicit notice could itself be the result of counsel's self-interest, the courts must

14   be all the more vigilant in protecting the interests of class members with regard to the fee

15   award.") (quoting Torrisi v. Tucson Elec. Power Co., 8 F.3d 1370, 1375 (9th Cir. 1993)).

16         Here, the Court ultimately found the proposed form of notice to be satisfactory.  (ECF

17   No. 43 at 35-37.)  Prior to that finding, the Court, after the initial recommendation to deny the

18   motion for preliminary approval, subsequent objections, and re-referral, the Court directed the

19   parties to address the issue of notice again.   Specifically, the Court highlighted recent

20   developments within the Ninth Circuit concerning the best notice practicable, Roes, 1-2 v.

21   SFBSC Mgmt., LLC, 944 F.3d at 1043, and raised concerns that the mailing of a single notice

22   would not be sufficient to inform the class members of the pendency of this action.  (ECF No. 32

23   at 7-8.)  In that order, the Court found the motion for preliminary approval did not adequately

24   address the issue of notice.  (Id. at 9.)  The parties met and conferred on the issue, and the Court

25   found the revised notice procedure sufficient in that it "now provides that the notice packet shall

26   be mailed to the last known address of each class or collective action member, a follow up

27   mailing of a reminder card will be sent approximately halfway through the opt in period for those

28   who have not yet opted into the FLSA collective action, and a mobile phone accessible

settlement website will be established containing information on the settlement . . .  [as well as the fact] [t]he settlement website shall be included on the notice mailed to the putative members and will also be sent by way of an email and text blast to the known or last known cell phone number or email address."  (ECF No. 43 at 36-37.)

The Court summarized the administration process above.  Of note, on August 12, 2022, Notice Packets were mailed to eight thousand one hundred and seventy-eight (8,178) Class Members, and of those returned undeliverable, a skip trace was performed, and ultimately, one hundred and seventeen (117) Notice Packets remained undeliverable.  (Simpluris Decl. ¶¶ 8-10.)  On October 21, 2022, Simpluris sent a Notice Packet to five hundred and sixty-two (562) Omitted Class Members via First Class mail.  (Id. at ¶ 12.)

First, the Court finds no information in the late-filed declaration concerning whether any of the Omitted Class Members had packets returned as undeliverable, nor information regarding any follow-up skip trace process on such.

Second, the Court finds no information in the motion or declarations pertaining to the mailing of the reminder cards, which was an additional factor the Court considered in approving the notice process.  However, the Court did review the billing statement provided by Simpluris, and notes there is at least evidence that 7,140 reminder post cards were sent, for a charge of $4,998.00.  (ECF No. 63 at 22.)

Third, Plaintiffs do not include information pertaining to the text blast.  Simpluris does declare that Notice Packets were emailed to 1,704 Class Members that had an email address.  (Simpluris Decl. ¶ 9.)  The Court's review shows that $1,000.00 was charged for "Email/Text Set up and send."  (ECF No. 63 at 22.)  However, neither the declaration nor motion contains any affirmation that text messages were sent to any number of known phone numbers.

Fourth, of particular note, following the final approval hearing, the Court's review of the late-filed declaration revealed that the Class Notice contained the incorrect final approval hearing date, at two different points of the notice, proffering the hearing date as January 23, 2023, rather than the correct date of January 25, 2023.  (ECF No. 63 at 17, 19.)  The correct hearing date does appear in two locations in the FLSA notice, however.  (ECF No. 63 at 11-12.)  This error was not

proffered or identified by any of the parties before, during, or after the final approval hearing.[7]

Ultimately, while troubling, particularly given the conjunction with other issues regarding the briefing and materials provided to the Court throughout the preliminary and final approval process, based on its research of the issue and in the interests of the class, the Court does not find this deficiency to require a renewed notice to the class and additional final fairness hearing. However, the Court expects the parties to address this deficiency in their objections as there is currently not even an acknowledgement of any awareness of this deficiency on part of Class Counsel.

Under the express terms of Rule 23, the "notice must clearly and concisely state in plain, easily understood language: (i) the nature of the action; (ii) the definition of the class certified; (iii) the class claims, issues, or defenses; (iv) that a class member may enter an appearance through an attorney if the member so desires; (v) that the court will exclude from the class any member who requests exclusion; (vi) the time and manner for requesting exclusion; and (vii) the binding effect of a class judgment on members under Rule 23(c)(3)." Fed. R. Civ. P. 23(c)(2)(b)(i)-(vii). The Court has located a small number of cases that have encountered similar but not identical issues. The circumstances and findings in <u>Nieberding</u> are helpful:

> Just before the final approval hearing, the Court identified a typographical error in the long form notice's description of the location for the settlement approval hearing. The Court finds that this error, while not the ideal, is not a material defect in the notice and does not require the Court to withhold approval of the settlement. The long form notice provided the following information about the final approval hearing: "On August 28, 2015, at the hour of 9:00 am at the United States District Court, District of Kansas, 777 S.E. Quincy, Topeka, KS, 66683, a hearing will be held to determine whether the settlement agreement should be approved...." Doc.1903 at 7. This is the wrong street address of the federal courthouse where the final approval hearing took place. The courthouse is located at 444 S.E. Quincy, not 777 S.E. Quincy. The incorrect address is also used on the settlement's website. *See* http://www.vinylguardrailsettlement.com/mainpage/CommonlyAskedQuestions.aspx.

---

[7]  Indeed, the Plaintiffs failed to file the Simpluris Declaration with the moving papers, instead apparently only filing the same declarations in support of the fees motion with the motion for preliminary approval.  (<u>See</u> ECF Nos. 58, 60, 63.)  The Court declines to speculate if mistake was intentional, however, the Court further notes that the FLSA notice packet which contains the correct hearing date was placed first in the notice packets attached to the Simpluris Declaration, and the Class Notice was placed as a second attachment, when it seems counterintuitive and against the typical order, even as attached to the executed settlement agreement.

The Court finds that this incorrect address does not render the notice insufficient. As stated above, Rule 23(c)(2)(B) lists seven pieces of information that the notice must contain. The time and place for the final approval hearing is not one of the requirements of Rule 23(c)(2)(B). The long form notice here contains each of the seven requirements listed in Rule 23(c)(2)(B), and therefore satisfies the explicit requirements of that rule.

Moreover, the long form notice and the settlement website explain that class members may appear at the final approval hearing and state their opposition to the fairness, reasonableness, and adequacy of the settlement, the reasonableness of the attorneys' fees and expenses requested, or any other matter to be considered by the Court provided, however, that the class members already have submitted a written notice of the objection to the class action administrator, with corresponding service on counsel for all parties, on or before July 31, 2015. Doc. 190–3 at 7. As of August 7, 2015, the class action administrator had received no objections or exclusions from class members. Doc. 190–1 at ¶ 12. At the final approval hearing on August 28, 2015, all counsel represented that they had not received any objections from class members nor were they aware of any objections. Therefore, no class member had satisfied the prerequisites for appearing and speaking at the hearing because no class member complied with the written notice requirements for lodging an objection. The best evidence available to the Court favors the conclusion that the error did not prejudice any dissonant class member.

In addition, the Court finds that the error is a slight one. The incorrect address listed on the notice and the settlement website is just three blocks from the courthouse. No building exists at 777 S.E. Quincy, and any confused class member could have discerned the address for the courthouse after minimal inquiry. To the extent any class member was confused by the incorrect address, that person could have called the toll-free number listed on the notice or contacted the claims administrator, any of the counsel listed in the notice, or even the Court to confirm the location of the final approval hearing. *See Arnett v. Bank of Am., N.A.,* No. 3:11–cv–1372–SI, 2014 WL 4672458, at *3 n. 7 (D.Or. Sept. 18, 2014) (concluding that a typographical error in the class notice stating that the hearing date was Friday, September 9, 2014, instead of Tuesday, September 9, 2014, "did not render the Class Notice insufficient because any Class Member who may have been confused about the date of the hearing could confirm the date by calling the toll-free number, visiting the settlement website, or contacting the Court.").

In sum, the Court finds that this error does not materially reduce the quality of the notice received by the class members and does not warrant the cost of an additional round of notice to the class members. *See In re Processed Egg Prods. Antitrust Litig.,* 284 F.R.D. 278, 295 n. 16 (E.D.Pa.2012) (holding that an inadvertent typo listing the end date for the class period did not render the notice insufficient because it would not have prevented putative

class members from failing to understand the terms of the settlement agreement or from opting out or objecting to the agreement). The Court thus concludes that the notice provided to the class satisfied the requirements of Rule 23 and due process.

Nieberding v. Barrette Outdoor Living, Inc., 129 F. Supp. 3d 1236, 1247–48 (D. Kan. 2015). The Court notes that in Nieberding, a filing of a written objection was a prerequisite condition to making an appearance and objecting at the hearing.  Here there is a somewhat similar provision, although the language does not appear as strict as in Nieberding.  Here, the notice does provide that if a class member wishes to object, they must submit an objection to the Court.  (ECF No. 63 at 18.)  The notice also provides that in addition to objecting, class members may appear at the final approval hearing to discuss the objection.  (Id.)  The notice also states: "[i]f you have filed a timely objection to the Class Settlement (see Question #11), the Court will consider it and you may choose to speak in support of your objection to the Class Settlement at the Final Approval Hearing."  (Id. at 19.)  Therefore, it appears the intent of the notice terms are that you must have filed an objection to speak at the final approval hearing.

Ultimately and logically here, given the erroneous date was earlier rather than later than the scheduled hearing, if a class member were inclined to attend and wanted to attend, they would have discovered the error by contacting the Court or by attempting to attend on Monday January 23, 2023.  See Arnett v. Bank of Am., N.A., No. 3:11-CV-1372-SI, 2014 WL 4672458, at *3 n.7 (D. Or. Sept. 18, 2014) ("The Court notes that there was a typographical error in the Class Notice, which identified the date of the hearing as 'Friday,' September 9, 2014, instead of 'Tuesday,' September 9, 2014. This typographical error did not render the Class Notice insufficient because any Class Member who may have been confused about the date of the hearing could confirm the date by calling the toll-free number, visiting the settlement website, or contacting the Court."); T.K. Through Leshore v. Bytedance Tech. Co., No. 19-CV-7915, 2022 WL 888943, at *21 (N.D. Ill. Mar. 25, 2022) ("This failure to comply with the letter of Rule 6 does not render notice inadequate.  The Court required that members of the Proposed Settlement Class receive an additional forty-five days to object or opt-out, and they did.  The error identified by Mark S. did not compromise class members' due process rights or their rights within the

1  meaning of Rule 23 and does not warrant additional notice or denial of the motion for final

2  approval."); <u>Nieberding</u>, 129 F. Supp. 3d at 1247.

3       Finally, based on the facts presented by the Settlement Administrator, as of the filing date

4  of the Motion, it appears that approximately 1.43% of the Notice Packets were returned as

5  undeliverable, if you consider the initial 8,178 Notice Packets mailed, and the 117 identified as

6  returned from that initial mailing.  (Simpluris Decl. ¶¶ 8, 10.)  It does not appear the final 117

7  figure incorporates undeliverable mailings from the 562 Notice Packets that were sent to Omitted

8  Class Members on October 21, 2022.  (Simpluris Decl. ¶ 11-12.)  The declaration simply states

9  these Notice Packets were sent, but does not connect this fact to the previous proffer concerning

10  the initial mailing.  There is no information provided as to whether the skip trace was conducted

11  on the Omitted Class Members' Notice Packets that were returned undeliverable, if any.

12       Taking the numbers concerning the initial mailings, the Court accepts the declaration and

13  report of the Settlement Administrator, and finds that sufficient notice has been provided,

14  **subject to the parties addressing this lack of information in objections, as well as the other**

15  **specific concerns identified above concerning the notice.**  <u>See</u> <u>Silber v. Mabon</u>, 18 F.3d 1449,

16  1453–54 (9th Cir. 1994) (courts need not ensure all class members receive actual notice, only

17  that "best practicable notice" is given); <u>Winans v. Emeritus Corp.</u>, No. 13-cv-03962-HSG, 2016

18  WL 107574, at *3 (N.D. Cal. Jan. 11, 2016) ("While Rule 23 requires that 'reasonable effort' be

19  made to reach all class members, it does not require that each individual actually receive

20  notice.").[8]

21       2.    <u>Certification of Class, FLSA Collective, Representatives, and Counsel</u>

22       To certify a class, a plaintiff must demonstrate that all of the prerequisites of Rule 23(a),

23  and at least one of the requirements of Rule 23(b) of the Federal Rules of Civil Procedure have

24  been met.  <u>Wang v. Chinese Daily News, Inc.</u>, 737 F.3d 538, 542 (9th Cir. 2013).

25       The Court initially found the Plaintiffs' claims insufficient for certification.  (ECF No. 27

26  at 23-24.)  The Court stated: "[i]n bringing any further motion for approval of the settlement

27

28  [8]  The Court notes that numerous other issues were identified with the notice that were addressed previously through
   supplemental briefing, modifications, and subsequent approval.  (<u>See</u> ECF No. 27 at 21-22.)

agreement, the issues need to be addressed with more than conclusory allegations that a uniform policy or procedure exists . . . Plaintiffs have not identified any specific written policy that would apply to the class and it is unclear from the current motion which unwritten policies were applied at all work locations rather than being site or supervisor specific issues[;] [t]he Court declines to sift through the evidence presented in Plaintiffs' motion to try to determine which policies might be sufficient to support class certification [and] Plaintiffs need to identify the specific policy or policies that would support class certification and address how resolution of a common question regarding the policy or policies is apt to provide common answers in this action." (ECF No. 27 at 22-24.) The Court also noted that "this was precisely the reason that the state court denied approval of the settlement in this matter." (Id. at 24 n.7 (citing Tr. July 19, 2017 Hr'g, 8:22-10:7, ECF No. 1-12 at 112-139).)

Thereafter, the District Judge addressed the Plaintiffs' objections, stating "[t]he undersigned has reviewed the declarations and finds that they are sufficient to establish commonality with respect to defendant's rounding policies and plaintiffs' claims regarding donning and doffing . . . [h]owever, the objections do not address the concern expressed in the findings and recommendations regarding whether the plaintiffs' allegation that defendant failed to reimburse plaintiffs for purchasing dress code approved-clothing was an individualized or site-specific issue, especially where the record indicates that defendant had a policy of offering equipment to employees and providing employees with the option of purchasing their own equipment [and] the findings and recommendations correctly noted that the parties have not identified any specific written policy to support their contention that uniform policies and procedures existed that would apply to all class members . . . [t]herefore, the parties will be directed to file supplemental briefing and documentation addressing the commonality of the claim involving defendant's alleged failure to reimburse plaintiffs for their work equipment." (ECF No. 29 at 18-19.)

The Court then found based on the supplemental briefing that the class meets the prerequisites of numerosity, commonality, typicality, and adequacy of representation. (ECF No. 43 at 3-11.) The Court also found that common questions predominate and allowing this action to proceed as a class action is the superior method of adjudicating the controversy of these

1  employment related claims under Rule 23(b)(3).  (Id. at 11-12.)

2    In the initial findings and recommendations, the Court found Plaintiffs had not addressed

3  the requirement that a *bona fide* dispute exists as to the FLSA claims.  (ECF No. 27 at 17-18.)  The

4  Court also found the opt-in procedure did not comply with the FLSA.  (Id. at 19-20.)  The District

5  Judge then found that while the original motion failed to address whether there was a *bona fide*

6  dispute, Plaintiffs' objections to the findings and recommendations had provided sufficient

7  additional information.    (ECF No. 29 at 12-13.)    In the supplemental findings and

8  recommendations, the Court then concluded the FLSA's first step had been met, and the second

9  step need not be considered as Defendant would not seek decertification.  (ECF No. 43 at 14.)  The

10  Court also found the parties had addressed the Court's additional concerns regarding the opt-in

11  procedure.  (Id. at 14-15.)  The Court found that the putative class members were similarly situated

12  such that the FLSA collective should be conditionally certified.  (ECF No. 43 at 3-11.)

13    As of the filing of the Motion, Simpluris had not received any objections, had received

14  twenty-six (26) Requests for Exclusion, and had received one (1) dispute concerning the number of

15  Workweeks.  (Simpluris Decl. ¶¶ 14-17.)  The Court is unaware of any changes that would affect

16  the class and FLSA collective certification findings.  For the reasons set forth in the supplemental

17  findings and recommendations on preliminary approval, the Court finds that the settlement classes

18  continue to meet the requirements of Federal Rule of Civil Procedure 23(a) and (b), and the

19  requirements of the FLSA.  (ECF No. 43 at 3-15.)

20    Accordingly, the Court finds that final class certification in this case is appropriate and

21  recommends the Class and proposed FLSA Collective be certified on final approval.  In addition,

22  the Court recommends Plaintiffs Thomas Beltran, Mario Martinez, Mario Claudia Obeso Cota,

23  Juan Rivera, and Alexander Solorio be confirmed as class representatives; that Edwin Aiwazian,

24  Arby Aiwazian, and Joanna Ghosh of Lawyers *for* Justice, PC, be confirmed as counsel for the

25  Class and FLSA Members; and that Simpluris, Inc., be confirmed as the Settlement Administrator.

26  (See ECF No. 59 at 3.)

27  / / /

28  / / /

1       3.    <u>Final Fairness Hearing and Whether Settlement Agreement is Fair, Adequate, and Reasonable</u>

On January 25, 2023, the court held a final fairness hearing.  No class members or objectors appeared at the hearing.  For the reasons explained below, the Court now determines that the settlement reached in this case is fair, adequate, and reasonable.  <u>See</u> Fed. R. Civ. P. 23(e)(2).

The Court set out the applicable legal standards above, but to restate, in assessing the fairness of a class action settlement, courts balance the following factors:

> (1) the strength of the plaintiffs' case; (2) the risk, expense, complexity, and likely duration of further litigation; (3) the risk of maintaining class action status throughout the trial; (4) the amount offered in settlement; (5) the extent of discovery completed and the stage of the proceedings; (6) the experience and views of counsel; (7) the presence of a governmental participant; and (8) the reaction of the class members to the proposed settlement.

<u>Churchill Vill., L.L.C.</u>, 361 F.3d at 575; <u>see also</u> <u>In re Online DVD-Rental Antitrust Litig.</u>, 779 F.3d 934, 944 (9th Cir. 2015); <u>Rodriguez v. West Publ'g Corp.</u>, 563 F.3d 948, 964–67 (9th Cir. 2009).  Further, where the parties have reached a settlement agreement prior to class certification, the Court has an independent duty to be vigilant for any sign of collusion among the negotiating parties.  <u>See</u> <u>In re Bluetooth</u>, 654 F.3d at 946.

The Court now turns to consideration of each of these eight factors, before additionally considering whether the pre-certification settlement shows signs of collusion rendering the settlement unfair.  Plaintiffs' briefing does not directly address these factors, instead arguing under the general categories of: (A) the settlement resulted from arms-length negotiations based upon extensive investigation and discovery; (B) the risks inherent in continued litigation favor final approval of the settlement; (C) the settlement is fair, reasonable, and adequate; (D) the class were represented by competent counsel; and (E) there are no objections to the settlement.  (Mot. 18-26.)

The Court also notes that Plaintiffs proffer that: "[a]t the final approval stage, a presumption of fairness exists where, as here: '(1) the settlement is reached through arm's-length bargaining; (2) investigation and discovery are sufficient to allow counsel and the court to act

1    intelligently; (3) counsel is experienced in similar litigation; and (4) the percentage of objectors

2    is small.' " (Mot. 17 (citing <u>Dunk v. Ford Motor Co.</u>, 48 Cal. App. 4th 1794, 1802, 56 Cal. Rptr.

3    2d 483 (1996)).)   However, this Court already rejected this contention in the supplemental

4    findings and recommendations.  (ECF No. 43 at 23.)  The Ninth Circuit has recently emphasized

5    that this is not a valid presumption, particularly where settlement is negotiated prior to class

6    certification:

> Nowhere in the final approval order, however, did the district court cite or otherwise acknowledge our longstanding precedent requiring a heightened fairness inquiry prior to class certification.  To the contrary, the district court declared that, "[w]here a settlement is the product of arms-length negotiations conducted by capable and experienced counsel, the court begins its analysis with a *presumption that the settlement is fair and reasonable*." (Emphasis added.)  But such a presumption of fairness is not supported by our precedent, and the district court cites no Ninth Circuit case which adopted this standard.  Particularly in light of the fact that we not only have never endorsed applying a broad presumption of fairness, but have actually required that courts do the opposite—by employing extra caution and more rigorous scrutiny—when it comes to settlements negotiated prior to class certification, the district court's declaration that a presumption of fairness applied was erroneous, a misstatement of the applicable legal standard which governs analysis of the fairness of the settlement.

15   <u>Roes</u>, 944 F.3d at 1049.  Thus, the Court's review does not begin with a presumption of fairness

16   based on apparent arms-length negotiations.  Nonetheless, the Court recognizes it as a factor in

17   determining whether the proposed settlement is fair, reasonable, and adequate.  <u>See</u> <u>Rodriguez v.</u>

18   <u>West Publ'g Corp.</u>, 563 F.3d at 965 ("We put a good deal of stock in the product of an arms-

19   length, non-collusive, negotiated resolution.").

20        **a.    Strength of Plaintiffs' Case**

21        "An important consideration in judging the reasonableness of a settlement is the strength

22   of the plaintiffs' case on the merits balanced against the amount offered in the settlement."  <u>Nat'l</u>

23   <u>Rural Telecommunications Coop. v. DIRECTV, Inc.</u>, 221 F.R.D. 523, 526 (C.D. Cal. 2004)

24   (quoting 5 *Moore Federal Practice*, § 23.85[2][b] (Matthew Bender 3d. ed.)).  A court's role is

25   not to reach any ultimate conclusion on the facts or law which underly the merits of the dispute,

26   as the very uncertainty of the outcome and the avoidance of expensive and wasteful litigation is

27   what induces consensual settlements.  <u>Officers for Justice</u>, 688 F.2d at 625.  The court cannot

28   reach such a conclusion because evidence has not been fully presented.  <u>In re Wash. Pub. Power</u>

Supply Sys. Sec. Litig., 720 F. Supp. 1379, 1388 (D. Ariz. 1989).  Instead, a court "evaluate[s] objectively the strengths and weaknesses inherent in the litigation and the impact of those considerations on the parties' decisions to reach these agreements."  Id.  In reality, the reasonable range of settlement is arrived at by considering the likelihood of a verdict for the plaintiff or defendant, "the potential recovery, and the chances of obtaining it, discounted to a present value."  Bellinghausen v. Tractor Supply Co., 306 F.R.D. 245, 255 (N.D. Cal. 2015) (quoting Rodriguez v. West Publ'g Corp., 563 F.3d at 965).

While this action was removed to federal court in 2018, this is a protracted class action that was in fact commenced in state court in July of 2015.  (ECF No. 1.)  Plaintiffs contend the parties actively litigated this case since then, and used pre-mediation time to investigate the veracity, strength, and scope of the claims, and counsel actively prepared the matter for class certification.  (Mot. 18.)  Plaintiffs describe the course of investigation, discovery, negotiation, and eventual mediation leading to settlement.  (Mot. 18-21.)

The briefing before the Court does not provide overly extensive or specific details concerning the strengths or weaknesses of the merits of the principal claims.  Plaintiffs generally proffer that arriving at settlement that was acceptable to both sides was not easy.  Plaintiffs proffer that had the case not settled, Defendant would have vigorously challenged certifiability and liability, specifically contending that its practices, policies, and procedures complied with the law, and that it paid Class Members and FLSA Members over California and federal minimum wage for all hours worked, correctly paid overtime for all overtime hours worked, and provided compliant meal and rest periods (in accordance with wage-and-hour requirements applicable to the particular workforce at issue); that it correctly calculated the overtime rate and that its rounding policy was fair and neutral to Plaintiffs, Class Members, and FLSA Members; and that all employees were required to record all time worked, were given the opportunity to make any necessary revisions or changes to their time, and were instructed to inform Defendant of any non-compliant meal or rest periods, and that Defendant was not aware that any work had been performed off-the-clock or during meal and rest periods; and that overall, individualized questions of fact predominate over any common issues, because Class Members and FLSA

1    Members worked in different locations, were subject to different collective bargaining
2    agreements, worked different shifts, and performed different job duties, and that these issues
3    would pose challenges to class certification, collective certification, and representative
4    adjudication.  With the aid of the mediator's evaluation, the Parties eventually settled.

5          The Court previously weighed the parties' course of negotiation in relation to the merits
6    of the action and amount of settlement, and incorporates such discussion herein.  (ECF No. 43 at
7    18-22.)  The Court also expressed significant concerns regarding the amount of settlement in
8    relation to the initial damages analyses.  (Id. at 30-33.)  Prior to adopting the findings and
9    recommendations on preliminary approval, the District Judge requested supplemental briefing
10   regarding the potentially problematic aspects of the estimated valuations.  (ECF No. 29 at 3.)
11   The Court discusses the amount of settlement in further detail below in considering that separate
12   factor, however, the Court finds the amount of settlement in relation to the strength of Plaintiffs'
13   case weights in favor of final approval.

14         Based on the above facts, Plaintiffs' arguments, and supporting declarations regarding the
15   strengths and weaknesses of this action, it appears that while Plaintiffs have potentially
16   meritorious claims, it is far from certain that they would have prevailed on those claims or
17   achieved full recovery on them, particularly on a class-wide basis.  The settlement in this action
18   provides the class members with substantial relief now; and given the uncertainty of ultimate
19   success at trial, the proposed settlement provides the parties with a fair resolution of the issues
20   presented which weighs in favor of settlement.

21         The Court finds that consideration of the strength of Plaintiffs' case weighs in favor of
22   granting final approval of the settlement in this action.

23         **b.      Risk, Expense, Complexity, and Likely Duration of Further Litigation**

24         "[T]here is a strong judicial policy that favors settlements, particularly where complex
25   class action litigation is concerned."  In re Syncor ERISA Litig., 516 F.3d at 1101 (citing Class
26   Plaintiffs, 955 F.2d at 1276).  As a result, "[a]pproval of settlement is preferable to lengthy and
27   expensive litigation with uncertain results."  Johnson v. Shaffer, No. 2:12-cv-1059-KJM-AC,
28   2016 WL 3027744, at *4 (E.D. Cal. May 27, 2016) (citing Morales v. Stevco, Inc., No. 1:09-cv-

1   00704-AWI-JLT, 2011 WL 5511767, at *10 (E.D. Cal. Nov. 10, 2011)).  Employment law class

2   actions are, by their nature, time-consuming and expensive to litigate.  Hightower v. JPMorgan

3   Chase Bank, N.A., No. 11-cv-1802-PSG-PLA, 2015 WL 9664959, at *6 (C.D. Cal. Aug. 4,

4   2015).

5           Prior to and during the mediations and settlement negotiations, the Parties exchanged

6   documents, information and data, and discussed various aspects of the litigation, including but

7   not limited to the risks and delays of further litigation, the risks to the Parties of proceeding with

8   class and collective certification and/or representative adjudication, and trial, the law relating to

9   off-the-clock theory, FLSA claims, meal and rest periods, representative PAGA representative

10  claims, collective bargaining agreements, federal preemption, agricultural and harvest worker

11  exemptions, and wage-and- hour enforcement, the evidence produced and analyzed, and the

12  possibility of appeals, among other things.  Again, Plaintiffs proffer had the case not settled,

13  Defendant would have vigorously challenged certifiability and liability.  (Mot. 22.)  With the

14  help of the mediator, the Parties eventually agreed that the actions were well-suited for

15  settlement given the highly-disputed claims, legal issues relating to Plaintiffs' principal claims,

16  as well as the costs and risks to the Parties that would attend further litigation, specifically

17  proffering that these risks of further litigation include, and are not limited to, a determination that

18  the claims are unsuitable for class treatment, collective certification, and/or representative

19  adjudication, class de-certification after certification of a class, allowing a jury to decide the

20  claims asserted in the cases, appeals, and the real possibility of no recovery after years of

21  litigation.  (Mot. 23.)

22          As the Court previously noted, "[t]his action was filed in 2015 and has been litigated for

23  almost seven years," the Court "considers the risks associated with continued litigation, and the

24  reality that due to the judicial emergency within this district, any potential trial is this matter

25  would be several years in the future," as well as that the "parties agreed to settle this matter in

26  2017 and have now moved for the third time to approve the settlement which will allow the class

27  members to receive substantial compensation without incurring further costs or face the risk of

28  no recovery for the claims raised in this action."  (ECF No. 43 at 20.)  Though the parties have

been litigating this case for over seven years, that timeline would be extended even further by litigating this case to a final resolution through a jury trial.  The parties' expenses would increase as litigation costs continue to accrue, and any recovery of a monetary judgment, which is not guaranteed, would be prolonged.  As discussed in the following subsection, the Court finds there are legitimate issues concerning maintaining class action status throughout trial and the risk of decertification.

Accordingly, the Court finds consideration of the risk, expense, complexity, and likely duration of further litigation, weighs in favor of granting final approval.

### c.   Risk of Maintaining Class Action Status Throughout Trial

As for the dangers of denying class certification, or potential for decertification, the Court voiced significant concerns regarding typicality and commonality in issuing its initial recommendations on preliminary approval.  As discussed therein, the Court believes there are legitimate issues concerning class certification, and thus is a relevant risk that Plaintiffs face with continued litigation.  (See ECF Nos. 27 at 22-24, 29 at 18-19, 43 at 3-15.)  Plaintiffs emphasize that throughout this litigation, Defendant argued that individualized questions of fact predominate over any common issues, because Class Members and FLSA Members worked in different locations, were subject to different collective bargaining agreements, worked different shifts, and performed different job duties, and that these issues would pose challenges to class certification, collective certification, and representative adjudication.  (Mot. 23.)

Accordingly, the Court finds that consideration of this factor weighs in favor of granting final approval of the settlement in this action.

### d.   Amount Offered in Settlement

"It is well-settled law that a cash settlement amounting to only a fraction of the potential recovery will not per se render the settlement inadequate or unfair," and "[i]t is the complete package taken as a whole, rather than the individual component parts, that must be examined for overall fairness."  Officers for Justice, 688 F.2d at 628; In re Mego Fin. Corp. Sec. Litig., 213 F.3d 454, 459 (9th Cir. 2000) (same); Ontiveros v. Zamora, 303 F.R.D. 356, 370 (E.D. Cal. 2014) (same); see also City of Detroit v. Grinnell Corp., 495 F.2d 448, 455 (2d Cir. 1974) ("In

fact there is no reason, at least in theory, why a satisfactory settlement could not amount to a hundredth or even a thousandth part of a single percent of the potential recovery."), abrogated by Goldberger v. Integrated Res., Inc., 209 F.3d 43 (2d Cir. 2000).   "To determine whether a settlement 'falls within the range of possible approval' a court must focus on 'substantive fairness and adequacy,' and 'consider plaintiffs' expected recovery balanced against the value of the settlement offer.' "   Collins v. Cargill Meat Sols. Corp., 274 F.R.D. 294, 302 (E.D. Cal. 2011) (quoting In re Tableware Antitrust Litig., 484 F.Supp.2d at 1080).

In issuing the initial recommendation to deny preliminary approval of the settlement, the Court conducted a review of the damages and valuation analysis provided by Class Counsel., which discounted the claims down to approximately 4.9% of the original valuations.  (ECF No. 27 at 13-17.)  The Court found Plaintiffs had not addressed how they calculated the total value of the claims and concluded for various reasons that there was an inference that a conflict of interest has been created that would preclude approval of the settlement agreement.   (Id. at 17.) Plaintiffs submitted objections and the District Judge reviewed the supplemental briefing and found Plaintiffs had addressed the areas of concern and that the valuation of the claims, and other issues regarding the FLSA limitations period and FLSA liquidated damages, had been addressed with sufficient specificity.  (ECF No. 29 at 10-11.)  The Court then issued supplemental findings determining that the proposed recovery fell within the range of possible approval for purposes of preliminary approval.  (ECF No. 43 at 22.)

Below, the Court addresses the amount of attorneys' fees and recommends reducing the attorneys' fees from 35% to 25% of the common fund, thus increasing the settlement amount that the class will receive, or that will ultimately revert to the *cy pres* charity.

For all of the reasons discussed herein pertaining to the course of litigation since 2015, the risks of continued litigation, the strengths and weaknesses of Plaintiffs' case, the fact that the settlement was reached with the use of an experienced mediator in this field, as well as the supporting declarations and analyses provided regarding damages valuations throughout settlement negotiations provided to the Court in supplemental briefing, the Court finds the amount of the settlement weighs in favor of final approval.  See Officers for Justice, 688 F.2d at

628; Ontiveros, 303 F.R.D. at 371 ("The court finds no reason to doubt class counsel's assertion that a $3,680.19 average payout is a good result in a wage and hour case involving blue collar workers . . . Additionally, class counsel's proposed formula for apportioning the settlement to class members appears to be well-researched . . . Although the court is ill equipped to conclude how the $3,680.19 average payout compares to actual damages recoverable at trial, the overall terms of the settlement appear fair."). "[I]t is the very uncertainty of outcome in litigation and avoidance of wasteful and expensive litigation that induce consensual settlements [and a] proposed settlement is not to be judged against a hypothetical or speculative measure of what *might* have been achieved by the negotiators." Linney, 151 F.3d at 1242 (quoting Officers for Justice, 688 F.2d at 625); see also Rodriguez v. West Publ'g Corp., 563 F.3d at 965 ("We put a good deal of stock in the product of an arms-length, non-collusive, negotiated resolution . . . and have never prescribed a particular formula by which that outcome must be tested . . . In reality, parties, counsel, mediators, and district judges naturally arrive at a reasonable range for settlement by considering the likelihood of a plaintiffs' or defense verdict, the potential recovery, and the chances of obtaining it, discounted to present value."); Thomas v. Cognizant Tech. Sols. U.S. Corp., No. SACV111123JSTANX, 2013 WL 12371622, at *6 (C.D. Cal. June 24, 2013) (granting final approval in wage and hour action where settlement encompassed between 4.4% and 5% of the maximum estimated liability figure).

Consistent with the reasons stated in the findings and recommendations recommending preliminary approval, and the reasons discussed above, the Court finds that the settlement amount in this case is appropriate and fair. Thus, consideration of this factor also weighs in favor of final approval.

i.      PAGA Penalty Claims

The Court briefly and separately addresses the PAGA penalty claims. As noted above, allocation of the penalties under PAGA are in the amount of $150,000.00, of which 75%, or $112,500.00, will be distributed to the LWDA, and the remaining 25%, or $37,500.00, will be included in the Net Settlement Fund (Agreement §§ II(23).

In the class action context, where PAGA claims are also often brought, a district court

must independently determine that a proposed settlement agreement is "fundamentally fair, adequate and reasonable" before granting approval.  See Officers for Justice, 688 F.2d at 625; see also In re Heritage Bond Litigation, 546 F.3d 667, 674–75 (9th Cir. 2008).  The LWDA has provided some guidance regarding court approval of PAGA settlements.  See Gutilla v. Aerotek, Inc., No. 115CV00191DADBAM, 2017 WL 2729864, at *2 (E.D. Cal. Mar. 22, 2017) (discussing California Labor and Workforce Development Agency's Comments on Proposed PAGA Settlement ("LWDA Comments") (citing O'Connor v. Uber Techs., Inc., 201 F. Supp. 3d 1110, 1133 (N.D. Cal. 2016)).

In O'Connor, where both class action and PAGA claims were covered by a proposed settlement, the LWDA stated that:

> It is [] important that when a PAGA claim is settled, the relief provided for under the PAGA be genuine and meaningful, consistent with the underlying purpose of the statute to benefit the public and, in the context of a class action, [it is important that] the court evaluate whether the settlement meets the standards of being "fundamentally fair, reasonable, and adequate" with reference to the public policies underlying the PAGA.

Id.

The proposed $150,000.00 penalty payment in this case represents approximately 3.3% of the $4,500,000.00 gross settlement amount.  This amount falls within the range of previously approved comparable PAGA penalties in other class actions, in this court and others.  See Wise v. Ulta Salon, Cosmetics & Fragrance, Inc., No. 117CV00853DADEPG, 2020 WL 1492672, at *5 (E.D. Cal. Mar. 27, 2020) (approving $75,000 PAGA penalty, or approximately 2% of $3.4 million gross settlement); Garcia v. Gordon Trucking, Inc., No. 1:10-cv-0324-AWI-SKO, 2012 WL 5364575, at *7 (E.D. Cal. Oct. 31, 2012) (approving $10,000 PAGA penalty, or approximately 0.27% of 3.7 million gross settlement); Chu v. Wells Fargo Investments, LLC, No. C-05-4526-MHP, 2011 WL 672645, at *1 (N.D. Cal. Feb. 16, 2011) (approving $10,000 PAGA penalty, or approximately 0.14% of $6.9 million gross settlement).

Having reviewed the parties' submission and the terms of the proposed settlement, the Court finds that the settlement amount related to Plaintiffs' PAGA claims is fair, reasonable, and adequate in light of the public policy goals of PAGA.  Because of the risks associated with the

1  pursuit of further litigation in this action articulated above, the Court finds that the amount
2  offered in settlement of the PAGA claims here weighs in favor of final approval of the
3  settlement.

4      **e.      Extent of Discovery Completed and Stage of the Proceedings**

5      It is appropriate for the Court to consider whether the process by which the parties
6  arrived at their settlement is truly the product of arm's length bargaining, rather than collusion or
7  fraud.   Millan v. Cascade Water Servs., Inc., 310 F.R.D. 593, 613 (E.D. Cal. 2015)   "A
8  settlement following sufficient discovery and genuine arms-length negotiation is presumed fair."
9  Adoma, 913 F. Supp. 2d at 977 (quoting DIRECTV, Inc., 221 F.R.D. at 528).[9]   A settlement that
10 occurs in an advanced stage of the proceedings indicates that the parties have carefully
11 investigated the claims before resolving the action.   Ontiveros, 303 F.R.D. at 371 (citing Alberto
12 v. GMRI, Inc., Civ. No. 07–1895 WBS DAD, 2008 WL 4891201, at *9 (E.D.Cal. Nov. 12,
13 2008)).   "In the context of class action settlement, 'formal discovery is not a necessary ticket to
14 the bargaining table' where the parties have sufficient information to make an informed decision
15 about settlement."   Linney, 151 F.3d at 1239 (quoting In re Chicken Antitrust Litig., 669 F.2d
16 228, 241 (5th Cir. 1982)).   Approval of a class action settlement thus "is proper as long as
17 [formal or informal] discovery allowed the parties to form a clear view of the strength and
18 weaknesses of their case."   Monterrubio v. Best Buy Stores, L.P., 291 F.R.D. 443, 454 (E.D. Cal.
19 2013).

20     Here the settlement was reached prior to class certification but after significant discovery
21 and after attending mediation.   At preliminary approval, the Court discussed and reviewed the
22 extent of discovery, negotiations, mediation, and other information concerning the stage of
23 proceedings prior to reaching settlement.   (ECF No. 24 at 26-28.)   In the present motion,

24

25 [9]   However, as noted above, when the settlement takes place before formal class certification, as it has in this
instance, settlement approval requires a "higher standard of fairness."   Lane v. Facebook, Inc., 696 F.3d at 819
26 (quoting Hanlon, 150 F.3d at 1026).   This more exacting review of class settlements reached before formal class
certification is required to ensure that the class representatives and their counsel do not receive a disproportionate
27 benefit "at the expense of the unnamed plaintiffs who class counsel had a duty to represent."   Id.   As recently
emphasized by the Ninth Circuit, this requires courts to apply "an even higher level of scrutiny for evidence of
28 collusion or other conflicts of interest than is ordinarily required under Rule 23(e)."   Roes, 1-2 v. SFBSC Mgmt.,
LLC, 944 F.3d at 1043 (quoting In re Bluetooth, 654 F.3d at 946).

1   Plaintiffs again largely emphasize the same facts.  (Mot. 13.)

2         The fact that the parties believe they engaged in sufficient discovery to evaluate the

3   merits of the action weighs in favor of approving the class action settlement.  Based on that

4   discovery, the parties engaged in a private mediation with an experienced mediator, which aided

5   in forming the settlement agreement now pending before the Court for final approval.  The

6   course of litigation leading to the mediation and the use of mediation to reach settlement weigh

7   in favor of approving the settlement.  See Ontiveros, 303 F.R.D. at 371 ("The parties use of

8   mediation, which took place after significant discovery, and their reliance on the mediator's

9   proposal in settling demonstrates the parties considered a neutral opinion in evaluating the

10  strength of their arguments [and] [a]ccordingly, the parties' apparent careful investigation of the

11  claims and their resolution in consideration of the views of a third party mediator weigh in favor

12  of settlement."); Millan, 310 F.R.D. at 613 ("Participation in mediation prior to a settlement

13  'tends to support the conclusion that the settlement process was not collusive.' ") (quoting

14  Palacios v. Penny Newman Grain, Inc., 2015 WL 4078135 (E.D.Cal. July 6, 2015)) (quotation

15  marks omitted).

16        Based on the facts reiterated above, the reasons discussed in the Court's findings and

17  recommendations recommending granting preliminary approval, and the applicable legal

18  standards, the Court finds the extent of discovery and the stage of proceedings weigh in favor of

19  final approval of the settlement.  These facts, particularly the protracted nature of the litigation in

20  combination with the attendance of mediation and tenor of settlement negotiations also indicate

21  that the parties' negotiations constituted genuine and informed arm's length bargaining, though the

22  Court further scrutinizes whether aspects of the Agreement indicate any collusion below as

23  required for pre-certification settlements.

24        Accordingly, the Court concludes that consideration of this factor also weighs in favor of

25  granting final approval.

26        **f.      Experience and Views of Counsel**

27        The Court is to accord great weight to the recommendation of counsel because they are

28  aware of the facts of the litigation and in a better position than the court to produce a settlement

1   that fairly reflects the parties' expected outcome in the litigation.  <u>DIRECTV</u>, 221 F.R.D. at 528.

2          Plaintiffs Cota and Solorio, are represented by Lavi & Ebrahimian, LLP and the Law

3   Offices of Sahag Majarian II, while Plaintiffs Beltran, Martinez, and Rivera, are represented by

4   Lawyers *for* Justice, PC.  The three law firms agreed to litigate the claims against Defendant, and

5   jointly engage in settlement negotiations and mediation efforts.  As stated in the Settlement

6   Agreement, the Parties agreed, for the sake of efficiency and ease, that Lawyers *for* Justice, PC

7   will be appointed as counsel for the Class and FLSA Members and identified as such in the Class

8   Notice to the Class Members and FLSA Notice to the FLSA Members, but that all Plaintiffs'

9   Counsel will cooperate to implement the Settlement and the attorneys' fees and costs award

10  provided for by the Settlement will be sought on behalf of Plaintiffs' Counsel.

11         Plaintiffs' proffer all counsel have extensive experience in employment class action law

12  and complex wage-and-hour litigation.  The Court previously found that Plaintiffs' counsel is

13  experienced with wage and hour class actions.  (ECF No. 43 at 24.)

14         Consideration of class counsel's experience and expressed opinions in this regard also

15  weighs in favor of final approval of the settlement.[10]

16         **g.     Presence of a Governmental Participant**

17         While there is no direct governmental party in this action, above, the Court discussed the

18  sufficiency of the PAGA portion of the settlement and payment of to the California LWDA.  At

19  least one court has found such aspect of the settlement weighs in favor of approval.  <u>See</u> <u>Adoma</u>,

20  913 F. Supp. 2d at 977 ("Plaintiffs sought to enforce claims under California's Private Attorney

21  General Act of 2004 . . . on behalf of the state and affected employees . . . settlement will result

22  in a $50,000 payment to the California Labor and Workforce Development Agency [and thus]

23  [t]his factor weighs in favor of approval.").

24         Accordingly, this factor either weighs in favor of approval or is not at issue.

25  / / /

26

27  _____

[10]  While class counsel is experienced in this area of law and clearly prosecute a number of these type of cases to the
28  point of substantial settlements with defendants, and the Court finds the settlement as recommended overall fair and
    reasonable, the Court reduces the attorneys' fees requested for the reasons explained below.

1    **h.      Reaction of the Class Members**

2         "It is established that the absence of a large number of objections to a proposed class

3    action settlement raises a strong presumption that the terms of a proposed class settlement action

4    are favorable to the class members."  DIRECTV, 221 F.R.D. at 529 (citations omitted).

5         As of the date of the filing of the Motion, and as stated at the final approval hearing, the

6    Settlement Administrator has not received any objections to the Class Settlement; had received

7    twenty-six (26) Requests for Exclusion; and one dispute regarding Workweeks, ("Request for

8    Exclusion").  (Simpluris Decl. ¶¶ 14, 16, 17.)  No class members appeared at the final fairness

9    hearing to raise any objections to the settlement.

10         As noted above, the Plaintiffs will be required to address the incorrect final approval

11   hearing date within the notice.  Nonetheless, the absence of any objections is strong evidence

12   that the settlement is fair, adequate and reasonable.  DIRECTV, 221 F.R.D. at 529 ("The absence

13   of a single objection to the Proposed Settlement provides further support for final approval of the

14   Proposed Settlement.");  Barcia v. Contain-A-Way, Inc., No. 07-cv-938-IEG-JMA, 2009 WL

15   587844, at *4 (S.D. Cal. Mar. 6, 2009) ("The absence of any objector strongly supports the

16   fairness, reasonableness, and adequacy of the settlement.").

17         Accordingly, consideration of this factor weighs in favor of granting final approval.  In

18   sum, after considering all of the above eight factors, the court finds on balance that the settlement

19   is fair, reasonable, and adequate.  See Fed. R. Civ. P. 23(e); Staton, 327 F.3d at 953; Hanlon, 150

20   F.3d at 1026.  The Court now turns to determine to what extent any of the "more subtle signs" of

21   collusion recognized by the Ninth Circuit are present here.

22   **j.      Signs of Collusion**

23         Where a class action is settled prior to class certification, the Court must also consider

24   whether there is evidence of collusion or other conflicts of interest before approving the

25   settlement.  In re Bluetooth, 654 F.3d at 946.  The Ninth Circuit has provided examples of signs

26   that a settlement is the product of collusion between the parties, such as "(1) when counsel

27   receive a disproportionate distribution of the settlement, or when the class receives no monetary

28   distribution but class counsel are amply rewarded; (2) when the parties negotiate a 'clear sailing'

1    arrangement providing for the payment of attorneys' fees separate and apart from class funds . .
2    .; and (3) when the parties arrange for fees not awarded to revert to defendants rather than be
3    added to the class fund." Id. at 947.

4         The Court's initial findings and recommendations identified several problematic aspects
5    of the settlement, including: the amount of attorneys' fees sought; the presence of a smooth
6    sailing agreement; the incentive payments; as well as the reduction of valuation, already
7    addressed above.  (ECF No. 27 at 16-17.)  The smooth sailing agreement was removed and
8    addressed by the District Judge: "In their objections, the parties indicate their willingness to
9    remove the 'perceived smooth sailing language' and amend the settlement . . . [t]he findings and
10   recommendations appropriately expressed a legitimate concern as to the inclusion of a smooth
11   sailing provision, however, the parties' planned removal of that provision alleviates that concern
12   such that it no longer contributes to the overall conflict of interest analysis."  (ECF No. 29 at 3-
13   4.)  The Court addresses the incentive payments in greater detail below, and recommends
14   reduction, although even if not reduced, would not find the previous concerns render the
15   agreement unfair.  Importantly below, the Court also makes a recommendation of a substantial
16   reduction attorneys' fees sought.

17        While not all potential signs of collusion, the Court again notes that numerous
18   deficiencies identified at the state court level, as well as when the Court issued its preliminary
19   recommendation of denial, have been addressed and rectified to render the agreement in the
20   Court's opinion, fair and reasonable and not collusive, particularly given the finding that the
21   attorneys' fees shall be reduced.  These include: liquidated damages in the FLSA damage
22   calculation; the FLSA limitations period; whether there was a *bona fide* dispute regarding the
23   FLSA claims; the FLSA opt-in procedure; correcting clerical errors in the notice[11]; information
24   concerning notice provided to the LWDA; the *cy pres* award; support for the devaluation of the
25   claims, discussed above; the best notice practicable; as well as the appointment of multiple class
26   counsel from three law firms.  (See generally, ECF Nos.  27, 29, 32, 43.)

27

28   [11]  Aside from the incorrect final approval hearing date.

1    Most importantly, the settlement agreement does not contain a reversion clause that

2  allows for funds to revert back to Defendant, and while Class Counsel is seeking an award of

3  attorneys' fees above the typical benchmark, the Court recommends reducing the fees to below

4  the benchmark to 20%, given the deficiencies noted below.

5    In sum, after considering the foregoing factors, the Court finds that the settlement is fair,

6  adequate, and reasonable pursuant to Rule 23(e).  Further, the Court finds no evidence that the

7  settlement is the result of any collusion between the parties.  <u>In re Bluetooth</u>, 654 F.3d at 946–47.

8  The Court now turns to consideration of the concurrently filed motion for attorneys' fees, costs,

9  and incentive awards.

10    **C.    Motion for Attorneys' Fees, Expenses, and Incentive Payments**

11    In addition to the motion for final approval of the class action settlement, Plaintiffs also

12  filed a motion for attorneys' fees, litigation expenses, and incentive payment awards for the

13  named Plaintiffs.  (ECF No. 60.)[12]

14    1.    <u>Attorneys' Fees</u>

15    Plaintiffs request: total attorneys' fees in the amount of $1,575,000.00, representing

16  thirty-five percent (35%) of the Maximum Settlement Amount.  Specifically, counsel seek fees

17  in the amount between the law firms as follows: (1) $905,625.00 to Lawyers *for* Justice, PC; (2)

18  $401,625.00 to Lavi and Ebrahimian, LLP, and (3) $267,750.00 to Law Offices of Sahag

19  Majarian.

20    This court has an "independent obligation to ensure that the award [of attorneys' fees],

21  like the settlement itself, is reasonable, even if the parties have already agreed to an amount."  <u>In</u>

22  <u>re Bluetooth</u>, 654 F.3d 935, 941 (9th Cir. 2011).  This is because, when fees are to be paid from a

23  common fund, the relationship between the class members and class counsel "turns adversarial."

24  <u>In re Mercury Interactive Corp. Secs. Litig.</u>, 618 F.3d 988, 994 (9th Cir. 2010); <u>In re Wash. Pub.</u>

25  <u>Power Supply Sys. Secs. Litig.</u>, 19 F.3d 1291, 1302 (9th Cir. 1994).  As such, the district court

26  assumes a fiduciary role for the class members in evaluating a request for an award of attorneys'

27

28  [12]  The filing was late, and by stipulation, the Court allowed the filing be deemed timely.  (ECF No. 62.)

1  fees from the common fund.  In re Mercury, 618 F.3d at 994; see also Rodriguez v. Disner, 688

2  F.3d 645, 655 (9th Cir. 2012); Rodriguez v. West Publ'g Corp., 563 F.3d at 968.

3       The Ninth Circuit has approved two methods for determining attorneys' fees in such

4  cases where the attorneys' fee award is taken from the common fund set aside for the entire

5  settlement: the "percentage of the fund" method and the "lodestar" method.  Vizcaino v.

6  Microsoft Corp., 290 F.3d 1043, 1047 (9th Cir. 2002) (citation omitted).  The district court

7  retains discretion in common fund cases to choose either method.  Id.; Vu v. Fashion Inst. of

8  Design & Merch., No. 14-cv-08822-SJO-EX, 2016 WL 6211308, at *5 (C.D. Cal. Mar. 22,

9  2016).  Under either approach, "[r]easonableness is the goal, and mechanical or formulaic

10 application of method, where it yields an unreasonable result, can be an abuse of discretion."

11 Fischel v. Equitable Life Assurance Soc'y of U.S., 307 F.3d 997, 1007 (9th Cir. 2002).  The

12 Ninth Circuit has generally set a twenty-five percent (25%) benchmark for the award of

13 attorneys' fees in common fund cases.  Id. at 1047–48; see also In re Bluetooth, 654 F.3d at 942

14 ("[C]ourts typically calculate 25% of the fund as the 'benchmark' for a reasonable fee award,

15 providing adequate explanation in the record of any 'special circumstances' justifying a

16 departure.").

17       Reasons to vary the benchmark award may be found when counsel achieves exceptional

18 results for the class, undertakes "extremely risky" litigation, generates benefits for the class

19 beyond simply the cash settlement fund, or handles the case on a contingency basis.  Vizcaino,

20 290 F.3d at 1048–50; see also In re Online DVD-Rental, 779 F.3d at 954–55.  Ultimately,

21 however, "[s]election of the benchmark or any other rate must be supported by findings that take

22 into account all of the circumstances of the case."  Vizcaino, 290 F.3d at 1048.  The Ninth

23 Circuit has approved the use of lodestar cross-checks as a way of determining the reasonableness

24 of a particular percentage recovery of a common fund.  Id. at 1050 ("Where such investment is

25 minimal, as in the case of an early settlement, the lodestar calculation may convince a court that

26 a lower percentage is reasonable.  Similarly, the lodestar calculation can be helpful in suggesting

27 a higher percentage when litigation has been protracted."); see also In re Online DVD-Rental,

28 779 F.3d at 955.

a.      **Previous Findings & Forewarnings from the Court at Preliminary Approval**

The District Judge first rejected Plaintiffs' objections to the initial recommendation of denying preliminary approval and forewarned Plaintiffs regarding departure from the 25% benchmark:

> The parties object to the findings and recommendation in this regard on the grounds that such fees were "adequately supported by the work performed [by] Class Counsel, which Class Counsel will submit extensive records for at final approval." (Doc. No. 28 at 3, 14–19.) The parties' objections do not sufficiently explain why this court should depart from the recommendation in this regard. Specifically, the type and amount of work described by counsel appears to reflect the tasks attendant to most litigation, and therefore does not address why counsel's significantly above-benchmark fee request is justified, even in a general sense. *See In re Bluetooth*, 654 F.3d at 947. While the parties are not necessarily required to provide as detailed of an explanation at the preliminary approval stage as will be required at the final approval, prior to preliminary approval, the court will require at least a general showing as to why plaintiffs' counsel's representation in this matter warrants a significantly above-benchmark fee award. Accordingly, plaintiffs will be directed to file supplemental briefing justifying the above-benchmark attorneys' fees request at this preliminary approval stage.

(ECF No. 29 at 10.)   In the supplemental recommendation on preliminary approval, the Court noted: "This amount is not *per se* excessive, however, the Court is not likely to approve an amount over the Ninth Circuit's benchmark of twenty-five percent (25%) absent a showing that counsel achieved extraordinary results or otherwise prove they are entitled to such an amount." (ECF No. 43 at 30.)   The recommendation then specifically forewarned Plaintiffs the Court would not approve such request unless compelling evidence was presented, while noting discounts of valuations, the previously denied settlement approval motions, concerns of duplicative billing, and directly advised counsel of the need to submit a detailed petition showing specificity to allow evaluation of the hours expended:

> Plaintiffs are forewarned that the Court will not grant an upward departure from the 25% "benchmark" for a reasonable fee award unless, at final approval, Plaintiffs present compelling evidence supporting such a departure. This appears to be relatively straight forward wage and hour case and lacks a complexity which may justify a higher than benchmark rate, and presently, counsel have not demonstrated the achievement of exceptional results that would justify a departure, particularly in light of the steep discounts from the original valuations and that there have been three separate motions for preliminary approval filed in the four years since the parties agreed to settle this action. However, counsel can

43

1  and should show otherwise at the final settlement proceeding if a greater rate is
2  sought.

3  Therefore, given the award can be determined at the final approval hearing, there
   is no longer any express clear sailing agreement, and given any reduction in the
4  award will revert back to the funds available for the class members, the Court
   finds this aspect of the agreement is fair, reasonable, and adequate for purposes of
5  preliminary approval . . .

6  . . . Counsel argues that the lodestar will support the fees requested. However, as
   counsel was previously advised, the **Court is concerned here regarding the
7  possibility of duplication of fees due to the numerous duplicative motions for
   preliminary approval that have been filed, the number of counsel seeking
8  reimbursement, and the length of the time this matter has been proceeding
   since the parties agreed to settle the matter**. . . . At the final approval hearing,
9  the Court will employ the lodestar method as a cross check on the percentage
   method to ensure a failure and reasonable result. Alberto v. GMRI, Inc., 252
10 F.R.D. 652, 668 (E.D. Cal. 2008). Therefore, **counsel is advised that in
   submitting the final approval of class action settlement they will be required
11 to provide a thorough fee award petition that details the hours reasonably
   spent representing Plaintiffs with sufficient specificity for the Court to
12 evaluate the hours expended in this action.**

13 (ECF No. 43 at 31-32 (emphasis added).).

14     Despite these clear forewarnings from the Court, Plaintiffs still request 35% of the

15 settlement fund yet provide the Court with nothing more than generalized billing statements, as

16 explained below.

17     **b.     Problematic Billing Entries Particularly in Light of Forewarnings**

18     This is not the first time Lawyers *for* Justice has presented this Court with block billing

19 entries in support of their fees' petition, and the Court is again "particularly troubled that the

20 billing spreadsheets provided by counsel contain large portions that do not specify the precise

21 date that attorney time was expended." Ferrell v. Buckingham Prop. Mgmt., No.

22 119CV00332NONESAB, 2021 WL 488314, at *30 (E.D. Cal. Feb. 10, 2021). This is more

23 problematic given the Court's specific forewarnings noted above, and the fact the District Judge

24 now assigned to this action, previously noted the excessive billing practices and reduced a fee

25 award from 35% to 25% in such case, with an admonition that a further reduction may be

26 warranted. Ferrell v. Buckingham Prop. Mgmt., No. 119CV00332JLTBAKEPG, 2022 WL

27 224025, at *3 (E.D. Cal. Jan. 25, 2022) ("If the Court were conducting a full analysis, it would

28 likely find an even lower number because the Court finds that many entries were excessively

1    billed [as] Counsel billed 15 hours to negotiate and to draft the first settlement agreement, 9.5

2    hours for the second, and 14.25 for the third . . . [t]he first two settlement agreements look

3    substantially similar and appear to be based on a form . . . [and] seems unreasonable to bill the

4    class for the entirety of drafting settlement agreements that courts determined were unfair to

5    class members.").

6           As for block billing, a judge in this district has explained many of the problematic aspects

7    of such practice, stating it is fundamentally inconsistent with the lodestar method:

> Block billing is a practice where the amount of time spent by an attorney on each discrete task is not identified, but instead all hours spent during the course of a day on multiple tasks are billed together. The California State Bar's Committee on Mandatory Fee Arbitration has concluded that block billing "hides accountability" and may "increase time by 10% to 30%" by lumping together tasks. *See* The State Bar of California Committee on Mandatory Fee Arbitration, Arbitration Advisory 03–01 (2003).
>
> More importantly, the usage of block billing is fundamentally inconsistent with the lodestar method because it "render[s] it virtually impossible to break down hours," leaving the court without the ability to accurately determine whether a reasonable amount of time was spent by counsel on a discrete task. *Bell v. Vista Unified Sch. Dist.,* 82 Cal.App.4th 672, 689, 98 Cal.Rptr.2d 263 (2000); *see Welch v. Metro. Life Ins. Co.,* 480 F.3d 942, 948 (9th Cir.2007) ("[B]lock billing makes it more difficult to determine how much time was spent on particular activities."); *Bonner,* 2008 WL 410260, at *3. Without an itemization of the amount of time spent by the fee applicant on each discrete task in the case, the court cannot accurately determine whether the rates charged or hours spent by lawyers in a matter are reasonable. An excessive amount of block billing thereby forces the court to take a "shot in the dark" and guess whether the hours expended were reasonable, which is precisely the opposite of the methodical calculations the lodestar method requires. *See Hensley,* 461 U.S. at 434.
>
> California courts have held that a trial court may "exercise its discretion in assigning a reasonable percentage to the [block billed] entries, or simply cast them aside." *Bell,* Cal.App. 4th at 689. Under federal law, however, when a court is faced with block billing, it may not simply make across the board reductions in fees or toss block billed hours aside. Rather, a district court must "provide a clear explanation" for why any reduction in fees "properly compensate[s] for ... overbilling or duplication." *Sorenson v. Mink,* 39 F.3d 1140, 1146 (9th Cir.2001); *see also Welch,* 480 F.3d at 948 (rejecting an across the board reduction for block billed fees because the court failed to adequately explain a rationale for its percentage reduction).

1
2
3
4
5
6

> Block billing makes it virtually impossible for a court to comply with its requirement to give a clear, reasoned explanation for any fee reductions because those reductions would ultimately be nothing more than guesswork based on an imprecise billing statement. Given block billing's inherent inconsistency with the lodestar method, this court will not award fees for any blocked billed entries. However, the court will give defendants an opportunity to submit an amended billing statement that will allow the court to determine the reasonableness of defendants' fee request.

7   Yeager v. Bowlin, No. CIV 2:08-102 WBS JFM, 2010 WL 1689225, at *1–2 (E.D. Cal. Apr. 26,

8   2010); see also Moshir v. Automobili Lamborghini Am. LLC, 927 F. Supp. 2d 789, 799 (D.

9   Ariz. 2013) ("While not forbidden by case law, block-billing makes it nearly impossible for the

10  Court to determine the reasonableness of the hours spent on each task. Where the Court cannot

11  distinguish between the time claimed for the various tasks, the Court will reduce the award

12  accordingly."); Banas v. Volcano Corp., 47 F. Supp. 3d 957, 967 (N.D. Cal. 2014) ("Without

13  specifying how much spent was spent on each distinct task (most of which were also performed

14  on additional days), there is no way for me to determine whether the time spent on any of these

15  tasks—e.g., trial preparation, summary judgment briefing, opposition to sanctions motion,

16  preparations of jury instructions and verdict form—was reasonable. Nor can I determine that the

17  total amount of time spent on all the tasks, in combination, was reasonable, given the amount of

18  time at issue and because most of Volcano's tasks were performed on several days by various

19  attorneys.").

20      The Court does not necessarily require a minute by minute breakdown in a case such as

21  this: "Although it is true that the fee applicant bears the burden of submitting evidence

22  supporting the hours worked and rates claimed . . . the Supreme Court has also stated that

23  plaintiff's counsel is not required to record in great detail how each minute of his time was

24  expended [and] [i]nstead, plaintiff's counsel can meet his burden—although just barely—by

25  simply listing his hours and identify[ing] the general subject matter of his time expenditures."

26  Fischer v. SJB-P.D. Inc., 214 F.3d 1115, 1121 (9th Cir. 2000) (finding the fee application met

27  this basic requirement as "[t]he application provided a summary of the time spent on a broad

28  category of tasks such as pleadings and pretrial motions  . . . the application specifically states

1  that it was a 'summary compiled from time slips[,]' and [p]resumably, then, more detailed
2  records were readily available.") (internal citations and quotation marks omitted).  However
3  here, the information provided is not sufficient to support the fee award requested under either
4  method, for the reasons explained below.

5      At the hearing on the motion for final approval, counsel had no answer regarding the
6  billing practices other than that this how the law firms operate, and that such practices are above
7  their pay grade.  However, the attorneys appearing are those tasked with supporting the requested
8  fees award, and should have been cognizant of the specific forewarnings given by the Court in
9  this action, and in others.  The billing practices and information presented is clearly problematic
10 when a large attorneys' fee request is presented well above the benchmark in this Circuit to the
11 Court for approval, and the Court must protect the interests of the class members and determine
12 whether the hours expended are reasonable.

13     Further, what has presented does not even equate to traditional block billing.  For
14 example, there are not even entries for specific attorneys block billing days, as is typical.  The
15 Court may accept such entries as reasonable such as where one identified attorney may bill 10 or
16 12 hours in a day for trial preparation leading up to a trial, where hours incurred are intensive on
17 many tasks, and may be reasonable for an attorney to bill for the entire day and list all the types
18 of tasks completed relating to the various aspects of trial preparation in the weeks leading up to
19 trial, or for a specific deposition as tied to that specific attorney.  Thus, many of the entries from
20 Lawyers for Justice go beyond block billing, "a practice where the amount of time spent by an
21 attorney on each discrete task is not identified, but instead all hours spent during the course of a
22 day on multiple tasks are billed together," Yeager, 2010 WL 1689225, at *1, and instead are
23 categorical tasks showing the total number of hours expended on a task, such as document
24 review or preparing and attending a deposition, without delineation of dates or even attorneys
25 over the entire course of litigation.  Further, the other two law firms don't even provide as much
26 information as Lawyers *for* Justice, and instead simply declare the total number of hours
27 expended in the matter over the course of years and a general description of the type of work the
28 case encompassed, within one paragraph in each of the attorney's respective declarations.

1    The Court will now make some specific observations and findings concerning the
2  information presented by counsel in support of their request for fees.  Plaintiffs' attorneys' fees
3  and expenses requests are submitted by three separate law firms, and presented in three different
4  methods.  The Court  finds that the issues, in part identified below, should foreclose granting the
5  requested attorneys' fees as counsel did not provide the information requested for Court to be
6  able to analyze duplicative billing, or reasonableness in any competent manner.  Taking the
7  inability to meaningfully analyze the reasonableness of the work done in this case, in conjunction
8  with the number of deficiencies that were presented in the multiple iterations of the settlement
9  agreements as well as issues that continued through to the final approval hearing regarding notice
10  and lack of providing the Court with updated administrative numbers, leads the Court to
11  conclude a further reduction from the benchmark of 25% to 20% is warranted in this case, with
12  such fees instead going to the class or reverting to the *cy pres* charity.

13        i.    Lawyers for Justice ("LFJ")

14    Lawyers *for* Justice, as compared to the other two firms, at least provide some sort of
15  categorical timesheet with tasks broken down.  The first category is "Investigation and
16  Research/Due Diligence."  (ECF No. 60-1 at 24-27.)  As common throughout the spreadsheet,
17  this section contains undated entries not tied to specific attorneys for work tied to general
18  categories of research and investigation, however, given the type of work this law firm is
19  involved in, the entries are too generalized for the Court to determine if the work is reasonable.
20  There are undated entries for work under these categories for amounts exceeding 20 hours.  (Id.
21  at 24-27.)  There are block entries for time that unspecified attorneys met with the named
22  Plaintiffs on unspecified dates, including entries for 33.50 hours meeting with Rivera, 43.50
23  hours meeting with Martinez, 49.50 hours meeting with Beltran, and 21.50 hours meeting with
24  Ramirez.  (Id. at 26-27.)  This category also includes an undated entry not tied to any specific
25  attorneys for 26.50 hours for meeting and interviewing unspecified putative class members,
26  aggrieved employees, and percipient witnesses.  (Id.at 27.)

27    The next category is "Pleadings and Court Filings."  (Id.at 27.)  The Court finds that there
28  appears to at least be reasonable entries within this category, as the entries include dates that are

at least connected to the court filing date of the document, while not necessarily the date worked on the task, and the entries are thus more broke down by each task more so than other categories. However, where there are entries that the Court can actually utilize to investigate reasonableness demonstrates that there are examples of excessive specific entries.  For example, after billing 7.2 hours to draft the initial complaint, LFJ then billed 5.40 hours drafting the first amended complaint to add named Plaintiff Mario Martinez.  (Id. at 27.)  However, a review of the differences between the initial complaint and first amended complaint does not appear to justify this amount of hours, at least only for drafting the complaint or legal research.  The complaints contain the same ten causes of action, only add slight additional information regarding Martinez, and only appear to add a total of two paragraphs to the main allegations.  (Compare ECF No. 1-1 at 9-35, with ECF No. 1-2 at 6-32.)  Counsel then billed 5.90 hours drafting the second amended complaint.  (ECF No. 60-1 at 28.)  The second amended complaint was filed following a demurrer in state court, and removed the sixth cause of action for violation California Labor Code § 204 (wages not timely paid during employment, and removed the eighth cause of action for violation of California Labor Code § 1175(d) (failure to keep payroll records).  (See ECF No. 1-3 at 16.)  Minor additions are emphasized in the amended complaint, consisting of approximately 10 sentences.  (ECF No. 1-3 at 22-25.)  Then the two causes of action are removed, however, no other substantive changes appear that would reflect 6 hours of work, particularly when it is unclear given the entirety of the  billing record how much additional time was spent meeting and conferring on the issues, researching the issues, and working on the underlying demurrer motion that resulted in the limited substantive changes.  Within this category, time spent reviewing the multiple iterations of answers and affirmative defenses appear excessive.

The third category for LFJ is "Appearances," and includes hours expended for travel. (ECF No. 60-1 at 36-38.)  Like the previous category, these entries at least include dates of hearings so the Court can somewhat determine the reasonableness of hours expended as related to specific dates and events.  However, of note, billing entries are not delineated for how many attorneys worked on or attended hearings, for example 11.5 hours were billed for preparing for,

1   traveling to, and attending a motion for preliminary approval on July 19, 2017; 10.80 hours were

2   billed for the same regarding July 24, 2018; and 4.50 hours for the same on October 25, 2018.

3   (Id. at 37.)  As explained below, the lack of a breakdown between preparing for, and lack of

4   identification of attorneys, makes the Court unable to determine the reasonableness of hours

5   expended on such tasks, as other block entries were billed as related to the motions for

6   preliminary approval.  Further, the District Judge now assigned here, in another action involving

7   this counsel found it unfair to bill for time related to work on preliminary settlement approvals in

8   state court that were rejected as being fundamentally unfair to the class.  See Ferrell v.

9   Buckingham, 2022 WL 224025, at *3 ("The first two settlement agreements look substantially

10   similar and appear to be based on a form . . . it seems unreasonable to bill the class for the

11   entirety of drafting settlement agreements that courts determined were unfair to class members

12   [and] the Court finds that a lodestar crosscheck does not warrant an increase from the Ninth

13   Circuit's benchmark.").

14         The fourth category for LFJ is "Discovery and Depositions."  (ECF No. 60-1 at 38.)  On

15   the face, it is hard for the Court to state whether the discovery entries appear unreasonable,

16   however, the Court notes the discovery dating back to 2015 only includes service dates and does

17   not delineate as to what attorneys worked on the discovery on specific dates, and does not

18   delineate between categories of discovery such as requests for production or interrogatories.  Of

19   note, 3.5 and 4.1 hours were billed to draft deposition notices to PMKs, then 1.8 and 2.2 hours

20   were billed to redraft the notices, and then finally, 1.60 and 1.90 hours were billed to redraft the

21   deposition notices a third time.   (Id. at 39.)  Additionally, 2.20 hours were billed to review

22   objections to the PMK deposition notices, and then 3.20 hours were billed to review objections

23   to the PMK deposition notices.  (Id. at 39, 41.)  These entries appear excessive.

24         The timesheets then contain some of the more significant block entries.  First, there is an

25   entry for 132.10 hours to review and analyze documents Bates stamped OLAM 000001-047615

26   bates).  The entry only includes the service date of January 10, 2017, not review dates.  (ECF No.

27   60-1 at 40.)  LFJ then billed 130.8 hours to review documents Bates Stamped OLAM 000001-

28   047794, served on February 27, 2017.  (ECF No. 60-1 at 42.)  However, the Bates numbers

seemingly only correspond to 179 new pages of documents.  It is impossible for the Court to determine the reasonableness of these entries based on this information.

Billing entries for deposition travel and preparation do not provide information for the Court to determine if entries or work is duplicative as there are no dates for the actual work, nor delineation between different attorneys, and as some depositions occurred on the same date, even more difficult to determine if duplicative.  Specifically, the depositions of Martinez and Beltran occurred on the same date, February 28, 2017.  11.5 and 12.5 hours were billed for the separate entries which apparently both encompass travel to and from Fresno.  (ECF No. 60-1 at 42.) There is the same issue with the entries pertaining to the depositions of PMKs Venkatraman and Perez.  (ECF No. 60-1 at 42.)  The Venkatraman deposition was on February 24, 2017, and the Perez deposition was on February 24, and 27, 2017.  (Id.)  The Court cannot determine if time was duplicative for travel given no signification of a different attorney, and dates of travel or preparation.  See Gerber v. FCA US LLC, No. 17-CV-00518-AJB-BGS, 2020 WL 6271057, at *3 (S.D. Cal. Oct. 26, 2020) ("Because of this block bill, the Court is unable to determine how many hours were spent traveling versus drafting the memorandum or preparing for the deposition."); All Cities Realty, Inc. v. CF Real Est. Loans, Inc., No. SA CV 05-615 AHS, 2008 WL 10594412, at *7 (C.D. Cal. Mar. 14, 2008) ("The parties' correspondence and the experts' invoices do not separately itemize the amounts of time solely spent in deposition preparation, thus complicating the reasonableness determination . . . fees will only be awarded for the amounts of time clearly spent in preparation for depositions."); Id. at *8 ("8.3 hours of time spent in deposition preparation for two hours of actual deposition time is not reasonable.  In the absence of a more detailed breakdown of time spent actually preparing for the deposition, the Court will permit Ms. Kaufman to be reimbursed for one hour of deposition preparation, which is the only amount of time clearly segregated for preparation, for a total of $300.00."); Rogers v. Penland, 232 F.R.D. 581, 582 (E.D. Tex. 2005) ("fees will be awarded only for time clearly spent in preparation for a deposition, travel to a deposition, or in a deposition.  While an opportunity to submit revised bills, and a full hearing on the reasonableness of claimed fees might allow each side to demonstrate or clarify which fees are for time actually spent in

1  preparing for and participating in depositions, disputes over costs should not become "satellite

2  litigation.").

3        The fifth category for LFJ is "Letters and Correspondence." (ECF No. 60-1 at 43.) Here

4  of note, of only four entries total, one is for 40.5 hours, is undated, does not identify attorneys,

5  and is described as: "Meet with, Draft Correspondence to, and Respond to Correspondence from,

6  Defendant's Counsel." (Id.) Another is for 34.50 hours, is undated, does not identify attorneys,

7  and is for "Meet with, Draft Correspondence to, and Respond to Correspondence from, Counsel

8  for Plaintiff Maria Claudia Obeso Cota and Alexander Solorio." (Id. at 43.) The Court cannot

9  determine the reasonableness of these entries in relation to the other general categories.

10        The sixth category for LFJ is "Mediation/Settlement." (ECF No. 60-1 at 43.) Here, LFJ

11  billed 94.50 hours to review and analyze additional documents and data, including "(OLAM

12  000166-002012,   OLAM   002013-0011887,   OLAM   0011888-0034261   consisting   of

13  approximately 34,093 pages)." (Id.) However, these bates numbers are included in the above

14  block billing entries. Therefore, the Court is unable to meaningfully review the block billing

15  entries for mediation preparation in relation to the block billing entries for document review

16  above.   Counsel then billed an additional 20.5 hours preparing for mediation, specifically

17  undated research and drafting of the mediation brief by unidentified attorneys, and the Court

18  cannot delineate this entry from the previous work. LFJ then billed for travel and attending

19  mediation on December 13, 2016 (12.5 hours), and January 25, 2017 (11.5 hours), which on the

20  face may not appear wholly unreasonable, however, again, there is no delineation between travel

21  and attendance, number of attendees, and other information that the Court would need to

22  determine reasonableness and whether entries are duplicative. Similarly, there is an undated

23  entry for 4.5 hours for follow-up telephone caucuses with mediator that does not identify

24  attorneys.

25        LFJ includes entries for: 15.30 hours drafting the initial settlement agreement; 6.5 hours

26  drafting first amended settlement; 5.2 hours drafting the second amended settlement; 4.5 on the

27  third; and 6.8 on the fourth. These entries are undated aside from the settlement execution date,

28  and do not include attorneys. Further and again, many of this time billed may be improper

1   wasted time on settlements that the courts found to be fundamentally unfair to the class, in
2   addition to being potentially duplicative.  Ferrell v. Buckingham, 2022 WL 224025, at *3 ("[I]t
3   seems unreasonable to bill the class for the entirety of drafting settlement agreements that courts
4   determined were unfair to class members.").

5          Finally, there is an undated entry for 16.5 hours for "Meet and Confer with Settlement
6   Administrator, Defendant's Counsel, and Other Plaintiffs' Counsel Regarding Notice
7   Administration, Monitor Settlement Administration, and Respond to Inquiries."  Significantly,
8   without dates and attorneys and other information, the Court is again unable to delineate or
9   determine the reasonableness of this time entry in relation to the general block entries for 40.50
10  hours and 34.50 hours under the "Letters and Correspondence" category noted above.  (ECF No.
11  60-1 at 43

12         The seventh category from LFJ is "Law and Motion."  (Id. at 44-53.)  In this category
13  there are at least smaller time entries that correspond to direct tasks with specific dates pertaining
14  to service or filing, although even there, no identified attorneys, and no delineation if work was
15  performed on multiple dates.  (Id.)  Of note, are entries for 22.8 hours for the June 2017
16  preliminary approval in state court; an entry for 22.5 hours for the June 2018 preliminary
17  approval motion in state court; an entry for 14.1 hours for preliminary approval in state court
18  filed October 2, 2018; and an entry for 20.6 hours for preliminary approval in the Eastern District
19  (Id. at 48-50.)  First, each one of the entries include the statement of "Meet and Confer with
20  Other Plaintiffs' Counsel," however the Court is unable to delineate this meet and confer time
21  from time billed above for meeting and conferring with other Plaintiffs' counsel.  And again,
22  much of this time billed may be improper wasted time on settlements that the courts found to be
23  fundamentally unfair to the class.  Ferrell v. Buckingham, WL 224025, at *3.

24         Additionally, LFJ billed 24.6 hours drafting the final approval declarations and
25  documents.  (Id. at 53.)  However, the Court finds this to be excessive in light of the routine form
26  the motion has taken in relation to similar motions presented before the Court by this counsel,
27  and given the motion for final approval did not even have the correct declarations attached, did
28  not specifically address the remaining deficiencies identified concerning fees, costs, and

incentive awards, and because the other deficiencies in the filings noted above.  This entry includes the wording "anticipated" and thus not clear if includes the time noted above billed for anticipatorily preparing for and attending the hearing.

### ii. Lavi and Ebrahimian, LLP ("L&E")

Lavi and Ebrahimian, LLP, submit in support of their request, a declaration of counsel. (Decl. Vincent C. Granberry ("Granberry Decl."), ECF No. 60-2 at 1.)  However, L&E did not even provide the Court with a breakdown of total hours by category, instead only proffering a total amount of hours expended over several years of litigation, and a general description of the tasks.  Counsel declares that: the "firm has spent approximately 592.2 hours on this matter." (Granberry Decl. ¶ 8.)  9.   As description of the 592.2 hours, counsel states: "[i]n summary form, counsel's many tasks included the following: conducting intakes with Plaintiffs Cota and Solorio, preparing the pleadings, preparing the letters to the LWDA, conducting legal research, reviewing documents and data from Defendants and co-counsel, developing the strategy with co-counsel for prosecuting the claims in the cases; reviewing documents; participating in settlement negotiations; participating in a full-day mediation; reviewing multiple iterations of the settlement agreement and associated documents, multiple iterations of motion for preliminary approval and supporting documents, and the motion for final approval and motion for fees." (Granberry Decl. ¶ 9.)  Mr. Granberry declares that he "spent approximately 232.6 hours on this matter . . . not include[ing] communicating with the clients and communications with Defendants' counsel or co-counsel." (Granberry Decl. ¶ 10.)  Mr. Granberry also declares that: "[s]ince commencing this matter, Joseph Lavi estimates he has spent at least 359.6 hours litigating this matter . . . not include[ing] communicating with the clients and communications with Defendants' counsel or co-counsel." (Granberry Decl. ¶ 13.)

For similar reasons explained above pertaining to LFJ, the Court is even more unable to determine the reasonableness of the hours proffered to have been expended by L&E, particularly for purposes of a lodestar check.

### iii. Law Offices of Sahag Majarian ("Majarian")

No timesheets were provided for the Law Offices of Sahag Majarian.  Majarian declares

1  that: "[m]y involvement in this case has included legal research, extensive preparation,

2  development of a thorough knowledge of the legal issues related to certification and liability, and

3  full immersion and preparation for the mediations against Defendant.  The settlement in this case

4  was reached after years of hard-fought litigation, two mediations, and extensive negotiations

5  subsequent to the mediations."  (Decl. Sahag Majarian II ("Majarian Decl.") ¶ 5, ECF No. 60-3

6  at 3-5.)  Counsel Majarian was approached by Cota in February of 2015, then Solorio after, and

7  then filed the actions against Defendant for these plaintiffs.  (Id. at ¶ 7.)  Majarian further states

8  that: "[t]hroughout the past seven years, [Majarian] [has] been involved in the handling of this

9  matter against Defendant . . . includ[ing] but is not limited to pre-litigation research and

10  investigation regarding the Labor Code violations, legal research, communication with clients

11  and co-counsel, analyzing expert reports and exposure models as well as participating in the first

12  mediation . . . Throughout my seven years of involvement, I have spent a total of 146.70 hours

13  providing legal services in connection with this matter[and] [b]ased on my rate of $700 per hour,

14  my unadjusted lodestar amount would be $102,690."  (Majarian Decl. ¶¶ 8-9.)

15      For similar reasons explained above, the Court is unable to determine the reasonableness

16  of the hours proffered to have been expended by Majarian, particularly for purposes of a lodestar

17  check.

18      **c.   Percentage of the Fund Review**

19      Counsel seek an award of attorneys' fees equal to 35% of the common fund arguing

20  numerous factors support this requested award.  (Mot. Fees 19-28.)  Plaintiffs argue that federal

21  courts regularly award fees in excess of the percentage amount sought.  (Mot. 28.)  Here,

22  Plaintiffs cite cases from the District of Columbia, New York, and Massachusetts.  (Id.)

23  Plaintiffs also argue federal district courts in California tend to award above the 25% benchmark.

24  However, as Plaintiffs concede, "[i]n the Ninth Circuit, 25% of the settlement amount is the

25  'benchmark' for attorneys' fees awarded under the percentage method.  (Id.)

26      The Court acknowledges the case was based on contingency, the risks of litigation in

27  conjunction with cases of protracted nature, and the efforts expended by counsel over that time

28  period.  Counsel argue they have achieved significant relief for the class.  (Mot. 26-27.)  This

1    Court has voiced its concerns regarding whether the settlement amount is sufficient given the

2    initial valuations.  On the other hand, given the protracted nature of this action, extent of

3    investigation and discovery completed, completion of mediation, motion practice in state court

4    with resultant multiple modifications of the settlement agreement to align with court concerns,

5    and extensive negotiations, it appears counsel ultimately did achieve a substantial settlement for

6    the class.  However, given the totality of the record in this case, it appears the protracted nature

7    and delay of ultimately having the settlement approved comes largely at the fault of counsel, and

8    counsel have proffered no significant explanation for the delays between the initial attempt to

9    approve the settlement and now.  (See, e.g., ECF No. 21 (issuing order to show cause and noting

10   previous history where "the parties filed a joint scheduling report which included a fifth request

11   to continue the mandatory scheduling conference in this action . . . [g]iven the procedural history

12   and the age of this action, the Court also stated it was not inclined to grant any further requests

13   for a continuance.").)  The amount of settlement, contingent nature, risk, and protracted nature of

14   the litigation are not enough in this case to justify an upward departure.  Further, the delay in

15   obtaining a settlement that is proper and approvable by the Court, in addition to the inability to

16   conduct a proper lodestar check due to counsel's billing records, justify the Court recommending

17   reducing the fees to 20% of the common fund.  See Ferrell v. Buckingham, 2022 WL 224025, at

18   *3.

19        The Court accepts that counsel are seasoned and experienced litigators of wage-and-hour

20   class actions, and provided declarations attesting to their years of experience with complex and

21   class action litigation, recovery of millions of dollars on behalf of thousands of individual class

22   members in California, and have detailed the wage-and-hour class action cases they have been

23   involved with.  The Court does not disagree with movants that it appears Defendant retained

24   well-respected counsel that vigorously defended this action since its inception in 2015, and

25   courts have noted that the "quality of opposing counsel is also important in evaluating the quality

26   of Class Counsel's work."  In re KeySpan Corp. Sec. Litig., No. 01 CV 5852(ARR), 2005 WL

27   3093399, at *11 (E.D.N.Y. Sept. 30, 2005).  However, while the Court finds the experience of

28   counsel in litigating complex wage and hour class actions weighs in favor of the benchmark in

1  relation to obtaining results for the class in protracted litigation, the Court's experience with

2  counsel in this case and given the numerous deficiencies identified at state court, then again in

3  this Court, do not weigh in favor of an upward departure.  Ferrell, 2022 WL 224025, at *3  ("[I]t

4  seems unreasonable to bill the class for the entirety of drafting settlement agreements that courts

5  determined were unfair to class members.").

6        In sum, the Court does not find the results for the class to be exceptional, but rather

7  reasonable and also delayed.  Vizcaino, 290 F.3d at 1048–50.  The Court does not find the

8  litigation to be extremely risky, but rather somewhat normal and routine for this area of the law,

9  and the contingency nature is also routine for this type of case, and does not justify an upward

10  departure in relation to the risk.  Here, based on consideration of "all of the circumstances of the

11  case," the Court finds it appropriate to award attorneys' fees at the benchmark of 20%.  Id.

12        Given the protracted nature of this litigation, the Court would normally perform a

13  lodestar cross-check.  Vizcaino, 290 F.3d at 1050 ("Where such investment is minimal, as in the

14  case of an early settlement, the lodestar calculation may convince a court that a lower percentage

15  is reasonable.  Similarly, the lodestar calculation can be helpful in suggesting a higher percentage

16  when litigation has been protracted.").  However, as explained herein, the billing records make a

17  proper lodestar nearly impossible to calculate, and thus does not support an upward departure.

18  Again, the district court retains discretion in common fund cases to choose either the percentage

19  of the fund or lodestar method.  Vizcaino, 290 F.3d at 1047; Vu v. Fashion Inst. of Design &

20  Merch., 2016 WL 6211308, at *5; In re Bluetooth, 654 F.3d at 942 ("Where a settlement

21  produces a common fund for the benefit of the entire class, courts have discretion to employ

22  either the lodestar method or the percentage-of-recovery method . . . Because the benefit to the

23  class is easily quantified in common-fund settlements, we have allowed courts to award attorneys

24  a percentage of the common fund in lieu of the often more time-consuming task of calculating

25  the lodestar.").  Here, for all of the above reasons, the Court recommends 20% of the total

26  settlement fund to be a reasonable and proper attorneys' fees award in this action.  The inability

27  to perform a lodestar cross-check also supports a reduction from the 25% benchmark to 20%.

28  / / /

1      **d.**     **Lodestar Cross-Check of Reasonableness**

2      The Court now discusses the difficulties in performing a lodestar analysis to cross-check

3 the reasonableness of the requested attorneys' fee award.

4      When applying the percentage of the common fund method in calculating attorney fees,

5 courts use the "lodestar" method as a crosscheck to determine the reasonableness of the fee

6 request. See Vizcaino, 290 F.3d at 1050. "This amount may be increased or decreased by a

7 multiplier that reflects any factors not subsumed within the calculation, such as 'the quality of

8 representation, the benefit obtained for the class, the complexity and novelty of the issues

9 presented, and the risk of nonpayment.' " Adoma, 913 F. Supp. 2d at 981 (quoting In re

10 Bluetooth, 654 F.3d at 942). Where a lodestar is used as a cross-check, the court "may use a

11 'rough calculation of the lodestar.' " Bond v. Ferguson Enters., Inc., No. 1:09-cv-1662-OWW-

12 MJS, 2011 WL 2648879, at *12 (E.D. Cal. June 30, 2011) (quoting Fernandez v. Victoria Secret

13 Stores, LLC, No. 06-cv-04149-MMM-SHx, 2008 WL 8150856 (C.D. Cal. July 21, 2008)).

14      If anything, given the billing deficiencies identified above, the Court can really only do a

15 "rough calculation" of the lodestar. Bond, 2011 WL 2648879, at *12. The Court summarized

16 the issues regarding the presentation of the billing timesheets above from LFJ, and the

17 generalized proffer and description given by the two other law firms.

18      However, even if the Court were to attempt a rough calculation, the Court finds no

19 information to determine even a reasonable hourly rate for LJF. Counsel contends that the

20 professional backgrounds and experience of counsel supports a reasonable blended hourly rate of

21 compensation of at least $785 per hour for services provided by LFJ, and proffer that LFJ has

22 been awarded fees at the rate of at least $785 per hour by California courts. (Mot. Fees 30;

23 Aiwazian Decl. ¶¶ 17-18.) Plaintiffs provide no breakdown of even the individual hourly totals

24 for each respective attorney, nor even a list of the experience of the attorneys from LFJ that were

25 handling the action. Here, Plaintiffs cite to a "Davis" Declaration, (Mot. 30 n.61), however, the

26 declaration does not appear attached anywhere to the motion nor referenced elsewhere. The

27 Court notes that in a previous motion filed by this firm, such information was provided and that

28 allowed the Court to attempt to analyze the proffered blended rate, but even there no specific

1    experience was provided.       See Ferrell v. Buckingham Prop. Mgmt., No.

2    119CV00332NONESAB, 2021 WL 488314, at *33 (E.D. Cal. Feb. 10, 2021) ("Lawyers *for*

3    Justice calculated the blended rate by utilizing the hourly rates for each attorney, multiplied by

4    their number of respective of hours to reach total Lodestar fee for the firm based on these rates

5    and hours, and then arriving at an average hourly rate based thereon . . . While Edwin Aiwazian

6    describes the breadth of his own experience specifically, and the law firm generally, counsel

7    does not describe the individual experience of the other members of the firm.").     Such

8    information is simply not present, and thus in addition to the block billing issues identified

9    above, there is insufficient information for the Court to perform a lodestar check.

10          Given this, the Court finds no practical reason to proceed into attempting to make a

11    lodestar calculation for the other two law firms, particularly given the lack of any billing records,

12    aside from a generalized proffer of the total hours and type of tasks done over several years.  The

13    Court does note that, the information and cases provided in support of the requested hourly rate

14    by attorney Granberry only concern areas of California outside of the Fresno area, and Granberry

15    expressly declares his knowledge of the rates charged in Los Angeles.  (See Granberry Decl. ¶¶

16    11, 12.)

17          Overall, the requested rates are higher than those previously accepted by this Court as

18    reasonable.  See, e.g., Emmons v. Quest Diagnostics Clinical Labs., Inc., No. 1:13-cv-00474-

19    DAD-BAM, 2017 WL 749018, at *8 (E.D. Cal. Feb. 27, 2017) (adopting as reasonable rates

20    between $370 and $495 for associates and $545 and $695 for senior counsel and partners);

21    Englert v. City of Merced, No. 118CV01239NONESAB, 2020 WL 2215749, at *13 (E.D. Cal.

22    May 7, 2020) (approving attorneys' fees in an FLSA action that totaled approximately thirty-one

23    percent (31%) of the common fund, and in performing a lodestar cross-check, finding the

24    corresponding rates of $450.00 per hour for a partner with nineteen years of experience, $400.00

25    per hour for a senior associate attorney with an unspecified amount of years of experience, and a

26    rate of $325.00 per hour for an associate with eight years of experience, to be reasonable.); In re

27    Taco Bell Wage & Hour Actions, 222 F.Supp.3d 813, 839 (E.D. Cal. 2016) (noting attorneys in

28    Fresno Division with twenty or more years of experience are awarded $350.00 to $400.00 per

1    hour, and attorneys with less than fifteen years of experience are awarded $250.00 to $350.00 per

2    hour).

3         Thus, the Court finds it impossible to perform a proper lodestar cross-check based on

4    what counsel has submitted.  Therefore, the Court finds this weighs in favor of reducing the

5    attorneys' fees to 20%.

6              2.    Expenses of Class Counsel

7         Additionally, class counsel seeks to recover the costs expended on this litigation.

8    Expense awards "should be limited to typical out-of-pocket expenses that are charged to a fee

9    paying client and should be reasonable and necessary."  In re Immune Response Secs. Litig., 497

10   F. Supp. 2d 1166, 1177 (S.D. Cal. 2007).  These can include reimbursements for:  "(1) meals,

11   hotels, and transportation; (2) photocopies; (3) postage, telephone, and fax; (4) filing fees; (5)

12   messenger and overnight delivery; (6) online legal research; (7) class action notices; (8) experts,

13   consultants, and investigators; and (9) mediation fees."  Id.

14        The supplemental recommendation expressly noted that the Plaintiffs were to provide

15   receipts to support their claimed expenses, in addition to itemizing expenses into categories, and

16   total amounts for each category:

17              The parties are further advised that to support an expense award,
                Plaintiffs should file an itemized list of expenses by category and
18              the total amount advanced for each category, allowing the Court to
                assess whether the expenses are reasonable."  Flores v. TFI Int'l
19              Inc., No. 12-CV-05790-JST, 2019 WL 1715180, at *11 (N.D. Cal.
                Apr. 17, 2019).  **At final approval counsel will also be required**
20              **to provides receipts to support their claimed expenses.**  Flores,
                2019 WL 1715180, at *11.
21

22   (ECF No. 43 at 32 (emphasis added).)  No receipts were provided here, and the costs were not

23   itemized by category by LFJ.  The Court notes that despite this forewarning, the Court does not

24   typically decline to award facially reasonable expense requests even if receipts for each

25   individual expense are not provided, if properly supported by affirmation of counsel.  The lack of

26   receipts here does present problems, however, most significantly with the mediation expenses,

27   and somewhat with the travel expenses.

28        First, the Court has no way to determine the appropriateness of the proffered mediation

costs, as it is unclear how the expenses were actually split and incurred as proffered in the individual submissions, as further confused by testimony from counsel at the final approval hearing.  First, LFJ, claims (1) a mediation fee of $5,116.67 dated December 5, 2016; (2) a mediation fee of $5,086.67 dated January 23, 2017; and a mediation fee of $849.05 on April 4, 2017.  (ECF No. 60-1 at 56-57.)  .L&E claim (1) a mediation fee of $5,086.68 dated January 25, 2017; and (2) a mediation case management fee of $849.06 dated February 17, 2017.  (ECF No. 60-2 at 59.)  Majarian claims a mediation fee of $5,116.66, dated November 21, 2016.

Thus, LFJ are requesting $11,052.39; L&E are requesting $5,935.74; Majarian is requesting $5,116.66; and overall Plaintiffs are requesting a total of $22,104.79 in mediation fees.  At the final approval hearing, the Court inquired of the breakdown of mediation fees because there were no receipts for the Court to ensure this was properly allocated.  First, although not certain, Defendant indicated it should have paid a portion of the total mediation fees, and thus as presented, the total fee is likely substantially more than $22,104.79, if the Court simply accepts the claimed costs.  Second, Mr. Granberry first indicated that Majarian's mediation fees were incorporated in L&E's mediation fees, but then the Court highlighted that the proposed order and expense request from Majarian did include mediation fees.  Majarian did not appear at the final approval hearing, and ultimately, no counsel could provide the Court with a clear answer as to how the mediation fees were allocated amongst the firms, and Defendant.

Therefore, given the high claimed costs of mediation even aside from the unknown amount the Defendant paid, the absence of receipts here precludes the Court from making a determination that the mediation costs are properly awarded as expenses to counsel.  Therefore the Court recommends no mediation fees be awarded unless objections clearly present the receipts and fee breakdown between Plaintiffs' law firms.

The travel expenses are also concerning, at least as to LFJ.  The travel expenses from L&E appear reasonable and are at least broken down for the Court to see the cost of the hotel, the separate airline fees, and the separate Uber Fees.  (ECF No. 60-2 at 60.)  Similarly, the travel expenses for Majarian are broken down by airline ticket for each attorney, as well as Uber, parking, and mileage reimbursements.  (ECF No. 60-3 at 7.)

1    The Court cannot determine whether the travel expenses proffered by LFJ are reasonable.

2    On December 7, 2015, there is simply an entry for "travel reimbursement" for $941.91; on June

3    17, 2016, an entry for travel reimbursement for $252.03 on June 17, 2016; an entry for $473.16

4    on July 8, 2016; an entry for $204.66 on July 18, 2016; an entry for $456.20 on December 9,

5    2016; an entry for $147.70 on December 13, 2016; an entry for $422.42 on December 15, 2016;

6    an entry for $247.34 on January 6, 2017; an entry for $149.91 and $419.24 on January 25, 2017;

7    an entry for $1,107.78 on February 28, 2017; an entry for $112.83 on March 1, 2017; and an

8    entry for $134.95 on September 14, 2017.  (ECF No. 60-1 at 55.)  Thus, LFJ claims a total of

9    $5,070.13 in unspecified travel reimbursement.  The Court is left to speculate whether these

10   charges are for airline, hotels, or meals, or a combination of such.  The Court cannot determine if

11   for example, the $1,107.78 charge encompasses the expenses of one or more attorneys.   The

12   Court recommends declining to award the travel expenses to LFJ unless counsel provides a

13   reasonable explanation and support for the claimed travel expenses, if the District Court is

14   inclined to consider such submission in objections at that point.[13]

15   The Court finds the remainder of the expenses incurred to be reasonable.  Therefore, the

16   Court recommends reduction of the fees sought by LFJ in the amount of $11,052.39 for

17   mediation fees subject to clarification in objections, and a reduction of $5,070.13 in travel

18   expenses from LFJ's sought costs, subject to objections.  The Court further recommends a

19   reduction in the fees sought by L&E in the amount of $5,935.74, and in the amount $5,116.66 for

20   Majarian, for mediation costs, subject to clarification in objections.

21   Accordingly, the Court recommends reimbursement of expenses in the following

22   amounts: (1) $25,626.02 to Lawyers *for* Justice, reduced from $41,748.54; (2) $8,731.23 to Lavi

23   & Ebrahimian, reduced from $14,666.97; and (3) $1,669.06 to the Law Office of Sahag Majarian

24   II, reduced from $6,785.72.

---

25   [13]  The Court considered whether it should order supplemental briefing.  As the District Judge previously assigned to

26   this action stated: "In their objections plaintiffs repeatedly argue that the magistrate judge could have easily ordered
     supplemental briefing rather than to recommend denial of the motion.  Plaintiffs' counsel appear to have this

27   backwards.  The onus is on *counsel* to support their position with material information and briefing in the first
     instance.  The failure to do so may result in the denial of the requested relief and unnecessarily prolong court

28   proceedings.  Plaintiffs' counsel has had other motions for preliminary approval of class settlement before this court
     and should have a far better understanding of their responsibilities at this point."  (ECF No. 29 at 11 n.5.)

3.      Class Representative Incentive Awards

"Incentive awards are fairly typical in class action cases."   Rodriguez v. West Publ'g Corp., 563 F.3d at 958–59.  However, the decision to approve such an award is a matter within the court's discretion.  In re Mego Fin. Corp. Sec. Litig., 213 F.3d at 463.  Generally speaking, incentive awards are meant to "compensate class representatives for work done on behalf of the class, to make up for financial or reputational risk undertaken in bringing the action, and, sometimes, to recognize their willingness to act as a private attorney general."   Rodriguez v. West Publ'g Corp., 563 F.3d at 958–59.  The Ninth Circuit has emphasized that "district courts must be vigilant in scrutinizing all incentive awards to determine whether they destroy the adequacy of the class representatives . . . .  [C]oncerns over potential conflicts may be especially pressing where . . . the proposed service fees greatly exceed the payments to absent class members."  Radcliffe v. Experian Info. Sols., Inc., 715 F.3d 1157, 1165 (9th Cir. 2013) (internal quotation marks and citation omitted).  A class representative must justify an incentive award through "evidence demonstrating the quality of plaintiff's representative service," such as "substantial efforts taken as class representative to justify the discrepancy between [her] award and those of the unnamed plaintiffs."  Alberto, 252 F.R.D. at 669.

In assessing the appropriateness of class representative enhancements or incentive payments, the Court must consider factors such as the actions the plaintiffs took to protect the interests of the class, the degree to which the class has benefitted, the amount of time and effort the plaintiff expended in pursuing litigation, and any notoriety or personal difficulties encountered by the representative plaintiff.  Khanna v. Intercon Sec. Systems, Inc., No. 2:09-cv-2214 KJM EFB, 2014 WL 1379861, at *10 (E.D. Cal. Apr. 8, 2014); Reibstein v. Rite Aid Corp., 761 F. Supp. 2d 241, 257 (E.D. Penn. 2011); see also Staton, 327 F.3d at 975-77.  "Incentive awards are particularly appropriate in wage-and-hour actions where plaintiffs undertake a significant 'reputational risk' by bringing suit against their former employers."  Bellinghausen, 306 F.R.D. at 267 (citation omitted).

In the initial recommendation to deny preliminary approval, the Court considered the range of recovery in this action for class members versus the incentive awards, and given the

significant valuation discounts that were given to the claims, the Court found this raised at least the inference that the named class members could be settling this matter for their benefit at the expense of the unnamed class members.  (ECF No. 27 at 14-16.)  The District Judge addressed the proposed incentive payments to the class representatives finding that Plaintiffs Cota, and Solorio, had adequately set forth their efforts in this action, for purposes of preliminary approval.  (ECF No. 29 at 7-9.)  The District Judge found it unclear from the declarations of Plaintiffs Beltran, Martinez, and Rivera, the amount of time that they expended in this action and they were directed to file supplemental briefing providing more detailed support for the requested fees.  (ECF No. 29 at 6-9.)

The Court's supplemental recommendation granting preliminary approval then noted remaining concerns regarding incentive payments, and requested to clarify any duplicative nature of the hours expended:

> The district judge found that he was not satisfied that the incentive payments were so disproportionate that they could not be approved.  As the parties were previously advised, this Court has previously relied on other cases in this district to award incentive payments ranging from $3,000.00 to 5,000.00 in such actions.  At final approval, the named plaintiffs will be required to sufficiently support the proposed incentive payments including submitting declarations that clarify the total, non-duplicative time, they expended in this matter.

(ECF No. 43 at 28.)  It does not appear Plaintiffs heeded the Court's specific forewarning, and have not provided declarations that sufficiently support this request, and insufficient information to clarify the total non-duplicative nature of the time, as explained above in summarizing the totality of the support provided by the three firms concerning all hours expended.  (See Granberry Decl. ¶ 15, ECF No. 60-2 at 11; Aiwazian Decl. ¶ 26, ECF No. 60-1 at 21.)[14]

Here, the class representatives Beltran, Martinez, Cota, and Solorio, are seeking service awards of $7,500.00, while Rivera seeks $3,500.00.  These amounts are to be awarded from the

---

[14]  LFJ's block billing for time meeting with the named Plaintiffs does match claimed hours for named Plaintiffs' incentive awards: 33.5, 43.5, 49.5, and 21.5 hours.  (See ECF No. 60-1 at 26-27.)

gross settlement amount prior to division amongst the class and FLSA collective members.

The Court notes that at the time of the filing of the motion, the average gross estimated Non-FLSA Payment to a Participating Class Member was proffered to be approximately $212.62, and the average gross estimated FLSA Payment to a Participating FLSA Member was approximately $500.02.  (Simpluris Decl. ¶¶ 23, 24.)  Therefore, the settlement provides an average net payment of $712.64 per class and FLSA collective member.  As the requested service awards of $7,500 are approximately 10.5 times the size of the average net payment,[15] it constitutes a large differential with respect to the amounts to be awarded to the named Plaintiffs versus the unnamed class members.  The proportionality between these payments, alone, suggests the requested award amount is excessive.  In addition, however, the Court does not find that the record supports an award higher than the Ninth Circuit average of $5,000.00.  Even despite the Court's forewarning and clearly established legal authorities that a motion for final approval is more carefully scrutinized than is the preliminary approval request, see, e.g., True, 749 F. Supp. 2d at 1063, Plaintiffs did not submit further sufficient declarations to support the requested incentive award payment amount.  Instead, as with many of the arguments asserted in the motion for final approval, Plaintiff appears to rely largely upon prior arguments and statements asserted in support of the motion for preliminary approval.  However, the Court finds this is insufficient at the final approval stage, particularly in light of the forewarnings by the Court.

The Court recommends the $7,500 awards be reduced to $5,000, and the $3,500 award be awarded.

Accordingly, the Court recommends awarding the named class representatives Beltran, Martinez, Cota, and Solorio, awards of $5,000.00, and Rivera $3,500.00.

4.  Settlement Administrator Costs

The court previously approved the appointment of Simpluris, Inc. as the settlement

---

[15] The Court acknowledges that, in light of its proposed reduction in attorneys' fees, this average net payment amount should increase, to some extent.  Nonetheless, even under such circumstances, the Court finds the remaining difference between the service award and average net award, in combination with the absence of supporting information expressly requested by the Court, does not justify an incentive payment that exceeds the presumptively reasonable amount by $2,500.00, as discussed herein.

administrator.  The total costs incurred and to be incurred by Simpluris for the notice and settlement administration process are proffered to be $78,187.00.  (Mot. 26; Simpluris Decl. ¶ 26.)[16]

The costs incurred and to be incurred include, but are not limited to, (a) establishing and maintaining a related settlement fund account; (b) establishing and maintaining a calendar of administrative deadlines and responsibilities; (c) processing and mailing payments to the Plaintiffs, Class Counsel and Class Members; (d) printing and mailing the Notice of FLSA Settlement, FLSA Opt-In Form, Notice of Class Action Settlement, and Request for Exclusion Form (hereafter "Notice Packet") to Class Members; (e) establishing and maintaining a dynamic case website (www.OlamSettlement.com) with case information, Notice Packet documents translated into Spanish and a link for Class Members to Opt-In to the FLSA settlement; (f) sending a text message to Class Members containing the case website link; (g) sending an email containing the Notice Packet to all Class Members with available email addresses; (h) receiving and validating Requests for Exclusion, Objections or Disputes of Workweeks submitted by Class Members; (i) calculating Employer Payroll Taxes and providing appropriate forms and calculations to Defendants; (j) mailing settlement checks, (k) providing counsel with weekly reports; (l) calculation of the settlement checks, issuance and mailing of those settlement checks, etc., and doing the necessary tax reporting on such payments; and (m) other tasks as the Parties mutually agree or the Court orders Simpluris to perform.  (Mot. 60; Simpluris Decl. ¶¶ 3, 26.)

The Court finds these administration costs reasonable and recommends granting approval of the settlement administration costs.

## V.

## CONCLUSION AND RECOMMENDATIONS

For all of the above reasons, the Court finds the settlement is fundamentally fair, adequate, and reasonable.  Fed. R. Civ. P. 23(e); Lane v. Facebook, Inc., 696 at 818; Hanlon, 150

---

[16]  The Court notes that the billing statement actually notes costs in the amount of $78,186.93.  (ECF No. 63 at 23.)  The settlement administrator also declares that the total costs of completion of the settlement administration is $83,177.00, of which $78,187.00 will be paid out of the settlement fund, and $4,990.00 will be paid directly be Defendant.

F.3d at 1026–27.  The Court finds the requested amount of attorneys' fees, costs, and incentive awards, should be reduced, and that the requested administrative costs are reasonable and appropriate.

Accordingly, IT IS HEREBY RECOMMENDED that:

1.     Plaintiffs' motion for final approval of the class action settlement, (ECF No. 58), be GRANTED and the Court approve the settlement as fair, reasonable, and adequate, subject to addressing the specific areas of inquiry identified above;[17]

2.     Plaintiffs' motion for attorneys' fees and costs and incentive awards, (ECF No. 60), be GRANTED IN PART, subject to the following recommended reductions:

a.     Attorneys' fees be reduced from 35% of the total settlement fund to 20%, and be awarded in the amount of $900,000.00, reduced from $1,575,000.00;

b.     Expenses be awarded to Lawyers *for* Justice in the amount of $25,626.02, reduced from $41,748.54;

c.     Expenses be awarded to Lavi & Ebrahimian in the amount of $8,731.23, reduced from $14,666.97;

d.     Expenses be awarded the Law Office of Sahag Majarian II in the amount of $1,669.06, reduced from $6,785,72;[18]

e.     Plaintiff Beltran, Martinez, Cota, and Solorio, each receive $5,000.00 as an incentive award;

f.     Plaintiff Rivera receive $3,500.00 as an incentive payment; and

3.     Simpluris, Inc., receive $78,187.00 in settlement administration costs and

---

[17] As noted above, the Court expects Plaintiffs to address the issues identified herein, including: (1) a lack of updated numbers provided by Simpluris from the date of the filing of the motion for final approval until the final approval hearing, including information pertaining to Omitted Class Members; (2) the incorrect final approval hearing date contained in the Notice Packet; and (3) information pertaining to reminder postcards, email notice, and text blasts, generally and as to Omitted Class Members.  (See Sections IV(A)(3)-(4), IV(B)(1).)

[18] As noted above, the Court finds it reasonable to allow for clarification of the mediation costs in objections, and to the extent the District Judge is inclined to consider, clarification of the travel expenses for Lawyers *for* Justice. However, the Court notes that the District Judge is severely impacted due to the judicial emergency in the Eastern District, and any supplement should be clear and concise to the issue of the costs.  Again, as the District Judge previously observed in this action: "The onus is on *counsel* to support their position with material information and briefing in the first instance [and] [t]he failure to do so may result in the denial of the requested relief and unnecessarily prolong court proceedings."  (ECF No. 29 at 11 n.5.)

1    expenses.

2           These findings and recommendations are submitted to the district judge assigned to this

3    action, pursuant to 28 U.S.C. § 636(b)(1)(B) and this Court's Local Rule 304.  Within fourteen

4    (14) days of service of this recommendation, any party may file written objections to these

5    findings and recommendations with the Court and serve a copy on all parties.  Such a document

6    should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  The

7    district judge will review the magistrate judge's findings and recommendations pursuant to 28

8    U.S.C. § 636(b)(1)(C).  The parties are advised that failure to file objections within the specified

9    time may result in the waiver of rights on appeal.  Wilkerson v. Wheeler, 772 F.3d 834, 839 (9th

10   Cir. 2014) (citing Baxter v. Sullivan, 923 F.2d 1391, 1394 (9th Cir. 1991)).

11

12   IT IS SO ORDERED.

13   Dated:   **February 2, 2023**

     UNITED STATES MAGISTRATE JUDGE