## UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| THOMAS BELTRAN, et al., | ) | Case No.: 1:18-cv-1676 JLT SAB |
| | ) | |
| Plaintiff, | ) | ORDER ADOPTING IN PART THE FINDINGS |
| | ) | AND RECOMMENDATIONS ON |
| | ) | PLAINTIFF'S MOTIONS FOR FINAL |
| | ) | APPROVAL, FEES, COSTS, AND CLASS |
| v. | ) | REPRESENTATIVE PAYMENTS |
| | ) | |
| OLAM SPICES AND VEGETABLES, INC., | ) | (Docs. 58, 60, 65, and 66) |
| | ) | |
| Defendant. | ) | FINAL APPROVAL ORDER AND JUDGMENT |
| | ) | |
| | ) | |

Plaintiffs seek to hold Olam Spices and Vegetables, Inc., liable for violations of state and federal wage and hour laws. Plaintiffs now seek final approval of a settlement reached in this action. In addition, Plaintiffs seek attorneys' fees and costs from the settlement fund, costs for settlement administration, and service awards for the class representatives. (Docs. 58, 60.) The assigned magistrate judge recommended final approval of the terms be granted, with reductions to the requested fees, expenses, and incentive awards. (Doc. 65.)

For the reasons set forth below, the Findings and Recommendations of the magistrate judge are adopted in part. Because Plaintiffs carry the burden to demonstrate the terms of the Settlement are fair, reasonable, and adequate, the request for final approval of the Settlement is granted, with modifications to the requested attorneys' fees, attorneys' expenses, and class representative payments.

1

# I.      Summary of Settlement Terms

Pursuant to the "Fourth Amended Class Action and Collective Action Settlement and Release Agreement" ("the Settlement"), the parties agree to a gross amount of $4,500,000.00 to settle the action.  (Doc. 41 at 13, Settlement § II(40).)  The Rule 23 Class is defined as:

> All persons who were employed by Olam West Coast, Inc. ("Defendant") in a position that Defendant classified as non-exempt and/or hourly non-exempt and worked in that capacity at Defendant's Fresno, Firebaugh, Hanford, Lemoore, Gilroy and/or Williams facilities in California and for which Class Members and FLSA Members were paid on a non-exempt basis ("Covered Position"), at any time during the period from July 7, 2011 through September 22, 2021 ("Settled Period"), or the estates of such individuals.

(Doc. 44 at 2 [defining and conditionally certifying the settlement class]; *see also* Doc. 41 at 6, § II(6).) The FLSA Collective includes:

> All persons who were employed by Olam West Coast, Inc. ("Defendant") at Defendant's Fresno, Firebaugh, Hanford, Lemoore, Gilroy, and/or Williams locations in one or more positions which were classified as non-exempt and/or hourly non-exempt at any time during the period from July 7, 2011 to September 22, 2021 ("FLSA Members").

(*Id.* [defining and conditionally certifying the FLSA collective]; *see also* Doc. 41 at 7, § II(18).)

The Total Settlement Fund will cover all payments to Class Members and FLSA Members, including service payments to Plaintiffs as the class representatives.  (Doc. 41 at 15, § III(6).)  In addition, the Settlement provides for payments to Class Counsel for attorneys' fees and expenses, to the Settlement Administrator, and the California Labor & Workforce Development Agency.  (*Id.* at 15-17, § III(5)-(9).)  Specifically, the Settlement provides for the following payments:

- Service awards up to $7,500 for Plaintiffs Thomas Beltran, Mario Martinez, Maria Obeso Cota, and Alexander Solorio; and a service award of $3,500 to Plaintiff Juan Rivera;

- Class counsel will receive up to 35% of the gross settlement in fees, and expenses up to $65,000;

- The California Labor and Workforce Development Agency shall receive $112,500 from the total PAGA payment of $150,000;

- Reasonable administration costs for the Settlement Administrator.

(*See id.*)  After these anticipated payments, the remaining (net) fund shall be distributed to the Class Members and FLSA Members.  The entire fund will be distributed "and no portion of it will revert or be retained by Defendant."  (*Id.* at 13, § II(40).)  The parties agreed that 75% of the net settlement

fund will be designated for Class Members, and 25% will be dedicated to the FLSA Members.  (*Id.* at 17-16, § III(9).)

## II.     Notice and Response

Pursuant to Rule 23, notice to a class may be accomplished by U.S. mail, electronic service, "or other appropriate means." Fed.R.Civ.P. 23(c)(2)(B).  At the preliminary approval stage, the magistrate judge questioned whether "mailing of a single notice would … be sufficient to inform the class members of the pendency of this action."  (*See* Doc. 65 at 19, citing *Roes, 1-2 v. SFBSC Mgmt., LLC*, 944 F.3d 1035, 1043 (9th Cir. 2019).)  Therefore, the parties agreed:

> the notice packet shall be mailed to the last known address of each class or collective action member, a follow up mailing of a reminder card will be sent approximately halfway through the opt in period for those who have not yet opted into the FLSA collective action, and a mobile phone accessible settlement website will be established containing information on the settlement…

(*Id.* at 19-20, quoting Doc. 32 at 9.)  The parties also agreed that "[t]he settlement website shall be included on the notice mailed to the putative members.  (*Id.*)

The Settlement Administrator, Simpluris, reported the company mailed the Notice Packets to 8,178 individuals identified by Defendant as Class Members on August 12, 2022.  (Doc. 63 at 5, Kline Decl. ¶¶ 6-8.)  Although 814 of the initial Notice Packets were returned to Simpluris, the company was able to locate updated addresses for 697 individuals, and re-mail the packets.  (*Id.* ¶ 10.)  Ultimately, 117 of these Notice Packets remained undeliverable.  (*Id.*)  The deadline to respond to the Notice Packet—including to request exclusion, object to the settlement, dispute the number of workweeks, and/or opt-in to the FLSA Settlement—was October 11, 2022.  (*Id.*, ¶ 13; *see also* Settlement § II(35).)  However, "Simpluris was informed that Class Members were inadvertently left off of the Class List for the initial mailing" on October 11, 2022.  (Doc. 63 at 5, Kline Decl., ¶ 11.)  On October 21, 2022, Simpluris mailed the Notice Packet to an additional 572 individuals, identified as the "Omitted Class Members."  (*Id.*, ¶ 12.)  The response deadlines were extended to December 20, 2022 for the Omitted Class Members.  (*Id.*)

Reviewing the information from Plaintiffs and Simpluris, the magistrate judge observed that as of the filing of the motion for final approval, Simpluris received 1,235 FLSA Claim Forms.  (Doc. 65 at

16.)  No objections to the settlement were received.  (*Id.*)  However, "Simpluris anticipated additional responses may still be received as timely postmarked from Omitted Class Members."  (*Id.* at 17.)  The magistrate judge identified the following concerns:

> First, the Court finds no information in the late-filed declaration concerning whether any of the Omitted Class Members had packets returned as undeliverable, nor information regarding any follow-up skip trace process on such.
>
> Second, the Court finds no information in the motion or declarations pertaining to the mailing of the reminder cards, which was an additional factor the Court considered in approving the notice process. However, the Court did review the billing statement provided by Simpluris, and notes there is at least evidence that 7,140 reminder post cards were sent, for a charge of $4,998.00. (ECF No. 63 at 22.)
>
> Third, Plaintiffs do not include information pertaining to the text blast. Simpluris does declare that Notice Packets were emailed to 1,704 Class Members that had an email address. (Simpluris Decl. ¶ 9.) The Court's review shows that $1,000.00 was charged for "Email/Text Set up and send." (ECF No. 63 at 22.) However, neither the declaration nor motion contains any affirmation that text messages were sent to any number of known phone numbers.
>
> Fourth, of particular note, following the final approval hearing, the Court's review of the late-filed declaration revealed that the Class Notice contained the incorrect final approval hearing date, at two different points of the notice, proffering the hearing date as January 23, 2023, rather than the correct date of January 25, 2023. (ECF No. 63 at 17, 19.) The correct hearing date does appear in two locations in the FLSA notice, however. (ECF No. 63 at 11-12.) This error was not proffered or identified by any of the parties before, during, or after the final approval hearing.

(Doc. 65 at 20, footnote omitted.)  The magistrate judge determined these issues, including the erroneous hearing date, did not mandate a finding that service was inadequate. (*Id.* at 21-24.)  The magistrate judge found "sufficient notice has been provided, subject to the parties addressing this lack of information in objections, as well as the other specific concerns identified above concerning the notice."  (*Id.* at 24, citing *Silber v. Mabon*, 18 F.3d 1449, 1453–54 (9th Cir. 1994); *Winans v. Emeritus Corp.*, 2016 WL 107574, at *3 (N.D. Cal. Jan. 11, 2016) (emphasis omitted).)  Nevertheless, the magistrate judge indicated that in response to the Findings and Recommendations, Plaintiffs were expected to address: "(1) a lack of updated numbers provided by Simpluris from the date of the filing of the motion for final approval until the final approval hearing, including information pertaining to Omitted Class Members; (2) the incorrect final approval hearing date contained in the Notice Packet;

4

and (3) information pertaining to reminder postcards, email notice, and text blasts, generally and as to Omitted Class Members."  (Doc. 65 at 67, n.17.)

### A.    Hearing date error

Responding to the magistrate judge's observations concerning the hearing date error, Plaintiffs acknowledge that "[t]he Class Notice Packet for both Initial Class Members and Omitted Class Members stated a final approval hearing date of January 23, 2023."  (Doc. 66 at 3, citing Kline Supp. Decl. ¶ 17 [Doc. 66-3 at 4].)  Lindsay Kline, a Senior Project Manager with Simpluris, reports the hearing date "was an inadvertent typographical error by Simpluris."  (Doc. 66-3 at 4, ¶ 17.)

Pursuant to Rule 23 of the Federal Rules of Civil Procedure, a notice "to a class proposed to be certified for purposes of settlement under Rule 23(b)(3)"—as applicable here— must include:

> (i)  the nature of the action;
> (ii) the definition of the class certified;
> (iii) the class claims, issues, or defenses;
> (iv) that a class member may enter an appearance through an attorney if the member so desires;
> (v) that the court will exclude from the class any member who requests exclusion;
> (vi) the time and manner for requesting exclusion; and
> (vii) the binding effect of a class judgment on members under Rule 23(c)(3).

Fed.R.Civ.P. 23(c)(2).  Thus, under the explicit terms of Rule 23, a class notice is not required to identify the final approval hearing date.

Notably, the Notice Packet included all information required under Rule 23(c)(2), including the applicable deadlines to request exclusion and/or object to the settlement terms.  As discussed below, Simpluris reports that no objections to the Settlement were received from Class Members, including the "Omitted Class Members" who had an extended deadline.[1]  (Doc. 66-3 at 5, Kline Supp. Decl. ¶ 21; Doc. 63 at 5, Kline Decl. ¶ 16.)  Thus, the Court finds the typographical error of the hearing date was harmless, and the information in the Notice Packet was sufficient under Rule 23.  *See, e.g., Arnett v. Bank of Am., N.A.,* 2014 WL 4672458, at *3 n.7 (D.Or. Sept. 18, 2014) ("[a] typographical error" with a hearing day "did not render the Class Notice insufficient").  The finding of the magistrate judge concerning the sufficiency of the Notice Packet is adopted.

---

[1] Because no objections were received by the Settlement Administrator or the Court, Class Members would not have been entitled to be heard at the final approval hearing.

5

**B.      Notice effected**

Ms. Kline submitted a supplemental declaration regarding the Notice and Settlement Administration with Plaintiff's response to the Findings and Recommendations.  (Doc. 66-3.)  She reports that the same day the initial notice packets were mailed, Simpluris also sent text messages and emails to individuals for whom such information was identified in the Class List contact information provided by Defense Counsel.  (*Id.* at 3, Supp. Decl. ¶¶ 8-10.)  Ms. Kline reports that Notice Packets were emailed to 1,704 individuals and text messages were sent to 5,430 individuals.  (*Id.*, ¶¶ 9-10.)  In addition, Simpluris sent reminder letters to 7,703 individuals who had not submitted an FLSA opt-in form on September 19, 2022.  (*Id.*, ¶ 11.)

Ms. Kline reports that "Simpluris was informed that Class Members were inadvertently left off of the Class List for the initial mailing" on October 11, 2022.  (Doc. 66-3 at 4, Supp. Decl. ¶ 12.)  She reports that Simpluris located updated addresses for 132 individuals and mailed the Notice Packet to the 562 Omitted Class Members ten days later.  (*Id.*, ¶¶ 13-14.)  From this second wave of packets, 76 were returned to Simpluris.  (*Id.* at 4, ¶ 16.)  None of the returned packets had forwarding addresses, but "Simpluris performed an advanced address search (i.e. skip trace) on all of these addresses" and located 58 updated addresses.  (*Id.*)  However, 18 packets for Omitted Class Members remained undeliverable.  (*Id.*)  According to Ms. Kline, "Based on Simpluris' misunderstanding, Simpluris did not email notices, send a text blast or Reminder Letters to the Omitted Class Members."  (*Id.*, ¶ 15.)

Although the Omitted Class Members did not receive texts, emails, or reminder letters, it appears the overall service was adequate by the Settlement Administrator.  In total, Simpluris mailed Notice Packets to 8,740 individuals identified as Class Members.  (Doc. 66-3 at 3-4, Supp. Decl. ¶¶ 8, 14; *see also* Doc. 63 at 4, Decl. ¶¶ 8, 12.)  Of these mailed notices, only 135 remained undeliverable. (Doc. 66-3 at 3-4, Supp. Decl. ¶¶ 8, 14; *see also* Doc. 63 at 4, ¶ 10 [indicating 117 packets to the group initially served were undeliverable].)  Thus, only approximately 1.3% of the mailed notices remained undeliverable, and 98.7% of all Class Members received the mailed Notice Packets.  (*See id.*)

Importantly, notice to a class is not required to be perfect.  *See In re Online DVD-Rental Antitrust Litig.,* 779 F.3d 934, 947 (9th Cir. 2015) ("The notice in this case was not perfect, but the court did not abuse its discretion in approving the notice plan and ultimately approving the

settlement"). Instead, service must be the "best notice practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Fed. R. Civ. P. 23(c)(2)(B). Because an overwhelming majority of Class Members received the mailed Notice Packets—and Simpluris did not receive phone or email contact information for thousands of individuals— service through the U.S mail was clearly the best form of notice practicable and available in this action. *See* 3 William B. Rubenstein, Alba Conte, and Herbert B. Newberg, *Newberg on Class Actions* § 8:2 (4th ed. 2007) ("When the names and addresses of most class members are known, notice by mail is usually preferred"); *see also Silber v. Mabon*, 18 F.3d 1449, 1453-54 (9th Cir. 1994) ("best practicable notice" does not require *all* class members to receive actual notice); *Winans v. Emeritus Corp.,* 2016 WL 107574, at *3 (N.D. Cal. Jan. 11, 2016) ("While Rule 23 requires that 'reasonable effort' be made to reach all class members, it does not require that each individual actually receive notice."). Accordingly, while the notice was not perfectly executed by Simpluris in the anticipated manner, the mailing was sufficient to satisfy the "best notice practicable" standard under Rule 23.[2]

### C.    Response of Omitted Class Members

Ms. Kline reports that Simpluris received one request for exclusion from an Omitted Class Member. (Doc. 66-3 at 5, Kline Supp. Decl. ¶ 19.) In addition, Simpluris did not receive any Objections to the Settlement from Omitted Class Members. (*Id.*, ¶ 21.) She reports that no Omitted Class Member disputed the number of workweeks identified in the notice to calculate settlement shares. (*Id.*, ¶ 22.) Finally, Simpluris received 13 claim forms from individuals identified as FLSA Omitted Members. (*Id.*, ¶ 20.)

///

---

[2] The magistrate judge expressed concern regarding the limit to mailing in this action based upon *Roes, 1-2 v. SFBSC Mgmt., LLC*, 944 F.3d 1035, 1043 (9th Cir. 2019). (*See* Doc. 65 at 19.) In *SFBSC*, the Ninth Circuit found it was "particularly problematic" that the method of notice was limited to the mail, "despite concerns that former employees in particular might be difficult to reach by mail." *Id.* at 1048. The Court observed that approximately 12% of the 4,681 mailed class notices remained undeliverable. *Id.* at 1046. The Court found this was insufficient, and indicated "the parties must provide notice 'reasonably calculated' to apprise all class members of the settlement." *Id.* at 1047. The Court explained: "This is particularly important where … *the proposed settlement has reversionary aspects*…" (*Id.*, emphasis added). In contrast, less than 2% of the 8,740 mailed notices remain undeliverable in this action. Moreover, the parties agreed that the entire fund will be distributed, and the settlement does not have reversionary aspects. (Doc. 41 at 13, § II(40).) Thus, the issues identified by the Ninth Circuit in *SFBSC* are not present in this action.

1    **II.     Final Certification**[3]

2          Class certification is governed by Rule 23 of the Federal Rules of Civil Procedure, which

3    provides that "[o]ne or more members of a class may sue or be sued as representative parties on behalf

4    of all." Fed. R. Civ. P. 23(a).  Parties seeking class certification bear the burden of demonstrating the

5    elements of Rule 23(a) are satisfied, and "must affirmatively demonstrate … compliance with the

6    Rule." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011); *Doninger v. Pacific Northwest Bell,*

7    *Inc.*, 563 F.2d 1304, 1308 (9th Cir. 1977).  If an action meets the prerequisites of Rule 23(a), the Court

8    must consider whether the class is maintainable under one or more of the three alternatives set forth in

9    Rule 23(b).  *Narouz v. Charter Communs., LLC*, 591 F.3d 1261, 1266 (9th Cir. 2010).

10         **A.     Rule 23(a) Requirements**

11         Certification of a class is proper if: "(1) the class is so numerous that joinder of all members is

12   impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of

13   the representative parties are typical of the claims or defenses of the class; and (4) the representative

14   parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a).  These

15   prerequisites are generally referred to as numerosity, commonality, typicality, and adequacy of

16   representation.  *Gen. Tel. Co. of the Southwest v. Falcon*, 457 U.S. 147, 156 (1982).

17         Previously, the Court determined the requirements of Rule 23(a) were satisfied by the proposed

18   settlement class.  (Doc. 43 at 3-12; Doc. 44 at 2 [adopting the findings].)  The numerosity requirement

19   is satisfied, because the Settlement Administrator reports there are now 8,717 Class Members.[4]  *See*

20   *Gay v. Waiters' & Dairy Lunchmen's Union*, 549 F.2d 1330, 1332 n.7 (9th Cir. 1977) (a proposed

21   class with 110 members "clearly [included] a sufficient number to meet the numerosity

22   requirements").  The commonality requirement was satisfied by evidence related "to Defendant's

23

24   [3] The class was only conditionally certified upon preliminary approval of the Settlement, and final certification of the
     Settlement Class is required.  However, the magistrate judge did not make any findings regarding certification in the
25   Findings and Recommendations at the final approval stage.  (*See generally* Doc. 65.)  Accordingly, the Court refers to the
     prior findings made at the preliminary approval stage. *See, e.g., Taylor v. FedEx Freight, Inc*., 2016 WL 6038949, at *2
26   (E.D. Cal. Oct 13, 2016) (incorporating preliminary findings to support certification at the final approval stage); *see also
     Corona v. PNC Bank, N.A.*, 2022 U.S. Dist. LEXIS 30185, at *8-9 (C.D. Cal. Feb. 18, 2022).

27
     [4] Seeking preliminary approval Plaintiffs reported there were 7,261 individuals in the class.  (Doc. 43 at 4.)  Thus, the
28   parties have identified nearly 1,500 more class members.

rounding policies and Plaintiffs claims regarding donning and doffing."  (Doc. 43 at 8, citing Doc. 23 at 18-19.)  In addition, Plaintiffs were subject to the same policies and practices as the class members—including donning and doffing protective gear without compensation and unlawful rest and meal break practices—and established the typicality requirement was satisfied.  *See Kayes v. Pac. Lumber Co.*, 51 F.3d 1449, 1463 (9th Cir. 1995) (typicality is shown when named plaintiffs have the same claims as other members of the class and are not subject to unique defenses).  Finally, the Court determined Plaintiffs "demonstrated they will adequately and fairly protect the interests of the class," because there were no identified conflicts between Plaintiffs and the class, and counsel "demonstrated that they have sufficient experience handling employment class actions and complex wage-and-hour litigation."  (Doc. 43 at 11.)

The additional information now before the Court does not undermine these findings made to conditionally certify the class.  Accordingly, the Court's prior analysis supports final certification and approval.  *See, e.g., Taylor v. FedEx Freight, Inc*., 2016 WL 6038949, at *2 (E.D. Cal. Oct 13, 2016) (incorporating the findings made in preliminary approval to determine certification was appropriate at the final approval stage); *Corona v. PNC Bank, N.A.*, 2022 U.S. Dist. LEXIS 30185, at *8-9 (C.D. Cal. Feb. 18, 2022) (declining to re-analyze the findings made in preliminary approval where "nothing [had] changed since the Court conditionally certified the class").

### B.    Certification under Rule 23(b)(3)

If an action meets the prerequisites of Rule 23(a), the Court must consider whether the class is maintainable under one or more of the three alternatives set forth in Rule 23(b).  *Narouz v. Charter Communs., LLC*, 591 F.3d 1261, 1266 (9th Cir. 2010).  The Court conditionally certified the class under Rule 23(b)(3).  (Doc. 43 at 11-12; Doc. 44.)  Under Rule 23(b)(3), a class is maintainable if (1) "questions of law or fact common to the members of the class predominate over any questions affecting only individual members" and (2) "a class action is superior to other available methods for fair and efficient adjudication of the controversy."  Fed. R. Civ. P. 23(b)(3).  These are referred to as the "predominance" and "superiority" requirements.  *See Hanlon*, 150 F.3d at 1022-23; *see also Wal-Mart Stores*, 564 U.S. at 363 ("(b)(3) requires the judge to make findings about predominance and superiority before allowing the class").

### 1.   Predominance

The predominance inquiry focuses on "the relationship between the common and individual issues" and "tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Hanlon*, 150 F.3d at 1022 (citing *Amchem Prods., Inc. v. Windsor,* 521 U.S. 591, 623 (1997)).  "[A] central concern of the Rule 23(b)(3) predominance test is whether 'adjudication of common issues will help achieve judicial economy.'" *Vinole v. Countrywide Home Loans,* 571 F.3d 935, 944 (9th Cir. 2009) (quoting *Zinser v. Accufix Research Inst.*, 253 F.3d 1180, 1189 (9th Cir. 2001)).  The Court determined that common questions of law or fact "predominate over any questions affecting only individual members" because of "the common claims pertaining to the class members as current and former employees… subject[ed] to the same employer policies."  (Doc. 43 at 12.)  This remains true, and the Court incorporates the prior analysis in granting final certification of the class.

### 2.   Superiority

The superiority inquiry requires a determination of "whether objectives of the particular class action procedure will be achieved in the particular case." *Hanlon*, 150 F.3d at 1023 (citation omitted). This tests whether "class litigation of common issues will reduce litigation costs and promote greater efficiency." *Valentino v. Carter-Wallace, Inc.*, 97 F.3d 1227, 1234 (9th Cir. 1996).  Pursuant to Rule 23(b)(3), the Court must consider four non-exclusive factors to determine whether a class is a superior method of adjudication, including (1) interests of class members, (2) other pending litigation, (3) the desirability of concentrating claims in one forum, and (4) difficulties with the management of the class action. *Id.; see also James v. Uber Techs. Inc.*, 338 F.R.D. 123, 143 (C.D. Cal. 2021) (indicating the factors identified in Rule 12(b)(3) address the "superiority" analysis).

#### a.   Class members' interest in individual litigation

The Court is directed to consider "the class members' interests in individually controlling the prosecution or defense of separate actions." Fed. R. Civ. P. 23(b)(3)(A).  This factor is most relevant when class members "suffered sizeable damages or [have] an emotional stake in the litigation." *McKenzie v. Fed. Express Corp.*, 275 F.R.D. 290, 301 (C.D. Cal. 2011).  The Ninth Circuit explained that "[w]here damages suffered by each putative class member are not large, this factor weighs in favor of certifying a class action." *Zinser*, 253 F.3d at 1190.

The Settlement Administrator reports that less than 30 individuals requested exclusion from the class.  (Doc. 63 at 4, Kline Decl. ¶ 14 [indicating 26 valid requests were received by Simpluris]; Doc. 66-3 at 5, Kline Supp. Decl. ¶ 25 [reporting one request for exclusion was submitted by an Omitted Class Member].)  Thus, less than 1% of the anticipated class requested exclusion, and there is little indication the class members seek to proceed with individual litigation.

The expected payments to Participating Class Members also are not particularly large, as the estimated average payment is $212.54, and the highest payment is $1,684.44.  (Doc. 66-3 at 6, Kline Supp. Decl. ¶ 29.)  It is unlikely that individuals would pursue such small claims. *See Zinser*, 253 F.3d at 1190; *see also Bee, Denning, Inc. v. Capital Alliance Group*, 31 F.R.D. 614, 629-30 (S.D. Cal. 2015) (a $500 recovery was "unlikely to incentivize the average claimant to incur the opportunity costs of time, effort, and attention to pursue her claim on an individual basis"); *Thieriot v. Celtic Ins. Co.*, 2011 WL 1522385, at *4 (N.D. Cal. Apr. 21, 2011) (noting the average payment of $2,462 was "relatively small[]" and supported a finding the class action was a superior to individual cases).  As this Court previously observed, "When the individual claims of class members are small, the class action facilitates the spreading of the litigation costs among the numerous injured parties." *Monterrubio v. Best Buy Stores, L.P.*, 291 F.R.D. 443, (E.D. Cal. 2013) (internal quotation marks, citation omitted).  Thus, the factor weighs in favor of final certification.

### b.     Other litigation

Next, the Court considers "the extent and nature of any litigation concerning the controversy already begun by or against class members."  Fed. R. Civ. P. 23(b)(3)(B).  This settlement resolves the litigation of four actions[5], and the parties have not identified any remaining actions not encompassed in the settlement.  (*See* Doc. 65 at 2.)  Therefore, this factor weighs in favor of granting certification.

### c.     Concentration in one forum

Third, the Court must consider "the desirability or undesirability of concentrating the litigation

---

[5] The actions include: *Thomas Beltran, et al. v. Olam Spices and Vegetables, Inc.*, initially filed on July 7, 2015, and then removed to the Eastern District; *Maria Claudia Obeso Cota v. Olam West Coast, Inc., Superior Court of California*, filed on September 15, 2015, and transferred to the Fresno County Superior Court, Case No. 16CECG00081; *Alexander Solorio v. Olam West Coast, Inc*., Fresno County Superior Court Case No. Case No. 16CECG0051, filed on February 18, 2016; and *Juan Rivera, et al. v. Olam West Coast, Inc.*, Santa Clara County Superior Court Case No. 16CV300758, filed on October 6, 2016.  (*See* Doc. 65 at 2.)

of the claims in the particular forum."  Fed. R. Civ. P. 23(b)(3)(C).  There is no suggestion the Eastern District is an undesirable forum for addressing settlement of the matters, which raise wage and hour claims under California law—as well as FLSA claims— on behalf of employees at facilities throughout the state.  *See U.S. ex rel. Terry v. Wasatch Advantage Grp., LLC*, 327 F.R.D. 395, 419 (E.D. Cal. 2018) (finding the factor weighed in favor of certification where the class members were located in California and involved "California state law claims").  Moreover, when "parties … agreed on a proposed Settlement Agreement, the desirability of concentrating the litigation in one forum is obvious."  *Wright v. Linkus Enters.*, 259 F.R.D. 468, 474 (E.D. Cal. 2009) (internal quotation marks, citation omitted).  Therefore, this factor weighs in favor of certification.

### *d.    Management of the action*

Finally, the Court must consider "the likely difficulties in managing a class action."  Fed. R. Civ. P. 23(b)(3)(D).  Because the parties reached an agreement for the claims and identified the Settlement Class, it does not appear there are any problems with managing the action.  *See Espinosa v. Ahearn*, 926 F.3d 539, 556-57 (9th Cir. 2019) ("manageability is not a concern in certifying a settlement class where, by definition, there will be no trial").  Further, the Court need not speculate as to manageability if the case proceeded to trial.  *See Amchem Prods.*, 521 521 U.S. at 620 ("with a request for settlement-only class certification, a district court need not inquire whether the case, if tried, would present intractable management problems").  Consequently, this factor weighs in favor of final certification.

### C.    Conclusion

Based upon the prior findings with conditional certification—and considering the new information provided by the Settlement Administrator in response to the Findings and Recommendations—the Court finds the settlement class satisfies the requirements of Rule 23(a) and Rule 23(b)(3).  Accordingly, final certification of the settlement class is granted.

### III.    FLSA Settlement

Plaintiffs seeking certification of a collective action under the FLSA have the burden to show they are "similarly situated" to other employee class members.  *See Litty v. Merrill Lynch & Co.,* 2015 WL 4698475, at *6 (C.D. Cal. Apr. 27, 2015); *see also Lewis v. Wells Fargo Co.*, 669 F. Supp. 2d

1124, 1127 (N.D. Cal. 2009).  Courts apply "a fairly lenient standard" when determining whether to certify a collective under the FLSA.  *Syed v. M-I, LLC*,  2014 WL 6685966, at *2 (E.D. Cal. Nov. 16, 2014), citing *Adams v. Inter-Con Sec. Sys.*, 242 F.R.D. 530, 536 (N.D. Cal. 2007); *see also Leuthold v. Destination Am.*, 224 F.R.D. 462, 467 (N.D. Cal. 2004).

The proposed FLSA collective is comprised of members of the Settlement Class "who submitted a timely and valid FLSA Opt-In Form, FLSA Opt-In Card, Opt-In-Electronic Form, or written consent to opt-in to the Action and participate in the FLSA Settlement."  (Doc. 66-3 at 5-6, Kline Supp. Decl. ¶ 25; *see also* Doc. 41 at 7, Settlement § II(18).)  For all the reasons the Settlement Class satisfies the requirements for final certification under Rule 23, the FLSA Collective also satisfies the FLSA's less stringent requirement that the members be "similarly situated."  Final certification of the FLSA collective is likewise appropriate.

## IV.     Evaluation of the Settlement Terms

Settlement of a class action requires approval of the Court, which may be granted "only after a hearing and on finding that [the settlement] is fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(2). Toward that end, "Congress and the Supreme Court amended Rule 23(e) to set forth specific factors to consider in determining whether a settlement is 'fair, reasonable, and adequate.'" *Briseño v. Henderson*, 998 F.3d 1014, 1023 (9th Cir. 2021); *see* Fed. R. Civ. P. 23(e)(2) (effective Dec. 1, 2018). Rule 23(e)(2) now directs the Court to consider whether:

> (A) the class representatives and class counsel have adequately represented
>      the class;
> (B) the proposal was negotiated at arm's length;
> (C) the relief provided for the class is adequate, taking into account:
>      (i) the costs, risks, and delay of trial and appeal;
>      (ii) the effectiveness of any proposed method of distributing relief to
>      the class, including the method of processing class-member claims;
>      (iii) the terms of any proposed award of attorney's fees, including
>      timing of payment; and
>      (iv) any agreement required to be identified under Rule 23(e)(3); and
> (D) the proposal treats class members equitably relative to each other.

Fed. R. Civ. P. 23(e)(2); *see also Briseño*, 998 F.3d at 1023-24.

The magistrate judge found the settlement is "fair, adequate, and reasonable pursuant to Rule 23(e)." (Doc. 65 at 42.)  Importantly, the magistrate judge focused the analysis on the factors identified

by the Ninth Circuit in *Churchill Vill. v. Gen. Elec.,* 361 F.3d 566 (9th Cir. 2004).[6]  (*See id.* at 27-40.)

However, the Ninth Circuit determined the revision of Rule 23 requires the courts "to go beyond [its]

precedent."  *Briseño*, 998 F.3d at 1026.  Further, the Ninth Circuit indicated that "consideration of the[]

eight *Churchill* factors is alone is not enough to survive appellate review."  *Kim v. Allison*, 8 F.4th

1170, 1179 (9th Cir. 2021) (citations omitted).  Accordingly, the Court now makes additional findings

related to the factors enumerated in Rule 23.  *See Briseño*, 998 F.3d at 1026; *see also Urena v. Cent.

Cal. Almond Growers Assoc.*, 2021 WL 4318258 (E.D. Cal. Sept. 22, 2021) (noting the magistrate

judge issued findings addressing the *Churchill* factors and supplemental findings and recommendations

after *Briseño* to address the revised Rule 23 factors, and considering the two findings collectively to

determine the proposed settlement was fair, reasonable, and adequate).

###    A.    Representation of the Class

To determine adequacy of representation under Rule 23(e)(2), the Court may consider whether

the interests of the named plaintiff are "aligned with the interests of the Class Members."  *See Cottle v.

Plaid Inc.*, 240 F.R.D. 356, 376 (N.D. Cal. 2021).  In addition, a finding that "Class Counsel are

experienced and competent" supports a conclusion that the class is adequately represented.  *Id.*; *see

also In re Pac. Enters. Sec. Litig.,* 47 F.3d 373, 378 (9th Cir. 1995) ("Parties represented by competent

counsel are better positioned than courts to produce a settlement that fairly reflects each party's

expected outcome in litigation.").  Thus, the adequacy analysis under Rule 23(e)(2) is "redundant of

the requirements of Rule 23(a)(4) and Rule 23(g), respectively."  *Mandalevy v. Bofi Holding, Inc.*,

2022 WL 1556160, at *6 (S.D. Cal. May 17, 2022) (quoting 4 William B. Rubenstein, Newberg on

Class Actions § 13:48 (5th ed. 2020)).

---

[6] The factors identified by the Ninth Circuit in *Churchill* include:

> (1) the strength of the plaintiffs' case; (2) the risk, expense, complexity, and likely duration of
> further litigation; (3) the risk of maintaining class action status throughout the trial; (4) the
> amount offered in settlement; (5) the extent of discovery completed and the stage of the
> proceedings; (6) the experience and views of counsel; (7) the presence of a governmental
> participant; and (8) the reaction of the class members to the proposed settlement.

*Churchill*, 361 F.3d at 575 (citation omitted); *see also Staton v. Boeing Co*., 3
F.3d 938, 952 (9th Cir. 2003) (identifying the same factors).  These settlement factors are non-exclusive, and each need not
be discussed if it irrelevant to a particular case. *See Churchill*, 361 F.3d at 576 n.7.

Because Plaintiffs met the burden to show the adequacy prerequisite was satisfied under Rule 23(a), the Court finds the requirement under Rule 23(e)(2) is also satisfied. *See Flores v. Dart Container Corp.*, 2021 WL 1985440, at *5 (E.D. Cal. May 17, 2021) ("Because the Court has found that the proposed class satisfies Rule 23(a)(4) for purposes of class certification, the adequacy factor under Rule 23(e)(2)(A) is also met").

### B.    Negotiation of the Settlement

Under Rule 23, the Court must consider whether "the proposal was negotiated at arm's length." Fed. R. Civ. P. 23(e)(2)(B). The Ninth Circuit also "put[s] a good deal of stock in the product of an arms-length, non-collusive, negotiated resolution" in evaluating a class settlement. *Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948, 967 (9th Cir. 2009). The inquiry of collusion addresses the possibility that the settlement agreement is the result of either "overt misconduct by the negotiators" or improper incentives of class members at the expense of others. *Staton*, 327 F.3d at 960. The Ninth Circuit observed that "settlement class actions present unique due process concerns for absent class members" because the "inherent risk is that class counsel may collude with the defendants, tacitly reducing the overall settlement in return for a higher attorney's fee." *In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 946 (9th Cir. 2011) (internal quotation marks, citations omitted). Thus, the Court must consider whether the settlement is the product of arm's length bargaining or if the agreement is the product of collusion or fraud. *Millan v. Cascade Water Servs.*, 310 F.R.D. 593, 613 (E.D. Cal. 2015).

When a class action settlement agreement is reached prior to a class being certified, district courts must be watchful "not only for explicit collusion, but also for more subtle signs that class counsel have allowed pursuit of their own self-interests and that of certain class members to infect the negotiations." *Bluetooth*, 654 F.3d at 947; *see also Briseño*, 998 F.3d at 1023. These "more subtle signs" include: (1) "when counsel receive a disproportionate distribution of the settlement, or when the class receives no monetary distribution but class counsel are amply rewarded"; (2) the existence of a "clear sailing" arrangement, which provides "for the payment of attorneys' fees separate and apart from class funds" and "carries the potential of enabling a defendant to pay class counsel excessive fees and costs in exchange for counsel accepting an unfair settlement on behalf of the class"; and (3) "when the parties arrange for fees not awarded to revert to defendants rather than be added to the class fund."

*Id.* (internal quotations, citations omitted).

### 1.    Whether there is a disproportionate distribution to counsel

The typical range of acceptable attorneys' fees in the Ninth Circuit is 20% to 33 1/3% of the total settlement value, with 25% considered the benchmark. *Powers v. Eichen*, 229 F.3d 1249, 1256 (9th Cir. 2000).  Because the modified fees award—to which there was no objection by Class Counsel (*see* Doc. 66)— are within the range identified by the Ninth Circuit, the Settlement Agreement does not provide a disproportionate distribution to Class Counsel. *See Millan v. Casvade Water Servs.*, 310 F.R.D. 593, 612 (E.D. Cal. 2015) (finding no disproportionate distribution where class counsel was to receive fees within the range awarded in the Circuit).

### 2.    Existence of a "clear sailing" agreement

In general, a "clear sailing" provision is one in which the parties agree to the "payment of attorneys' fees separate and apart from class funds." *Bluetooth*, 654 F.3d at 947.  A "clear sailing" arrangement also exists when a defendant expressly agrees not to oppose an award of attorneys' fees up to an agreed upon amount. *Id.*; *Lane*, 696 F.3d at 832.  As the magistrate judge observed, the parties removed the clear sailing provision from the agreement now before the Court.  (*See* Doc. 65 at 40.) The attorneys' fees shall be paid from the settlement fund, and there is no explicit agreement that Defendant will not oppose the request for fees.  (Doc. 41 at 15, Settlement § III(5).)

### 3.    Whether there is a reversion to Defendant

Finally, the parties did not arrange for any unawarded fees to revert to Defendant.  Instead, the parties agreed that if the Court approves less than 35% contemplated in the agreement, the unawarded fees will "will become part of the Net Settlement Fund" for distribution to class members. (Doc. 41 at 15, Settlement § III(5).)  Because there is no reversion to Defendant, this factor does not support a finding of collusion between the parties.

### 4.    Findings on collusion

Based upon the factors set forth by the Ninth Circuit, the Court finds the settlement "appears to be the product of serious, informed, non-collusive negotiations." *See In re Tableware Antitrust Litig.*, 484 F. Supp. 2d 1078, 1079-80 (N.D. Cal. 2007).  Thus, this factor under Rule 23 supports final approval of the class settlement.

**C.      Relief provided to the Class**

The Ninth Circuit observed "the very essence of a settlement is compromise, 'a yielding of absolutes and an abandoning of highest hopes.'"  *Officers for Justice v. Civil Serv. Commission*, 688 F.2d 615, 624 (9th Cir. 1982) (citation omitted).  When analyzing an agreement, the Court should examine "the complete package taken as a whole," and the proposed settlement is "not to be judged against a hypothetical or speculative measure of what *might* have been achieved by the negotiators." *Officers for Justice*, 688 F.2d at 625, 628.

**1.      Costs, risks, and delays**

Employment law class actions are, by their nature, time-consuming and expensive to litigate. *Hightower v. JPMorgan Chase Bank, N.A.*, 2015 WL 9664959 at *6 (C.D. Cal. Aug. 4, 2015). As the magistrate judge observed in evaluating the *Churchill* factors, "the parties have been litigating this case for over seven years, [and] that timeline would be extended even further by litigating this case to a final resolution through a jury trial."  (Doc. 65 at 31-32.)  Continued litigation would cause "litigation costs continue to accrue, and any recovery of a monetary judgment, which is not guaranteed, would be prolonged."  (*Id.* at 32.)  Approval of the settlement is "preferable to lengthy and expensive litigation with uncertain results."  *See Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 529 (C.D. Cal. 2004).   Thus, the Court adopts the finding of the magistrate judge that "the risk, expense, complexity, and likely duration of further litigation, weigh[] in favor of granting final approval."  (*Id.*)

**2.      Method of distribution**

"[T]he goal of any distribution method is to get as much of the available damages remedy to class members as possible and in as simple and expedient a manner as possible."  *Hilsley v. Ocean Spray Cranberries, Inc.*, 2020 WL 520616 at *7 (S.D. Cal. Jan. 31, 2020) (citing "Final approval criteria—Rule 23(e)(2)(C)(ii): Distribution method," 4 Newberg on Class Actions § 13:53 (5th ed.)). "Often it will be important for the court to scrutinize the method of claims processing to ensure that it facilitates filing legitimate claims."  Fed. R. Civ. P. 23(e), 2018 Advisory Committee Notes.  The proposed method for processing claims "should deter or defeat unjustified claims, but the court should be alert to whether the claims process is unduly demanding."  *Id*.

Class Members are not required to take any action, such as submitting a claim form, to receive a settlement share.[7]  (*See* Doc. 41 at 39 ["All Class Members will automatically be included in the Class Settlement as long as they do not affirmatively 'opt out' of the Class Settlement"].)  Rather, Class Members only needed to take action if they wished to opt-out of the settlement, object to any terms, or dispute the number of workweeks identified to calculate their individual settlement share.  Because submission of a claim form was not required, the proposed method of distribution is not "unduly demanding" upon Class Members and facilitates payment for legitimate claims.  Thus, this factor weighs in favor of final approval of the settlement.  *See Jackson v. Fastenal Co.*, 2021 WL 5755583 at *11 (E.D. Cal. Dec. 3, 2021) (finding "the proposed method of distributing relief is effective, and weighs in favor of a finding that the settlement agreement is fair, reasonable and adequate" where the class members did not have to file a claim).

### 3.     Attorneys' fees

When evaluating the terms of a settlement, "courts must scrutinize 'the terms of any proposed award of attorney's fees.'"  *McKinney-Drobnis v. Oreshack*, 16 F.4th 594, 607 (9th Cir. 2021) (quoting Fed. R. Civ. P. 23(e)(2)(C)(iii).  The Ninth Circuit explained, "the new Rule 23(e) makes clear that courts must balance the 'proposed award of attorney's fees' vis-à-vis the 'relief provided for the class' in determining whether the settlement is 'adequate' for class members."  *Id.*, quoting *Briseño*, 998 F.3d at 1024.

The amount of fees contemplated by the agreement – 35% of the settlement fund – exceeded the range of acceptable fees in the Ninth Circuit.  *See Powers*, 229 F.3d at 1256.  However, the magistrate judge recommended a reduction in fees to 20%, and Class Counsel do not object to this recommendation.  (*See* Doc. 66 at 4-5 [acknowledging the fee reduction, and not raising objections to this provision of the Findings and Recommendations].)  The Court-approved fees shall be paid out of the total settlement fund by the Settlement Administrator within 63 of final approval.  (Doc. 41 at 15, § III(4).)  In that same 63-day period, the Settlement Administrator will issue the other approved payments, including to Class Members.  (*Id.*)  Thus, Class Counsel will receive their payment in the

---

[7] The Court acknowledges that a claim form was required for funds designated to the collective class under the FLSA.

18

same period of time as Class Members.  The awarded amount of fees and the timing of payment do not weigh against final approval of the Class Settlement.

### 4.    Agreement required to be identified

The Court must consider any agreement that is required to be identified under Rule 23(e)(3). Fed. R. Civ. P. 23(e)(2)(C)(iv).  Specifically, "parties seeking approval must file a statement identifying any agreement made in connection with the proposal." Fed. R. Civ. P. 23(e)(3). The parties have not identified any agreement, and the Court is unaware of any such agreement.  Thus, this factor does not weigh against final approval.

### D.    Treatment of Class Members

Rule 23 requires the Court to consider whether the proposed settlement "treats class members equitably relative to each other."  Fed. R. Civ. P. 23(e)(2)(D).  "A distribution of relief that favors some class members at the expense of others may be a red flag that class counsel have sold out some of the class members at the expense of others, or for their own benefit."  *Hilsley*, 2020 WL 520616 at *7 (citation omitted).

The parties agreed that Class Members who did not request exclusion will receive a pro rata share of the net settlement fund.  (Doc. 41 at 16-17, § III(9).)  Because the Settlement provides a pro *rata* distribution to Class Members based upon their workweeks, the agreement treats Class Members equitably. *See Cooks v. TNG GP*, 2021 WL 5139613 at *4 (E.D. Cal. Nov. 4, 2021) (observing the calculation of payments to class members "on a pro-rata basis based on the number of compensable workweeks each member worked … is fair and treats class members equitably"); *see also Gomez-Gasca v. Future AG Mgmt. Inc.*, 2020 WL 6149688 at *4 (N.D. Cal. Oct. 20, 2020) (approving an agreement including "pro rata allocation based on the number of workweeks the class member performed work during the Class Period"); *In re Regulus Therapeutics Sec. Litig.*, 2020 WL 6381898 at *5 (S.D. Cal. Oct. 29, 2020) (finding a pro rata distribution plan was equitable and weighed in favor of approving the settlement terms).  Therefore, the distribution plan supports final approval.

### E.    Reaction of Class Members to the Settlement

"[T]he absence of a large number of objections to a proposed class action settlement raises a strong presumption that the terms of a proposed class action settlement are favorable to the class

members." *Nat'l Rural Telecomms.*, 221 F.R.D. at 529; *see also Cottle*, 340 F.R.D. at 376 (observing a court may assess the reaction of class members by considering "how many class members submitted … objections" at the final approval stage).

After receiving the Court-approved Notice Packet, no objections were made to the Settlement, and fewer than 30 individuals requested exclusion, resulting in 8,717 Class Members.  (Doc. 63 at 4, Kline Decl. ¶ 14 [indicating 26 valid requests were received by Simpluris]; Doc. 66-3 at 5, Kline Supp. Decl. ¶¶ 19, 25 [noting one Omitted Class Member requested exclusion and there were 8,717 Class Members who did not request exclusion].)  Thus, a significant majority of the Class Members reacted favorably to the proposed settlement terms by not requesting exclusion or submitting objections, and this factor weighs in favor of final approval.  *See Chun-Hoon v. McKee Foods Corp.,* 716 F. Supp. 2d 848, 852 (N.D. Cal. 2010) (finding the class members' reaction was "overwhelming[ly] positive" where 16 out of 329 individuals—approximately 4.86% of the class— opted out of the settlement).

### F.      Conclusion

The Court has reviewed the findings of the magistrate judge related to the *Churchill* factors and concludes they are supported by the record.  The additional information provided by the Settlement Administrator in response to the Findings and Recommendations does not alter the analysis, and the *Churchill* findings are adopted.  Coupled with the factors set forth above under the revised Rule 23(e)(2), the Court finds the settlement is fair, reasonable, and adequate.  Accordingly, the recommendation that the class settlement be approved is adopted.

## V.      Approval of PAGA Settlement

The parties agreed $150,000.00 from the gross fund of $4,500,000.00 shall be allocated to the PAGA claims in issue.  (Doc. 41 at 16, Settlement § III(8).)  As the magistrate judge observed, "[t]his amount falls within the range of previously approved comparable PAGA penalties in other class actions, in this court and others."  (Doc. 65 at 35, citations omitted.)  In addition, the Settlement properly designates 75% of the PAGA funds to the Labor and Workforce Development Agency—a total of $112,500 from the gross fund—and the remaining $25% to aggrieved employees.  (Doc. 41 at 16, Settlement § III(8); *see also* Doc. 65 at 34.)  Therefore, Court finds final approval of the PAGA payment is also appropriate.

1    **VI.      Motion for Attorneys' Fees**

2          Counsel requested attorneys' fees totaling $1,575,000.00, which equaled 35% of the total

3    settlement fund.  (Doc. 60 at 2.)  The magistrate judge found that "counsel did not provide the

4    information requested for Court to be able to analyze duplicative billing, or reasonableness in any

5    competent manner."  (Doc. 65 at 48.)  For example, Lavie & Ebrahimian "only proffer[ed] a total

6    amount of hours expended over several years of litigation, and a general description of the tasks."  (*Id.*

7    at 54.)  The Law Offices of Sahag Majarian did not provide any timesheets, but rather relied upon the

8    limited information provided by Mr. Majarian in a declaration identifying general tasks undertaken

9    and his total time expended.  (*Id.* at 54-55.)  Finally, the magistrate judge identified numerous issues

10   with the billing practices of Lawyers for Justice, which block billed the tasks, provided only general

11   categories of work, and appeared to bill excessive time for completed tasks.  (*Id.* at 48-54.)

12         The magistrate judge also determined the hourly rates applied by counsel—which ranged

13   from $450 to $785— in support of the motion were generally "higher than those previously accepted

14   by this Court as reasonable."  (Doc. 65 at 59, citing, *e.g.*, *Emmons v. Quest Diagnostics Clinical*

15   *Labs., Inc*., 2017 WL 749018, at *8 (E.D. Cal. Feb. 27, 2017); *Englert v. City of Merced*, 2020 WL

16   2215749, at *13 (E.D. Cal. May 7, 2020; *In re Taco Bell Wage & Hour Actions*, 222 F.Supp.3d 813,

17   839 (E.D. Cal. 2016).)  Considering the evidence, and lack thereof, before the Court, the magistrate

18   judge recommended the fee award be granted in the modified amount of 20% of the settlement fund,

19   for a total of $900,000.00 to be allocated among the three law firms.  (Doc. 65 at 20, 67.)  Notably, no

20   objections were made to the Findings and Recommendations related to the fee award.  (*See generally*

21   Doc. 66.)  The Court has reviewed the analysis of the magistrate judge and finds it is supported by the

22   record and proper analysis.

23         A reduction of the fee award is appropriate, particularly given the lack of evidence that the

24   hours expended were necessary to achieve the results achieved.  *See Hensley v. Eckerhart*, 461 U.S.

25   424, 433 (1983) (a fee applicant must provide records documenting the tasks completed and the

26   amount of time spent and "[w]here documentation of hours in inadequate," the district court may

27   reduce the award).  The modified award also remains within the range of accepted fees in the Ninth

28   Circuit. *See Paul, Johnson, Alston & Hunt v. Graulty*, 886 F.2d 268, 272 (9th Cir. 1989) (fee awards

from a common fund "[o]rdinarily … range from 20 percent to 30 percent of the fund created");

*Barbosa v. Cargill Meat Solutions Corp*., 297 F.R.D. 431, 448 (E.D. Cal. 2013) ("The typical range of

acceptable attorneys' fees in the Ninth Circuit is 20 percent to 33.3 percent of the total settlement

value"). The Court finds the modified fee amount is fair, reasonable, and adequate as required under

Rule 23.  Therefore, the recommendation that the attorneys' fees be reduced to 20% of the total

settlement fund is adopted.

## VII.    Motion for Costs and Expenses

"There is no doubt that an attorney who has created a common fund for the benefit of the class

is entitled to reimbursement of reasonable litigation expenses from that fund."  *Ontiveros v. Zamora*,

303 F.R.D. 356, 375 (E.D. Cal. 2014) (citation omitted).  Generally, reimbursement of taxable costs is

governed by 28 U.S.C. § 1920 and Federal Rule of Civil Procedure 54.  Attorneys may recover

reasonable expenses that would typically be billed to paying clients in non-contingency matters.  *See*

*Harris v. Marhoefer*, 24 F.3d 16, 19 (9th Cir. 1994).  In addition, costs may be awarded under

California law to an employee who prevails on a PAGA claim.  *See* Cal. Lab. Code § 2699(g).

Pursuant to the Settlement, Plaintiffs' counsel were authorized to seek "costs and expenses …

not to exceed $65,000" from the total settlement fund.  (Doc. 41 at 15, § III(5).)  In the motion for

costs and expenses, counsel sought a total of $63,201.23, which included:  $41,748.54 for Lawyers *for*

Justice, PC (LFJ); $14,666.97 for Lavi & Ebrahimian, LLP; and $6,785.72 for the Law Offices of

Sahag Majarian II.  (Doc. 60 at 31.)

The magistrate judge noted that counsel were directed "to provide[] receipts in support of their

claimed expenses."  (Doc. 65 at 60, quoting Doc. 43 at 32 [modification omitted].)  Despite this

instruction, counsel failed to do so.  (*Id.*)  The magistrate judge found the lack of receipts problematic,

particularly related to the mediation expenses reported and some travel expenses.  (*Id.*)  The magistrate

judge explained that without the receipts, it was "unclear how the expenses were actually split and

incurred."  (*Id.* at 60-61.)  The magistrate judge observed that in total counsel requested $22,104.79 in

mediation fees," but found "the absence of receipts here precludes the Court from making a

determination that the mediation costs are properly awarded as expenses to counsel."  (*Id.* at 61.)

Therefore, the magistrate judge recommended that "no mediation fees be awarded unless objections

22

clearly present the receipts and fee breakdown between Plaintiffs' law firms." (*Id.*)  The magistrate judge also recommended the requested travel expenses be reduced "unless counsel provides a reasonable explanation and support for the claimed travel expenses, if the District Court is inclined to consider such submission in objections at that point." (*Id.* at 62.)  Thus, the magistrate judge recommended expenses be awarded in the reduced amounts of $25,626.02 to LFJ; $8,731.23 to Lavi & Ebrahimian; and $1,669.06 to the Law Office of Sahag Majarian II.  (*Id.* at 62, 67.)

Counsel objected to the recommended reductions for each firm. (Doc. 66 at 5-13.)  Counsel provided clarification of the travel and mediation costs incurred by each firm, supported by extensive evidence.  (*See* Doc. 66 at 6-14; *see generally* Doc. 66-1 at 2-84; Doc. 66-2 at 3-92.)  However, LFJ notes that their original request for costs mistakenly included a duplicated entry for $66.12.  (Doc. 66 at 6.)  In addition, LFJ withdraws a request for travel in the amount of $941.91, acknowledging that the former associate who billed for the travel on December 7, 2015 may have traveled for "multiple cases in Fresno Superior Court on or around the same day." (*Id.*; Doc. 66-1 at 5, Ghosh Decl. ¶ 15(a).)  Having reviewed the evidence provided with the objections—including declaration of counsel and receipts—the Court finds the expenses incurred are reasonable and are of the type routinely approved.  *See Ontiveros*, 303 F.R.D. at 375 (finding costs including mediation, court fees, research, and expert fees were "reasonable litigation fees" and approving class counsel's request); *Wilson v. Tesla, Inc.*, 2019 WL 2929988, at *13 (N.D. Cal. Sept. 8, 2019) ("courts throughout the Ninth Circuit regularly award litigation costs and expenses—including reasonable travel expenses—in wage-and-hour class actions").  Accordingly, the Court declines to adopt the recommendations of the magistrate judge.  The Court approves expenses, to be paid from the settlement fund, in the amount of $40,740.18[8] for LFJ ; $14,666.97 for Lavi & Ebrahimian; and $6,785,72 for the Law Office of Sahag Majarian II.

## VIII.   Class Representative Service Payments

Pursuant to the Settlement, Plaintiff were authorized to seek service awards up to $7,500 for Thomas Beltran, Mario Martinez, Maria Obeso Cota, and Alexander Solorio; and a service award of $3,500 to Juan Rivera.  (Doc. 41 at 15-16, § III(6).)  Reviewing a prior version of the agreement, the

---

[8] This amount reflects the reduction of the duplicative costs and withdrawn travel request from December 7, 2015, as indicated in the objections.

District Judge previously assigned to this action found the evidence was sufficient to preliminarily approve the requested payments for Cota and Solorio.  (Doc. 29 at 6-9.)  On the other hand, the evidence was insufficient for Beltran and Martinez even for preliminary approval, and indicated the parties needed "to file supplemental briefing providing more detailed support" for both Beltran and Martinez.  (*Id.* at 6-7.)  Thereafter, in granting preliminary approval, the magistrate judge stated: "At final approval, the named plaintiffs will be required to sufficiently support the proposed incentive payments including submitting declarations that clarify the total, non-duplicative time, they expended in this matter."  (Doc. 43 at 28.)  Despite this explicit instruction, none of the named plaintiffs submitted new declarations with the request for final approval.

The magistrate judge observed that Plaintiffs appeared "to rely largely upon prior arguments and statements asserted in support of the motion for preliminary approval," and found the evidence "insufficient at the final approval stage, particularly in light of the forewarnings by the Court."  (Doc. 65 at 68.)  The magistrate judge also noted that "the requested service awards of $7,500 are approximately 10.5 times the size of the average net payment," and found this proportion "alone, suggests the requested award amount is excessive."  (*Id.*)  Therefore, the magistrate judge recommended "awarding the named class representatives Beltran, Martinez, Cota, and Solorio, awards of $5,000.00, and Rivera $3,500.00."  (*Id.*)

Plaintiffs now object "to the reduction in incentive awards to Plaintiffs Beltran and Martinez."[9] (Doc. 66 at 14, emphasis omitted.)  Plaintiffs contend that the magistrate judge "ignore[d] the hours presented in the Declarations … filed in support of the Motion for Preliminary Approval."  (Doc. 66 at 14, citing Docs. 25-5 [Rivera Decl.], 25-3 [Beltran Decl.], and 25-4 [Martinez Decl.].)  Plaintiffs note that, "as pointed out by counsel" at the final approval hearing, "Beltran expanded [sic] a total of at least 69 hours in connection with this action" and "Martinez expanded [sic] at least 69 hours in connection with this action."  (*Id.* at 14, 15, citing Docs. 25-3, 25-4.)  Plaintiffs contend the efforts of Martinez and Beltran "were instrumental in providing information, data, and documents that contributed to reaching the Settlement, [and] justifies a higher Incentive Award."  (*Id.* at 15.)  Thus, Plaintiffs ague that "it is

---

[9] Plaintiffs do not object to the recommended reduction for Cota and Solorio.  (Doc. 66 at 14-15.)

24

appropriate and just for Plaintiff Beltran and Plaintiff Martinez to receive Incentive Awards in the amounts of $7,500.00 as requested." (*Id.*)

Significantly, the evidence to which Plaintiffs again direct the Court's attention does not undermine the findings of the magistrate judge. Indeed, the magistrate judge acknowledged the prior declarations submitted by Beltran and Martinez, and noted they were directed—more than once—to file additional briefing and evidence to support the requests at final approval. Nevertheless, Beltran and Martinez failed to do so.

As the magistrate judge determined, the time expended by Beltran and Martinez supports the issuance of a service payment. *See Greer v. Dick's Sporting Goods, Inc.*, 2020 WL 5535399, at *4 (E.D. Cal. Sept. 15, 2020) (observing that the Eastern District has awarded separate payments "for "substantial efforts taken as a class representative when the plaintiff has undertaken at least 30 to 40 hours of work") (internal quotation marks, citation omitted). However, the evidence before the Court does not support the amount requested.

### A.    Factors considered by the Court

To determine reasonable amount to be awarded, the Court may consider the actions undertaken by the class representative, the fairness of the hourly rate, and how large the incentive award is compared to the average award class members expect to receive. *See, e.g., Ontiveros v. Zamora*, 303 F.R.D 356, 366 (E.D. Cal. Oct. 8, 2014) (evaluating the hourly rate the named plaintiff would receive to determine whether the incentive award was appropriate); *Rankin v. Am. Greetings, Inc.*, 2011 WL 13239039, at *2 (E.D. Cal. July 6, 2011) (noting the incentive award requested was "reasonably close to the average per class member amount to be received); *Alvarado*, 2011 WL 1883188 at *10-11.

### 1.    Actions of the class representatives

In *Rankin*, this Court approved a service payment of $5,000, where the "[p]laintiff retained counsel, assisted in the litigation, and was an active participant in the full-day mediation." *Id.*, 2011 2011 WL 13239039, at *5. Similarly, the Northern District Court determined an incentive award of $5,000 was appropriate for a class representative "was the one who initially brought the matter to counsel's attention," participated in discovery and settlement negotiations, and "spent more than 40 hours on [the] case." *Chen v. Chase Bank USA, N.A.*, 2020 WL 3432644, at *12 (N.D. Cal. June 30,

25

1    2020).  The actions of Beltran and Martinez are similar to those taken in *Rankin* and *Chen*.  Therefore,

2    this factor supports a conclusion that a reduction to $5,000 is appropriate.

3                        2.        Fairness of the hourly rate

4            Courts have considered the hourly rate of compensation for a class representative.  *See, e.g.,*

5    *Ontiveros*, 303 F.R.D. at 366; *Moss v. USF Reddaway*, 2018 WL 5099291, at *11 (C.D. Cal. Feb. 15,

6    2018); *Pappas v. Naked Juice Co of Glendora, Inc.*, 2014 WL 12382279, at *14-15 (C.D. Cal. Jan. 2,

7    2014).  In doing so, the courts declined to issue service awards where the hourly rate for the tasks

8    completed in the action was excessive or unreasonable.  *See, Ontiveros*, 303 F.R.D. at 366; *Moss*,

9    2018 WL 5099291, at *11; *see also Pappas, Inc.*, 2014 WL 12382279, at *14-15.

10           For example, this Court criticized a requested award that would have compensated the class

11   representative "at a rate of $73.80 per hour."  *Ontiveros*, 303 F.R.D. at 366.  Evaluating the

12   reasonableness of the award, the Court noted Ontiveros was paid $15 per hour while employed by the

13   defendant.  *Id.* at 366, n.3.  The Court explained that "[i]ncentive awards should be sufficient to

14   compensate class representatives to make up for financial risk … for example, for time they could

15   have spent at their jobs."  *Id.* at 366 (citing *Rodriguez*, 563 F.3d at 958-59.  The Court found an award

16   of "$50 per hour fairly compensate[] the named plaintiff for his time," and rounded the $13,500 total

17   up to $15,000 to "incorporate[] an extra incentive to participate in litigation."  *Id.* Similarly, the

18   Central District declined to approve service payments to the class representatives where the proposed

19   amount resulted in "extremely high hourly rates."  *Moss*, 2018 WL 5099291, at *11.

20           Beltran and Martinez reported 69 hours and 64 hours on this action, respectively.  (Doc. 25-3 at

21   4-6, Beltran Decl. ¶¶9-13; Doc. 25-4 at 4-6, Martinez Decl. ¶¶11-15.)  With the requested payments of

22   $7,500 each, this would compensate Beltran and Martinez at the hourly rates of approximately $109

23   and $117.  This appears higher than is reasonable, particularly because Beltran received an hourly rate

24   of $11.17 as an employee of Olam, and Martinez was paid an hourly rate of $10.28.  (Doc. 25-3 at 2, ¶

25   2; Doc. 25-2 at 2, ¶ 2.)   If the Court were to adopt the $50 hourly rate approved in *Ontiveros*, the

26   service payments for Plaintiffs would be reduced to a maximum of $3,450.  Thus, the hourly rates do

27   not support service payments in the amount requested.  *See Ontiveros*, 303 F.R.D. at 366; *Pappas, Inc.*,

28   2014 WL 12382279, at *14-15 (reducing the service awards for each class representative).

3.     Comparison of the award to those of class members

The Ninth Circuit indicated the Court may consider the "proportion of the [representative] payment[s] relative to the settlement amount, and the size of each payment." *In re Online DVD-Rental Antitrust Litig.*, 779 F.3d 934, 947 (9th Cir. 2015); *see also Spann v. J.C. Penney Corp.*, 211 F. Supp. 3d 1244, 1265 (C.D. Cal. 2016). For example, in *Rankin*, the Court approved a service award of $5,000, where the "[p]laintiff retained counsel, assisted in the litigation, and was an active participant in the full-day mediation." *Id.*, 2011 WL 13239039, at *2. The Court found the amount reasonable, observing it was "reasonably close to the average per class member amount to be received." *Id.*

As the magistrate judge determined, "the requested service awards of $7,500 are approximately 10.5 times the size of the average net payment." (Doc. 65 at 65.) Given the disparity between the average award and Plaintiffs' requested service payment, this factor does not support the amount requested, and instead favors a reduction to the service award.

**B.     Amounts awarded**

The Court finds the analysis of the magistrate judge was proper, particularly given the limited evidence and analysis submitted by the parties to support the requests for Beltran and Martinez. Notably, a service payment of $5,000 for the class representative "is presumptively reasonable" in the Ninth Circuit. *Richardson v. THD At-Home Servs.*, 2016 WL 1366952, at *13 (E.D. Cal. Apr. 6, 2016); *see also Gonzalez v. NCI Group, Inc.*, 2023 WL 373252, at *9 (E.D. Cal. Jan. 24, 2023) ("Courts routinely find rewards in the amount of $5,000 to be reasonable"); *Bellinghausen v. Tractor Supply Co.*, 306 F.R.D. 245, 266 (N.D. Cal. 2015) (observing that in the Northern District, "a $5,000 payment is presumptively reasonable"). Accordingly, the Court finds the recommended amount of $5,000 each for Beltran and Martinez—as well as Cota and Solorio, for whom there were no objections— is fair, reasonable, and adequate. Likewise, the $3,500 award for Rivera appears is fair, reasonable, and adequate. Therefore, the recommendations of the magistrate judge concerning the service payments are adopted.

**IX.     Costs of Settlement Administration**

The parties agreed the Settlement Administrator shall receive "the reasonable costs of administration of the Settlement and distribution of payments from the Total Settlement Fund." (Doc.

27

41 at 16, §III(7).)  Simpluris reports that its "total costs for services in connection with the administration of this Settlement, including fees incurred and anticipated future costs for completion of the administration, are $83,177.00, of which $78,187.00 will be paid out of the Total Settlement Fund and $4,990.00 will be paid directly by Defendant."  (Doc. 63 at 6, ¶ 26.)  Accordingly, the magistrate judge recommended that Simpluris receive $78,187.00 in settlement administration costs and expenses. (Doc. 65 at 67-68.)  No objections were made to the amount awarded to Simpluris.  (*See generally* Doc. 66.)  Because the amount is supported by the evidence, the Court adopts the recommendation.

## X.    Conclusion and Order

According to 28 U.S.C. § 636 (b)(1)(C), this Court conducted a *de novo* review of the case, and carefully reviewed the entire matter.  Based upon the foregoing, the Court **ORDERS**:

1.    The Findings and Recommendations are **ADOPTED IN PART**.

2.    Plaintiff's motion for final approval of the Settlement (Doc. 58) is **GRANTED**.

3.    Certification of the Rule 23 Class and FLSA Collective is **GRANTED**.  The Rule 23 class is defined as follows:

> All persons who were employed by Olam West Coast, Inc. ("Defendant") in a position that Defendant classified as non-exempt and/or hourly non-exempt and worked in that capacity at Defendant's Fresno, Firebaugh, Hanford, Lemoore, Gilroy and/or Williams facilities in California and for which Class Members and FLSA Members were paid on a non-exempt basis ("Covered Position"), at any time during the period from July 7, 2011 through September 22, 2021 ("Settled Period"), or the estates of such individuals.

The FLSA Collective includes:

> All persons who were employed by Olam West Coast, Inc. ("Defendant") at Defendant's Fresno, Firebaugh, Hanford, Lemoore, Gilroy, and/or Williams locations in one or more positions which were classified as non-exempt and/or hourly non-exempt at any time during the period from July 7, 2011 to September 22, 2021 ("FLSA Members").

4.    The Court enters Judgment by which, as of the Effective Date, Participating Class Members shall be conclusively determined to have given a release of any and all Released Class Claims against the Released Parties, as set forth in the Settlement Agreement and Notice Packet, and all Participating FLSA Members shall release any

and all Released FLSA Claims against the Released Parties, as set forth in the Settlement Agreement and Notice Packet.

5. The individuals who timely and validly opted out of the Settlement will not be bound by the terms and judgment.

6. Defendant **SHALL** fund the Total Settlement Fund within 30 calendar days after the entry of this Final Approval Order and Judgment, in accordance with the Settlement Agreement.

7. The PAGA award of $150,000.00 from the Gross Settlement Amount— including payment of $112,500.00 to California's Labor and Workforce Development Agency, with the remainder of $37,500 distributed to aggrieved employees— is **APPROVED**.

8. The request for a class representative service payments is **GRANTED IN PART,** in the modified amount of $5,000.00 for Beltran, Martinez, Cota, and Soloria; and $3,500.00 for Rivera.

9. Counsel's motion for fees (Doc. 60) is **GRANTED IN PART**, in the modified amount of 20% of the gross settlement amount, which totals $900,000.00.

10. Counsel's request for expenses from the total settlement fund is **GRANTED** in the amount of $40,740.18 for Lawyers *for* Justice; $14,666.97 for Lavi & Ebrahimian; and $6,785,72 for the Law Office of Sahag Majarian II.

11. Settlement administration costs in the amount of $78,187.00, to be paid from the Total Settlement Fund, are **APPROVED**.

12. The Settlement Administrator shall distribute payments to the Participating Class Members and the Participating FLSA Members within 63 days after the entry of this order, according to the methods and terms set forth in the Settlement Agreement.

13. The action is **DISMISSED** with prejudice, with each side to bear its own costs and attorneys' fees except as otherwise provided by the Settlement and ordered by the Court.

14. The Clerk of Court is **DIRECTED** to close this action.

///

///

29

15.     The Court retains jurisdiction to consider any further applications arising out of or in connection with the Settlement.

IT IS SO ORDERED.

Dated:     **September 8, 2023**

UNITED STATES DISTRICT JUDGE